JKB/cic/341429

5634-2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE S. MAY INTERNATIONAL )
COMPANY, )
          )
         Plaintiff, )
          )
         v. )    No. 04 C 60 **DOCKETED**
          )
XCENTRIC VENTURES, LLC, RI-POFF )    Judge Norgle OCT - 6 2004
REPORT.COM, BADBUSINESSBUREAU.COM, )
ED MAGEDSON, VARIOUS JOHN DOES, JANE )
DOES AND ABC COMPANIES, )
          )
         Defendants. )

## NOTICE OF FILING

**FILED**
OCT 05 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO:     Bart A. Lazar, Esq.
          Seyfarth Shaw LLP
          55 East Monroe, Suite 4200
          Chicago, IL 60603

          **PLEASE TAKE NOTICE** that on the 5th day of October, 2004, there was filed with the United States District Court for the Northern District of Illinois, Eastern Division, an **Defendants' Response to Motion for a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction**, a copy of which is attached hereto and hereby served upon you.

                              XCENTRIC VENTURES, LLC and ED MAGEDSON

                              By: _____
                                 One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

## **PROOF OF SERVICE**

I, the undersigned, on oath state that I served copies of the above-referenced documents upon the above-referenced parties at their addresses listed above by depositing the same in the U.S. Mail at 233 South Wacker Drive, Chicago, Illinois, before 5:00 p.m. on the 5th day of October, 2004, with proper postage prepaid.

Subscribed and Sworn to before me
on this 5th day of October, 2004

By: _____
    Notary Public

OFFICIAL SEAL
CYNTHIA CLOSE
NOTARY PUBLIC · STATE OF ILLINOIS
MY COMMISSION EXPIRES: 06-15-07

JKB/cic/res/cmm/341257                                           5634-2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 6018 |
| v. | ) | |
| | ) | Honorable Judge Norgle |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, | ) | |
| BADBUSINESSBUREAU.COM, ED MAGEDSON, | ) | |
| VARIOUS JOHN DOES, JANE DOES and ABC | ) | |
| COMPANIES, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

OCT 05 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

Defendants respectfully request that this Court set aside the temporary restraining order entered by this Court on September 24, 2004, and deny the Plaintiff's request for a preliminary injunction on the grounds that this court lacks personal jurisdiction over the Defendants and George S. May is not likely to succeed on the merits. This response is supported by the following Memorandum of Law and the Court's file in this matter.

## MEMORANDUM OF LAW

## I.   INTRODUCTION

This case is a defamation claim against the operator of a popular consumer advocacy site and its founder for statements posted by third parties who have legitimate complaints about the service they received from George S. May or the experience they had while employed by George S. May. Because its claims are barred by the Communications Decency Act, Plaintiff added a Lanham Act claim. By spotlighting one rogue report and relying on the emergency rules that were intended to temporarily preserve the status quo, George S. May succeeded in convincing

1

this Court to exceed its jurisdiction and enter a mandatory order before having an opportunity to hear the true facts of this case.  Defendants have complied with this order even though (1) it threatens the survival of the website; (2) there is no jurisdiction over these Defendants in Illinois; and (3) the order violates the Constitution of the United States and federal statutes.

For the reasons set forth herein, this Court should lift the temporary restraining order, deny the request for a preliminary injunction, and order that the bond posted by Plaintiff be turned over to Defendants in partial reimbursement for the damages George S. May has caused.

## II.    RELEVANT FACTS

Rip-off Report has been in existence for approximately five years.  (Affidavit attached as Exhibit "A").  It was founded by Ed Magedson and was previously operated by a company called badbusinessbureau.com, llc.  Today it is operated by Xcentric Ventures, L.L.C., an Arizona limited liability company.  Ed Magedson is still involved as the website's editor.  It has grown to the most popular consumer advocacy website in the world, containing over 100,000 reports, and having had over a billion visitors.  At one time, Mr. Magedson would occasionally write an editorial about a report, but has discontinued that practice because of the potential liability.  Today, all reports are authored and submitted by consumers.  While the staff of Rip-off Report edits the reports by removing obscenities, vulgarities, and threats of physical violence, no agent of Rip-off Report adds any content to any report.  (Exhibit "A").

George S. May is a business consulting firm that has been the subject of twenty-five main reports and numerous other rebuttals or comments added to reports by other consumers.  (Exhibit "B").  These reports describe unfair business practices engaged in by George S. May.  Some reports contain the names and telephone numbers of the authors, who describe in detail how they were victimized by the business practices of George S. May.  Other reports were filed by former employees, who describe how they were directed to use a script to lure unsuspecting business

2

customers into believing that they must pay George S. May large sums of money to save their businesses. Unfortunately, one of these reports accused the owner of the company of engaging in child pornography without any apparent basis. (Exhibit "B").

