

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **GEORGE S. MAY**<br>**INTERNATIONAL COMPANY,** )<br> )<br> )<br>Plaintiff, )<br> )<br>-vs- )<br> )<br>**XCENTRIC VENTURES, LLC,** )<br>**RIP-OFF REPORT.COM** )<br>**BADBUSINESSBUREAU.COM,** )<br>**ED MAGEDSON, VARIOUS** )<br>**JOHN DOES, JANE DOES AND** )<br>**ABC COMPANIES,** )<br> )<br>Defendants. ) | Case Number 04-C-6018<br><br>Judge Norgle |

**DOCKETED**

OCT 1 2 2004

## PLAINTIFF GEORGE S. MAY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION



RECEIVED FOR DOCKETING
04 OCT -6  PM 4: 58

CLERK
U.S. DISTRICT COURT

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 East Monroe, Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312) 269-8869
Firm No. 90747

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ......................................................................................................... 1

JURISDICTION AND VENUE ........................................................................................... 6

I.      This Court Has Personal Jurisdiction Over the Defendants .............................. 6

II.     This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims ............... 11

III.    This Court Has "Jurisprudential Jurisdiction". ............................................... 12

ARGUMENT ............................................................................................................... 12

I.      Defendants' Actions Entitle GSMIC to a Preliminary Injunction. ................... 12

        A.      GSMIC is Likely to Succeed on the Merits. ......................................... 13

        B.      GSMIC Is Irreparably Harmed by the Conduct of Defendants For Which
                GSMIC Has No Adequate Legal Remedy. ............................................. 17

        C.      GSMIC's Injury Outweighs the Threatened Harm that Preliminary
                Injunction May Inflict on Defendants. ................................................... 18

        D.      Issuing a Preliminary Injunction Against Defendants Serves the Public
                Interest ................................................................................................... 18

        E.      This Court has the Ability to Tailor an Injunction to Meet the Violations
                and Serve the Public Interest .................................................................. 19

II.     Plaintiff's Claims Are Not Barred by the Communications Decency Act. ....... 19

III.    Entry of a Preliminary Injunction is Not A Prior Restraint Under the First
        Amendment. ................................................................................................... 22

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott,*
    971 F.2d at 16 ..........................................................................................................17

*Blumenthal v. Drudge,*
    992 F.Supp. 44, 57 (D. D.C. 1998) ........................................................................11

992 F. Supp. 44 (D. D.C. 1998) ..................................................................................11

*Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago,*
    856 F. Supp. 472 (N.D. Ill. 1994) ..........................................................................12

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................................10

CDA. *MCW, Inc.*, No. 3:02-C 2004 U.S. Dist. LEXIS 6678 ...............................20, 21

*Calder v. Jones,*
    465 U.S. 783 (1984) ..................................................................................................7

*Cohen v. Charell,*
    No. 82-C-4408, 1983 U.S. Dist. LEXIS 14656 (N.D. Ill. Aug. 12, 1983) ...........7

*Does v. Franco Productions,*
    No. 99-C-7885, 2000 U.S. Dist. LEXIS 8645 (N.D. Ill. June 22, 2000)...........22

*Euromarket Designs, Inc. v. Crate & Barrel Limited,*
    96 F. Supp. 2d 824 (N.D. Ill. 2000) ............................................6, 8, 9, 10, 11

*Genderm Corp. v. Biozone Laboratories,*
    No. 92-C-2533, 1992 U.S. Dist. LEXIS 13521 (N.D. Ill. Sept. 3, 1992) ..........13

*Grove Fresh Distributors, Inc. v. New England Apple Products Co., Inc.,*
    969 F.2d 552 (7th Cir. 1992) ................................................................................13

*Gucci America, Inc. v. Hall & Associate,*
    135 F. Supp. 2d 409 (S.D.N.Y. 2001)...................................................................22

*Hy Cite Corp. v. Badbusinessbureau.com, LLC,*
    297 F. Supp. 2d 1154 (W.D. Wis. 2004) ....................................4, 6, 9, 10, 16

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club L.P.,*
    34 F.3d 410 (7th Cir. 1994) ....................................................................................8

*Interstellar Starship Serv. V. Epix*,
    304 F.3d 396 (9th Cir. 2002) ...........................................................12

*J.K. Harris & Co. v. Kassel*,
    253 F. Supp. 2d 1120 (N.D. Cal. 2003) ....................................22, 23

*Keller Medical Specialties Products v. Armstrong Medical Industries, Inc.*,
    842 F. Supp. 1086 (N.D. Ill. 1994) ...................................................13

*Kraft Food Holdings, Inc. v. Helm*,
    205 F. Supp. 2d 942 (N.D. Ill. 2002) ........................................22, 23

*MCW, Inc. v.Badbusinessbureau.com*, No. 3:02-C 2004 U.S. Dist. LEXIS 6678.................19, 20

*McMaster-Carr Supply Co. v. Supply Depot, Inc.*,
    No. 98-C-1903, 1999 U.S. Dist. LEXIS 9559 (N.D. Ill. June 16, 1999) ..........................10

*Morrison, M.D. v. American Online, Inc.*,
    153 F. Supp. 2d 930 (N.D. Ind. 2001) ..............................................21

*Playboy v. Netscape*,
    354 F.3d 1020 (9th Cir. 2001) ..........................................................12

*Promatek Industrial Ltd. V. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ............................................................14

*Roland Machinery Co. v. Dresser Industrial Inc.*,
    749 F.2d 380 (7th Cir. 1985) ............................................................12

