UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY,<br><br>Plaintiff,<br><br>-vs-<br><br>XCENTRIC VENTURES, LLC,<br>RIP-OFF REPORT.COM<br>BADBUSINESSBUREAU.COM,<br>ED MAGEDSON, VARIOUS<br>JOHN DOES, JANE DOES AND<br>ABC COMPANIES,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case Number: 04 C 6018<br>)<br>) Judge Norgle<br>)<br>)<br>)<br>)<br>)<br>)<br>) |



FILED NOV 5 2004 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

DOCKETED NOV 08 2004

## NOTICE OF FILING

To: James K. Borcia, Esq.
David O. Yuen, Esq.
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6308

PLEASE TAKE NOTICE that on November 5, 2004, the undersigned filed with the Clerk of the United States Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, **GEORGE S. MAY INTERNATIONAL COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** and **SECOND DECLARATION OF RACHEL M. KINDSTRAND**, a true and correct copy of which is attached and hereby served upon you.

Dated: November 5, 2004

/s/ Rachel M. Kindstrand
Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
Seyfarth Shaw LLP
55 East Monroe, Suite 4200
Chicago, IL 60603
(312) 346-8000
Attorneys for Plaintiff
GEORGE S. MAY INTERNATIONAL COMPANY

CH1 10812971.1 / 18735-000085

## CERTIFICATE OF SERVICE

I, Hilda Vickers, a non-attorney hereby certify that on the date indicated below, a copy of the foregoing **GEORGE S. MAY INTERNATIONAL COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION and SECOND DECLARATION OF RACHEL M. KINDSTRAND**, were served on the following Defendants by U.S. Mail.

> James K. Borcia, Esq.
> David O. Yuen, Esq.
> Tressler, Soderstrom, Maloney & Priess
> 233 South Wacker Drive, 22nd Floor
> Chicago, Illinois 60606-6308

on the 5th day of November, 2004.

*/s/ Hilda Vickers*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) |
| Plaintiff, | ) |
| | ) Case Number 04-C-6018 |
| -vs- | ) |
| | ) Judge Norgle |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**GEORGE S. MAY INTERNATIONAL COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

GSMIC filed this lawsuit to stop Defendants from authoring, editing, posting and using the GEORGE S. MAY mark to promote a variety of false and deceptively misleading reports about GSMIC, its business, management, and employees. These included:

- Statements that GSMIC routinely engaged in illegal acts of child pornography, drug dealing and fraud;

- Statements that were falsely attributed to the President of GSMIC and its employees—this is called "spoofing" on the Internet;

- Statements about GSMIC from a formerly dissatisfied customer, who requested removal of the posting because GSMIC "made good" on her complaint.

The named Defendants promote these postings by using the GEORGE S. MAY trademark as a metatag designed to lead Internet users searching for information about GSMIC to reach Defendants' false postings. The named Defendants are supporting the efforts of competitors to damage GSMIC's reputation among customers and prospective employees.

GSMIC requested that the named Defendants remove these postings, but Defendants refused, thus necessitating this action. This Court subsequently issued a TRO to which Defendants have failed to fully comply[1]. Moreover, although the named Defendants have removed one egregious posting, which states that GSMIC, its management and employees engage in child pornography and drug use, the named Defendants' claim that GSMIC should not be granted a preliminary injunction because "the harm to George S. May is minimal." See Defendants' Response to Motion For a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction, at 8 ("Defs. Mem."). Initially, GSMIC notes that no Doe Defendant has responded to the motion for a preliminary injunction. Only the named Defendants have the information necessary to contact these Defendants. GSMIC asks that the preliminary injunction be granted as to these Defendants by default.

The named Defendants exhibit an amazingly flippant attitude towards these postings despite containing allegations of child pornography and drug dealing. Charles Black, GSMIC's Vice President of Operations has testified that this posting has been the source of personal as well as corporate harm. Black Declaration in Support of Preliminary Injunction ("2nd Black Decl.") at ¶ 6d. The many false, deceptive and defamatory postings contained on named Defendants' websites, and their practice of metatagging GSMIC's trademark is currently causing irreparable damage to GSMIC in that, among other things, it is losing customers and prospective employees directly related to the postings. 2nd Black Decl. at ¶ 6a-d.

