THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE S. MAY )
INTERNATIONAL COMPANY, )
)
Plaintiff, )
) Case Number: 04-C-6018
-vs- )
) Judge Norgle
XCENTRIC VENTURES, LLC, )
RIP-OFF REPORT.COM )
BADBUSINESSBUREAU.COM, )
ED MAGEDSON, VARIOUS )
JOHN DOES, JANE DOES AND )
ABC COMPANIES, )
)
Defendants. )

FILED
APR 2 2 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

To:   James K. Borcia, Esq.
David O. Yuen, Esq.
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6308

**PLEASE TAKE NOTICE** that on April 22, 2005, Plaintiff George S. May International Company, by and through its attorneys Seyfarth Shaw LLP, filed with the United States District Court, Northern District of Illinois, Eastern Division, **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND REQUESTS TO PRODUCE DOCUMENTS AND THINGS**, a copy of which is attached hereto and hereby served upon you.

GEORGE S. MAY INTERNATIONAL
COMPANY

By: /s/ Rachel M. Kindstrand
One of Its Attorneys

Bart A. Lazar, Esq.
Ronald L. Lipinski, Esq.
Rachel M. Kindstrand, Esq.
Seyfarth Shaw LLP
55 East Monroe, Suite 4200
Chicago, IL 60603
(312) 346-8000

CH1 10888692.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case Number 04-C-6018 |
| -vs- ) ) | Judge Norgle |
| XCENTRIC VENTURES, LLC, ) RIP-OFF REPORT.COM ) BADBUSINESSBUREAU.COM, ) ED MAGEDSON, VARIOUS ) JOHN DOES, JANE DOES AND ) ABC COMPANIES, ) ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND REQUESTS TO PRODUCE DOCUMENTS AND THINGS**

Defendants falsely assert that they have responded to Plaintiff's discovery. How could this be when Defendants have not produced a single document! Defendants fully objected to seven out of Plaintiff's ten requests to produce and nine of Plaintiff's seventeen interrogatories. With respect to the rest of Plaintiff's document requests, Defendants made baseless denials concerning documents they must possess or control. For example, Defendants deny possessing or controlling documents relating to the PayPal accounts. This is incredible because Defendants list their PayPal accounts on the websites at issue in this case, and solicit funds using PayPal on these very websites. *Second Declaration of Kindstrand at Exhibit 1 (hereinafter Sec. Decl. of Kindstrand).*

With respect to the answers to the rest of Plaintiff's interrogatories, those to which Defendants did not fully object, Defendants either objected in part, and/or provided wholly

1

incomplete or inappropriate responses. For example, to Plaintiff's perfectly reasonable interrogatory asking Defendants to "[i]dentify all shareholders, officers, members of the board of directors, and employees of XCentric Ventures, LLC," Defendants responded by objecting on the grounds that the question has nothing to do with jurisdiction, and by stating that "XCentric Ventures, LLC has no shareholders, officers, members of the board of directors or employees outside of the state of Arizona." This is not a proper answer to an interrogatory seeking relevant information about who owns and operates one of the Defendants, and who owns and operates a website that is damaging an Illinois resident. Defendants also objected to and provided the same response to Plaintiff's interrogatory requesting that Defendants identify "all persons and/or entities who own, operate, administer, create content for and/or edit the website, www.ripoffreport.com." Again, such an objection and answer is baseless because the identity of people or entities who own, operate, administer, create content for and/or edit the website is important to the issue of jurisdiction, since Plaintiff alleges in its Complaint that Defendants' actions are causing it direct harm to its business operations located in Illinois. With respect to Defendants' objections to these interrogatories based on the assertion that the interrogatories are irrelevant to the issue of jurisdiction, Defendants' are simply wrong.

