George S May Intl, et al v. Xcentric Ventures, et al
Case 1:04-cv-06018    Document 59    Filed 08/05/2005    Page 1 of 23
Doc. 59

JKB/cic/364770

U.S. DISTRICT COURT
CLERK

5634-2-51

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG X 5 2005
AUG 5 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

GEORGE S. MAY INTERNATIONAL )
COMPANY, )
 )
Plaintiff, )
 )
v. )     No. 04 C 6018
 )
XCENTRIC VENTURES, LLC, RIP-OFF )     Judge Norgle
REPORT.COM, et al., )
 )
Defendants. )

## NOTICE OF FILING

TO:     Bart A. Lazar, Esq.
        Rachel Kindstrand, Esq.
        Seyfarth Shaw LLP
        55 East Monroe, Suite 4200
        Chicago, IL 60603

**PLEASE TAKE NOTICE** that on the 5th day of August, 2005, there was filed with the
United States District Court for the Northern District of Illinois, Eastern Division, **Edward
Magedson's Motion to Dismiss for Lack of Jurisdiction**, a copy of which is attached hereto
and hereby served upon you.

EDWARD MAGEDSON

By: _____
      One of His Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Dockets.Justia.com

## PROOF OF SERVICE

I, the undersigned, on oath state that I served copies of the above-referenced documents upon the above-referenced parties at their addresses listed above by depositing the same in the U.S. Mail at 233 South Wacker Drive, Chicago, Illinois, before 5:00 p.m. on the 5th day of August, 2005, with proper postage prepaid.

_Cynthia Close_

Subscribed and Sworn to before me
on this 5th day of August, 2005

By: _____
     Notary Public

```
OFFICIAL SEAL
KAREN J SOMMERFELD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11-20-06
```

JKB/cic/364718.v2

5634-2-51

U.S. DISTRICT COURT
CLERK

**FILED**
AUG X 5 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
AUG 5 2005

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04 C 6018 |
| | ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## EDWARD MAGEDSON'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant Edward Magedson ("Magedson") requests that the Court dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) as this Court lacks personal jurisdiction over him. This motion is supported by the following Memorandum of Points and Authorities and by the Court's file in this matter. Magedson incorporates by reference the arguments related to jurisdiction contained in the responses to the requests for injunction relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Magedson is an individual who is the Manager of Xcentric Ventures, LLC ("Xcentric"), which operates a website known as Rip-off Report upon which consumers post complaints about companies with whom they have done business. Plaintiff George S. May International Company asserts that complaints were posted on the Rip-off Report website regarding Plaintiff that were false and injured Plaintiff. Magedson has no minimum contacts with the State of Illinois and took no actions directed at Illinois.

## II.   RELEVANT FACTS

Magedson is an individual who resides in Arizona.  (Exhibit "A").  Magedson does not own any assets in Illinois.  (Exhibit "A").  He does not do business with or within the State of Illinois.    Xcentric    operates    a    website,    "The    Rip-Off    Report,"    located    at www.badbusinessbureau.com and at www.ripoffreport.com.  (Exhibit "A").  The website is also hosted by Xcentric and the servers are located in Arizona.  (Exhibit "A").  Magedson did not author any report or any title of any report posted on Rip-off Report about George S. May International, nor did he request or direct anyone else to author such reports. (Exhibit "A").

## III.   THIS COURT LACKS JURISDICTION

### A.   Standard For Asserting Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction.  *Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992), *citing Carteret Savings Bank v. Shushan,* 954 F.2d 141 (3d Cir.1992), *cert. denied* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).  To meet this burden, the plaintiff must make a prima facie showing of "sufficient contacts between the defendant and the forum state."  *Mellon East,* 960 F.2d at 1223, *citing Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434 (3d Cir. 1987).

