**FILED**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP  9 2005
SEP 9 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case Number:  04-C-6018 |
| -vs- | ) ) | Judge Norgle |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To:     James K. Borcia, Esq.
        David O. Yuen, Esq.
        Tressler, Soderstrom, Maloney & Priess
        233 South Wacker Drive, 22nd Floor
        Chicago, Illinois  60606-6308

**PLEASE TAKE NOTICE** that on September 9, 2005, Plaintiff George S. May International Company, by and through its attorneys Seyfarth Shaw LLP, filed with the United States District Court, Northern District of Illinois, Eastern Division, the **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE COURT'S JUNE 9, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS UNDER FRCP 37(b)**, a copy of which is attached hereto and hereby served upon you.

GEORGE S. MAY INTERNATIONAL COMPANY

By: _____
            One of Its Attorneys

Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
Seyfarth Shaw LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603
(312) 346-8000

CHI 10888692.1

## CERTIFICATE OF SERVICE

I, Bart A. Lazar, hereby certify that a copy of the **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE COURT'S JUNE 9, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS UNDER FRCP 37(b)** was served on the following opposing counsel via messenger delivery, on September 9, 2005:

> James K. Borcia, Esq.
> David O. Yuen, Esq.
> Tressler, Soderstrom, Maloney & Priess
> 233 South Wacker Drive, 22nd Floor
> Chicago, IL  60606-6308

Bart A. Lazar

CH1 10888692.1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

SEP - 9 2005
SEP 9 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

GEORGE S. MAY
INTERNATIONAL COMPANY,           )
                                 )
         Plaintiff,              )          Case Number 04-C-6018
                                 )
    -vs-                         )          Judge Norgle
                                 )
XCENTRIC VENTURES, LLC,          )
RIP-OFF REPORT.COM               )
BADBUSINESSBUREAU.COM,           )
ED MAGEDSON, VARIOUS             )
JOHN DOES, JANE DOES AND         )
ABC COMPANIES,                   )
                                 )
         Defendants.             )

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE COURT'S JUNE 9, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS UNDER FRCP 37(b)

Defendants' own response brief, along with their Supplement to Defendants' Response to George S. May International Company's Motion to Enforce Court's June 9, 2005 Order Granting Plaintiff's Motion to Compel and Motion for Sanctions Under FRCP 37(b), confirm the need for sanctions here. Defendants' filings demonstrate that they have knowingly and consistently failed to produce (and, in some cases, even make reasonable efforts to obtain in order to produce) the discovery that they were ordered to provide by July 7, 2005, and have still not provided discovery as ordered to by this Court. Their explanations for their failure to produce the discovery have no merit.

## SANCTIONS OF DENIAL OF DEFENDANTS' MOTIONS, COSTS AND FEES ARE APPROPRIATE

Under FRCP 37(b) this Court has a wide amount of discretion to fashion an appropriate remedy for Defendants' failure to comply with discovery and this Court's Order to Compel.

Wright & Miller, Federal Practice and Procedure: Civil § 2289 (1994). At a minimum, George S. May is entitled to its reasonable costs and attorney's fees in pursuing its motion to compel and this motion. FRCP 37(b)(2) (costs and fees in enforcing order to compel are mandatory). In addition, this Court has the discretion to fashion an appropriate sanction that a "reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." In Re Golant, 239 F.3d 931, 937 (7th Cir. 2001).

In the instant case, as discussed below, Defendants have, at least knowingly, failed to comply with discovery related to Defendants' motions to dismiss for want of personal jurisdiction. Therefore, an appropriately tailored sanction ought to relate to those motions. Where a defendant has put the issue of jurisdiction in question and then blocks the reasonable attempt of the plaintiff to obtain discovery regarding jurisdiction an appropriate sanction is to deny the defendant's motion. Ins. Corp. of Ireland v. Compagnie Des Bauxites, 456 U.S. 694, 709, 102 S.Ct. 2099, 2107-2108 (1982) (upholding sanction of denying motion to dismiss for lack of personal jurisdiction as "just" in light of blocking reasonable attempts to obtain discovery on personal jurisdiction). Therefore, while George S. May believes it has obtained sufficient facts to demonstrate that there is jurisdiction over the Defendants, an appropriate sanction would entail 1) denial of Defendants' Motions to Dismiss; 2) reimbursement of reasonable costs and expenses associated with the motion to compel and this motion; and 3) reimbursement of reasonable costs and expenses associated with responding to Defendants' Motions to Dismiss.

1.  **Plaintiff's Counsel has been Available and Has Bent Over Backwards to Achieve Compliance**

In their response, Defendants attempt to claim the unavailability of Plaintiff's counsel impacted on compliance. Such a claim is specious. Plaintiff's counsel has consistently been

2

available, and has had multiple discussions with Defendants' Arizona[1] counsel over the telephone, over e-mail, and via three letters dated July 21, 2005, August 8, 2005, and August 11, 2005, all in an attempt to bring Defendants into compliance. *See* Plaintiff's Motion to Enforce Court's June 9, 2005 Order Granting Plaintiff's Motion to Compel and Motion for Sanctions Under FRCP 37(b) at Exhibits G, H, and I (hereinafter "Plaintiff's Motion to Enforce"), and Exhibit 1 as attached to this reply brief. For example, Plaintiff's counsel has sent Defendants' Arizona counsel copies of its interrogatories and document requests via e-mail, copies of the particular postings Plaintiff seeks information on, and has bent over backwards in outlining and specifying the information that Defendants did not produce in violation of the Court's Order. *Id.* Even after filing its motion, Plaintiff's counsel sent Defendants' counsel a letter on August 11, 2005, again outlining the discovery that was still outstanding and attempting to resolve discovery issues without involving the Court. *See* Exhibit 1.

Defendants do not accurately recount the circumstances surrounding Plaintiff's counsel's conversation with Defendants' Arizona counsel, Maria Crimi Speth, on the afternoon of August 10, 2005. This conversation did, in fact, occur; however, it was not productive because Defendants were still refusing to comply with the Court's Order. Defendants' counsel continued to argue positions which are not well grounded in law. For example, just as Defendants argued that shareholder and employee names and addresses and PayPal records of sales were not relevant, Ms. Speth continued to argue that the marketing agreement between Defendants and involving Google was not relevant to jurisdiction, even though advertising is undoubtedly

---

[1] Plaintiff's counsel has communicated with Defendants' Arizona counsel in an attempt to resolve this matter despite the fact that Defendants' Arizona counsel **still** has not filed an appearance in this matter. Mr. Gingras' filing of his declaration is contempt of Court in and of itself. See LR 83.16 (e).