On August 17, 2004, a "staff executive" of George S. May, Shawn Lange, posted a rebuttal on Rip-off Report, vehemently denying the comments posted on Rip-off Report and stating that the company provides services of the highest caliber to its clients. (Exhibit "C"). When he posted that report, he agreed on behalf of the company that the courts of Arizona would have sole and exclusive jurisdiction over any disputes arising out of the posting. (Exhibit "D").

Ed Magedson resides in Arizona (Exhibit "A"). He owns no assets in Illinois, does not do business in Illinois, and has not been to Illinois except in passing through. (Exhibit "A").

Xcentric is a limited liability company organized and existing under the laws of Arizona. (Exhibit "A"). Its place of business is Arizona. (Exhibit "A"). Xcentric does not own any assets in Illinois, or have any offices or employees in the state. (Exhibit "A"). Xcentric does not do business with or within the State of Illinois. Xcentric operates a website, "The Rip-Off Report," located at www.badbusinessbureau.com and at www.ripoffreport.com. (Exhibit "A"). The website is hosted by Sterling Network Services, LLC. (Exhibit "A"). Sterling is an Arizona company whose servers are located in Arizona. (Exhibit "A").

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER BOTH DEFENDANTS[1]

### A. The Contractual Agreement Of The Parties Calls For Jurisdiction in Arizona

As set forth above, Plaintiff's agent agreed in a binding contract that claims arising out of the posting of his report are subject to jurisdiction in Arizona. Such contracts are valid and binding. *DeJohn v. The TV Corp. Intern.*, 245 F.Supp.2d 913 (C.D. Ill. 2003) (forum selection

---

[1] Although there are four Defendants named, only two are legal entities, the other two are website addresses.

3

clauses are presumptively valid and the fact that the contract is electronic does not affect this conclusion). Plaintiff has sought an order that all false postings be removed. Plaintiff addressed allegedly false postings in its own posting. Thus, this claim arises out of the report filed by Plaintiff and, by agreement of the parties, is solely within the jurisdiction of Arizona.

**B.    This Court lacks Jurisdiction Even Absent the Contract**

The burden of proof rests on the party asserting jurisdiction. *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (*citing Carteret Savings Bank v. Shushan*, 954 F.2d 141 (3d Cir.1992), *cert. denied* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). To meet this burden, the plaintiff must make a prima facie showing of "sufficient contacts between the defendant and the forum state." *Mellon East*, 960 F.2d at 1223 (*citing Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir.1987).

Illinois's long arm jurisdiction statute is codified at 735 ILCS 5/2-209. It provides that the following activities submit a person to jurisdiction: (1) the transaction of business within the state; (2) the commission of a tortious act within the state; (3) the making or performance of any contract or promise substantially connected to the state. Defendants have done none of these and Plaintiff cannot satisfy Illinois' long arm statute.

In addition to satisfying the long-arm statute, Plaintiff must also satisfy the due process clause of the United States Constitution.

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The contacts between the defendant and the forum state may not be "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79

4

L.Ed.2d 790 (1984). Instead, "the sufficiency of the contacts is measured by the defendant's purposeful acts." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir.1994). The minimum contacts with the forum state must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state, thereby invoking the protections and benefits of the forum state's law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir.2002). The minimum contacts requirement serves two objectives: "[i]t protects against the burdens of litigation in a distant or inconvenient forum" unless the defendant's contacts make it just to force him or her to defend there, and "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Depending on the nature of the contacts, a court may exercise general or specific jurisdiction. When the defendant's contacts with the state are sufficiently continuous, systematic and general, the court may exercise jurisdiction over the defendant in any suit based on any controversy. *International Medical Group*, 312 F.3d at 846. When a defendant's contacts with the state are more limited, but are related to or give rise to the specific controversy in issue, a court may exercise specific jurisdiction over the defendant with respect to that controversy. Because the implications are far greater, the constitutional standard for general jurisdiction is considerably more stringent than the standard for specific jurisdiction.

Plaintiff has asserted jurisdiction in the complaint on two grounds: (1) that Defendants direct tortious conduct at George S. May, which maintains its principal place of business in

5

Illinois; and (2) that Defendants operate a commercial interactive website in the District. These claims are both factually inaccurate and legally insufficient for jurisdiction.