*Telewizja Polska U.S.A., Inc. v. Echostar Satellite Corp.*,
    No. 02-C-3293, 2004 U.S. Dist. LEXIS 17936 (N.D. Ill. Sept. 3, 2004) ...................14, 15

*U.S. v. Kaun*,
    827 F.2d 1144 (7th Cir. 1987) ..................................................22, 23

*U.S. v. Raymond*,
    228 F.3d 804 (7th Cir. 2000) ............................................................23

*YourNetDating, LLC, v. Mitchell*,
    88 F. Supp. 2d 870 (N.D. Ill. 2000) ................................................18

**STATE CASES**

*Affrunti v. Village Ford Sales, Inc.*,
    232 Ill. App. 3d 704, 597 N.E.2d 1242 (Ill. App. Ct. 1992)..............................16

*Jones v. Calder,*
    187 Cal. Rptr. 825 (Cal. Ct. App. 1982) ..........................................................7

*Krasinski v. United Parcel Service, Inc.,*
    124 Ill. 2d 483, 530 N.E.2d 468 (Ill. 1988) ....................................................14

## FEDERAL STATUTES

15 U.S.C. § 1125(a) ..................................................................................................14

15 U.S.C. § 1125(c) ..................................................................................................14

47 U.S.C.S. § 230(c)(1); ...........................................................................................19

47 U.S.C.S. § 230(e)(2) .............................................................................................22

47 U.S.C.S. § 230(f)(2) .............................................................................................19

47 U.S.C.S. § 230(f)(3) .............................................................................................20

28 U.S.C. § 1367(a) ..................................................................................................11

## STATE STATUTES

815 ILCS 505/10b(3) .................................................................................................16

815 ILCS 505/2 (LEXIS 2004) ............................................................................15, 16

815 ILCS 510/2(a)(8) .................................................................................................17

735 ILCS 5/2-209(a)(2) ...............................................................................................6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number 04-C-6018 |
| -vs- | ) | |
| | ) | Judge Norgle |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF GEORGE S. MAY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Now Comes Plaintiff, George S. May International Company ("GSMIC"), by its attorneys Seyfarth Shaw LLP, and states in support of its Motion for a Preliminary Injunction against Defendants XCentric Ventures, LLC; Rip-Off Report.com, Badbusinessbureau.com, Ed Magedson, Various John Does, Jane Does, and ABC Companies (hereinafter "Defendants") as follows:

## INTRODUCTION

On September 24, 2004, this Court granted GSMIC a temporary restraining order which required Defendants to remove all false and defamatory postings from an Internet website located at www.badbusinessbureau.com and www.ripoffreport.com, including, but not limited to the posting entitled "Owner of George S. May Company child pornography and other heinous (sia.) crimes." This posting is just one of many that contains false and misleading information which is particularly damaging to Plaintiff GSMIC. See Declaration of Charles Black in Support

of Motion for a Preliminary Injunction ("Black P.I. Dec."). Despite language in this posting which stated "[t]his is so serious, I will check all the facts I have before posting," the particular posting went on to accuse employees and officers of encouraging drug use among high school children to get them to engage in illicit sexual acts, and also accuses employees and officers of using drugs and watching pornography at work-related meetings. *Id.* It also accused the founder of GSMIC of having "a background of child pornography and other heinous crimes." *Id.* This posting is one of others directed against GSMIC on Defendants' internet websites. Among other postings include one entitled "George S. May International deceptive company, false promises, raped & pillaged us, ripoff They will find a way to take your money and leave you feeling robbed and wondering what just happened!" and another entitled "George S. May ripoff 'The Prostitute of the Consulting Business' A complete, total, incredibly horrible, lying, deceitful company Park Ridge Illinois..." Declaration of Rachel Kindstrand, ("Kindstrand Dec." Exh. A; Black P.I. Dec. Exh. C).

Defendants ensure that these false and defamatory postings are accessed by as many web users as possible through a process known as metatagging. This involves using the George S. May trademark in text on Defendants' sites in a manner that Internet search engines will read. In this way Defendants attempt to maximize the number of Internet users who get led to Defendants' sites and read the false and defamatory information. Black P.I. Dec. ¶6. Many of the potential employees who mention Defendants to George S. May as a reason for not taking a job with George S. May indicate that they were led to Defendants' sites through Internet searches for George S. May. Black P. I. Dec. ¶ 6(c). Thus, the metatagging is a practice that causes much greater harm than the mere postings. Behind these postings are Defendants, which include owners, operators, founders, and the Editor-in-Chief of internet websites

2

www.badbusinessbureau.com and www.ripoffreport.com, self-proclaimed "consumer advocacy" websites. According to one of the Defendants, the websites' founder and Editor In Chief Ed Magedson ("Magedson"), he started the websites because "I became infuriated as I witnessed these powerful people and groups engaging in despicable practices with impunity." Kindstrand Dec. Exh. B. Magedson states that he is a "noted celebrity and shrewd advocate for the general public" and that he is "[a]lso a popular media celebrity due to the nature of what he does and his appealingly eccentric personality." Kindstrand Dec. Exh B. He also indicates that he has worked with or served "the FBI, FTC, Justice Department, Homeland Security, U.S. Postal Inspectors, various Local and State Police Agencies, and over 15 Attorneys General nationwide," and that he "has done hundreds of on camera interviews for almost every major network and scores of local news shows," including "48 Hours, Current Affair, Dateline, Inside Edition, and MSNBC." Kindstrand Dec., Exh. B.     Others assert that he is a fugitive. Kindstrand Dec., Exh C.