In sum, the Doe Defendants continue to author, and the named Defendants continue to edit, post, host and/or transmit false and deceptively misleading statements about GSMIC on its websites and use the GEORGE S. MAY mark as a metatag. The most egregious of these false

---

[1] This is the subject of a Motion for Contempt presently before the Court.

and deceptively misleading statements are attached for the Court in the Third Declaration of Charles E. Black In Support of Motion For An Order Finding Defendants In Contempt For Violating the Temporary Restraining Order ("Third Decl.").

The named Defendants are a for-profit operation that makes money by selling "get even" books and its services in "cleaning up" its own web site—they are not consumer advocates, and do not facilitate free speech.. The named Defendants encourage the posting of false information about companies, and then offer to sell their services to the companies that are being defamed to remove the false information from their site. The named Defendants stand to profit by continuing to disseminate false and deceptively misleading statements. One posting against GSMIC, which encourages GSMIC to "[j]ust admit your errors and make your piece (siq) with Mr. Magedson" affirms Defendants' quest to profit off of these false and deceptively misleading statements:

> According to the Bureau of Ethical Internet Communication, companies, not wanting to get into protracted litigation and wanting to just clean up information, found paying Ripoffreport cheaper than getting into a long drawn out legal battle. The settlements are typically in the $25,000 range. That is how much Fashion Rock had to pay to get them off their back.

See "Chet is right! George S. May could take care of their problems like Fashion Rock did!" located at http://www.ripoffreport.com/reports/ripoff95354.htm, attached as Exhibit A to the Second Declaration of Rachel M. Kindstrand submitted herewith ("2nd Kindstrand Decl.").

This Court should not condone what amounts to corporate extortion by the named Defendants. Why should GSMIC have to pay the named Defendants to keep these heinous, false and damaging statements off their sites and to prevent Defendants from promoting these false and unlawful statements?

The named Defendants claim the TRO should be lifted because it does not preserve the status quo, but requires "action." Defs. Mem. at 11. That argument is supported by a case that actually affirms the granting of a preliminary injunction, *see Indiana Civil Liberties Union v.*

3

*O'Bannon*, 259 F.3d 766 (7th Cir. 2001), Defs. Mem. at 11. In any event, injunctive relief is regularly granted to stop Lanham Act violations, from "diverting" of website users, and "injuring the business or reputation" of another, particularly when the defendants "have no honest business" in taking those actions. *YourNetDating, LLC v. Mitchell*, 88 F.Supp.2d 870, 872 (N.D. Ill. 2000). Injunctive relief can clearly require Defendants to stop harming GSMIC's business. The named Defendants respond to GSMIC's request for injunctive relief by arguing that this Court lacks personal jurisdiction, the claims are barred by the Communications Decency Act ("CDA"), that GSMIC lacks prudential standing, and that GSMIC has failed to state a claim under the Lanham Act. All of these arguments fail.

## I. This Court Has Personal Jurisdiction Over Defendants.

### A. There is No Contract between the Parties.

The named Defendants claim there is no personal jurisdiction over them because: 1) GSMIC is bound by a "forum selection clause" which purports to limit jurisdiction to the "State of Arizona;" and 2) GSMIC has failed to satisfy the requirements of the Illinois long-arm statute, and that there are no minimum contacts with Illinois. Both claims are wrong.

Defendants claim that GSMIC is bound by a "forum selection clause" based on a posting it attached as Exhibit C to Defs. Mem. The facts (not mentioned in Defs. Mem.) but which are stated in the posting, are that an individual, who also claimed to be one of GSMIC's employees, noticed that someone had "spoofed" his identity, by stealing his email address and identifying information, and used that information to post material on Defendants' websites. Third Decl. at ¶ 4(g). This individual responded by posting a rebuttal on Defendants' websites, indicating that the material on the website did not originate from him, and that it did not reflect his point of view. *Id.* According to the named Defendants, because the individual, who also claimed to be

4

an employee of GSMIC, posted a rebuttal on the website, GSMIC is irrevocably bound to sue in the State of Arizona. This argument is wholly without merit.

GSMIC misleads the Court by suggesting that the language of the purported "forum selection clause" has always been there. This is not true. When the named Defendants filed their Memorandum of Law, they attached, as Exhibit D, the language of the purported forum selection clause which they claim applies to GSMIC. It stated:

> By posting this report/rebuttal, I attest this report is valid. I am giving Rip-off Report irrevocable rights to post it on this web site. I acknowledge that once I post my report, it will not be removed, even at my request. Of course, I can always update my report to reflect new developments by clicking on UPDATE. Further, I agree that by posting this report/rebuttal that the State of Arizona has exclusive jurisdiction over any disputes **between me and the operators of Rip-off Report arising out of this posting**.