First, under Illinois law, jurisdiction may be had over "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated," including "[t]he transaction of any business within [Illinois]," "[t]he commission of a tortious act within this State," and "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(a)(1), (a)(2), and (c). Moreover, jurisdiction may be had "when defendant has 'continuous and systematic general business contacts' with the forum. *Publications International, Ltd. v.*

2

*Burke Triolo, Inc.*, 121 F.Supp. 2d 1178, 1182 (N.D. Ill. 2000) (citations omitted). From a purely practical standpoint, the identity of the persons responsible for operating, administering, editing and posting content to a website that posts false, harmful and defamatory information about George S. May is clearly relevant and necessary to the determination of the issue of jurisdiction, because it is the actions of these persons that cause harm to George S. May in Illinois, and subjects them to the jurisdiction of this Court under Illinois law.

Second, Defendants still need to identify the individuals and entities Plaintiff has requested even if those individuals and entities reside in Arizona. As the above-quoted Illinois law makes clear--and under basic rules of civil procedure--these unidentified individuals can still be subject to the jurisdiction of Illinois courts even if they live in Arizona. The point is that the actions of these individuals are illegal and are causing harm to George S. May here in Illinois. Plaintiff is entitled to have these individuals and/or entities identified. Moreover, as Plaintiff's counsel pointed out to Defendants' counsel in a letter dated January 28, 2005, and attached as Exhibit B to Plaintiff's Motion to Compel, at least one member of XCentric Ventures, LLC, Creative Business Investment, resides in Nevada. So, in point of fact, Defendants' response to Plaintiff's Interrogatory number 2--that no member of XCentric Ventures LLC resides outside of Arizona--is false.

In their response brief, Defendants argue that they should not be compelled to answer Plaintiff's discovery because: 1) it is not sufficiently tailored to the jurisdictional issues raised by Defendants, and 2) some of the information is protected from disclosure by an Arizona statute governing the issuance of subpoenas to reporters. These arguments are wholly without merit.

To reiterate a point made in Plaintiff's various briefs filed in this case, jurisdiction may be had over defendants who operate an interactive website "which post[s] information and

3

allow[s] a user in a foreign jurisdiction to exchange information with the entity that maintains the website." *Publications International, Ltd.*, 121 F. Supp. 2d at 1182. Indicia of interactivity includes, for example, the ability of Illinois users to request catalogs and other information by filling out a form and submitting it through the website; advertising; soliciting sales from Illinois customers; and allowing individuals to sign up for mailing lists. *Publications International, Ltd.*, 121 F.Supp.2d at 1182-1183; *Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F.Supp. 2d 824, 838 (N.D. Ill. 2000) (noting that a previous court decision "found personal jurisdiction over a defendant who had established a website as a promotion for its upcoming Internet service").

Defendants' website is just that--interactive. The website advertises and solicits sales of the "Rip-off Revenge Guide," a book authored by Defendant Ed Magedson; solicits non-tax deductible donations for the operation of the website; solicits contact information from attorneys and promises to contact individuals with the names of attorneys if they wish to pursue litigation; solicits "rip-off reporters" who will volunteer to investigate a company; hosts advertising for many companies; its agents correspond with individuals via email through the website; and the website generally solicits reports. *See Sec. Decl. of Kindstrand at Exh. 1-5.* In addition, the "EDitor" who, on information and belief is Defendant Ed Magedson, has posted responses or suggestions to rip-off reports posted by individuals whom either 1) reside in Illinois or 2) have complaints regarding an Illinois company or corporation. *See Sec. Decl. of Kindstrand at Exh. 6.* For example, in one particular posting, an individual who identified herself as being from Chicago, Illinois complained about a gym company with a location in Chicago, Illinois. *Id.* The EDitor posted a response to that individual's complaint advising her as to how to get her money back. *Id.* In fact, from approximately May of 2002 to April 21, 2005, the "EDitor" has posted approximately seventy-six such responses about Illinois companies or in response to individuals

4

CH: 2688681:2

from Illinois. *Id.*

The postings that Defendants permit to remain on Defendants' web site are continuing to harm George S. May's business. On dozens of occasions since this law suit has been filed, existing and potential customers and employees of George S. May have notified the company that they do not wish to do business with or seek employment with George S. May, <u>and cite the Internet postings on www.ripoffreport.com as the sole reason!</u> *See, e.g., Correspondence, attached as Exhibit A.* Thus, the false and deceptively misleading postings that Defendants edit and host on their website damage George S. May in Illinois, which is sufficient for jurisdiction. But, it is likely that posters are based in Illinois, which would provide a more substantial basis for jurisdiction.