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).  The contacts between the defendant and the forum state may not be "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79

L.Ed.2d 790 (1984). Instead, "the sufficiency of the contacts is measured by the defendant's purposeful acts." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir.1994). The minimum contacts with the forum state must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state, thereby invoking the protections and benefits of the forum state's law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir. 2002). The minimum contacts requirement serves two objectives: "[i]t protects against the burdens of litigation in a distant or inconvenient forum" unless the defendant's contacts make it just to force him or her to defend there, and "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Depending on the nature of the contacts, a court may exercise general or specific jurisdiction. When the defendant's contacts with the state are sufficiently continuous, systematic and general, the court may exercise jurisdiction over the defendant in any suit based on any controversy. *International Medical Group,* 312 F.3d at 846. When a defendant's contacts with the state are more limited, but are related to or give rise to the specific controversy in issue, a court may exercise specific jurisdiction over the defendant with respect to that controversy. Because the implications are far greater, the constitutional standard for general jurisdiction is considerably more stringent than the standard for specific jurisdiction.

**B.    Jurisdiction Over The Internet**

The most often-cited case in analyzing jurisdiction based on Internet activities is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D.Pa. 1997), which established the

sliding scale test for jurisdiction arising out of Internet activities.  The *Zippo* Court recognized that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. (citations omitted).

(*Id.*)  Here, all Magedson did was act as Manager for the company that hosted a website upon which third parties posted their opinions and complaints about their experience with George S. May.  The postings were free.  Magedson did not engage in any commercial transaction at all. This case should be analyzed the same as a passive web site because the claims arise out of Xcentric's passive activity of merely making information available.  In addition, even if the Court analyzes this case under the test for an interactive web site, the level of interactivity here is simply that the author posted a complaint on the website and there was no commercial nature to the exchange of information because there was no money exchanged.  Rather, the posting was a classic exercise of non-commercial free speech.

Plaintiff asserts that Defendants transact business over the Internet and are interactive. Defendants do not transact business over the Internet.  The Rip-off Revenge Guide is owned and sold by Creative Media Publishing, L.L.C., which has an advertising agreement with Xcentric

4

Ventures, L.L.C.[1] Thus, while Xcentric Ventures, L.L.C. advertises the Rip-off Revenge guide on its website, it does not sell the guide. Further, even if Xcentric did sell the guide to residents of Illinois, that would only subject it to jurisdiction for claims arising out of the sale of that book. Similarly, Xcentric's solicitation of donations is irrelevant because there is no claim here that arose out of a donation.

Plaintiff also alleges that Defendants use metatags of the George S. May trademark knowing that it will have impact of searches performed in Illinois. That is an inaccurate factual description and does not establish that Defendants targeted their actions toward Illinois. Searches performed in Illinois will be the same as searches performed anywhere else in the United States, as well as the world. That argument is essentially the same as the argument that has been rejected by the courts that having an Internet presence subjects one to jurisdiction everywhere that the website can be accessed.

### C.   General Jurisdiction Is Lacking

Magedson expects that Plaintiff will concede that general jurisdiction is lacking. To meet the constitutional requirement for general jurisdiction, the defendant must have "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum "must be so extensive to be tantamount" to the defendant's "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation,* 338 F.3d at 787. Here, there is nothing even approaching that requisite test. Magedson has no contacts with Illinois at all except that he provides services to a company whose website can be accessed in

---

[1]Xcentric and Consumer Media have a license to use the Rip-off Report and Rip-off Revenge trademarks.

Illinois (as well as anywhere else in the world). The Illinois Court of Appeals has rejected the contention that Internet activities alone are a sufficient basis for general jurisdiction. *Forrester v. Seven Seventeen HB S. Louis,* 336 Ill.App.3d 572, 784 N.E.2d 834 (4th Dist. 2002).

### D.  Specific Jurisdiction Is Lacking

In order to exercise specific jurisdiction, a court must find that the defendant has purposefully established minimum contacts with the forum state, that the cause of action arises out of or relates to those contacts and that the exercise of jurisdiction is constitutionally reasonable. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). The first and second parts of this analysis require the court to evaluate the relationship among the defendant, the forum state and the cause of action. *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), *citing Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Court has identified two ways in which minimum contacts may be established for the purpose of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the forum state's laws, *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); or (2) harm to an individual within the state caused by the defendant when the harm is both intentional and aimed at the forum state, *Calder,* 465 at 788-90, 104 S.Ct. 1482.