3

commercial and the level of commercial activity on the websites is clearly relevant to resolving the jurisdictional issues raised by Defendants. Again, it took the filing of this motion for Defendants to produce the subcontractor agreement with Ed Nusbaum,[2] which appears to involve Google. Nevertheless, as Plaintiff pointed out to Defendants' counsel in its letter dated August 11, 2005, this agreement does not involve a company as Defendants indicated in their response to Plaintiff's interrogatory 10. *See* Plaintiff's Motion to Compel at Exhibit A.

Despite Plaintiff's counsel's best efforts, Defendants have not come close to fully complying with the Court's Order, as they have admitted in their response brief. At a minimum, Defendants and Defendants' counsel ought to be responsible for Plaintiff's reasonable fees and costs associated with attempting to bring them into compliance with discovery and this Court's Order.

**2.     Defendants and/or Counsel Have Knowingly Delayed and Blocked Production of Responsive Discovery Which Conclusively Defeats Defendants' Motions to Dismiss**

To the extent that Defendants have produced discovery, every production has been (1) late, and (2) issued primarily in response to Plaintiff's counsel directing Defendants' counsel to obvious deficiencies in their production.[3] It is somewhat amazing to report that some of the most telling discovery -- namely the 30 to 40 e-mails between Defendants and Illinois residents showing that they entered into for-profit arrangements with Illinois law firms to refer individuals

---

[2]     Of course, the fact that this document was produced so late precluded Plaintiff from obtaining discovery from Mr. Nusbaum in time to respond to Defendants' Motions. Nevertheless, Plaintiff believes sufficient information has been produced to conclusively demonstrate that jurisdiction is proper in this District.

[3]     Although Defendants did produce some discovery to Plaintiff via e-mail on July 7, 2005, Plaintiff did not received signed copies of the discovery they produced until July 19, 2005.

interested in filing lawsuits against companies that were the subject of various "ripoff reports"-- were not produced to Plaintiff until after Plaintiff's counsel told Defendants' counsel that it was filing the instant motion, August 10, 2005. *See* Defendants' Response to Motion to Enforce at Exhibit F. There is no legitimate excuse for withholding these extremely relevant documents **which, in and of themselves, demonstrate Defendants' motions to dismiss to be unfounded.** These documents should have been produced from the get-go.

Even as of September 6, 2005, the date Defendants filed their Supplement to Defendants' Response attaching records of book sales via Defendants' websites, www.ripoffreport.com and www.businessbureau.com, from the past two years, Defendants were still producing discovery that should have been produced on or before July 7, 2005. This is particularly egregious because this payment information shows that Defendants made fifty-seven book sales to Illinois residents in the past twenty months, which, again provides evidence which is clearly relevant to the issue of jurisdiction and aids in defeating Defendants' motions. Defendants were well aware that Plaintiff's response was due on September 2, 2005, as the parties had agreed to a briefing schedule, yet Defendants did not file their supplemental discovery until September 6, 2005. Additionally, this supplemental discovery showing the fifty-seven sales to Illinois residents was never actually produced to Plaintiff directly, and Plaintiff only learned about this discovery when it was filed by Defendants as a supplement to Defendants' Response to Plaintiff's Motion to Enforce. This information was clearly available to Defendants, yet they failed to disclose it to Plaintiff's counsel even though it was in their possession before Plaintiff filed its brief. Again, for this reason alone, Plaintiff's motion for sanctions should be granted.

Indeed, Defendants' own counsel admitted to this Court that only one commercial transaction within the State of Illinois would doom Defendants' Motions to Dismiss. *See*

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss at Exhibit 2. Yet, the discovery that Defendants and/or their counsel knowingly withheld shows dozens of commercial transactions and attempted commercial transactions with Illinois residents, such as the payment records that Defendants filed in their Supplemental Response on September 6, 2005 showing fifty-seven book sales to residents over the last twenty months. Defendants and their counsel should be held accountable for Plaintiff's and this Court's needless expenditure of time, energy and resources to resolve issues that Defendants well knew ought not be in legitimate dispute, and Plaintiff should be granted its fees and costs in obtaining this discovery and in responding to Defendants' Motions to Dismiss, which this late-produced discovery has shown to be unfounded.

Furthermore, based on what has been produced to date by Defendants, it is also clear that Defendants' responses to Plaintiff's interrogatories and document requests were false. For example, in their initial responses to Plaintiff's interrogatories and document requests, Defendants answered that "XCentric Ventures has checked its records back to 2003 and can find no contributions or donations from Illinois. Additionally, Mr. Magedson does not recall receiving any donations from Illinois." *See* Plaintiff's Motion to Compel at Exhibit A, Interrogatory 5. This answer has been proven to be 100% false, because after this Court granted Plaintiff's motion to compel, Defendants' produced payment histories for both donations and book sales. Defendants, when asked to produce e-mails to or from persons, corporations, or other entities located in Illinois, objected, answering "[i]t is impossible to answer this request because Defendants do not know the location of people or entities who send emails." Plaintiff's Motion to Compel at Exhibit A, document request 2(b). Yet, when Defendants finally produced e-mails the evening of August 10, 2005 to Plaintiff, that production showed that in August of 2004 Defendants were discussing a referral arrangement with the law firm of Blim & Edelson in

6

Chicago, Illinois. *See* Defendant's Response to Plaintiff's Motion to Enforce at Exhibit F. Additionally, these e-mails showed that Defendants' were referring consumers to the Lakin Law Firm in February of 2005. *Id.* Again, Defendants' prior response to Plaintiff's discovery request as false, because Defendants could and did locate e-mails from Illinois residents, and in fact have corresponded regularly with Illinois residents, have referred individuals to law firms in Illinois, and have entered into or sought to enter into referral arrangements with law firms for a profit. As a result of Defendants' consistent failure to fully comply with discovery, and indeed, their false responses, the instant motion should be granted.

### 3.    Defendants Still Knowingly Withhold Relevant Discovery

Defendants still have not produced discovery as ordered by the Court. In addition to Defendants' constant delays in producing discovery as ordered to by the Court, Defendant Ed Magedson filed, on August 5, 2005, another motion to dismiss based on lack of jurisdiction. In both Defendants' motions, Defendants, incredulously, devote only one paragraph to the facts relevant to their argument that this Court lacks jurisdiction. Yet, at the time Defendant Ed Magedson filed the motion to dismiss, he had clearly entered into or sought to enter into referral agreements with Illinois law firms in which those firms would pay him a fee for referring individuals to those firms; had received payments from 11 Illinois residents supporting the operations of www.badbusinessbureau.com in the last 18 months; had numerous correspondence with Illinois residents; and had sold fifty-seven books to individuals in the State of Illinois in the last 20 months. *See* Defendants' Response at Exhibit F, and Supplement to Defendants' Response attached here as Exhibit 2.