### 1.   Defendant Did Not Direct Tortious Conduct At George S. May

The purposeful availment requirement is satisfied when the defendant purposefully establishes sufficient minimum contacts with the forum state to create a "substantial connection" between the defendant and the forum state. *Burger King Corp.*, 471 U.S. 462 at 475-76, 105 S.Ct. 2174. A substantial connection is created when the defendant "purposefully avails itself of the privilege of conducting activities" in the forum. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. The objective of the purposeful availment requirement is to provide predictability and give notice to the defendant that it is subject to suit in the forum state, so that the company "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

Xcentric operates a website. Plaintiff does not even allege, nor could it truthfully allege, that Xcentric or any agent of Xcentric authored the reports that are at issue. Nothing that Xcentric has done could be deemed to be a purposeful availment of the benefits of Illinois' laws that it could reasonably anticipate being haled into court in this state. "[S]pecific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state.' " *Id.*

The effects test, set forth by the United States Supreme Court in *Calder v. Jones*, 104 S.Ct. 1482 (1984), requires something more than just causing injury to someone harming someone in the forum state. The effects test is satisfied when the plaintiff alleges that the defendant committed an intentional tort expressly aimed at the forum state; the actions caused

6

harm, the brunt of which was suffered in the forum state; and the defendant knew that the effects of its actions would be suffered primarily in the forum state. *Calder*, 465 U.S. at 788-90, 104 S.Ct. 1482. Here, Xcentric operated a website. That conduct cannot rise to the level of knowing that the effects of its actions would be suffered primarily in Illinois. *See Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) (dismissing for lack of jurisdiction in case arising out of posting of defamatory article even though injury would be felt in forum state).

In *Calder* the Court emphasized that the defendants had aimed their actions expressly at California and actually knew that the "potentially devastating" effects of their article would be felt primarily in the state. *Id.* at 789-90, 104 S.Ct. 1482. Here, because Defendants did not author the allegedly defamatory matter, they could not have aimed their activities at Illinois.

**2.  That George S. May Maintains its Principal Place of Business in Illinois is Of Little Significance**

Even if Plaintiff could meet the express aiming requirement, Plaintiff cannot show that it has suffered the brunt of its alleged injury in Illinois, or that Defendants could have known that the effects of their actions would be suffered primarily in Illinois. The Court should not assume that Plaintiff's injury is in Illinois just because its principal place of business is in Illinois. When an injured party is an individual, it is reasonable to infer that the brunt of the injury will be felt in the state in which he or she resides. This is not necessarily the case when the injured party is a corporation. "A corporation does not suffer harm in a particular geographic location in the same sense that an individual does." *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir.1993). *Calder,* 465 U.S. at 789, 104 S.Ct. 1482, still requires that the harm be particularized to the forum state. *See Janmark,* 132 F.3d 1200 (7th Cir. 1997). Even if a corporation has its principal place of business in the forum state, it does not follow necessarily that it makes more sales in that state than any other or that harm to its reputation will be felt more strongly in that

7

state. *Hy Cite Corporation v. badbusinessbureau.com, L.L.C.*, 297 F.Supp.2d 1154 (W.D. Wisc. 2004) (dismissing claim against the previous operator of the Rip-off Report website and rejecting Hy Cite's argument that a tort occurred in Wisconsin because the harm occurred in Wisconsin).

Here, George S. May has offices in Nevada, New York, San Francisco, Canada, and Europe. They boast that their clients are located "in virtually every corner of America as well as Canada." (Exhibit "E").

Thus, the fact that Illinois is Plaintiff's principal place of business is not proof that Plaintiff suffered the brunt of an injury in the state. *See, e.g., Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1112 (9th Cir.2002); *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265 (3d Cir.1998); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1079 (10th Cir.1995); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391 (8th Cir.1991).

Further, even if George S. May shows that despite having clients and offices all over the world, it suffered the brunt of its injury in Illinois, it cannot show that Defendants knew this when they allowed the reports to be posted.

### 3.   Defendants Do Not Operate a Commercial Interactive Website in Illinois

The most often-cited case in analyzing jurisdiction based on Internet activities is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D.Pa. 1997), which established the sliding scale test for jurisdiction arising out of Internet activities.

The *Zippo* court recognized that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations

8

> where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. (citations omitted).

(*Id.*) Here, all Xcentric did was host a website upon which third parties posted reports. The postings were free. Xcentric did not engage in any commercial transaction out of which this claim arises. Its purpose is to make information available. This case should be analyzed the same as a passive web site because the claims arise out of Xcentric's passive activity of merely making information available. In addition, even if the court analyzes this case under the test for an interactive web site, the level of interactivity here is simply that the author posted a complaint on the website and there was no commercial nature to the exchange of information because there was no money exchanged. Rather, the posting was a classic exercise of non-commercial free speech.

Plaintiff's assertion that Defendants operate the website "within the district" is inaccurate. Xcentric operates the website in Arizona where its agents work and where its servers are located. While it is true that the website can be viewed in Illinois, if that were the test there would be jurisdiction over every website owner everywhere in the world where the Internet can be accessed. That position has been uniformly rejected by the courts. "Courts have insisted upon more than mere access to the website to sustain specific jurisdiction." *Best Van Lines, Inc. v. Walker*, 2004 WL 964009 (S.D.N.Y. 2004); *GTE New Media Services, Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("personal jurisdiction surely cannot be based solely on the ability of [forum] residents to access Defendant's websites"); *Realuyo v. Villa Abrille*, 2003 WL 21537754 (S.D.N.Y. 2003) (Internet news service not subject to jurisdiction in New York

9

for posting allegedly defamatory article written by another – sheer availability of article over the internet was insufficient for jurisdiction).