       As part of their "consumer advocacy" mission, Defendants post complaints on the websites by individuals against anyone they desire on websites, ranging from businesses such as GSMIC, to "dead beat Dads & Moms," to "corrupt government employees & politicians." Kindstrand Dec., Exh D. Mr. Magedson, in his affidavit boasts that Rip-Off Report is the most popular consumer site in the world. Commercially, Defendants advertise and sell, for $21.95, the "Do-it-Yourself Guide: How to get Rip-off Revenge ™and your money back too.. " which purportedly "provides you with the tools you need to successfully and quickly resolve most consumer complaints." Kindstrand Dec. Exh. E. In addition to selling this guide, Defendants solicit non-tax deductible "donations" and recruit volunteers to report on businesses. Kindstrand Dec. Exh. F & G. Moreover, once a report is posted it may not be removed, even at the request

3

of the individual who filed the report.  Kindstrand Dec. Exh. H.  Defendants do appear willing, however, to accept a significant fee from companies who request that the reports be removed. *Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 297 F.Supp.2d 1154, 1156 (W.D. Wis. 2004). Companies and individuals are also invited to post "rebuttals" to complaints.  Kindstrand Dec. Exh. H.  However, Defendants have permitted false rebuttals to be posted, masquerading or "spoofing" the identity of George S. May's President.  Black P.I. Dec., ¶5 and Exh. D.  Also, there is no assurance that George S. May  Defendants also advise individuals that they will put them in contact with lawyers who are considering filing a lawsuit to which they may want to become a party, and that Defendants will put individuals who file a report in contact with the media if the report is of interest.   In addition, Defendant Ed Magedson stands to gain professionally and financially from these postings by garnering media attention, and by essentially forcing companies to pay him for removing complaints, no matter how false the statements.

As incentive to file a report, Defendants inform individuals that reports they file "will be discovered by millions of consumers!" and that "[s]earch engines will automatically discover most Reports."  Kindstrand Dec. Exh. D.  Additionally, Defendants state that "[i]f you are an employee or ex-employee with privileged information about the company or individual reported, and you can provide "insider information"... This sort of information is often very helpful to an investigation and always needed."  *Id.*  Moreover, Defendants state that posting a report "can serve as a very valuable negotiating tool" and while the filer "MUST NOT call them threatening to file a report if they do not comply with your demands. this may be construed as Blackmail!," the filer is instructed to file a report, fax the offending company a copy, and "offer[] them a chance to rectify the wrong that they did to you.  Explain that then, and only then, you will

4

UPDATE your Rip-off Report™ in a positive way; if deserved." *Id.* As noted above, once a report is posted, Defendants will never remove it from the website, even if the individual who created the report requests that it be removed. Kindstrand Dec. Exh. H.

Plaintiff GSMIC has been the target of several postings on Defendants' websites. GSMIC is a one of the world's oldest and largest management consulting firms, and has been in business since 1925. Black Decl. ¶ 2. GSMIC's business is, essentially, its people; its team of personnel advises businesses on ways to effectively and efficiently manage their businesses by reducing waste, streamlining operations, increasing profits, and improving responsiveness to the market. Comp. at ¶ 10. Because it is a service-based business as opposed to—for example—a retail sales store, GSMIC relies heavily on the good reputation of its business and its sales force to stay competitive. Defendants' false and misleading reports are, therefore, particularly damaging to GSMIC's business. GSMIC has asked Defendants to remove false and deceptively misleading information from their websites as recently as September 2003. Black Decl. ¶ 4. Although GSMIC sent letters to the Defendants requesting that such postings be removed from the websites, Defendants did not respond or otherwise remove the postings. Black Decl. ¶ 4. As noted by Charles Black, the vice-president of operations, GSMIC has and will continue to suffer harm to its business, as potential customers are being misled and confused as to the quality of GSMIC's services, it ethics, and its association with other consulting firms who may have engaged in unlawful activities. Black Decl. ¶ 7(a), Black P.I. Dec. ¶ 6. Additionally, the goodwill and reputation of GSMIC is being damaged. Black. Decl. ¶ 7(b), Black P.I. Dec. 6. If the Defendants are not effectively enjoined from making false and deceptive statements about GSMIC, its business, management, and employees, GSMIC will be irreparably harmed.

## JURISDICTION AND VENUE

### I.    This Court Has Personal Jurisdiction Over the Defendants

In a case involving a federal question, a federal court may exercise personal jurisdiction over Defendants if consistent with federal due process, and if the Defendants can properly be served. *Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F. Supp. 2d 824, 833-34 (N.D. Ill. 2000).[1]    Under Federal Rule of Civil Procedure 4(k), service may establish personal jurisdiction if service is provide under a United States statute, or if the Defendants "could be subjected to the jurisdiction of a court in the forum state through that state's long-arm statute." *Id.* at 834. GSMIC asserts that the Defendants are subject to this Court's jurisdiction under the Illinois long-are statute because 1) Defendants committed a tortious act within Illinois, and 2) Defendants may be subject to this Court's jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(a)(2), (c).

Due process is satisfied if the Defendants 1) have sufficient minimum contacts with Illinois by either performing a transaction within the state or performing an act in which they purposefully avail themselves of the privilege of conducting activities in Illinois such that they may take advantage of the benefits and protections under Illinois state law; 2) the asserted claims arise out of or result from the Defendants' activities related to Illinois; and 3) jurisdiction is reasonable. *Euromarket*, 96 F.Supp. 2d at 834.

---

[1]    Although Defendants have been successful in dismissing a claim brought in the Western District of Wisconsin based on a lack of jurisdiction, GSMIC respectfully argues that the holding of that case should be entitled to little weight by this Court.    *See HyCite Corp. v. Badbusinessbureau.com, LLC*, 297 F.Supp.2d 1154 (W.D. Wis. 2004).    There is certainly precedent contrary to *HyCite's* holding in this Circuit, and the facts of the instant case appear to more sufficiently support personal jurisdiction in this case.