Mysteriously, as of the filing of GSMIC's Motion for Contempt, the above-quoted language has changed, and now states in relevant part "Further, I agree that by posting this report/rebuttal that the State of Arizona has exclusive jurisdiction over any disputes arising out of this posting." Third Decl. Exh. M.

In any event, based solely on the terms of the clause—it expressly does not apply to GSMIC. It is clearly limited to disputes arising "**between me and the operators of Rip-off Report arising out of this posting.**" Therefore, the named Defendants' argument is spurious and without basis in fact or law. Under no reading of that language can it be read to rope in all of the other postings that are false, deceptively misleading, and defamatory regarding GSMIC, particularly since those postings have not been posted by or rebutted by anyone connected with GSMIC.

Furthermore, the named Defendants' argument that they entered into a contract with GSMIC is ridiculous. The language containing the purported "forum selection" clause belies this point; it never states that the poster agrees to enter into any type of contractual relationship with

5

the named Defendants. None of the elements of a contract are present here; particularly, there was no mutual assent on behalf of GSMIC to be bound to any agreement with Defendants—one employee of GSMIC was protecting his own personal name and reputation.

Since the named Defendants cannot honestly claim that they entered into any sort of contract with GSMIC, they resort to claiming that the individual, whose identity was stolen and attributed to a posting on the websites, had apparent authority to bind GSMIC to the "forum selection" clause. Defendants have cited no cases to support their claim of apparent authority; the sole case cited in support of their claim did not rely on agency principles for its holding; and the named Defendants do not offer any elucidation of what law would apply in determining apparent authority.

Principles of agency law are substantially similar in Illinois, Arizona, and Georgia (where the employee was located).[2] Under Illinois law, apparent agency is created if "(1) the principal consents to or knowingly acquiesces in the agent's conduct, (2) the third party has a reasonable belief that the agent possesses the authority to act on the principal's behalf, and (3) the third party relied to his detriment on the agent's apparent authority." *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 859 (7th Cir. 2001). In this case, there is absolutely no evidence that GSMIC ever consented to or even knew that the employee posted a response on the websites. Additionally, the named Defendants cannot credibly have relied on the individual's apparent authority. It would have been unreasonable for them to rely on an individual's rebuttal to an individual posting, when this individual was provoked by the fact that an anonymous

---

[2] *See, e.g., Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 859 (7th Cir. 2001); *Max of Switzerland, Inc. v. Allright Corp. of Delaware*, 187 Ariz. 496, 500 (Ariz. Ct. App. 1997); *Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc.*, 44 F.Supp. 2d 1348, 1998 U.S. Dist. LEXIS 22313, at * 13-17 (N.D. Ga. 1998).

individual had stolen this individual's identity, and never purported to represent anyone other than himself or concern himself with any other postings!

In any event, Illinois law clearly indicates that "[a]n agent's apparent authority can only be determined by evaluating the principal's conduct toward the third party. Specifically, the principal must do something to lead the third party to believe that the agent is authorized to act on its behalf. The agent cannot unilaterally create an apparent agency through her own words or conduct." *Bethany*, 241 F.3d at 859-60. GSMIC put the named Defendants on notice over a year ago that it was requesting the remove the false and deceptively misleading postings on websites. See Declaration of Charles E. Black ("1st Black Decl.") Exh. B. The named Defendants could not reasonably rely on this individual's rebuttal when GSMIC's counsel is already in contact with them, objected to the postings on the site and threatened legal action. Defendants cannot honestly claim that it could rely on the individual's rebuttal as evidence that GSMIC agreed to only sue Defendants in Arizona.