Plaintiff's discovery requests go directly to indicia of this interactivity with the State of Illinois. Donation records are certainly relevant, and not only do Defendants refuse to engage in any reasonable inquiry as to records of donations, they have also moved this Court to quash the subpoena directed to PayPal, the service responsible for collecting credit card donations on Defendants behalf. Sales of a book authored by Ed Magedson and advertised all over the website are clearly relevant to the level of interactivity, and therefore this Court's jurisdiction. The marketing agreement that Defendants have with Google (or another company doing business with Google) is also clearly relevant to jurisdiction. Furthermore, Defendants clearly have an arrangement with Sterling Network Services, a web host and a company that, through December of 2004, advertised an Illinois location on its website. *See Sec. Decl. of Kindstrand at Exh. 7.* Moreover, Plaintiff is seeking information directly related to the postings that are the source of ongoing harm to its company, businesses, and its people. Clearly, knowing who these people are is the first step in determining whether the Court has jurisdiction over them.

In addition to Defendants' argument that the scope of Plaintiff's requests and interrogatories is too broad, Defendants also assert that an Arizona statute dealing with the issuance of subpoenas to news reporters prevents disclosure of the information Plaintiff has requested in discovery. First, as a fairly obvious point, Plaintiff has never issued a subpoena to the Defendants or to the individuals Defendants assert are covered by the statute. Based on the unambiguous language of the statute, it is clearly inapplicable. Second, there is no support for the assertion that these individuals or Defendants are journalists covered by the statute; these are individuals posting false and deceptive facts about George S. May. Defendants' website states that it is created for "everyday consumers" to post opinions and comments, and that statement alone indicates that the individuals posting on the website are not journalists engaged in news reporting. *See Decl. of Kindstrand at Exh. 8.* Moreover, since Defendants are alleging that they do not know the location of these individuals, it is unclear whether these individuals would even be covered by the Arizona statute. Third, this Court is not governed by Arizona law when determining whether it has jurisdiction over Defendants.

The only case cited by Defendants discussing this statute does not even support its position. The case cited by Defendants involved a situation in which a non-party journalist was subpoenaed to produce a videotape in conjunction with another lawsuit. *Bartlett v. Superior Court*, 722 P.2d 346 (Ariz. Ct. App. 1986). Furthermore, in *Bartlett* the Arizona Court of Appeals held that the videotape was not protected from disclosure and was to be produced. *Id.* Finally, if Defendants are considered news reporters, then they are properly subject to jurisdiction in Illinois because the effects of their false, harmful, and defamatory stories are felt by George S. May at its principle place of business in Illinois. This is precisely the holding of *Calder v. Jones*, 465 U.S. 783, 788-789 (1984).

Contrary to Defendants' arguments, the information sought by Plaintiff is relevant and appropriate to the jurisdictional issues raised by Defendant and is not protected by any Arizona statute. Despite what Defendants would have this Court believe, they simply have not appropriately answered or objected to Plaintiff's discovery.

WHEREFORE, Plaintiff George S. May International Company respectfully requests that this Court grant Plaintiff's Motion to Compel Answers to Plaintiff's First Set of Interrogatories and Requests to Produce Documents and Things, and award any other relief this Court deems just.