The purposeful availment requirement is satisfied when the defendant purposefully establishes sufficient minimum contacts with the forum state to create a "substantial connection" between the defendant and the forum state. *Burger King Corp.,* 471 U.S. 462 at 475-76, 105 S.Ct. 2174. A substantial connection is created when the defendant "purposefully avails itself of the privilege of conducting activities" in the forum. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. The objective of the purposeful availment requirement is to provide predictability and give

notice to the defendant that it is subject to suit in the forum state, so that the company "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

Magedson did not author the complaints that are claimed to be false. Nothing that Magedson has done could be deemed to be a purposeful availment of the benefits of Illinois' laws that he could reasonably anticipate being haled into court in this state. "[S]pecific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state.'" *Id., quoting Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995).

Plaintiff has previously asserted that jurisdiction should be found under the effects test. Plaintiff has admitted that it must prove Defendants' intentional tortious actions were expressly aimed at the forum state and caused harm to the Plaintiff in the forum state, of which the Defendants know is likely to be suffered. It is undisputed that Magedson did not author any of the purportedly false reports. Magedson never even heard of George S. May until this dispute arose. (Exhibit "A"). Over four hundred reports and rebuttals are posted everyday, and Magedson does not and cannot monitor all postings. (Exhibit "A"). Magedson's only intentional conduct was his involvement with a company that operated a website which is a forum for others to post their experiences and opinions about companies.

The effects test, set forth by the United States Supreme Court in *Calder v. Jones,* 104 S.Ct. 1482 (1984), requires something more than just causing injury to someone harming someone in the forum state. The effects test is satisfied when the plaintiff alleges that the

7

defendant committed an intentional tort expressly aimed at the forum state; the actions caused harm, the brunt of which was suffered in the forum state; and the defendant knew that the effects of its actions would be suffered primarily in the forum state. *Calder*, 465 U.S. at 788-90, 104 S.Ct. 1482. Here Magedson was involved with a company that operated a website upon which others posted allegedly defamatory reports. That conduct cannot rise to the level of knowing that the effects of its actions would be suffered primarily in Illinois. *See Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002)(dismissing for lack of jurisdiction in case arising out of posting of defamatory article even though injury would be felt in forum state).

In *Calder* the Court emphasized that the defendants had aimed their actions expressly at California and actually knew that the "potentially devastating" effects of their article would be felt primarily in the state. *Id.* at 789-90, 104 S.Ct. 1482. Here, unlike in *Calder,* because Magedson did not author the allegedly defamatory matter, he could not have aimed his activities at Illinois.

As set forth in Defendants' previous pleadings, Plaintiff has not shown that it suffered the brunt of their injury in Illinois. George S. May has offices in Nevada, New York, San Francisco, Canada, and Europe. It boasts that its clients are located "in virtually every corner of America as well as Canada." Thus, Plaintiff's alleged injury is not suffered solely in Illinois.

**E.    Courts Have Refused To Submit Rip-Off Report Operators To Jurisdiction In Identical Circumstances**

Rip-off Report is a popular website that has been in existence for approximately five years.    There are over 145,000 reports posted on Rip-off Report, with over 900 thousand submissions within those reports. (Exhibit "A").  The website is a forum for complaining about unfair business practices.  As a result, other courts have had occasion to look at the issue of jurisdiction in this very same context.

In a virtually identical factual context where the previous operator of this very website was accused of defamation and extortion in Wisconsin, the United States District Court published a decision in which it dismissed the action pursuant to the due process clause.[2]  *Hy Cite Corporation v. badbusinessbureau.com, LLC.,* 297 F. Supp.2d 1154 (W.D. Wis. 2002).  In *Hy Cite,* as here, the Plaintiff claimed that Xcentric's predecessor published defamatory statements on the website.  The *Hy Cite* Court noted that for jurisdiction to attach, the contacts between the defendant and the forum state may not be "random, isolated, or fortuitous."  *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).  Instead, "the sufficiency of the contacts is measured by the defendant's purposeful acts."  *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir. 1994).  The minimum contacts with the forum state must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state, thereby invoking the protections and benefits of the forum state's law.  *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 *(1958); International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir.2002).  The *Hy Cite* court held:

> Plaintiff fails to allege any facts demonstrating that defendant expressly aimed its activities at Wisconsin.  The facts of record do not indicate that defendant creates the text of the consumer complaints.  It is the *consumers* that are using plaintiffs name and making allegedly defamatory statements.  If defendant is not creating the text, then defendant is not purposefully directing its activities toward any particular company or state.