All of this information showing Defendants' minimum contacts with the State of Illinois clearly existed at the time Defendant Ed Magedson filed his brief, but was withheld from responses to Plaintiff's discovery. Despite its obvious relevance to the jurisdictional issues

raised by Defendants, Defendants did not address this information at all in the fact section of their brief. Moreover, as discussed above, Defendants just recently filed, as of September 6, 2005, payment information showing that Defendants sold books via their websites to fifty-seven Illinois residents in the last twenty months. *See* Exhibit 2. This payment information is relevant to the issue of jurisdiction and was available to Defendants before a briefing schedule was set on Ed Magedson's motion to dismiss. Although Defendants were well aware that Plaintiff's Response in Opposition to Defendants' Motions to Dismiss was due on September 2, 2005 -- as the parties have agreed to a briefing schedule -- Defendants chose to file the Supplement only <u>after</u> Plaintiff had filed its brief in opposition to Ed Magedson's Motion to Dismiss.

Additionally, and contrary to Defendants' suggestion in their Supplemental Response attaching the payment records that the instant motion is moot, Defendants have also not produced all of the information as required by the Court. Defendants have not produced all of the information identifying the posters of the specific reports containing false, defamatory, and harmful information as Plaintiff requested. Some of the information has been cut off by Defendants' computers or otherwise, some of the addresses are incomplete, and Defendants have shown the ability to provide e-mail addresses and telephone numbers (with area codes that would help identify the origin of the posters) but have not provided that information to Plaintiff. Plaintiff has taken the time to point this out to Defendants in Plaintiff's letters, but Defendants have still not produced this information. Although Defendants claim that they sent Plaintiff's counsel an e-mail supplementing some of their discovery on July 28, 2005, as Plaintiff's counsel has told Defendants' counsel, she never received that e-mail, and the alleged e-mail was apparently never re-sent. *See* Exhibit 1.

Furthermore, Defendants have only produced e-mails from approximately August 2004 through May of June of 2005. Plaintiff requested correspondence back to January of 2000, and nonetheless expected to receive more correspondence than what was provided by Defendants. Initially, Defendants only produced one month of e-mails on July 7, 2005. When Plaintiff pointed out that one month of e-mails was inadequate, and only after the instant motion was filed, Defendants' produced e-mails dating from August 2004 to May of June of 2005. Contrary to Defendants' brief, these supplemental e-mails were not produced until the evening of August 10, 2005. Defendants have not offered any explanation why their records only go back to August 2004. Although they claim that it took a lot of time to search for the e-mails, it is apparent that they did not start searching for the e-mails until August of 2005, over two months after this Court ordered Defendants to produce discovery. *See* Exhibit 3.

Moreover, Defendants still refuse to disclose the identities of their employees. On that point, Plaintiff's counsel reminded Defendants' counsel that the identity of the employees was clearly relevant to jurisdiction. In fact, the Court expressly stated, in the hearing on the Motion to Compel:

> If there is jurisdiction over the corporation, the Court has jurisdiction of the people who make up the corporation to a certain extent. Now, [siq] I used General Motors as probably a poor example. But if you are saying that Eccentric Ventures [siq] has ten employees, just to throughout [siq] a number, certainly, it would not be burdensome to disclose the names of those ten employees who may or may not also be officers and directors but who might be the subject of further inquiry to include, for example, depositions.

*See* Plaintiff's Motion to Enforce, at Exhibit C. Yet, Plaintiff's counsel's statements and this Court's Order had no effect on Defendants.

XCentric Ventures, LLC has nine employees. Clearly, it would not be burdensome to identify them. The discovery produced by Defendants to date indicates that these employees are

in fact paid by XCentric Ventures, LLC. *See* Plaintiff's Motion to Enforce at Exhibit B. The commercial nature of the website is clearly relevant to jurisdiction.

Plaintiff's also asked for whatever hosting agreement or correspondence Defendants have with Sterling Network Services, a company that had advertised an Illinois location. Although in response to the filing of this motion, Defendants' produced a subcontractor agreement with Ed Nusbaum, an individual, Defendants' response to Plaintiff's interrogatory 10 indicated that they had an agreement with a company to contract with Google to conduct advertising on Defendants' websites. In light of the fact that Defendants have consistently not complied with the Court's order compelling them to produce discovery, or have produced information well after the July 7, 2005 deadline passed, or have been inconsistent in their responses, Plaintiff asked Defendants to produce an affidavit attesting to their claims that information or documents did not exist and the reasons why that was so. Defendants have not done so.

Finally, as Plaintiff pointed out in its motion, Defendants have taken the narrow view that they only have to produce the information Plaintiff asked for in its motion to compel. In its motion to compel, Plaintiff broadly categorized what it was seeking for the convenience of the Court. Plaintiff also asked, in its initial discovery requests, for tax returns and telephone records for Defendants. Given that Defendants run a for-profit company, the amount of income Defendants receive is relevant to the extent of its commercial activity. Telephone records showing contact with Illinois residents are also relevant to the jurisdictional issues raised by Defendants. Defendants objected to those requests and have not produced any of that information. Even under Defendants' narrow interpretation of the motion to compel, however, Defendants still have not provided all of the information Plaintiff is entitled to as outlined above.

### 4. Defendants' Excuses Regarding Seeking a Protective Order Are Not Well-Grounded

Defendants have attempted to excuse their lack of compliance with this Court's order by claiming, erroneously, that Plaintiff will not agree to a protective order. First, it must be pointed out that Defendants have never filed a motion seeking a protective order, and it is Defendants' burden under FRCP 26 (c) to do so. Nonetheless, via telephone conversations with Defendants' counsel David Gingras at the beginning of July (after the Motion to Compel had already been granted), Plaintiff's counsel agreed to maintain the information between George S. May and its attorneys, and to use that information solely for the purposes of the instant litigation. Subsequent to those conversations, Mr. Gingras indicated that he would draft a protective order reflecting this and forwarded it to Plaintiff's counsel.