To the extent that Plaintiff asserts general jurisdiction, such a claim borders on the frivolous. In order to exercise general jurisdiction, the defendant's contacts with the forum "must be so extensive to be tantamount" to the defendant's "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation,* 338 F.3d at 787. Here, there is nothing even approaching that requisite test. Xcentric has no contacts with Illinois at all except that its website can be accessed in Illinois (as well as anywhere else in the world). The Illinois Court of Appeals has rejected the contention that Internet activities alone are a sufficient basis for general jurisdiction. *Forrester v. Seven Seventeen HB S. Louis, 748 NE2d 834 (Ill. App. 4 Dist. 2002).*

Plaintiff argues there is jurisdiction over Defendants because the websites are a commercial vehicle for selling Defendants' products. First, that argument applies only to Xcentric, not to Ed Magedson personally. Also, the advertising Plaintiff refers to is a pop-up ad for the Rip-off Revenge Guide. Defendant, Xcentric, markets that guide for a separate company, Consumer Media Publishing, LLC. Xcentric does not fill the orders or sell the books. Xcentric is paid a fee from Consumer Media to market the guides. Thus, the sale of the books is not evidence of doing business in any other state. Further, this claim does not arise out of the sale or marketing of the books. Thus, unless Plaintiff intends to try to prove that the marketing of books over the internet rises to the level of general jurisdiction, marketing books is irrelevant.

10

## IV.   THE TEMPORARY RESTRAINING ORDER WAS IMPROPERLY ISSUED AND SHOULD BE LIFTED AND THE PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED

### A.   The Purpose of Rule 65 Is To Maintain the Status Quo

A temporary restraining order or a preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved.  *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766 (7th Cir. 2001).   Here, the Court has issued a temporary restraining order and the Plaintiff has requested an injunction that does not preserve the status quo, but rather mandates that the Defendants take action.  For that reason alone, the temporary restraining order was unwarranted and should be set aside.  With only fax notice just days before the hearing, and an inadequate opportunity to be heard, Defendant was forced to make changes to its Rip-off Report website.  Defendant reluctantly complied despite the far reaching and devastating impact such a ruling may have on its website.

### B.   Defendants' Harm Outweighs The Harm To Plaintiff

While Defendants understand that George S. May convinced this Court that removing reports would cause no harm to Defendants, that is simply inaccurate.  Hundreds, if not thousands, of businesses that are the subject of complaints about their business practices have threatened to sue Rip-off Report's operators for defamation and seek injunctive relief.  If businesses locate a decision wherein the court issued injunctive relief against Xcentric Ventures, it will be an invitation to file suit and attempt to force Xcentric to remove postings about their company.  Xcentric is not financially in the position to defend hundreds of lawsuits and would be forced out of business.  The result would be that the single most important source for consumer information would no longer be available to the public.  If Xcentric were to remove every report that businesses claimed were false and threatened to sue over, the website would no longer have value to consumers.

11

On the other hand, the harm to George S. May is minimal. The report that accuses the owner of George S. May of child pornography is not credible on its face. Indeed, the very next posting was a consumer stating that the report appeared to be false. The report is so ridiculous that it is not likely to be believed by anyone reading it.

### C.    Plaintiff Is Not Likely To Succeed On The Merits

#### 1.    Counts II, III and IV are Barred by The Communications Decency Act

47 U.S.C. §230 prohibits civil actions that treat an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001). The federal statute, which was passed by Congress with the desire to "promote unfettered speech," provides in relevant part that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. §230; *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997).

The operation of an Internet website upon which others post statements is an activity which is unequivocally protected by the Communications Decency Act, 47 U.S.C.A. §230. *Carafano v. Metrosplash.com, Inc.* 339 F.3d 1119 (9th Cir. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997); *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37 (Wash.App 2001).

Every Federal court that has considered the issue has held that the Communications Decency Act immunizes a website operator for defamation it publishes if it is not the information content provider of the content at issue. *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Green v. America Online*, 318 F.3d 465 (3rd Cir. 2003); *Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000); *Zeran v. America Online*, 129 F.3d 327, 330 (4th Cir. 1997). In four other circuits – the Fifth, Seventh, Eighth and District of Columbia – the district

12

courts have interpreted section 230 to bar lawsuits such as this. *Patentwizard, Inc. v. Kinko's Inc.,* 163 F.Supp.2d 1069 (D.S.D. 2001); *Smith v. Intercosmos Media Group, Inc.,* U.S.Dist.LEXIS 24251 (E.D.La. 2002); *Morrison v. America Online, Inc.,* 153 F.Supp.2d 930 (N.D. Ind. 2001); *Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C. 1998).