Similar to the defendants in *Euromarket*, this Court's assertion of jurisdiction is reasonable under the "effects doctrine" and under case law discussing jurisdiction over Internet websites. First, under the "effects test" jurisdiction may be had "when 1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) cause harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered." *Euromarket*, 96 F.Supp. at 835, citing *Calder v. Jones*, 465 U.S. 783 (1984).

In this case, Defendants' tortious conduct directly targeted GSMIC in Illinois. Nearly every complaint filed on Defendants' websites against GSMIC contains a title, which clearly indicates to the reader in large, bold font, that GSMIC is located in Park Ridge, Illinois. The false and defamatory statements in the posting were directed to GSMIC's executives and employees located in Illinois. Like the plaintiff in *Calder*, the statements in the posting "impugned the professionalism" of a company and its employees which were based in Illinois, and "the brunt of the harm" to GSMIC's professional reputation is suffered in Illinois. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). Moreover, Defendants, and in particular Magedson, purport to be a "worldwide consumer reporting Website & Publication." Kindstrand Dec. Exh D. According to the websites, once a report is filed, it "will be discovered by millions of consumers. Search engines will automatically discover most Reports." *Id*. Defendants' websites also advise that a report may garner attention from national and local media, and could also lead to the organization of class action lawsuits or prosecution by the authorities. *Id*. Clearly, Defendants are aware of the wide-reaching effect of the statements made on the websites. Moreover, "'[t]he general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation.'" *Cohen v. Charell*, No. 82-C-4408, 1983 U.S. Dist. LEXIS 14656, at *12 (N.D. Ill. Aug. 12, 1983), citing *Jones v. Calder*, 187 Cal. Rptr. 825, 829 (Cal. Ct. App.

7

1982). Not only was Defendants' conduct directed towards GSMIC in Illinois, but Defendants also entered into Illinois by the publication and circulation of the offending statements via the websites. *See, e.g., Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club L.P.*, 34 F.3d 410, 412 (7th Cir. 1994) (noting that broadcasts constituted entry into the forum state establishing personal jurisdiction in a trademark infringement action). Since the main purpose of the website is to expose companies which purportedly rip-off consumers and to achieve justice for those who are harmed, the Defendants actions are clearly designed to effect these businesses where they operate, in this case, Illinois. Kindstrand Dec. Exh D.

Second, this Court may exercise jurisdiction over Defendants on the basis of Defendants' Internet websites. Generally, for the purposes of determining jurisdiction over Internet websites, the websites are placed into one of three categories: 1) websites in which Defendants clearly transact business over the Internet; 2) websites which are "interactive," in which information is exchanged between the user and the host; and 3) passive websites in which do "little more than make information available to those who are interested." *Euromarket*, 96 F.Supp.2d at 837-38. Personal jurisdiction may lie if the website falls into the first two categories, but not the third category. Id.

Defendants' websites fall into the first two categories. Via the websites, Defendants advertise and sell "Do-it-Yourself Guide: How to get Rip-off Revenge ™and your money back too..." for $21.95. Kindstrand Dec. Exh E. Defendants solicit non-tax deductible donations to support the websites, and seek volunteer "reporters" who may eventually be considered for compensated positions with the websites. Kindstrand Dec. Exh F & G. As such, there is an overt commercial purpose to this website in which Defendants transact business with their readership. Defendants advise individuals that post complaints that they may garner national and

local media attention, and that they may be contacted if a lawsuit is filed against the offending company.   Kindstrand Dec. Exh D.   Defendants also solicit "privileged information" from employees and ex-employees regarding businesses or individuals reported on the websites. Kindstrand Dec. Exh D.

Additionally, the websites are clearly interactive.   Individuals are invited to post complaints against anyone they chose, ranging from businesses such as GSMIC, to individuals such as "dead beat Dads & Moms." Kindstrand Dec. Exh D.  In response, the websites' founder and "Editor In Chief" Ed Magedson reviews the postings and advises posters that he will not accept "trivial comments" but only "[s]olid, productive criticism," and that "your opinions and other Consumers Comments will be treated like letters to the Editor (emphasis in original), and if accepted by the badbusinessbureau.com Review Board, and they will be posted within 72 hours." Kindstrand Dec. Exh H.  Once a complaint is posted, however, Defendants refuse to remove the complaint even at the request of the individual who posted the complaint, only "updated."  *Id.* Furthermore, companies such as GSMIC, who are aggrieved by these comments, can only have them redressed by enrolling in their advocacy program for a significant fee. *HyCite Corp.*, 297 F.Supp.2d at 1156.

Moreover, the websites also serve a more subtle commercial purpose for Defendant Ed Magedson.  Magedson, individually, has much to gain by encouraging individuals to post complaints on the websites.  A self-styled "consumer advocate,"  he describes himself as "a popular media celebrity due to the nature of what he does," and indicates that he "has done hundreds of on camera interviews for almost every major network and scores of local news shows." Kindstrand Dec. Exh B.  Magedson also claims that "[h]is groundbreaking cases and consistent court room victories, although draining on his business, have set legal precedence and

become quite well documented in the legal classroom, discussion boards and publications." *Id.*
It logically follows that the larger the number of postings, and the more harmful the postings are
to the companies at issue, the more Magedson stands to gain, both in terms of readership and his
popularity as a "consumer advocate" and "media celebrity." Financially, the worse the postings,
the more likely companies will be willing to enroll in the advocacy program for a significant fee.
*HyCite Corp.*, 297 F.Supp.2d at 1156.