**B.     Defendants' Tortious Conduct Is Aimed at GSMIC in Illinois.**

The effects tests allows this Court to assert jurisdiction over the named Defendants "when 1) the defendant's intentional tortious actions 2) expressly aimed at the forum state 3) cause harm to the plaintiff in the forum state, of which the defendant knows is likely to be suffered." *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 835 (N.D. Ill. 2000), citing *Calder v. Jones*, 465 U.S. 783 (1984). The named Defendants' argument that it could not know that the effects of its conduct would be felt in Illinois is incredulous. First, with only one exception, every single posting regarding GSMIC contains "Park Ridge, Illinois" or "Chicago, Illinois" in bold font in the title. Defs. Mem. Exh. B. Second, GSMIC sent Defendants letters in November of 2003, originating from Illinois, specifically requesting that

7

Defendants remove the posting erroneously attributed to GSMIC's President, Israel Kushnir (who is located in Illinois). 1st Black Decl. Exh. B. Third, one of the postings charges that the "founder of the company has a background in child pornography and other heineous crimes." 1st Black Decl. Exh. C. Clearly, the false and deceptively misleading statements are aimed at and directly injure GSMIC and GSMIC's management, employees in Illinois and customer and employee relationships that are formed with or from Illinois. Finally, despite the named Defendants' claims that "the fact that Illinois is Plaintiff's principal place of business is not proof that Plaintiff suffered the brunt of an injury in the state," in *Euromarket*, the Court expressly stated "[c]ertainly, the state of a company's principal place of business is where the injury is most likely to occur." *Euromarket*, 96 F.Supp. 2d at 837.

The named Defendants also claim that "because Defendants did not author the allegedly defamatory matter, they could not have aimed their activities at Illinois." See Defendants' Supplemental Response, at 3. This claim is equally unavailing. First, as *Calder v. Jones* makes clear, an editor can be subject to jurisdiction outside of the state of his residence based on his tortious conduct in editing material. 465 U.S. 783, 789-90 (1984).[3] Defendant Ed Magedson, who is the founder of the Rip-off Report and the editor, clearly plays a substantial role in the material that it placed on the websites. With respect to rebuttals, the website clearly states:

> We will not allow Companies or Individuals to simply state what a wonderful company they are, how many years they have been in business, and that the customer or consumer should call the posted number or e-mail address to get help. This is NOT a REBUTTAL. The customer has already exhausted themselves doing all that before resorting to searching on the Internet for help and by filing a Rip-off Report!

---

[3] In *Calder*, co-defendants, including the publication in which the article about Shirley Jones appeared, the National Enquirer (a Florida corporation with its principal place of business in Florida) did not contest the jurisdiction of the California court.

8

> Again, submit a REBUTTAL, make it a real REBUTTAL, either agreeing or disagreeing with the posted Rip-off Report, and then, if applicable, you must explain why there are so many Rip-off Reports where consumers claim they are being victimized by you or your company.

See GSMIC's Motion for Contempt, Exh. 6.

Thus, Defendant Xcentric Ventures admits to editing the site. In any event, "[t]he general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation." *Cohen v. Charell*, No. 82-C-4408, 1983 U.S. Dist. LEXIS 14656, at *12 (N.D. Ill. Aug. 12, 1983) attached in Exh. A. This proposition was reaffirmed in *Van Horne v. Muller*, 185 Ill. 2d 299, 308, 705 N.E.2d 898, 903 (Ill. 1998). As *Van Horne* indicates, a cause of action for defamation can lie against all participants "in the publication of an allegedly false story." *Id.* at 308, 705 N.E.2d at 903. The combination of editing and posting the false, deceptively misleading, and defamatory per se statements makes Defendants proper parties to this action subject to the jurisdiction of this Court.

### C. The Named Defendants Operate a Commercial Interactive Website.

The named Defendants have not refuted that the websites go well beyond passively posting information. In addition to actively editing the postings, at least six of which were originally posted by authors claiming to live in Illinois, the websites solicit volunteer reporters to report on companies and lawyers to file lawsuits, and claim that postings may garner national and local media attention. Kindstrand Decl. Exh. D. The websites also solicit donations and offer for sale the "Do-it Yourself Guide To Rip-off Revenge and your Money Back, too..." which is expressly stated to be "From the founder of Rip-off Report.com" who is, of course, none other than Ed Magedson. Kindstrand Decl. Exh. F; 1st Black Decl. Exh. A. The websites basically serve to advance Magedson's reputation and finances, irrespective of how many times Magedson tries to disguise ownership of the websites. This website is clearly commercial and/or

interactive, but it is certainly not simply a passive website. *See, e.g., Euromarket*, 96 F. Supp.2d 824, 837-39.