**DATED: April 22, 2005**  Respectfully submitted,

GEORGE S. MAY INTERNATIONAL COMPANY

By: *Rachel M. Kindstrand*
One of Its Attorneys

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Ronald L. Lipinski
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 East Monroe, Suite 4200
Chicago, Illinois 60603
Telephone: (312) 346-8000
Facsimile: (312) 269-8869
Firm No. 90747

CH1 10888681.1

**Exhibit A**

## Charles E. Black

From: gm [advanceit@bellsouth.net]
Sent: Friday, February 25, 2005 1:03 PM
To: Walt Winkelman
Subject: Re: CareerBuilder.com: Exceptional Sales Career Opportunity

**Thank god for the internet blogs! I will never work for you - your a fucking dinosaur in 6 more months - go check out your flames. at badbusinessburea - you suck**

al Message -----

> From: Walt Winkelman
> To: GREG MICHAEL
> Sent: Friday, February 25, 2005 11:14 AM
> Subject: CareerBuilder.com: Exceptional Sales Career Opportunity
>
> Dear Job Applicant,
>
> Your resume has been automatically selected to receive this email through a computer generated search of the Career Builder database for sales candidates in your region.
>
> "Interviews" are now being scheduled in a city near you "this week" for a training class that starts "next week" in Chicago. Applicants from "out of town" will interview in that city, but work in their local area.
>
> The George S. May International Company (GSMIC) an industry leader in management consulting to small and medium size businesses since 1925, is currently scheduling interviews for outside sales professionals for the position of Special Representative - Field Service.
>
> "Please" visit our website at www.georgesmay.com "before" you call to learn more about the George S. May International Company. There is an informative video about the Special Representative position that can be viewed online in the "careers" section titled "Careers in Field Service".
>
> If you are confident in your sales ability and would like to pursue a career sales opportunity with GSMIC please contact Mr. Bryan Cook ASAP at 800-999-3020 ext. 414 (8:30am-5pm CST M-F) to present your qualifications and schedule an interview.
>
> We look forward to hearing from you, or if this is not a match for your skills and abilities, best wishes in your job search.
>
> Thank you,
>
> Walt Winkelman
> Director of Recruiting
> Recruiting Department
> GSMIC

2/28/2005

# GSMAY

From: aton_ra_1999@yahoo.com
Sent: Sunday, February 27, 2005 8:32 PM
To: careers@georgesmay.com
Subject: Important! Field Service Training

Mr. Winkleman:

After extensive online research of George S May Company, a large number of COMPLAINTS and CHARGES were reported nationwide by dozens of people and firms against your company.

Employees and past clients of George May wrote detailed accounts of mismanagement, deceit, coercion, and generally unethical business behavior. One consumer website alone had nearly 30 complaints listed, with specific dates, company officials named, and very detailed accounts of poor business practices by your firm. The Better Business Bureau inexplicably gave your company a "satisfactory rating", but closer examination of the file reveals 18 cases that were not resolved, and others that the Bureau deemed "closed" but complaintants disagreed and said were not resolved to their satisfaction.

Another website featured an article in a large newspaper that described how a startup company was charged exorbitant fees by George May analysts who were accused of being "unqualified" and "extremely pushy salespeople, not business consultants." Many clients reported that they signed iron-clad contracts due to near-fanatical analysts hammering them with horror stories and misinformation over an extended period of time. These contracts obligated clients in ways they did not understand, and were then held financially liable, even when the company itself was in serious financial straits. Many of these clients wanted to engage in a CLASS-ACTION LAWSUIT against George May, but recognized they were legally trapped by the confusing contracts they signed, and the verbal misrepresentations by the Field Services Rep and the Analysts.

Finally, my interactions with you personally revealed some of the same patterns of misinformation and unprofessional business behavior listed by some anonymous employees of your company. This includes ridiculously short time frames for decision-making, excessive compliments that are not warranted or justified, psychological manipulation to achieve compliance, untruthful statements or massive exaggerations to convince applicants about company policies and practices, and finally ... your telephone behavior is fairly atrocious with numerous 5 - 10 minutes holds, which is completely inexcusable in any telephone conversation, and even more unimaginable from the human resources department of a so-called management consultant firm. When I tried to call you back both yesterday and today, again you had no voicemail, so there was no way to leave you a message. Its incomprehensible that the HR DIrector would not have his voicemail activated.