297 F.Supp.2d at 1165-1166.

---

[2]This website is the subject of multiple lawsuits because it is a forum in which consumers complain about deceptive business practices, prompting businesses to threaten and file lawsuits to try to force the removal of negative information.  This is an additional reason that this matter should be dismissed.  If Xcentric is subject to jurisdiction in every state where the website it viewed, the financial hardship would be extreme.

Here, as in *Hy Cite,* the evidence is that consumers wrote the complaints on the website, not Xcentric. Thus, Magedson is not purposefully directing his activities toward any particular company or state.

The *Hy Cite* court further noted that the plaintiff failed to show that it suffered the brunt of its injury in Wisconsin. The court rejected the contention that just because plaintiff has its principal place of business in a state, its injury is in that state:

> When an injured party is an individual, it is reasonable to infer that the brunt of the injury will be felt in the state in which he or she resides. This is not necessarily the case when the injured party is a corporation. "A corporation does not suffer harm in a particular geographic location in the same sense that an individual does." *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir.l993). *Calder,* 465 U.S. at 789, 104 S. Ct. 1482, still requires that the harm be particularized to the forum state, *see Janmark* 132 F.3d at 1202. Even if a corporation has its principal place of business in the forum state, it does not follow necessarily that it makes more sales in that state than any other or that harm to its reputation will be felt more strongly in that state.

297 F.Supp.2d at 1167.

Here, as in *Hy Cite,* Plaintiff must make a showing that it suffered the brunt of its injury in Illinois. Plaintiff's own Complaint, however, states that it has had "nationwide success." (Complaint, page 4). It cannot show that it suffered the brunt of its injury in Illinois.

Further, the Illinois state court in *Steven G. English v. Mary Zwiefelhofer, Xcentric Ventures, et al.,* Case No. 04 LA 190 (McHenry County, Illinois) ruled that there is no jurisdiction in Illinois over Xcentric Ventures, LLC in a matter in which an Illinois lawyer sued for defamation as a result of a complaint posted on the Rip-off Report about the doctor. (See Exhibit B).

Additionally, Ohio and Florida courts have declined to exercise jurisdiction over the operator of Rip-off Report in unpublished decisions.

## VI.    **CONCLUSION**

For all of the foregoing reasons, Defendant Magedson requests that this case be dismissed

because this Court lacks jurisdiction over him.

EDWARD MAGEDSON

By: _____

One of His Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

JKB/cic/364035

5634-2-51

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RI-POFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle ) ) ) ) |
| Defendants. | ) |

## AFFIDAVIT OF EDWARD MAGEDSON

STATE OF ARIZONA )
        )  ss.
County of Maricopa )

  Edward Magedson, being first duly sworn upon his oath, deposes and says:

  1.  I reside in the State of Arizona.

  2.  I do not own any assets in Illinois.

  3.  I do not do business with or within the State of Illinois.

  4.  I am the Manager of Xcentric Ventures, LLC.



EXHIBIT
A

10297-1/MCS/DAG/486232_v1

5.      Xcentric Ventures, LLC, operates a website, "The Rip-Off Report," located at www.badbusinessbureau.com and at www.ripoffreport.com.

6.      The website is hosted by Xcentric and the servers are located in Arizona.

7.      I did not author any report or any title of any report posted on Rip-off Report about George S. May International, nor did I request or direct anyone else to author such reports.

8.      There are over 146,300 reports posted on Rip-off Report, with over 900 thousand submissions within those reports.

9.      There are over four hundred reports and rebuttals posted everyday and I do not and cannot personally monitor all postings.