The draft protective order Mr. Gingras ultimately sent appeared to be more appropriate for a trade secrets case than the instant case. Plaintiff's counsel suggested to Mr.Gingras that he draft something more suited to the case, but he never did. Mr. Gingras' draft protective order, however, did not indicate any provision for attorneys' eyes-only documents, which was only raised by Defendants after the July 7, 2005 deadline passed.

Defendants' reasons for raising the attorneys' eyes-only provision are completely baseless and not made in good faith. First, the letters Defendants attached to their response brief have absolutely nothing to do with the instant litigation, and appear to involve some company in Florida that is completely unrelated to George S. May. Defendants, who appear to be in constant litigation with numerous parties, have absolutely no support for their assumption that George S. May or its counsel would ever send threatening notes to Defendants or anyone associated with Defendants, including its counsel, Maria Crimi Speth, or its employees. While it is unfortunate that Defendants have received such letters, their insinuation that George S. May or its counsel

11

would threaten Defendants is groundless at best. There is also no evidence that the posting Ed Magedson discovered on the Internet bears any relation to this case, or was posted by anyone from George S. May.

Even in spite of Defendants' baseless accusations, the fact that Defendants are judicially required to produce the information whether or not a protective order exists, and that counsel has agreed to maintain the information as if a protective order was in place, to top it off, Plaintiff has offered to agree to a protective order which, with respect to the information regarding Defendants' employees, would designate a single representative from George S. May to review the employees' information who would agree to not disclose that information to others in the company. An attorneys' eyes-only provision for any of Defendants' discovery is simply untenable. First, someone's identity is not normally the subject of an attorneys' eyes-only provision anyway. Second, Plaintiff needs to be able to review this information with its counsel, and to determine if any of these individuals were former employees of George S. May. Plaintiff's counsel has already determined that one of Defendants' customers is a former high-level executive of Plaintiff who now operates a competitive business, and therefore has a motive to assist Defendants in posting false information about Plaintiff. In spite of the fact that Plaintiff did not have to compromise, and Defendants have been order to comply by this Court, Defendants refused Plaintiff's reasonable compromise.

## CONCLUSION

Defendants were and are required by Federal Rule of Civil Procedure 26(g), to make a reasonable inquiry to comply with discovery, and by signing discovery requests. By signing the discovery responses, Defendants and their counsel certify that "to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made." *See* FRCP 26(g)(1). Defendants have consistently violated this rule. The clear pattern in this case is for Defendants to defy orders of this Court and their obligations under the Federal Rules of Civil Procedure. Defendants have consistently played "hide-the-ball" with Plaintiff when it comes to complying with their obligation to provide discovery in an attempt to block areas of inquiry that would hurt Defendants' legal positions in this case. Based on (1) Defendants' false responses to Plaintiff's initial discovery; (2) the constant delays and lateness in receiving discovery from Defendants even after they were ordered to produce discovery on July 7, 2005, including Defendants' filing of supplemental payment records on September 6, 2005 -- after Plaintiff's response to Defendants' motions to dismiss was filed; and (3) Defendants' continued non-compliance with the Court's June 9, 2005 Order, Defendants appear to be making every effort to hinder Plaintiff's ability to successfully refute Defendants' arguments. These efforts have gone too far.

For these reasons, Plaintiff respectfully requests that this Court order Defendants to comply with the Court's June 9, 2005 Order and finally produce, by a date certain, all of the information Plaintiff is entitled to. In addition, as is warranted by Defendants' conduct in this case, Plaintiff asks that the Court grant Plaintiff's motion for sanctions under FRCP 37(b) and find, as an appropriate sanction, that this Court has jurisdiction over the Defendants. Finally, it is reasonable and appropriate that this Court award Plaintiff its reasonable fees and costs associated

with its Motion to Compel, this Motion and its response to Defendants' Motions to Dismiss.

Plaintiff also asks for any other relief as this Court deems appropriate.

**DATED:  September 9, 2005**        Respectfully submitted,

GEORGE S. MAY INTERNATIONAL COMPANY

By: _____

One of Its Attorneys

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 E. Monroe Street, Suite 4200
Chicago, IL  60603
Telephone:      (312) 346-8000
Facsimile:       (312) 269-8869

14

# EXHIBIT 1

# SEYFARTH
### ATTORNEYS SHAW LLP

55 East Monroe Street

Suite 4200

Chicago, IL 60603-5803

312-346-8000

fax 312-269-8869

www.seyfarth.com

Writer's direct phone
(312) 269-8951

Writer's e-mail
rkindstrand@seyfarth.com

August 11, 2005

**VIA FACSIMILE**

**312-627-1717**

James K. Borcia, Esq.
David O. Yuen, Esq.
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6308

**VIA FACSIMILE**

**602-248-0522**

Maria Crimi Speth, Esq.
David Gingras, Esq.
Jaburg & Wilk, P.C.
Great American Tower
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

**Re:    Response to letter dated August 10, 2005, regarding remaining discovery issues;**
***George S. May International Company v. XCentric Ventures, LLC, et al,* Case No.**
**04-C-6018, currently pending in the United States District Court, Northern**
**District of Illinois**

Dear Ms. Speth:

This letter is written in response to your letter dated August 10, 2005, sent via facsimile to our offices.

First, Defendants have not provided the email addresses and other contact information for the rebuttals, updates, and other postings Plaintiff identified. The discovery produced to-date by Defendants, specifically an email from the "EDitor," indicates that Defendants have the capability to provide this information, but have not yet produced it. For some of the postings, rebuttals, and updates, Defendants have provided incomplete IP addresses. Please produce this information to Plaintiff.

With respect to the email that you indicated Mr. Gingras sent to me on July 28, 2005, please be advised that I never received that email. The last email that I received from David Gingras was dated July 27, 2005. Based on the email you attached to your letter, authored by David Gingras and related to the posting referencing child pornography, it is also clear that, while Defendants have phone numbers for the authors of the reports, rebuttals, and updates, Defendants have not provided all of that information to Plaintiff to date. Please provided the email addresses for the rebuttals, as well as the contact information such as phone numbers that Defendants have not yet provided to

BRUSSELS    WASHINGTON, D.C.    SAN FRANCISCO    SACRAMENTO    NEW YORK    LOS ANGELES    HOUSTON    CHICAGO    BOSTON    ATLANTA

SEYFARTH
ATTORNEYS SHAW LLP

James K. Borcia, Esq.
Maria Crimi Speth, Esq.
August 11, 2005
Page 2

Plaintiff for the reports, rebuttals, updates, and/or other postings for the URLs identified in interrogatories 7 and 8.