In the case at bar, Xcentric Ventures and Ed Magedson are alleged to be website operators who have published defamatory statements about Plaintiff.

"Three elements are thus required for §230 immunity: the defendant must be a provider or user of an interactive computer service; the asserted claims must treat the defendant as a publisher or speaker of information; and the information must be provided by another information content provider." *Schneider,* 31 P.2d at 39.

Web hosts are recognized as Section 230 providers of interactive computer services. *See Schneider,* 31 P.2d at 40. The legislative history of Section 230 makes clear that Congress intended to extend immunity to all civil claims. *Id.* at 42. As the Fourth Circuit explained in *Zeran,* Congress deliberately chose not to deter harmful online speech by means of civil liability on "companies that serve as intermediaries for other parties' potentially injurious messages." *Id.*

The state law claims that are asserted here seek to treat Defendants as publishers of the allegedly defamatory statements. Defendants are not the information content providers, and they are immune from claims that require them to be a publisher or speaker of the information as an element of the claim.

Here, Defendants are not the information content providers because they did not author the reports that are alleged to be defamatory. Recently, the Ninth Circuit confirmed that even where the website provided a detailed form and a menu of prepared responses that the user could chose from, the website was not the information content provider because the user made the

13

choice as to which answers would be provided. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. August 13, 2003).

Further, it is well settled that to be an information content provider, the entity must have developed the information at issue. "The development of information, therefore, means something more substantial than merely editing portions of an email and selecting material for publication." *Batzel v. Smith,* 333 F.3d 1018, 1031 (9th Cir. 2003). The exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, post, or alter content does not transform an individual into an information content provider. *Zeran v. America Online,* 129 F.3d 327, 330 (4th Cir. 1997). Indeed, the very purpose of the CDA was to overrule case law that had held web hosts liable because they exercised editorial decisions. *Batzel v. Smith,* 333 F.3d 1018, 1029 (9th Cir. 2003). Congress' express intent was to remove the disincentive that web hosts previously had to refrain from editorial decisions. *Id.*

The only way that Defendants can be found to be an information content provider is if they created the actual content that Plaintiff claims is false or misleading. *Carafano,* 339 F.3d at 1125. It is not enough that it provided other content on the website. *Id.*

It is of no help to Plaintiff if it alleges that Defendants exercised control over the publication of the allegedly defamatory content. "Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred." *Blumenthal v. Drudge,* 992 F. Supp. 44, 51 (D. D.C. 1998).

Case law makes clear that the immunity extends to protect website operators from claims based on the operator's failure to investigate postings or failing to edit or remove inaccurate

14

postings, and claims based on the website operator making editorial decisions on what to post or not post. *Batzel v. Smith*, 2003 WL 21453358 (9th Cir. 2003).

The Communications Decency Act also prohibits injunctive relief against web site operators. In the case of *Kathleen R. et al v. City of Livermore*, the California Court of Appeals dismissed claims for declaratory and injunctive relief, holding that section 230(c)(1) of the Act prohibited claims for injunctive relief as well as damages. 87 Cal App.4th 684, 697-98, 104 Cal.Rptr.2d 772, 780-81 (2001) (*citing Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000). In *Ben Ezra, Weinstein, & Co.*, the Tenth Circuit upheld dismissal of state law claims for injunctive relief as well as damages. *Ben Ezra, Weinstein, & Co.*, 206 F.3d at 983-84.

Congress has chosen for policy reasons to immunize from liability for defamatory speech, providers or users of interactive computer services when the defamatory material is provided by someone else. *Id.* One of these policy reasons is to "prevent lawsuits from shutting down websites and other services on the Internet." *Id.*

The Communications Decency Act preempts state law to the extent that state law allows claims against website operators for content they did not create. "Preemption is required where state law conflicts with the express language of a federal statute." *Doe v. America Online*, 783 So.2d at 1015. Further, the Communications Decency Act applies even where the website operator had notice and refused to remove the offending material. *Id.* at 1012-1013.

2. **Count I Fails to State A Claim Upon Which Relief Can Be Granted**

   a. **The Elements of a Claim Under 15 U.S.C. §1125**

Because the Communications Decency Act contains an exception for intellectual property claims, Plaintiff has included a claim under 15 U.S.C. § 1125, which provides liability against any person who, in connection with any services, uses any false representation of fact, which, in

15

commercial advertising or promotion, misrepresents the nature, characteristics, or qualities, of another person's services. 15 U.S.C. §1125 also provides that non-commercial use of the mark and all forms of news reporting and news commentary are not actionable under that section.