        Finally, personal jurisdiction may be had over the Defendants because this action arises
out of Defendants' contacts with Illinois, and the exercise of jurisdiction is reasonable.
*Euromarket*, 96 F.Supp.2d at 839-841. First, as discussed above, Defendants' websites are
designed to reach a wide-ranging audience and to peddle their advocacy guide, including
consumers located in Illinois. By posting complaints about Illinois companies and soliciting
rebuttals from those companies, and by advertising and selling their "revenge guide" and
soliciting donations via their websites in Illinois, Defendants' purposefully injected themselves
into Illinois. Second, Defendants' metatag the "George S. May" trademark knowing that it will
have impact on searches performed in Illinois. Third, Defendants solicit donations from Illinois
residents. Thus, jurisdiction is reasonable over these Defendants. In considering whether
jurisdiction is reasonable, courts consider:

> [T]he burden on the defendant, the forum State's interest in adjudicating the
> dispute, the plaintiff's interest in obtaining convenient and effective relief, the
> interstate judicial system's interest in obtaining the most efficient resolution of
> controversies, and the shared interest of the several States in further fundamental
> substantive social policies.

*McMaster-Carr Supply Co. v. Supply Depot, Inc.*, No. 98-C-1903, 1999 U.S. Dist. LEXIS 9559,
at *15 (N.D. Ill. June 16, 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

        In this case, jurisdiction is reasonable over Defendants. By creating and maintaining a
website in which Defendants both transact business and interact with various individuals who

post complaints, conduct searches and make donations, Defendants have significant contacts with other jurisdictions. Note Defendants' declaration. It does not say that there have been no donations or purchases from Illinois! Given the nature of the material posted on the websites, the intent to damage an Illinois company, as well as Defendants' commercial advertising and sale of the "revenge guide" and refusal to remove the postings against GSMIC without payment of a significant fee, Defendants could reasonably foresee being haled into an Illinois court. Illinois has a significant interest in adjudicating this dispute, as the defamatory statements have a direct effect GSMIC's operations in Illinois. Like the defendant in this case Defendants "knew that 'the primary and most devastating effects of [their statements] would be felt'" in Illinois, and as a result Defendants "should have had no illusions that [they] were immune from suit here." *Blumenthal v. Drudge*, 992 F.Supp. 44, 57 (D. D.C. 1998). Finally, since Defendants continue to seek national media attention based on the websites and their mission of "consumer advocacy," Defendants cannot deny that other jurisdictions, particularly Illinois, might have an interest in litigating a dispute, certainly when the postings harm GSMIC and its employees where they live and work.[2]

## II.    This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims

Subject matter jurisdiction is appropriate because GSMIC is asserting a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Since the state claims asserted arise from a common nucleus of operative facts, to wit, the postings, and Defendants' metatagging through use of the GEORGE S. MAY trademark, this Court should exercise supplemental jurisdiction over Defendants pursuant to 28 U.S.C. § 1367(a). *Euromarket*, 96 F.Supp.2d 824, 841-42 (N.D.

---

[2]    Although Defendants have noted that their websites contain a forum selection clause when posting a rebuttal, namely the State of Arizona, Plaintiff asserts that it is not bound by that forum selection clause. The employee was not authorized to bind the company, and the right to rebut falsehoods should not be tied to waiving jurisdiction.

Ill. 2000). In addition to federal question jurisdiction, since Defendants are all based in Arizona, there is diversity jurisdiction as well.

## III.    This Court Has "Jurisprudential Jurisdiction".

Defendants argue that this Court should not exercise jurisdiction because Defendants do not compete with GSMIC. This is ridiculous. In cases involving metatagging and Internet mischief, courts have found that the parties do not need to be competitors. *Playboy v. Netscape*, 354 F.3d 1020, 1023(9th Cir. 2001), *Interstellar Starship Serv. V. Epix*, 304 F.3d 396 (9th Cir. 2002). Defendants' metatagging actively encourages Internet searchers to locate false and deceptive information about George S. May through the improper use of the George S. May trademark.

## ARGUMENT

## I.    Defendants' Actions Entitle GSMIC to a Preliminary Injunction.

A preliminary injunction may be granted if GSMIC can show that 1) GSMIC lacks an adequate remedy at law, 2) it will suffer irreparable harm, 3) the balance of harms weighs in GSMIC's favor, 4) the public interest is served by granting the motion, and 5) GSMIC has a likelihood of success on the merits. *Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*, 856 F.Supp. 472, 474 (N.D. Ill. 1994). GSMIC will might the "likelihood of success" prong of the test if it can show "a better than negligible likelihood of succeeding on the merits." *Id.* Moreover, under the "sliding scale" approach used in the Seventh Circuit, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Machinery Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 387 (7th Cir. 1985). In this case, GSMIC can show a "better than negligible likelihood" of succeeding on its claims, but in any event, as demonstrated by the

Black P.I. Dec., the irreparable harm suffered by GSMIC is so great that it warrants this Court's entry of a preliminary injunction.

## A.    GSMIC is Likely to Succeed on the Merits.

With respect to GSMIC's claim under the Lanham Act, GSMIC must show that Defendants (1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the audience, (3) on a subject material to the decision to purchase goods, (4) touting goods entering interstate commerce, and (5) that results in actual or probably injury to the plaintiff. *Grove Fresh Distributors, Inc. v. New England Apple Products Co., Inc.*, 969 F.2d 552, 557 (7th Cir. 1992); *Keller Medical Specialties Products v. Armstrong Medical Industries, Inc.*, 842 F. Supp. 1086, 1093 (N.D. Ill. 1994). GSMIC does not have to show "that customers were actually confused or deceived; where a claim is false on its face, the court may grant injunctive relief on the basis of its own conclusion that the challenged representations have the 'tendency to deceive.'" *Genderm Corp. v Biozone Laboratories*, No. 92-C-2533, 1992 U.S. Dist. LEXIS 13521, at *38 (N.D. Ill. Sept. 3, 1992).