Additionally, although the named Defendants claim that they do not engage in metatagging, this claim has to be false in light of the prevalence of Defendants' websites in search results generated for "George S. May" in various search engines. Metatags are basically terms such as "George S. May" which are used as source codes incorporated into websites, thus allowing Internet search engines to retrieve that website in response to a search. *See, e.g., Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 460 (7th Cir. 2000). These metatags are used as source codes and are essentially embedded into the language creating the webpage, meaning that they are not visible to the average Internet user visiting a particular website. *Id.* As one case noted, "[t]he more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear." *Id.* at 460n.3, citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). Although it appears that the named Defendants have, in response to this litigation, altered their source codes to affect searches run in the Google search engine since the date GSMIC filed its Motion for Contempt, when Internet users search for "George S. May" in other popular search engines such as yahoo.com, hotbot.com, or lycos.com, the websites (and specifically the reports on George S. May) are still near the top of the search results. 2nd Kindstrand Decl. Exh. B-D. Metatagging a trade name or mark can support a claim for a violation of the Lanham Act. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 810-813 (7th Cir. 2002).

Finally, to the extent that the named Defendants claim that jurisdiction is not appropriate under either state or federal due process principals, GSMIC reasserts that it was clearly

10

foreseeable to the named Defendants in posting and continuing to host false and defamatory content about GSMIC, and receiving false postings from Illinois and soliciting sales in Illinois, among other things, that they might be sued in Illinois, considering that GSMIC is located in Illinois and GSMIC had put the named Defendants on notice that it was requesting that postings which were false and deceptively misleading be removed. The named Defendants continued to defy GSMIC's requests, knowing that its conduct was causing damage in Illinois. To the extent that Defendants claim they do not do business in Illinois or do not have minimum contacts with Illinois, GSMIC respectfully renews its Motion for Expedited Discovery filed with the Court on October 6, 2004 so that these representations can be explored, attached as Exhibit B.

## II.     GSMIC's Claims are Not Barred By the CDA.

The named Defendants have not refuted the law that GSMIC cited in its Memorandum of Law in Support of Its Motion for Preliminary Injunction, at pages 19-22 that its claims are not barred by the federal CDA. In summary, at least one federal district court has **already** found that named Defendants Magedson and Badbusinessbureau.com did not qualify for immunity under the CDA, noting they created titles such as "con artists," "scam" and "Ripoff," and that the reports were organized under the same. *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *32n.10 (N.D. Texas Apr. 19, 2004) attached in Exh. A. Despite naked assertions to the contrary, the named Defendants clearly categorize postings about GSMIC in various titles and headings, in that one can search the named Defendants' website under the titles they have created, such as "corrupt companies" or "business consultants" and find postings for GSMIC. Third Decl. Exh. A. Moreover, as the *MCW* court noted, the named Defendants continue to actively solicit the material that is posted on the websites. *Id.* at *34. Finally, Mr. Magedson admits that he is the "editor," and there is no question that the

named Defendants have edited postings on their sites, including postings about GSMIC. Defs. Mem. Exh. A at ¶ 5.

Moreover, contrary to Defendants' claim, the CDA does not foreclose injunctive relief. *See, e.g., Does v. Franco Productions*, No. 99-C-7885, 2000 U.S. Dist. LEXIS 8645, at *16 (N.D. Ill. June 22, 2000) (noting that "[plaintiffs' claims for injunctive relief, although not precluded by the CDA, fail to state a claim...[p]laintiffs fail to elucidate what activities of [Defendants] they seek to enjoin") attached in Exh. A. Here, GSMIC argues that the named Defendants are, in fact, content providers and therefore not immune even from damages under the CDA, however, whether or not they are immune from damages, the CDA "provides immunity from actions for damages; it does not, however, immunize defendant from an action for declaratory and injunctive relief... If Congress had intended the statute to insulate Internet providers from both liability and declaratory and injunctive relief, it would have said so." *Mainstream Loudoun v. Bd. of Trustees of the Loudoun County Library*, 24 F. Supp. 2d 552, 561 (E.D. Va. 1998). Thus, assuming, *arguendo*, that the CDA applies to the named Defendants, injunctive relief is still appropriate.

In sum, the named Defendants are not simply passive intermediaries allowing individuals to post whatever they desire on the websites. The entire purpose of these sites is to actively encourage the posting and viewing of particularly egregious claims to attract the attention of individuals and companies, which in turn will allow the named Defendants to profit financially and enhance Ed Magedson's reputation as a supposed "consumer advocate."