In addition, your company policies of "mandatory insurance limits" set at a company-determined level with your company named as "additional insured" .... along with your training class reimbursement procedures, which ensure no reimbursement to the trainee if ANY problems develop during the training session (with problems defined solely by George May company) reinforces the comments made by ex-employees who stated that if a trainee doesn't "tow the line 100%" in every way, they will be kicked out of training, and all expenses incurred will be the responsibility of the trainee. In other words, a healthy exchange of ideas and open, honest discussions are not permitted, its exclusively the George May way, or the highway (on your own charge card, mind you).

Based on this information, it is clear that your company has a very negative reputation, and if even a handful of the allegations are true, it demonstrates a company that does business in a way that I want absolutely nothing to

2/28/2005

do with. 79 years in business does not signify that your company follows the same principles of integrity and honesty as the person who founded it ... George May could have been bought out several times over the past decades, and the current management follows a business pattern that is predatory and damaging to many employees and clients who have the misfortune of professionally interacting with them.

Destroy my resume, and eliminate my application from your files. My relationship with your firm is terminated immediately.

B. Dreyfus

---

Do you Yahoo!?
Yahoo! Mail - Helps protect you from nasty viruses.

2/28/2005



# Cuba Free Press

501 E. Washington Street
PO Box 568
Cuba, MO 65453

573-885-7460
FAX: 885-3803
rviehman@cubafreepress.com

www.cubafreepress.com

# The Extra Plan

# Steelville Star-Crawford Mirror

106 S. First Street
PO Box BG
Steelville, MO 65565

573-775-5454
FAX: 775-2668
stvlstar@misn.com

www.steelvillestar.com

To: George S. May International Company
FAX: 847-825-7937

February 25, 2005

From: Rob Viehman, Publisher

Re: Job No. 525442

Consider this official termination of my contract with the George S. May International Company. After meeting Thursday, February 24 and Friday, February 25, 2005, with one of your "executive analysts," I was somewhat excited, although nervous, about entering into a business relationship with your firm.

My excitement quickly turned to anger, however, when I did some extensive research about George S. May International on the Internet. Aside from information included on your own website, I could not locate one positive story about your firm. Quite to the contrary, I found many negative comments which I will not include in this letter. I'm sure the executives at George S. May are well aware of the complaints made about this firm.

Your company has at least two representatives scheduled to be at my Cuba, Mo., office on Monday morning, February 28. I am formally requesting their planned trip be canceled because they will not be allowed on the premises. Should they show up on Monday, they will be asked to leave immediately.

In addition, should I be contacted further by your company, I will file an official complaint (which will include a copy of this letter) with the Missouri Attorney General. I will also be contacting all my sister publishers throughout Missouri to inform them of your business practices, with the recommendation they inform their readers and business clients as well.

Looking back now at the last two days I wasted with your analyst, I now realize I received absolutely nothing for his $350 fee. I'll consider that a lesson learned.

With BIG regrets,

Rob Viehman
President/Publisher

## CERTIFICATE OF SERVICE

I, Rachel M. Kindstrand, hereby certify that a copy of **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO ITS FIRST SET OF INTERROGATORIES AND REQUESTS TO PRODUCE DOCUMENTS AND THINGS** was served on the following opposing counsel via United State mail, postage prepaid on April 22, 2005:

> James K. Borcia, Esq.
> David O. Yuen, Esq.
> Tressler, Soderstrom, Maloney & Priess
> 233 South Wacker Drive, 22nd Floor
> Chicago, IL  60606-6308

_/s/ Rachel M. Kindstrand_
Rachel M. Kindstrand

CH1 10888692.1