10.     To my recollection, I never even heard of George S. May until this dispute arose.

DATED this _____3_____ day of August, 2005.

_____
Edward Magedson

SUBSCRIBED and SWORN to before me this _____3_____ day of August, 2005.

_____
Edward Magedson

MaryAnn Fox, Notary

My Commission Expires:

2/19/2009

**MARYANN FOX**
Notary Public - Arizona
Maricopa County
My Commission Expires
February 19, 2009

2

1    STATE OF ILLINOIS   )
                         ) SS:
2    COUNTY OF McHENRY   )

3

4            IN THE NINETEENTH JUDICIAL CIRCUIT
                McHENRY COUNTY, ILLINOIS

5

6    Steven G. English,          )
          Plaintiff;             )
7                                )
               vs.               )        04 LA 190
8                                )
     Mary Zwiefelhofer, et. al., )
9         Defendants.            )

10           EXCERPT OF REPORT OF <u>ELECTRONICALLY</u>
11   <u>RECORDED</u> PROCEEDINGS had at the hearing
     of the above-entitled cause, before the Honorable
12   Michael T. Caldwell, Judge of said Court, on
     Wednesday, the 2nd day of February, A.D. 2005.

13

14           APPEARANCES:

15              Baudin & Baudin,
                By:  Mr. W. Randal Baudin,
16                   representing the Plaintiff;

17              Ms. Sara Cook,
                     representing the defendant,
18                   Mary Zwiefelhofer;

19              Ms. Katherine Haennicke,
                     appearance (Unintelligible).

20

21
     Sandra K. Gardner, C.S.R., 084-001984
22   Official Court Reporter
     2200 North Seminary Avenue
23   Woodstock, IL 60098

24

EXHIBIT
B

1    RESUMING:

2

3        THE COURT:  The motion of Xcentric Ventures,

4    L.L.C., to dismiss for lack of personal jurisdiction

5    is allowed.

6            The court finds there are not the requisite

7    minimum contacts with the State of Illinois to

8    (Unintelligible) jurisdiction and that Internet

9    access in and of itself alone is not sufficient to do

10   that (Unintelligible) specific finding I want in the

11   order.

12           Second amended complaint is stricken.

13           I notice that when you repleaded the

14   complaint, you repleaded also a cause of action

15   alleging or requesting a preliminary injunction and a

16   permanent injunction.  I've already ruled on that;

17   haven't I?

18       MR. BAUDIN:  At the time we were going to have

19   one but we were going to notice it up for

20   (Unintelligible) --

21       THE COURT:  Didn't I deny that on its merits?

22       MR. BAUDIN:  Yeah, we asked for a temporary

23   restraining order hearing --

24       THE COURT:  And I denied that on its merits.

                              2

1          MR. BAUDIN:  Yes.

2          THE COURT:  The reason I denied it was?

3          MR. BAUDIN:  Well, I don't --

4          THE COURT:  Because money isn't (Unintelligible)

5      -- you have an adequate remedy at law.  I'm not going

6      to let you refile that.

7          MR. BAUDIN:  Okay.

8          THE COURT:  I'll let you refile it, say a third

9      amended complaint.

10             I'm going to deny your motion, Ms. Cook, as

11     to the allegations with respect to -- let me be

12     specific about this -- ripoff, dishonest and

13     unethical behavior.

14             It is allowed as to the allegations -- you

15     already contest that -- it's allowed as to the

16     allegations regarding complaints to the A.R.D.C.,

17     which, of course -- they're exempt, they're

18     privilege, and complaint to the Better Business

19     Bureau, which, likewise, falls in the same category.

20             I believe, however, whether or not those

21     can be read -- even read innocently is a sole

22     question of fact.

23             You will be required then to answer that

24     complaint within twenty-eight days after it's filed.

1       Now, where are we with the rest of this

2   case?

3       MR. BAUDIN:  Basically that's where we are.

4   We've had some communications with both

5   (Unintelligible).