Second, with respect to the emails that you sent to me yesterday evincing Defendants' contacts with the state of Illinois, are Defendants representing that this is all of the correspondence Defendants have? My brief review of the emails indicates that you have only sent emails from approximately the end of August 2004 through May or June of 2005. Defendants have offered different explanations for why they cannot produce all of the correspondence. One explanation was that no other correspondence existed, and/or that a server crash erased any other emails. Another explanation, based on your letter, is that it took six hours to search the records, yet that doesn't explain why this latest production is also this time-limited. As requested by Plaintiff in the letter dated August 8, 2005, if Defendants are representing to Plaintiff that this is all the correspondence that Defendants have, please attest to that in an affidavit and explain to Plaintiff why that is the case.

Third, with respect to the marketing agreement, as Plaintiff set forth in its motion, Defendants' marketing activities are clearly relevant to the issue of jurisdiction. The level of commercial activity on a website certainly goes to the issue of whether this Court has jurisdiction over Defendants. That said, who is "Ed Nusbaum," the signatory of the agreement that Defendants produced? In Defendants' response to Plaintiff's interrogatory 10, Defendants indicated that they contracted with another *company* who did business with Google to place ads on the website. In the agreement that Defendants finally produced, there is no indication of a company being involved. Are Defendants representing that this in the only agreement they have regarding marketing? If that is the case, please attest to that in an affidavit and explain to Plaintiff why that is the case, and please explain who is "Ed Nusbaum."

Fourth, with respect to records of donations, payments, or sales, Plaintiff specifically requested records since January of 2000. Again, are Defendants representing that this is all of the records that they have? If this is the case, Plaintiff requests that Defendants attest to that in an affidavit and explain why this is so.

Fifth, with respect to the issue of producing the names and contact information for the employees, the Court ruled that the identity and contact information for the employees was subject to production. Their activities on behalf of XCentric Ventures, LLC are clearly relevant to the issue of jurisdiction.

In your letter, you attached a posting which Defendants claim or imply originated from Plaintiff, and Defendants claim that this posting warrants that Defendants not fully disclose the identity of the employees. With respect to the posting you attached, Defendants have offered no proof that the posting originated from my client, and Defendants have no good-faith basis for assuming that to be the case. My understanding, based in part on your representations to me and the emails that you sent to me last night, is that Defendants are being sued in multiple states, so Defendants have no basis for their assumption that our client was the source of that posting.


**SEYFARTH SHAW** LLP
ATTORNEYS

James K. Borcia, Esq.
Maria Crimi Speth, Esq.
August 11, 2005
Page 3

Less than a week prior to the time Defendants were ordered to produce discovery, Plaintiff's counsel received a voicemail message from attorney David Gingras asking Plaintiff to agree to a protective order which would limit disclosure of all of the information Defendants were ordered to produce to use in the instant litigation, and not disclosed to third parties. Plaintiff's counsel responded that we could agree to those terms, but asked David Gingras to put what Defendants proposed in writing. Subsequently, David Gingras sent Plaintiff's counsel a protective order which was completely unrelated to any of the issues raised in this case, and which he acknowledged was "just a regular form we use around here." Plaintiff's counsel told David Gingras that while it would continue to agree not to disclose the information to third parties, he should draft something more suited for the purposes of this case.

After the court-ordered date for Defendants' production passed, Defendants, for the first time, insisted on an "attorneys' eyes only" provision based on the posting they claim originated from Plaintiff. First, as Plaintiff's counsel has repeatedly requested, you have never drafted an appropriate protective order that counsel can review, nor filed the appropriate motion with the Court before the deadline passed. Second, Plaintiff's counsel will not agree to an attorneys' eyes only protective order for this information. Plaintiff's counsel offered, with respect to the information regarding the employees, to designate a representative from Plaintiff to review the information who would also agree not to disclose this information to others. You would not agree to this compromise.

Finally, Plaintiff obtained a court order granting its motion to compel on June 9, 2005. Defendants had twenty-eight days to comply with that order, until July 7, 2005. Defendants did not comply with that order. Plaintiff's counsel has repeatedly worked with Defendants to obtain compliance with the Court's order. Plaintiff's counsel has had telephone conversations with David Gingras to discuss the discovery Plaintiff seeks; has sent, via e-mail to David Gingras, copies of Plaintiff's interrogatories and discovery requests so he could comply with the order, and sent a copy of the posting related to child pornography to obtain the information Plaintiff requested; and has sent two letters to Defendants' counsels to attempt to obtain the remaining information. Despite Plaintiff's good-faith efforts to seek compliance, Defendants simply have not complied.

On August 5, 2005, Defendant Ed Magedson filed, albeit late and without notice of presentment, a motion to dismiss based on lack of jurisdiction raising the same arguments as those raised by XCentric Ventures, LLC. Plaintiff was granted the right to obtain discovery from Defendants, and Plaintiff needs this information to adequately respond to Defendants' motions. Despite having over two months to comply with the Court's order prior to Plaintiff's latest motion, and being given numerous opportunities to comply, Defendants have yet to fully comply. The discussion we had yesterday, and the subsequent correspondence you have sent, indicates that Defendants are still holding back discovery that Plaintiff is entitled to. Additionally, your August 10, 2005 letter did not address all of the issues raised by Plaintiff to date, including the Sterling Network Services agreement or correspondence related to that business relationship, and Plaintiff's request for affidavits. Plaintiff had no choice but to seek intervention from the Court to resolve all of these remaining issues.

CH1 10939339.1

**SEYFARTH** **SHAW** LLP
ATTORNEYS

Sincerely,

SEYFARTH SHAW LLP

Rachel M. Kindstrand

cc:   Bart A. Lazar, Esq.
      Ronald L. Lipinski, Esq.