The false advertising section of the Lanham Act "is intended to prevent confusion, mistake, or deception regarding the characteristics or qualities of goods or services.' *Connecticut Mobilecom*, 2003 WL 23021959, at *9.

### b. Prudential Standing is Lacking on the False Advertising Portion of the Lanham Act Claim

In order to bring a Lanham Act claim, the Plaintiff must have standing. There are two components to the standing doctrine. The traditional component refers to Article III standing, requiring a party to show injury, causation, and redressability. *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). Beyond constitutional requirements, federal courts also adhere to a second component that bears on the question of standing – a set of prudential principles. *Bauer v. Texas*, 341 F.3d 353, 357 (5th Cir. 2003); *McClure v. Asheroft*, 335 F.3d 404, 411(5th Cir. 2003) (*quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982)).

Prudential standing is a set of rules forming an integral part of judicial self-government. *General Instrument Corp. v. Nu-Tek Electronics*, 197 F.3d 83, 87 (3rd Cir. 1999). The requirements "help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers." *McClure*, 335 F.3d at 411 (*quoting Ruiz*, 161 F.3d at 829 n.22). Specifically, those requirements address 'whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit.' *Bennet v. Spear*, 520 U.S. 154, 162 (1997).

16

As a matter of statutory interpretation, Congress is presumed to have incorporated prudential standing principles, unless the statute expressly negates them. *Conte Bros. Automotive v. Quaker State-Slick 50,* 165 F.3d 221, 227 (3rd Cir. 1998). "Congress did not intend to abrogate prudential standing principles with respect to the Lanham Act." *Logan v. Burgers Ozark County Cured Hams, Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (*citing Procter & Gamble,* 242 F.3d at 560-61).

Accordingly, this Court should consider whether the Lanham Act was intended to confer standing upon plaintiffs who allege that they suffered injury by virtue of a non-competitor's allegedly defamatory remarks transmitted via an Internet website. Under those facts, the Northern District of Texas and the Eastern District of Pennsylvania have determined that Congress did not intend for the Lanham Act to be invoked. *Nevyas v. Morgan,* 309 F.Supp.2d 673 (E.D. Pa. 2004) ("despite the fact that plaintiffs may have suffered an injury to their commercial interests, they have not sustained competitive harm. We conclude that plaintiffs here cannot satisfy the prudential requirements to maintain standing to sue under the Lanham Act.") Here, as in the *Nevyas* case, the Defendants are alleged to have defamed the Plaintiff but Defendants are not commercial competitors with the Plaintiff. The Lanham Act is only intended to redress competitive harm. *Id.* at 680.

In *MCW, Inc. v. badbusinessbureau.com, llc,* 2004 WL 833595 (N.D. Tex. 2004), the District Court dismissed Lanham Act claims as against the previous operator of Rip-off Report based on the prudential standing doctrine. The District Court, in a detailed decision, explained why the factors that courts consider weighed heavily in favor of finding that prudential standing was lacking. The injury complained of by plaintiffs – the erosion of plaintiffs' goodwill and reputation and lost sales from potential customers because of the defendants posting of false,

misleading, disparaging, and deceptive messages – is not one that Congress sought to redress through the Lanham Act, because it is not the type of injury that the Lanham Act is aimed at. *Id.* The *MCW* Court recognized that although the plaintiffs' injuries were commercial in nature, the were not competitive in nature. Regarding the Act's second purpose, the *MCW* court found that plaintiffs' alleged reputational harm was not the type of harm addressed by the Lanham Act. Similarly the *MCW* court found that the lack of directness of the alleged injury also suggested that plaintiffs had no prudential standing to bring a claim under § 43(a) of the Lanham Act. Finally the *MCW* court found that another factor considered – the proximity of the party to the alleged injurious conduct – weighed against standing.

Because the Lanham Act was not intended to be used in the manner that Plaintiff seeks to use it, Plaintiff lacks standing to assert claims under the false advertising provision of the Lanham Act.

### c.      Plaintiff Fails to Satisfy a Requisite Element of the Claim

Section 1125(a)(1)(B) of the Lanham Act requires that "in commercial advertising or promotion," there is a misrepresentation.  The use complained of by Plaintiff is not in "commercial advertising or promotion."  Although the statute does not define the phrase "commercial advertising or promotion," to qualify as "commercial advertising or promotion, most courts require that the contested representations consist of (1) commercial speech (2) made by a defendant who is in commercial **competition** with plaintiff (3) for the purpose of influencing consumers to buy defendants goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." *Nevyas v. Morgan,* 309 F.Supp.2d 673 (E.D.Pa. 2004); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48 (2d Cir. 2002); *Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379, 1383, 1384 (5th Cir. 1996).  This Court need not inquire any further than the second

18

and third elements to determine that the Defendants' postings on their websites do not constitute commercial advertising or promotion.