In this case, Defendants' statements were false; the statements actually have deceived customers, employees, and potential customers and employees of GSMIC; the statements are material to the decision whether to do business with GSMIC; the services described are entering interstate commerce; and the statements have caused actual harm to GSMIC. Upon information and belief, the posting originally enjoined by this Court was posted by a competitor of GSMIC, and as such it is a competitive injury deserving of protection under the Lanham Act. Moroever, to the extent that Defendants' livelihood is supported by the posting of consumer complaints about GSMIC at GSMIC's expense, it is the sort of anti-competitive injury the Lanham Act is designed to redress. Defendants' websites clearly commercial character to them; Defendants sell the "revenge guide," solicit donations, request "Ripoff Report Reporters," and stand to profit

financially from the postings, both in terms of enhancing Magedson's reputations and from companies willing to pay the advocacy program's enrollment fee in order to redress the posted complaints. Defendants' activities thus fall within the purview of the Lanham Act. Moreover, to the extent that Defendants have incorporated "George S. May" into their metatags so that Internet surfers find false postings on Defendants' sites, Defendants may also be liable for trademark infringement and/or dilution under Section 43(c) of the Lanham Act. 15 U.S.C. § 1125(c). *See, e.g., Promatek Indus. Ltd. V. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002).

With respect to the harm suffered by Defendants' activities, GSMIC's vice president of operations Charles Black has noted that: existing customers have cancelled consulting agreements or refused to pay for services as a result of the postings, potential customers have refused to meet with or enter into contracts with GSMIC's employees based on Defendants' websites, and potential employees have declined interviews, employment and training based on Defendants' cites. Black Decl. ¶ 6(a)-(c), Black P.I. Dec. ¶ 6.

GSMIC's defamation or trade libel claim is also likely to succeed. Under Illinois law, GSMIC must show that Defendants (1) made a false statement concerning GSMIC, (2) that Defendants made an unprivileged communication of this statement to a third party, and (3) that GSMIC suffered damage as a result. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (Ill. 1988). "Under Illinois law, a statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Telewizja Polska U.S.A., Inc. v. Echostar Satellite Corp.*, No. 02-C-3293, 2004 U.S. Dist. LEXIS 17936, at *21 (N.D. Ill. Sept. 3, 2004). Moreover, a statement is defamatory per se when it is "obviously harmful." *Id.* at *23. When the plaintiff is a corporation, the defamatory statements "'must assail the corporation's

financial position or business methods, or accuse it of fraud or mismanagement.'" *Id.* at *24

(citations omitted).

Defendants' postings which alleged illegal and immoral behavior are defamatory per se.

Particularly in light of GSMIC's business, which is so heavily dependent on its people, these

statements are obviously harmful to GSMIC's business and reputation. As Charles E. Black

stated, and as this court has recognized, anyone reading these postings would be "utterly

shocked" as to their content. Black Decl. ¶ 6. Defendants obviously have at least a reckless

disregard for the truth as contained in the postings on their websites, and as far as they are

concerned, the more heinous the better—since it will encourage companies like George S. May

not "clean up" their image by paying Defendants to monitor their web site postings. Defendants

know full well that these false statements could harm GSMIC's business in that they actively

encourage—through metatagging and, potentially other means, Internet users to access this

unlawful content. Moreover, it is clear based on Charles E. Black's declaration that other

companies are deterred from doing business from GSMIC based on Defendants' postings, and

that the reputation of GSMIC has been lowered in the eyes of customers, employees, and Mr.

Black's family and friends.

Additionally, GSMIC will likely succeed against Defendants based on its claim that

Defendants committed unfair competition under 815 ILCS 505/2 (Lexis 2004). Under Illinois

law, "the use or employment of any deception fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, with the

intent that others rely upon the concealment, suppression or omission of such material fact, or the

use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act'...[815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared

unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (Lexis 2004). To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, "it need only be shown that the defendant is engaged in a trade or commerce and that he has committed unfair or deceptive acts or practices in the conduct of that trade or commerce." *Affrunti v. Village Ford Sales, Inc.*, 232 Ill. App. 3d 704, 707, 597 N.E.2d 1242, 1244 (Ill. App. Ct. 1992).

To reiterate, Defendants clearly have a commercial purpose beyond their purported "consumer advocacy" mission. Defendants solicit purchasers of their "revenge guide," solicit non-tax deductible donations, and seek to enhance their professional reputations in the news media and legal community based on the websites. Moreover, companies which seek to redress claims must enroll in Defendants' advocacy program at a significant cost. *Hy Cite*, 297 F.Supp.2d at 1156. Defendants use metatags which include the use of "George S. May" to attract users to their websites. It logically follows that the more extreme the postings, even if those postings are false, the more Defendants stand to gain either in terms of readership or "traffic" to the websites, or by way of companies which chose to enroll in Defendants' advocacy program to avoid continued loss of business. Moreover, upon information and belief, the false statements originally enjoined by this Court were posted by a competitor of GSMIC which seeks to do damage to GSMIC's business and professional reputation. Although the Illinois act does contain an exception to liability for publishers, Defendants may not avail themselves of this exception because they have used the websites to sell books, and thus, have "a direct financial interest in the sale or distribution of the advertised product or service." 815 ILCS 505/10b(3).