### III. GSMIC Has "Prudential Standing" To Assert a Claim Under the Lanham Act, and GSMIC Does State a Claim Under the Lanham Act.

Contrary to the named Defendants' assertions, the Lanham Act does not foreclose a suit by a "non-competitor." Courts have allowed various claims to go forward under the Lanham Act

between parties that were not strictly competitors. For example, in *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 853 F.2d 888, 889 (Fed. Cir. 1988), a nonprofit trade association opposed a company's attempt to register the "DEBEERS" mark as it would cause confusion because "DEBEERS" was associated with DBCM, a world source of diamonds, and the association's members had used the name DEBEERS in marketing jewelry such that the association itself would be harmed. *Id.* Additionally, cases from this Circuit have stated that, in order to bring a false advertising claim under the Lanham Act, "[a] plaintiff has standing if he demonstrates a 'reasonable interest to be protected' against activities that violate the [Lanham] Act.'" *Euclid Ins. Agencies, Inc. v. American Assoc. of Orthodontists*, No. 95-C-3308, 1998 U.S. Dist. LEXIS 1471, at *13 (N.D. Ill. Feb. 5, 1998) (noting that "a party whose royalty interest is adversely affected by a false or misleading statement has standing to bring a claim under the Lanham Act"), attached in Exh. A. *See also Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 699-700 (7th Cir. 1989) (holding that a party had no standing because a plaintiff did not have "reasonable interest to be protected"). Finally, use of the Lanham Act is appropriate to protect against associations between a company and illegal conduct. *Coca-Cola v. Gemini Rising*, 346 F.Supp. 1183, 1189 (E.D.N.Y. 1972) (association of COCA-COLA with the use of drugs).

Clearly, GSMIC has a reasonable interest to protect itself from false statements that it has engaged in criminal conduct. In any event, it is not even clear that the concept of "prudential standing," has been adopted in the Seventh Circuit. Assuming, *arguendo*, that it has, GSMIC meets the five factor test relating to its application, which includes: (1) the nature of the plaintiff's injury, i.e., is the injury of a type that Congress sought to redress in providing a private remedy for violations of the Lanham Act?; (2) the directness or indirectness of the asserted

13

injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; (5) the risk of duplicative damages or complexity in apportioning damages. *The Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 179-80 (3rd Cir. 2001) (although finding that plaintiffs' lacked standing, the court also stated "[t]his is not to say that a non-competitor never has standing to sue under this provision").

As the Black Declarations point out, GSMIC is clearly suffering a competitive injury by the named Defendants' conduct. Through the use of GSMIC's trade name, both on the website and through metatagging, the named Defendants are causing direct harm to GSMIC's businesses, its management, and its employees. The Lanham Act clearly sought to protect a business from this type of anti-competitive conduct. Perhaps more importantly, this case *is competitive* because Defendants are making a profit off of these false claims on their websites. This is not simply the case of a "consumer advocate" reporting on the business practices of another company. The postings are lies about GSMIC! The postings lie about the identity of the author, associating the GSMIC trademark as the source of postings and using the mark to encourage Internet users to review the false information. There is nothing remote or speculative about GSMIC's injury with respect to the named Defendants' conduct. In this case, the named Defendants are facilitating the unlawful conduct of GSMIC's competitors and others that want to harm GSMIC and are trying to detract from GSMIC's business reputation and goodwill, and its potential customers and employees.

Contrary to the named Defendants' assertions, GSMIC states a claim under the Lanham Act. The named Defendants' attempt to distinguish *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004) is totally off base. Playboy and Netscape Communications are not competitors. Playboy was found to have standing to sue Netscape

14

because Netscape's conduct hurt Playboy and aided Playboy's competitors. This is **exactly** what the named Defendants are doing here. The false postings are harming GSMIC's business reputation and aiding GSMIC's competitors. The conduct is unlawful and should be stopped.

## IV. Conclusion

For the foregoing reasons, Plaintiff GSMIC respectfully requests that this Court grant its Motion for a Preliminary Injunction against the John Doe and named Defendants in accordance with the proposed order submitted by GSMIC, and grant such other relief it deems appropriate.

**DATED:** November 5, 2004

Respectfully submitted,

GEORGE S. MAY INTERNATIONAL COMPANY

By: _____
One of Its Attorneys

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 East Monroe, Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312) 269-8869
Firm No. 90747

See Case File for Exhibits