6       THE COURT:  Set it then for a sixty-day status.

7   Make it on April 6.

8       MR. BAUDIN:  Judge, would it be appropriate,

9   because you read very precise words here, we don't

10  want to get it wrong.  Maybe we should order the

11  transcript of that, which won't be very expensive.

12  Take maybe, you know, a week or something to get it.

13  Then we can have our orders comply with that.  Would

14  that be possible?

15      THE COURT:  That's fine.

16      MR. BAUDIN:  If I come back, if that helps enter

17  it --

18      MS. HAENNICKE:  I would also just like for

19  clarification, we represent (Unintelligible) and Ed

20  Magedson.

21      THE COURT:  That's right.  That's allowed as to

22  both of them.

23      MS. HAENNICKE:  Thank you.

24      MS. COOK:  Your Honor, I have one clarifying

1   question.  You identified specific comments in this

2   complaint that you are not going to grant my motion.

3   What about the balance of the comments?  Are they all

4   still in or --

5      THE COURT:  They're all still in and they're all

6   going to have to be in because they're going to have

7   to be in simply because you're using the balance of

8   the comments as a defense.

9      MS. COOK:  Okay.  That's fine.  I just wanted to

10  make sure we were --

11     MR. BAUDIN:  May we ask --

12     THE COURT:  You want a finding?

13     MS. COOK:  Pardon?

14     THE COURT:  Do you want a finding?

15     MS. COOK:  Do I want a finding --

16     THE COURT:  Do you want an appealable finding?

17     MS. COOK:  Yes, why don't we put that in there.

18  That would be good.

19     THE COURT:  At this juncture because I'm

20  essentially (Unintelligible) the Internet provider.

21     MR. BAUDIN:  May I ask one other thing?  If

22  maybe we could come back in ten days or fourteen

23  days, I'll --

24     THE COURT:  Prepare an order.

5

1          MR. BAUDIN:  To prepare an order.  Then we'll

2     get the transcript.

3          THE COURT:  All right.  Continue the case then

4     -- put in the status date of April 6 but also

5     continue it to the 16th.

6          MS. COOK:  Okay.  Great.

7          MR. BAUDIN:  Both at nine?

8          THE COURT:  Yes.

9          MR. BAUDIN:  Thank you.

10         MS. COOK:  Thank you, Judge.

11         MS. HAENNICKE:  Thank you.

12

13                              (Which was and is a partial

14                              Report of Electornically

15                              Recorded Proceedings had at

16                              the hearing of said cause.)

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS    )
                          )    SS:
2    COUNTY OF McHENRY    )

3              IN THE NINETEENTH JUDICIAL CIRCUIT
4                   McHENRY COUNTY, ILLINOIS

5

6              I, Sandra Gardner, an Official Court
     Reporter for the Circuit Court of McHenry County,
7    Nineteenth Judicial Circuit of Illinois, do hereby
     certify that, to the best of my ability, the
8    foregoing is a true and accurate transcript prepared
     by me of the electronically recorded testimony and
9    proceedings in the above-entitled cause, which
     recording contained a certification in accordance
10   with rule or administrative order.

11

12                      _____ CSR
                        Sandra Gardner, C.S.R.
13                      Official Court Reporter
                        084-001984

14

15   Dated this ___3___ day
     of ____Feb_____, 2005.

16

17

18

19

20

21

22

23

24

                                7

1   STATE OF ILLINOIS   )
                        )   SS:
2   COUNTY OF McHENRY   )

3          IN THE NINETEENTH JUDICIAL CIRCUIT
4                  McHENRY COUNTY, ILLINOIS

5          AND, FORASMUCH, THEREFORE, as the matters
6   and things herein before set forth do not otherwise
    appear on the record, the petitioner tenders this,
7   Report of Proceedings, and prays that the same may
    be signed and sealed by the Judge of this Court
8   before whom said cause was heard.
           WHICH IS, ACCORDINGLY, DONE on the day and
9   date of the entry of the Decree herein.

10

11                          _____
                            Judge of the 19th Judicial
12                          Circuit of Illinois

13
    Dated this _____ day
14  of _____, 20____.

15

16

17

18

19

20

21

22

23

24

                            8