# Confirmation Report — Memory Send

Page      : 001
Date & Time: Aug-11-05  04:42pm
Line 1    : +3122698869
Line 2    : +
Machine ID : Seyfarth Shaw

| | | |
|---|---|---|
| Job number | : | 917 |
| Date | : | Aug-11 04:41pm |
| To | : | ☎6271717 |
| Number of pages | : | 005 |
| Start time | : | Aug-11 04:41pm |
| End time | : | Aug-11 04:42pm |
| Pages sent | : | 005 |
| Status | : | OK |
| Job number | : 917 | |

### *** SEND SUCCESSFUL ***

IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE TELEPHONE (312) 346-8000 AS SOON AS POSSIBLE.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

---

# Facsimile Transmission

**SEYFARTH SHAW** ᴬᵀᵀᴼᴿᴺᴱʸˢ ᴸᴸᴾ

55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000
Fax (312) 269-8869
www.seyfarth.com

**Date:** August 11, 2005

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| David O. Yuen James K. Borcia Maria Olini Spoth David Gingras | Tressler Soderstrom | (312) 627-4000 | (312) 627-1717 |
| | Jsburg & Wilk, P.C. | (602) 248-1000 | (602) 248-0522 |

**FROM:** Rachel M. Kindstrand
**PHONE:** (312) 269-8951

**RE:** George S. May v. Xcentric Ventures, LLC, et al.

**File No.:** 18735-83                5

☐ Hard copy to follow                ☐ Please telephone me
☐ Per your request
☐ Hard copy will not follow           ☐ Please review and revise if necessary

**MESSAGE:**



SEYFARTH SHAW LLP
ATTORNEYS

55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000
Fax (312) 269-8869
www.seyfarth.com

## Facsimile Transmission

Date:  August 11, 2005

| | | PHONE NO. | FAX NO. |
|---|---|---|---|
| RECIPIENT | COMPANY | (312) 627-4000 | (312) 627-1717 |
| James K. Borcia | Tressler Soderstrom | | |
| David O. Yuen | | (602) 248-1000 | (602) 248-0522 |
| Maria Crimi Speth | Jaburg & Wilk, P.C. | | |
| David Gingras | | | |

FROM:    Rachel M. Kindstrand
PHONE:   (312) 269-8951                              REPLY FAX NO.: (312) 269-8869
RE:      George S. May v. Xcentric Ventures, LLC, et al.                                          5

File No:          18735-85

☐ Hard copy to follow                    ☐ Hard copy will not follow
☐ Per your request                       ☐ Please review and revise if necessary
☐ Please telephone me

MESSAGE:

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

ANY TAX INFORMATION OR WRITTEN TAX ADVICE CONTAINED HEREIN (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED TO BE AND CANNOT BE USED BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. (THE FOREGOING LEGEND HAS BEEN AFFIXED PURSUANT TO U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE.)

IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE PHONE (312) 346-8000 AS SOON AS POSSIBLE.                CH1 10808915.1

*** SEND SUCCESSFUL ***

| | | |
|---|---|---|
| Job number | : | 901 |
| Status | : | OK |
| Pages sent | : | 005 |
| End time | : | Aug-11 04:41pm |
| Start time | : | Aug-11 04:39pm |
| Number of pages | : | 005 |
| To | : | ☎16022480522 |
| Date | : | Aug-11 04:39pm |
| Job number | : | 901 |

Machine ID : Seyfarth Shaw
Line 2   : +
Line 1   : +13122698869
Date & Time: 2005-Aug-11  04:41pm
Page     : 001

Confirmation Report — Memory Send

# EXHIBIT 2

JKB/cic/366999

5634-2-51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04 C 6018 |
| | ) |
| XCENTRIC VENTURES, LLC, RIP-OFF | ) Honorable Judge Norgle |
| REPORT.COM, BADBUSINESSBUREAU.COM, | ) |
| ED MAGEDSON, VARIOUS JOHN DOES, JANE | ) |
| DOES AND ABC COMPANIES, | ) |
| | ) |
| Defendants. | ) |

**SUPPLEMENT TO DEFENDANTS' RESPONSE TO GEORGE S. MAY
INTERNATIONAL COMPANY'S MOTION TO ENFORCE COURT'S
JUNE 9, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL AND MOTION FOR SANCTIONS UNDER FRCP 37(b)**

Defendants, Xcentric Ventures, LLC and Ed Magedson, by and through their attorneys, hereby submit their supplement to Plaintiff's response to motion to enforce and for sanctions.

Due to a miscommunication between Defendants' counsel, Defendants inadvertently omitted to providing certain information to Plaintiff. Attached hereto is the Declaration of David S. Gingras, counsel for Defendants, which clearly explains the nature of the miscommunication between him and Defendants' counsel, Maria Crimi Speth. Mr. Gingras explains the nature of the miscommunication and includes the information that should have been provided to the Plaintiff.

WHEREFORE, Defendants Xcentric Ventures, LLC and Ed Magedson request that this Court deny the Motion to Enforce as moot. Excepting only the home addresses and last names of its employees, Xcentric has already produced full and complete responses to each and every specific category of things set forth in Plaintiff's initial Motion to Compel.

XCENTRIC VENTURES, LLC and ED MAGEDSON

By:_____
One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 248-1000

JKB/cic/364035

5634-2-51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY,<br><br>            Plaintiff,<br><br>  v.<br><br>XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 04 C 6018<br>)<br>)  Honorable Judge Norgle<br>)<br>)<br>)<br>) |

### DECLARATION OF DAVID S. GINGRAS IN SUPPORT OF DEFENDANT'S *SUPPLEMENTAL* RESPONSE TO GEORGE S. MAY INTERNATIONAL COMPANY'S MOTION TO ENFORCE COURT'S JUNE 9, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS UNDER FRCP 39(b)

State of Arizona    )
                 ) ss.
County of Maricopa )

DAVID S. GINGRAS being duly sworn upon his oath hereby deposes and says:

    1.     My name is David Scott Gingras. I am a resident of the State of Arizona, am over the age of 18 years, and if called to testify in court I could and would truthfully testify to the following information based upon my own personal knowledge.

    2.     I am an attorney licensed to practice law in the States of Arizona and California, and I am a member in good standing of the State Bars of Arizona and California. I am currently employed as an associate attorney with the law firm of Jaburg & Wilk P.C. in Phoenix Arizona, and since approximately late June or early July 2005, I

10297-1/MCS/DSG/490572_v1

have assisted attorney Maria Speth in representing Defendant XCENTRIC VENTURES, LLC ("Xcentric") in the litigation pending in this court.

3.    Based on my conversations with Ms. Speth and with counsel for the Plaintiff, Rachel Kindstrand, I am aware that there is presently a discovery dispute between the parties relating to certain documents and things which Plaintiff has asked Xcentric to produce relating to the issue of whether this Court possesses personal jurisdiction over Xcentric.

4.    Among other things, Ms. Speth requested that I assist her with coordinating and preparing our clients responses to Plaintiff's outstanding discovery requests. In that regard, I spoke to Ms. Kindstrand via telephone and email on several occasions, and in the process of doing so I also disclosed certain documents and information to Ms. Kindstand pursuant to this Court's order granting Plaintiff's Motion to Compel. Among other things, I understand that Ms. Kindstrand had requested that Xcentric disclose a list of all books sold to any persons located in the State of Illinois.