The acts complained of in the Complaint against the Defendants are surely not within the conduct contemplated by Congress in passing the Lanham Act. The Lanham Act is directed only against false representations in connection with the sale of goods or services in interstate commerce. "It has never been applied to stifle criticism of the goods or services of another by one, **such as a consumer advocate**, who is not engaged in marketing or promoting a competitive product or service." (emphasis added). *Wojnarowicz v. American Family Association*, 745 F.Supp 130, 141 (S.D.N.Y. 1990).

The legislative history makes clear that Congress did not intend the Lanham Act to apply to the conduct complained of in this case:

> Under this proposed change only false or misleading "advertising or promotion" would be actionable, whether it pertained to the advertiser itself or another party. The change would exclude all other misrepresentations from section 43(a) coverage. These others are the type which raise free speech concerns, **such as a Consumer Report which reviews and may disparage the quality ... of products, [and] misrepresentations made by interested groups which may arguably disparage a company and its products.**

(emphasis added) S. 1883, 101st Cong., 1st Sess., 135 Cong.Rec. 1207, 1217 (April 13, 1989), as cited in *Wojnarowicz*, 745 F. Supp. at 142.

Because Plaintiff cannot show that the Defendants have used the Plaintiff's marks in commercial advertising or promotion under § 43(a)(1)(B) of the Lanham Act, Plaintiff has failed to state a false advertising claim for which relief can be granted.

## V.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court set aside the temporary restraining order entered on September 24, 2004, order Plaintiff's $1,000 bond paid to Defendants, and deny Plaintiff's request for a preliminary injunction.

19

RESPECTFULLY SUBMITTED this 5th day of October, 2004.

XCENTRIC VENTURES, LLC and ED
MAGEDSON

By: _____
    One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
(312) 627-4000

Of Counsel:
**JABURG & WILK PC**
Maria Crimi Speth, Esq.
Arizona Bar No. 012574
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
Telephone: 602.248.1000

10297-001/MCS/MCS/406290

# TABLE OF CONTENTS

MEMORANDUM OF LAW ..................................................................................... 1

I.     INTRODUCTION ................................................................................... 1

II.   RELEVANT FACTS ............................................................................... 2

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER BOTH
     DEFENDANTS ......................................................................................... 3

    A.    The Contractual Agreement Of The Parties Calls For Jurisdiction in
         Arizona ............................................................................................. 3

    B.    This Court lacks Jurisdiction Even Absent the Contract ........................... 4

        1.    Defendant Did Not Direct Tortious Conduct At George S. May ... 6

        2.    That George S. May Maintains its Principal Place of Business in
             Illinois is Of Little Significance ...................................................... 7

        3.    Defendants Do Not Operate a Commercial Interactive Website in
             Illinois ............................................................................................. 8

IV.  THE TEMPORARY RESTRAINING ORDER WAS IMPROPERLY  ISSUED
     AND SHOULD BE LIFTED AND THE PRELIMINARY INJUNCTION
     SHOULD NOT BE GRANTED .................................................................... 11

    A.    The Purpose of Rule 65 Is To Maintain the Status Quo ........................... 11

    B.    Defendants' Harm Outweighs The Harm To Plaintiff ............................... 11

    C.    Plaintiff Is Not Likely To Succeed On The Merits ................................... 12

        1.    Counts II, III and IV are Barred by The Communications Decency
             Act .................................................................................................... 12

        2.    Count I Fails to State A Claim Upon Which Relief Can Be Granted
              ........................................................................................................ 15

            a.    The Elements of a Claim Under 15 U.S.C. §1125 ............ 15

            b.    Prudential Standing is Lacking on the False Advertising
                Portion of the Lanham Act Claim ..................................... 16

            c.    Plaintiff Fails to Satisfy a Requisite Element of the Claim
                 ........................................................................................... 18

V.    CONCLUSION ...................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ................................................................. 12, 14, 15

*Bauer v. Texas,*
    341 F.3d 353, 357 (5th Cir. 2003) ......................................................................... 16

*Ben Ezra, Weinstein, & Co. v. America Online Inc.,*
    206 F.3d 980, 983-84 (10th Cir. 2000) .......................................................... 12, 15

*Bennet v. Spear,*
    520 U.S. 154, 162 (1997) ......................................................................................... 16

*Best Van Lines, Inc. v. Walker,*
    2004 WL 964009 (S.D.N.Y. 2004) ............................................................................ 9

*Blumenthal v. Drudge,*
    992 F.Supp. 44 (D.D.C. 1998) ......................................................................... 13, 14

*Calder v. Jones,*
    104 S.Ct. 1482 (1984) ................................................................................................ 6

*Carafano v. Metrosplash.com, Inc.*
    339 F.3d 1119 (9th Cir. 2003) ......................................................................... 12, 14