Finally, GSMIC will likely prevail on its claim under the Uniform Deceptive Trade Practices Act. Under Illinois law, the Defendants have committed deceptive trade practice by

disparaging "the goods, services, or business of another by false or misleading representation of fact" or by engaging "in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(8), (a)(12). The statements made on Defendants' Sites are clearly disparaging the GSMIC, its management, its business, and its employees. The effect of the statements is to discourage others from hiring GSMIC as management consultants because of alleged bad character on the part of GSMIC personnel. If not enjoined, the material on Defendants' websites will continue to cause GSMIC irreparable harm.

**B.    GSMIC Is Irreparably Harmed by the Conduct of Defendants For Which GSMIC Has No Adequate Legal Remedy.**

In determining whether GSMIC will suffer irreparable harm, this Court should begin with the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott*, 971 F.2d at 16. Moreover, where the Defendants "representations are literally false, irreparable injury is presumed." *Genderm*, No. 92-C-2533, 1992 U.S. Dist. LEXIS 13521, at *53.

Here, the statements posted by Defendants are literally false, and are having a negative effect on GSMIC that cannot be quantified. As Charles Black has indicated, existing customers have cancelled consulting agreements or refused to pay for services as a result of the postings, potential customers have refused to meet with or enter into contracts with GSMIC's employees based on Defendants' websites, and potential employees have declined interviews, employment and training based on Defendants' cites. Black P.I. Decl. ¶ 6(a)-(c) . There is also little doubt that, based on GSMIC's past experiences with Defendants, the Defendants will not stop absent this Court's intervention. The content of the Sites indicates that this is not an isolated incident, but that Defendants are engaged in an ongoing attempt to harm GSMIC's business through purported, but false "consumer advocacy."

C.    **GSMIC's Injury Outweighs the Threatened Harm that Preliminary Injunction May Inflict on Defendants.**

In this case, there simply is no harm to Defendants should this Court require them to remove the false statements from the websites, provide disclaimers, allow GSMIC to post free rebuttals, cease from using metatags containing "George S. May" or a similar variation. Unfortunately, there are numerous other criticisms leveled at GSMIC, among various other companies, which will adequately service Defendants' purported goal of "consumer advocacy." In sharp contrast, the statements attached to the Black Declaration and the Black P.I. Declaration will continue to cause harm to GSMIC if they are not removed from the Sites. Moreover, Defendants have no legitimate or honest business interest in disseminating this false information to potential GSMIC customers. *See, e.g., YourNetDating, LLC, v. Mitchell*, 88 F.Supp. 2d 870, 872 (N.D. Ill. 2000).

D.    **Issuing a Preliminary Injunction Against Defendants Serves the Public Interest.**

Like the plaintiffs in *YourNetDating*, the public will actually benefit from the granting of a TRO or Preliminary Injunction in this case. 88 F.Supp.2d at 872. While some readers of Defendants' postings may actually be interested in legitimate criticisms of the various companies, these literally false postings do nothing but deceive the public as to GSMIC's business and reputation. Moreover, there is a "strong public interest in preventing misleading advertisements" such as the comments here advising potential consumers not to do business with GSMIC for patently erroneous reasons. *See, e.g, Genderm Corp.*, No. 92-C-2533, 1992 U.S. Dist. LEXIS 13521, at *57. For these reasons, GSMIC's motion for a preliminary injunction should be granted.

18

**E.**    **This Court has the Ability to Tailor an Injunction to Meet the Violations and Serve the Public Interest.**

Because of the sheer volume of the postings on Defendants' sites and the mixture of falsehoods with opinions in some circumstances, which is reasonably calculated to protect GSMIC and any legitimate interest of the public is to enter and injunction which will do the following:

1.    Prevent Defendants from using the George S. May name and marks to metatag or otherwise encourage Internet surfers to come to Defendants sites;

2.    Prevent Defendants from posting content which is false and defamatory;

3.    Require Defendants to post a disclaimer connected to each posting associated with George S. May that advises Internet users that many postings on the site related to George S. May have been found to be false and/or defamatory; and

4.    Permits George S. May to post rebuttals to any posting concerning George S. May on Defendants' sites at no charge.

**II.**    **Plaintiff's Claims Are Not Barred by the Communications Decency Act.**

The federal Communications Decency Act ("CDA") cannot be used by Defendants to avoid liability. The CDA provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.S. § 230(c)(1); *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *21 (N.D. Texas Apr. 19, 2004). Interactive service provider is defined as "any information service, system, or access software provider that provides or enable computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.S. § 230(f)(2). Information content

provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C.S. § 230(f)(3). While interactive service providers are immunized under the CDA, information content providers are not immunized. It is important to note that interactive service providers may also be information content providers if they go "beyond the traditional publisher's role" by taking "an active role in creating or developing the content at issue." *MCW, Inc.*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *26.

At least one federal district court has determined that Defendants Magedson and Badbusinessbureau.com doe not qualify for immunity under the CDA. *MCW, Inc.*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *28-35. In *MCW, Inc.*, the plaintiff asserted that Defendants Magedson and the Badbusinessbureau.com ("BBB") were liable for "(1) unfair competition under the Lanham Act, (2) false advertising under the Lanham Act, " (3) unfair competition under common law, (4) business disparagement under common law, (5) trademark infringement under common law. *Id.* at *5-6. Essentially, the federal district court for the Northern District of Texas determined that Magedson and the BBB were information content providers under the Act and as such could be found liable.