5.    Last month, on or around August 11, 2005, Ms. Speth provided me with a list, a copy of which is attached hereto as **Exhibit A**, which I understand contains a list of books sold to individuals in Illinois. It is my understanding that these books were not sold by Xcentric, but rather by a different company which advertises the books for sale through Xcentric's website, www.ripoffreport.com.

6.    At the time I received this list from Ms. Speth, I did not speak with her at length about it, but I understood that she was giving me the list simply for my information and that she had already disclosed the list to Ms. Kindstrand pursuant to this Court's order.

7.    Later, I learned that Ms. Kindstrand had filed a motion to enforce this Court's prior order and for sanctions. In course of responding to that motion, Ms. Speth explained her belief that the list attached hereto had, in fact, previously been disclosed to Ms. Kindstrand. After meeting and conferring with me about the list, Ms. Speth and I

2

discovered that we had misunderstood each other at the time she gave me the list. My understanding was, as I have noted above, that Ms. Speth had already disclosed the list and that she was simply passing it to me for my information. However, Ms. Speth has informed me that her belief was that at the time she gave the list to me, she specifically told me that she had <u>not</u> yet disclosed the list to Ms. Kindstrand and that she wanted me to do so as soon as possible.

8.    In any event, I misunderstood Ms. Speth's instructions to me, and for that reason, I did not disclose the attached list to Ms. Kindstrand. If I had not misunderstood Ms. Speth's intent, I could and would have promptly disclosed the list the same day I received it.

9.    **WITNESSETH** I have read the foregoing Affidavit and know of my own personal knowledge that the facts stated therein are true and correct as of the date this Affidavit was sworn. I swear the foregoing to be true and correct under penalty of perjury of the laws of the State of Arizona and of the United States.



David S. Gingras

SUBSCRIBED AND SWORN to before me this _____ 2nd _____ day of September 2005 by David S. Gingras who is personally known to me or whose identity was established to me by satisfactory proof.

_____
NOTARY PUBLIC

My Commission

OFFICIAL SEAL
KATHY DUCKWILER
NOTARY PUBLIC - STATE OF ARIZONA
MARICOPA COUNTY
My Commission Expires Aug. 30, 2006

3

Exhibit A

| Date | Name | | Address | City | ST | ZIP | Country |
|------|------|---|---------|------|----|----|---------|
| 12/31/2003 | Kandy Blac | 21.95 | 317 N Elmwood Ave | Wood Dale | IL | 60191 | United Stat |
| 1/15/2004 | mary ruhla | 21.95 | 634 Columbia Ave. | Elgin | IL | 60120-390 | United Stat |
| 1/23/2004 | Dawn Brew | 21.95 | 12004 Fourth Ave. | Hebron | IL | 60034 | United Stat |
| 1/30/2004 | Edward Ha | 21.95 | 14156 S. Cicero Aven | Crestwood | IL | 60445 | United Stat |
| 2/12/2004 | FRANK GF | 21.95 | 10004 MAIN ST | ROSCOE | IL | 61073 | United Stat |
| 2/13/2004 | Beverly Sh | 21.95 | 8136 S Winchester Av | Chicago | IL | 60620 | United Stat |
| 3/15/2004 | Clifford Hul | 21.95 | 16 DeNovion Ct. | Cahokia | IL | 62206 | United Stat |
| 4/1/2004 | A.C.P., Inc | 21.95 | 6606 W. 93rd Street | Oak Lawn | IL | 60453 | United Stat |
| 4/26/2004 | Sandra We | 21.95 | 12851 Hawks Bill Driv | Plainfield | IL | 60544 | United Stat |
| 4/28/2004 | dale meyer | 21.95 | 122 elliot | collinsville | IL | 62234 | United Stat |
| 5/1/2004 | SYLVIA JC | 21.95 | 1350 AUR( ATTN:REC | NAPERVIL | IL | 60540 | United Stat |
| 5/5/2004 | Andrew Ma | 21.95 | 506 E. Browning St. | Marion | IL | 62959 | United Stat |
| 5/7/2004 | Abundance | 21.95 | 281 Harding St. | Grayslake | IL | 60030 | United Stat |
| 5/10/2004 | richard lew | 21.95 | 1353 calamus lane | grayslake | IL | 60030 | United Stat |
| 6/4/2004 | shannon h | 21.95 | 8929 w. bruns rd. | monee | IL | 60449 | United Stat |
| 6/15/2004 | Lauren Gri | 21.95 | 5419 W.129th PL | Crestwood | IL | 60445 | United Stat |
| 6/21/2004 | BEVERLY | 21.95 | 8143 S. EVANS | CHICAGO | IL | 60619 | United Stat |
| 6/24/2004 | scott smith | 21.95 | 3340 susan circle sout | park city | IL | 60085 | United Stat |
| 6/27/2004 | William Sic | 21.95 | 13837 Ladybar Ln. | Orland Par | IL | 60467 | United Stat |
| 7/7/2004 | Robert Ker | 21.95 | 32 Lakeview Ave | Mundelein | IL | 60060 | United Stat |
| 7/11/2004 | Cheryl Hall | 21.95 | 2211 Elizabeth Avenue | Zion | IL | 60099 | United Stat |
| 7/17/2004 | KAREN OL | 21.95 | 242 PINE LN | BENSENV | IL | 60106 | United Stat |
| 7/30/2004 | larry campl | 21.95 | 1307 berkenshire lane | elk grove v | IL | 6E+08 | United Stat |
| 7/31/2004 | Andrew Ma | 21.95 | 235 Fencl | Hillside | IL | 60162 | United Stat |
| 8/3/2004 | Jeff Counc | 21.95 | 2906 Twin Falls Dr. | Plainfield | IL | 60544 | United Stat |
| 8/8/2004 | Pete Castil | 21.95 | 197 Uteg S 101-A | Crystal Lak | IL | 60014-728 | United Stat |
| 8/17/2004 | Jackie Ros | 21.95 | 185 Lake Drive South | Algonquin | IL | 60102 | United Stat |
| 9/19/2004 | John Lope | 21.95 | 256 S Aldine Ave | Elgin | IL | 60123-724 | United Stat |
| 10/24/2004 | Linda Bach | 21.95 | 3711 Burton Trail | Crystal Lak | IL | 60014 | United Stat |
| 11/2/2004 | Laraine Hr | 21.95 | c/o Winsto 35 W. Wac | Chicago | IL | 60601 | United Stat |
| 11/16/2004 | Natalya Ka | 21.95 | 950 Dunham Ln. | Buffalo Grc | IL | 60089 | United Stat |
| 11/23/2004 | GARY DA\ | 21.95 | P.O. BOX 7505 | CHICAGO | IL | 60680 | United Stat |
| 12/6/2004 | Benjamin F | 21.95 | 10642 Fuesser rd. | Mascoutah | IL | 62258 | United Stat |
| 12/7/2004 | Henry Tuta | 21.95 | 6767 N. Mi Suite 207 | Niles | IL | 60714 | United Stat |
| 12/18/2004 | Janie Turn | 21.95 | 1648 N 21st ST | Springfield | IL | 6.27E+08 | United Stat |
| 12/21/2004 | Linda McG | 21.95 | 234 Bayshore Drive | Lake Bluff | IL | 60044 | United Stat |
| 1/5/2005 | Patrick Cu | 21.95 | 11761 Winding Trails I | Willow Spri | IL | 60480 | United Stat |
| 1/26/2005 | Tiana Lond | 21.95 | 1550 N LAKE SHORE | CHICAGO | IL | 60610 | United Stat |
| 2/16/2005 | Michael Th | 21.95 | 960 N. Racine Ave. | Chicago | IL | 60622 | United Stat |
| 2/21/2005 | Joyce Gulk | 21.95 | P.O. box 1342 | Granite Cit | IL | 62040 | United Stat |
| 3/1/2005 | EJ Batacar | 21.95 | 6319 W Cuyler ave | Chicago | IL | 60634 | United Stat |
| 3/1/2005 | EJ Batacar | 21.95 | 6319 W Cuyler ave | Chicago | IL | 60634 | United Stat |
| 3/25/2005 | JOHN M J | 21.95 | 1431 N. KOSTNER | CHICAGO | IL | 60651-160 | United Stat |
| 4/4/2005 | Brian Colvi | 21.95 | 6541 N Ric apt 1 | Chicago | IL | 60645 | United Stat |
| 4/9/2005 | Ben Fergu | 21.95 | 5340 S. Ha Apt 3 | Chicago | IL | 60615 | United Stat |
| 4/26/2005 | Paula Bow | 21.95 | 4500 E. River Rd Lot | Ridott | IL | 61067 | United Stat |
| 4/28/2005 | Misty Cory | 21.95 | 2215 Ridgefield Drive | Belvidere | IL | 61008 | United Stat |
| 5/1/2005 | Stacey Bro | 21.95 | 132 Fair St. | Carmi | IL | 62821 | United Stat |
| 5/14/2005 | John Griffir | 21.95 | 38 Meadowview Lane | Chatham | IL | 62629 | United Stat |
| 5/24/2005 | Robert Ber | 21.95 | 9333 N Mil c/o The Br | Niles | IL | 60714 | United Stat |
| 7/6/2005 | lorena robi | 21.95 | 8735 south beverly av | chicago | IL | 60620 | United Stat |
| 7/8/2005 | Katalin Cza | 21.95 | 4219 Clearwater Lane | Naperville | IL | 60564 | United Stat |