*Conte Bros. Automotive v. Quaker State-Slick 50,*
    165 F.3d 221, 227 (3rd Cir. 1998) ........................................................................ 17

*Core-Vent Corp. v. Nobel Industries AB,*
    11 F.3d 1482, 1486 (9th Cir.1993) ............................................................................ 7

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.,*
    946 F.2d 1384, 1391 (8th Cir.1991) ......................................................................... 8

*DeJohn v. The TV Corp. Intern.,*
    245 F.Supp.2d 913 (C.D. Ill. 2003) .......................................................................... 3

*Doe v. America Online, Inc.,*
    783 So.2d 1010 (Fla. 2001) ............................................................................... 12, 15

*Dole Food Co., Inc. v. Watts,*
    303 F.3d 1104, 1112 (9th Cir.2002) ......................................................................... 8

*Far West Capital, Inc. v. Towne,*
    46 F.3d 1071, 1079 (10th Cir.1995) ......................................................................... 8

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
 314 F.3d 48 (2d Cir. 2002) ................................................................................ 18

*Forrester v. Seven Seventeen HB S. Louis,* 748 NE2d 834 (Ill. App. 4 Dist. 2002) .................... 10

*General Instrument Corp. v. Nu-Tek Electronics,*
 197 F.3d 83, 87 (3rd Cir. 1999) ........................................................................ 16

*Green v. America Online,*
 318 F.3d 465 (3rd Cir. 2003) ............................................................................ 12

*GTE New Media Services, Inc. v. Bellsouth Corp.,*
 199 F.3d 1343, 1349 (D.C. Cir. 2000) ............................................................... 9

*Hanson v. Denckla,*
 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ........................... 5

*Hy Cite Corporation v. badbusinessbureau.com, L.L.C.,*
 297 F.Supp.2d 1154 (W.D. Wisc. 2004) ........................................................... 8

*IMO Industries, Inc. v. Kiekert AG,*
 155 F.3d 254, 265 (3d Cir.1998) ....................................................................... 8

*Indiana Civil Liberties Union v. O'Bannon,*
 259 F.3d 766 (7th Cir. 2001) ............................................................................ 11

*International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,*
 312 F.3d 833, 846 (7th Cir.2002) ...................................................................... 5

*International Shoe Co. v. Washington,*
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .................................... 4

*Kathleen R. et al v. City of Livermore,* 87 Cal App.4th 684, 104 Cal.Rptr.2d 772 (2001) .......... 15

*Keeton v. Hustler Magazine, Inc.,*
 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ........................ 5

*Logan v. Burgers Ozark County Cured Hams, Inc.,*
 263 F.3d 447, 460 n.9 (5th Cir. 2001) .............................................................. 17

*McClure v. Asheroft,* 335 F.3d 404, 411(5th Cir. 2003) .................................................... 16

*MCW, Inc. v. badbusinessbureau.com, llc,*
 2004 WL 833595 (N.D. Tex. 2004) .................................................................... 17

*Mellon Bank (East) PSFS, N.A. v. Farino,*
 960 F.2d 1217, 1223 (3d Cir.1992) ................................................................... 4

23

*Morrison v. America Online, Inc.*,
    153 F.Supp.2d 930 (N.D. Ind. 2001) ........................................................... 13

*Nevyas v. Morgan*,
    309 F.Supp.2d 673 (E.D. Pa. 2004) ...................................................... 17, 18

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
    28 F.3d 572, 580 (7th Cir.1994) .................................................................. 5

*Okpalobi v. Foster*,
    244 F.3d 405, 425 (5th Cir. 2001) ............................................................. 16

*Patentwizard, Inc. v. Kinko's Inc.*,
    163 F.Supp.2d 1069 (D.S.D. 2001) ............................................................ 13

*Realuyo v. Villa Abrille*, 2003 WL 21537754 (S.D.N.Y. 2003) ......................... 9

*Schneider v. Amazon.com, Inc.*,
    31 P.3d 37 (Wash.App 2001) ...................................................................... 12

*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379, 1383, 1384 (5th Cir. 1996) ................................................. 18

*Smith v. Intercosmos Media Group, Inc.*,
    U.S.Dist.LEXIS 24251 (E.D.La. 2002) ...................................................... 13

*Wojnarowicz v. American Family Association*,
    745 F.Supp 130, 141 (S.D.N.Y. 1990) ....................................................... 19

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ........................... 5

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ....................................................................... 7

*Zeran v. America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ................................................................. 12, 14

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D.Pa. 1997) .............................................................. 8

**Statutes**

15 U.S.C. §1125 ................................................................................... 15, 16

47 U.S.C. §230 .......................................................................................... 12

47 U.S.C.A. §230 ...................................................................................... 12

25

# See Case File For Exhibits