In concluding that the Defendants were not entitled to immunity, the court noted that Defendants were responsible for creating titles such as "con artists," "scam," and "Ripoff," and that the reports were organized under headings which included "con artists," and "corrupt companies." *Id.* at *32n.10. Similarly, the complaints leveled against GSMIC are categorized by Defendants under "George S. May Corrupt Companies," among other categories. Moreover, the court noted that Defendants actively encouraged and solicited complaints from individuals for the website. *Id.* at *34. Specifically, the court stated "[t]he Defendants cannot disclaim

responsibility for disparaging material that they actively solicit.    Furthermore, actively encouraged and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role...the Defendants have not only incurred responsibility for the information developed and created by consumers, but have also gone beyond the publisher's role and developed some of the defamatory information posted on the websites." *Id.* at *35.    Similarly, Defendants encourage posters to provide "insider information" regarding the companies, specifically instructing posters to "[u]se any details such as names, times, places, tape recorded evidence (where legal), pictures, and witnesses statements, that will reveal the facts and support your Report. These items could be submitted to us to be made a part of your actual report..."  Kindstrand Dec. Exh. I.  Defendants also create metatags using "George S. May."  Metatags are a special type of code which are embedded within a website that are used to describe the website's contents.  In this case, Defendants have embedded "George S. May" within the code of the websites so that individuals who run an Internet search using the keyword "George S. May" will locate www.ripoffreport.com as one of their search results.  Defendants claim that ripoff reports will be discovered by search engines once a report is posted.

Finally, cases which have held interactive service providers immune under the CDA are distinguishable from this case.  Defendants do not operate in the same manner as such providers as America Online (AOL).  *Cf., Morrison, M.D. v. American Online, Inc.*, 153 F.Supp.2d 930 (N.D. Ind. 2001).  Defendants actively solicit negative comments about companies and individuals—hence the titles of Defendants' websites "Ripoff Report.com"—and even encourage volunteers to become "Rip Off Report Reporters." Kindstrand Dec. Exh. G.  Additionally, there is some case law which suggests that when injunctive relief is sought, even an interactive service

provider is not entitled to immunity under the CDA. *See, e.g., Does v. Franco Productions*, No. 99-C-7885, 2000 U.S. Dist. LEXIS 8645, at *16 (N.D. Ill. June 22, 2000) (noting that "[p]laintiffs' claims for injunctive relief, although not precluded by the CDA, fail to state a claim...[p]laintiffs fail to elucidate what activities of [Defendants] they seek to enjoin"). Moreover, to the extent that GSMIC relies on the Lanham Act for its claims against Defendants, the CDA specifically provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C.S. § 230(e)(2). As a result, GSMIC's claims are not precluded by the CDA. *See, e.g., Gucci America, Inc. v. Hall & Assoc.*, 135 F.Supp.2d 409 (S.D.N.Y. 2001).

## III. Entry of a Preliminary Injunction is Not A Prior Restraint Under the First Amendment.

An injunction may be granted, even in the presence of First Amendment issues, if it is "'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 945 (N.D. Ill. 2002). In this case, GSMIC is not seeking to entirely foreclose opinions posted on Defendants' websites, rather GSMIC is seeking to foreclose the posting of false and defamatory information which is so harmful to GSMIC's reputation and goodwill.

False or misleading commercial speech may be prohibited in its entirety. *J.K. Harris & Co. v. Kassel*, 253 F.Supp.2d 1120, 1128 (N.D. Cal. 2003). Commercial speech, which has been defined as "'expression related solely to the economic interest of the speaker and its evidence,'" or "'speech that proposes a business transaction'" may be enjoined by this Court if it is "false, deceptive, or misleading." *U.S. v. Kaun*, 827 F.2d 1144, 1152 (7th Cir. 1987). Similar to the tax protester who was enjoined from marketing and selling materials that were based on false and misleading theories under the guise of tax advise, Defendants should be restrained from

encouraging and soliciting consumers to post false complaints about companies under the guise of "consumer advocacy" and as a means to serve their own financial ends (i.e.: selling the "revenge guide") and reputation (as a media and legal celebrity). *Id.* at 1145-46. Moreover, even if the false commercial speech on Defendants' websites can be considered "intertwined" with political or social speech, enjoining Defendants from posting false and defamatory statements about GSMIC does in no way limit Defendants from continuing to engage in commentary or other forms of protected free speech. *See, e.g., Kraft*, 205 F.Supp.2d at 955. Furthermore, statements made by individual posters such as the ones at issue which are decidedly false and which Defendants cannot dispute are false can clearly be enjoined under the Lanham Act. *J.K. Harris*, 253 F.Supp. 2d at 1130. Finally, since GSMIC is asking for injunctive relief that is tailored to avoid First Amendment concerns, this Court is not precluded from enjoining Defendants. *U.S. v. Raymond*, 228 F.3d 804, 815-816 (7th Cir. 2000).

## CONCLUSION

Defendants purport to be engaged in consumer advocacy, but consumers have nothing to gain from the false and deceptive postings contained on the websites. These statements are not protected by the First Amendment, Defendants may not claim immunity under the Communications Decency Act, and GSMIC continues to suffer irreparable harm because of Defendants postings. This irreparable harm is not only in the form of lost customers and employees and potential customers and employees, but also in the form of company morale and professional reputation. For the foregoing reasons, Plaintiff respectfully requests that its Motion

for a Preliminary Injunction be Granted. GSMIC has proposed a narrowly tailored injunction which protects GSMIC without restraining communication on the Sites.

**DATED: October 6, 2004**

Respectfully submitted,

GEORGE S. MAY INTERNATIONAL COMPANY

By:
One of Its Attorneys

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 East Monroe, Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312) 269-8869
Firm No. 90747

# See Case File for Exhibits