| 7/12/2005 | Charles Sc | 21.95 | 809 Hyde Park Lane | Naperville | IL | 60565 | United Stat |
| 7/15/2005 | Thrifty Trav | 21.95 | PO Box 1515 | Wheaton | IL | 60189 | United Stat |
| 7/25/2005 | dandempse | 21.95 | P.O. Box 913 | Round Lak | IL | 60073 | United Stat |
| 7/30/2005 | sharon mat | 21.95 | 1008 w hovey | normal | IL | 61761 | United Stat |
| 8/7/2005 | Jimmy Bar | 21.95 | 3127 n.,Cedar st. | Momence | IL | 60954 | United Stat |
| 8/10/2005 | richard win | 21.95 | 1530 demp apt. 209 | mount pros | IL | 60056 | United Stat |

# EXHIBIT 3

## Maria Crimi Speth

**From:** Ben Smith [bsmith@tecservinc.com]
**Sent:** Wednesday, August 10, 2005 4:24 PM
**To:** Maria Crimi Speth
**Subject:** RE: Explanation of Email Searches

Maria-

Ed's email records are somewhere over 1.10 million emails retained, not counting some archives that have some duplicated and some original past emails. I would guess around 1.5 million total unique emails. The search process we ran to get you the information took approximately 6 hours to crawl the text of every email.


Ben Smith
602-430-3561

---

**From:** Maria Crimi Speth [mailto:mcs@jaburgwilk.com]
**Sent:** Wednesday, August 10, 2005 2:30 PM
**To:** Ben Smith
**Subject:** RE: Explanation of Email Searches

Ben:

Thank you for your assistance. I have one more question. What is the total number of emails that are on the system that had to be searched for references to Illinois?

Maria Speth

---

**From:** Ben Smith [mailto:bsmith@tecservinc.com]
**Sent:** Wednesday, August 10, 2005 10:28 AM
**To:** Maria Crimi Speth
**Subject:** Explanation of Email Searches

Your firm asked for a response from Ed Magedson on why he had not been able to properly produce emails and has recently found some. I may be able to answer both and am happy to assist if you need future searches done.

First off Xcentric Ventures and the domain ripoffreport.com can receive up to 5000 emails in a day. This has made a major challenge for us in supporting them as a client. We have upgraded his mail system and server 3 times in the last 4 years. The current platform does not contain archived mail as it takes up to much disk space so we regularly archive from Eds desktop machine that mail he has accumulated.

Ed separated emails into subfolders and often moves them into live folders outside his system. So the search feature in outlook does not always return complete results, but only those local to his direct outlook environment. Also due to disk space on his machine, we regularly archive and remove very old email sets to keep he from taking hours per search and free up space.

We recently helped him go through (per your need for documentation for a pending case/suit) and do a deep search through each archive, external folder and backup data set. So he should now have any document containing the key words he was searching on.

8/10/2005

FROM : J&W Const Services        )    FAX NO. :602 248 1085        Ja. 10 2005 06:07PM  P8

Please note this search will not read attachments that are graphical as that text is NOT indexable - examples include PDF's, GIF's or JPG type attachments. There is unfortunately no way to index and crawl (search) those types of documents.

If you have further questions, I am happy to provide any assistance I can.


Ben G. Smith
TecServ, Inc.
Vice President, Technical Services
602.430.3561
bsmith@tecservinc.com

___ Connecting You to Your Technology ___
        www.tecservinc.com