JKB/cic/368900                                                    5634-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE S. MAY INTERNATIONAL          )
COMPANY,                             )
                                     )
                 Plaintiff,          )
                                     )
v.                                   )   Case No. 04 C 6018
                                     )
XCENTRIC VENTURES, LLC, RI-POFF      )   Honorable Judge Norgle
REPORT.COM, BADBUSINESSBUREAU.COM,   )
ED MAGEDSON, VARIOUS JOHN DOES, JANE )
DOES AND ABC COMPANIES,              )
                                     )
                 Defendants.         )

## DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants, Xcentric Ventures, LLC and Ed Magedson, by and through their

attorneys, respectfully request that this Court reconsider its Order finding Defendants in

contempt for violation of the temporary restraining order (the "Order") for the reason that

Defendants promptly removed the posting that Plaintiff presented to the Court in its application

for a restraining order, which was the only posting that Plaintiff offered proof to the Court

regarding its falsity. Defendants had a good faith belief that they complied with the TRO. To

the extent that the Order rules that it was contempt to fail to remove statements that Plaintiff

subsequently claimed were false, the Order is a prior restraint on speech and violates the First

Amendments guarantee of the right to free speech.[1] Substantial case law holds that it is improper

for a Court to restrain speech with no findings by a jury. In addition, the Communications

---

[1] Despite Defendants' strong disagreement with the ruling and despite the irreparable harm to Defendants, Defendants removed all postings identified as false by Plaintiff within one day of learning of the Court's ruling that interpreted its earlier order as including all statements that Plaintiff subsequently claimed were false.

Decency Act ("CDA") prevents Defendants from being treated as a publisher or author of statements they did not actually author.

Part of the confusion that has led to the entry of the Order is the passage of time since the October 8, 2004 hearing and Plaintiff filing its contempt motion almost a year ago. This also is the result of Plaintiff "trying to pull one over" on Defendants, and on the Court, by broadly drafting the Temporary Restraining Order despite the narrow relief requested. Defendants read the TRO to only refer specifically to the posting referenced in the Declaration of Charles E. Black. Plaintiff now interprets the TRO to apparently have no limits, and the Court seems to have agreed by ruling that anything that Plaintiffs say is false (even though there has been no hearing) must be removed. This is an egregious prior restraint on free speech.

Further, Defendants have not acted willfully and have removed postings immediately upon learning of the Court's orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On or about September 15, 2004, Plaintiff George S. May International Company ("GSMIC") filed its Verified Complaint for injunctive and other relief and a Motion for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction.

2.    In support of the Motion for Temporary Restraining Order, Plaintiff attached the Declaration of Charles E. Black (the "Black Declaration"). In Paragraph 5 of the Declaration of Charles E. Black, Mr. Black declared that:

> 5. On or about September 3, 2004, George S. May became aware that Defendants were posting and transmitting content on www.ripoffreport.com which falsely states that the owner of George S. May engaged in a variety of unlawful criminal activities. Attached as Exhibit C is a copy of this Posting.

Mr. Black further declared, in Paragraph 7 of the Declaration that "[t]he contents of this posting are utterly false…"

3.      On or about September 24, 2004, the Court entered the Temporary Restraining Order and Order to Show Cause as to Why a Preliminary Injunction Should Not be Entered (Proposed). After referencing the "Black Declaration" and specifically Paragraph 7, the Court ordered that

> The Defendants be temporarily enjoined from making, hosting or transmitting false or deceptively misleading, descriptions, statements or representations concerning George S. May, its business, owner, officers, employee and/or agents.

The Court further set an Order to Show Cause Hearing for October 8, 2004.

4.      Immediately following the entry of the September 24, 2004 TRO, Defendants removed the posting that was attached as Exhibit C to Mr. Black's declaration – the only posting that Plaintiff had asserted was false.

5.      At the hearing held on October 8, 2004, in reliance on Defendants' belief that the TRO only applied to the single posting identified by Mr. Black as false, Defendants stipulated that the TRO could remain in place.

6.      GSMIC subsequently filed a Motion for Order Finding Defendants in Contempt for Violating the Temporary Restraining Order based on additional statements that Plaintiff asserted were false after the October 8, 2005 hearing. Thereafter, the parties briefed the issues raised by Plaintiff's Contempt Motion. Plaintiff's Reply was filed on or about November 24, 2004, closing the pleadings on that issue.

7.      On or about September 13, 2005, ten months later, the Court issued the Order granting Plaintiff's contempt motion.

8.      Defendants received the September 13, 2005 Order on the afternoon of Sunday, September 18, 2005 and removed the postings identified by Plaintiff as false on September 19, 2005.

## II.     ARGUMENT

### A.     The Defendants Complied With The TRO Which Required Defendants To Take Down The Specific Posting Referenced In The Black Declaration

9.     In Plaintiff's Motion seeking a temporary restraining order and in the proceedings regarding the TRO, Plaintiff specifically referenced, and Defendants believed that the only posting at issue was the specific postings referenced in the Black Declaration.  Although the Plaintiff broadly drafted the TRO entered by the Court as including all "false" posting, Defendants reasonably believed they were in compliance because:  (1) the only report that the Court had determined was false was the one that was removed; and (2) substantial case law existed that provided that injunctions as to speech could only be made after a full hearing and a jury finding of falsity.  This belief was also the basis for Defendants' agreeing to extend the terms of the TRO at the October 8, 2004 hearing.  If Defendants had believed that the TRO applied to any other postings existing as of October 8, 2004, let alone any future postings, those issues would have been addressed before the Court at that hearing and Defendants would not have stipulated to extend the TRO.  If Plaintiff's position is correct (which it is not) then Defendants would be required to remove any posting that Plaintiff deems as false without Plaintiff having to prove to the satisfaction of a jury that any such statements are, in fact, false. This type of prior restraint on speech is improper and further implicates the CDA regarding statements posted by third parties on Defendant's website.

### B.     Neither Charles E. Black Nor Anyone Else Connected To Plaintiff Is The Proper Arbiter Of What Postings Are True Or False

10.     In the September 13 Minute Entry statement by the Court, the Court specifically states that:

> Plaintiff has submitted the Declaration of Charles Black ("Black"),
> a Vice President at May.  In this Declaration, Black asserts that
> these postings are false, and harmful to May.  Plaintiff has

therefore submitted evidence that Defendant, in spite of the TRO, has posted communications on its websites that are "false or deceptively misleading" regarding May's business, practices and activities. Defendants have provided no evidence whatsoever that would tend to show that these postings are not "false or deceptively misleading." The Court also notes that as recently as August 25, 2005, Defendants allowed postings such as [t]his to appear on its sites.

This statement by the Court indicates that in its finding that Defendants have violated the terms of the TRO, the Court has wholly relied on the various declarations submitted by Charles Black in rendering its decision. Statements by Mr. Black that something is false, deceptive or misleading are insufficient for this Court to base its findings in the September 13, 2005 Minute Entry. Defendants have had no opportunity to cross-examine Mr. Black and have not conducted the discovery necessary to impeach Mr. Black's assertions. Because Defendants are contesting personal jurisdiction, no discovery has been engaged in with respect to the merits of the underlying claim. Defendants are unfairly bootstrapped if they are subject to injunctive relief without any discovery and cannot conduct discovery on the merits without subjecting themselves to the Court's jurisdiction.

11.     Additionally, Defendants note that because of the passage of time since the entry of the TRO, and the October 8, 2004 hearing on the TRO, it is unlikely that the Court recalled at the time of issuing the contempt ruling that only one posting was the subject of the application for a TRO.

12.     Importantly, there is simply no basis for Plaintiffs to unilaterally designate what postings are true or false. If there is ultimately jurisdiction over the Defendants in Illinois, this is an issue for a jury, not for a self serving declaration attached to a motion for contempt.

13.     As noted above, the Court referenced its belief that Defendants have provided no evidence regarding the allegedly false postings. Defendants affirmatively allege that they have

had no opportunity to offer such evidence or to conduct discovery to acquire such evidence. Defendants did not author the postings at issue, and thus are put in the impossible position of trying to prove the truth of assertions made by third parties on Defendant's website. As set forth below, this is exactly the situation that the CDA was designed to prevent. The situation is further exasperated by the procedural posture of the case, which is that a motion to dismiss for lack of jurisdiction is pending and no discovery on the merits should be conducted.

14.    Defendants further affirmatively allege that the jurisdictional issues should be decided before any issues that go to the merits of the case because the jurisdictional issues are currently pending before the Court.

C.    **The Court's September 13, 2005 Minute Entry Is An Improper Restraint On Speech**

15.    As Defendants have noted before, it is well settled in case law that injunctions against speech should only be granted in the rarest cases. "There is a heavy presumption that prior restraints on expression are unconstitutional." *Kisser v. Coalition for Religious Freedom*, 1996 WL 147 978 (N.D. Ill. 1996). Before such a restraint on speech is allowed, the jury should be allowed to make a determination regarding the subject speech. *See Kramer v. Thompson*, 947 F.2d 666 (3rd Cir. 1991). The *Kramer* court noted and analyzed that injunctive relief, which is issued by the Court, deprives a defendant of its right to a trial by jury on the issue of truth or falsity of the subject statement or statements. *Id*. at 675. In *Kramer*, the Third Circuit reversed the District Court's injunction in part because the Court had directed a verdict in favor of Plaintiff without permitting the defendant to put on a defense. *Id*. at 678-79. This makes sense as the issue of whether a particular statement is true or false requires a completely factual inquiry. In fact, the United States Supreme Court has stated that while prior restraints of speech are not unconstitutional *per se*, any prior restraint "comes to this Court bearing a heavy

presumption against its constitutional validity." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1974). "It is settled law that unless a plaintiff can establish the existence of one of a very limited number of exceptions, equity will not enjoin the publication of a libel, so strong are the constitutional guarantees of freedom of speech and of the press. *Matchett v. Chicago Bar Ass'n,* 125 Ill.App.3d 1004, 1008, 467 N.E.2d 271, 275 (1ˢᵗ Dist. 1984).

16.     The Seventh Circuit has noted that "[t]he general rule is that a court of equity will not enjoin publication of libel. The operation of the rule is not affected by the fact that the false statements may injure the plaintiff in his business or as to his property, in the absence of acts of conspiracy, intimidation or coercion." *Robert E. Hicks Corp. v. National Salesmen's*, 19 F.2d 963 (7th Cir. 1927).

17.     Plaintiff, through Mr. Black's declarations, claims that various postings are defamatory and false. While some courts have been willing to issue injunctions against speech after a full trial on the merits and a determination that speech is defamatory by a jury, there is no support for restraining or enjoining the postings at issue without any discovery to test that assertion, much less a full trial and ruling on the merits by a jury, assuming jurisdiction over Defendants even exists.

18.     "We live under a written constitution which declares that the right of trial by jury shall remain inviolate, and the question of libel or no libel, slander or no slander, is one for a jury to determine. Such was certainly the settled law when the various constitutions of this state were adopted, and it is all-important that the right thus guarded shall not be disturbed. It goes hand in hand with the liberty of the press and free speech." *Birnbaum v. Wilcox-Gay Corp.*, 17 F.R.D. 133, 140 (N.D.Ill.1953).

D.     **Application Of The TRO To The Postings At Issue Violates The Communications Decency Act**

19.     Defendants are protected from the claims in this matter by Federal law because they did not author the allegedly defamatory content, but merely provided the forum.   The operation of an Internet web site upon which others post statements is an activity which is unequivocally protected by the Communications Decency Act, 47 U.S.C.A. §230.  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997); *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37 (Wash.App 2001).

20.     47 U.S.C.A. § 230 provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  The operation of an interactive web site has been determined to be covered by this immunity.  *Carfano; Schneider.*

21.     Case law makes clear that the immunity extends to protect web site operators from claims based on the operator's failure to investigate postings, failing to edit or remove inaccurate postings, and claims based on the web site operator making editorial decisions on what to post or not post.  *Batzel v. Smith*, 2003 WL 21453358 (9th Cir. 2003).

22.     Congress, for policy reasons, has chosen to immunize providers or users of interactive computer services from liability for defamatory speech when the defamatory material is provided by someone else.  *Id.*  One of the policy reasons is to "prevent lawsuits from shutting down websites and other services on the Internet."  *Id.*

23.     The Communications Decency Act preempts state law to the extent that state law allows defamation claims against web site operators for content they did not create.  "Preemption is required where state law conflicts with the express language of a federal statute."  *Doe v.*

8

*America Online*, 783 So.2d at 1015. Further, the Communications Decency Act applies even where the web site operator had notice and refused to remove the offending material. *Id.* at 1012-1013.

24.    The Communications Decency Act also prohibits injunctive relief against web site operators. In the case of *Kathleen R. et al v. City of Livermore*, the California Court of Appeals dismissed claims for declaratory and injunctive relief, holding that section 230(c)(1) of the Act prohibited claims for injunctive relief as well as damages. 87 Cal App.4th 684, 697-98, 104 Cal.Rptr.2d 772, 780-81 (2001), *citing Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000). In *Ben Ezra, Weinstein, & Co.*, the Tenth Circuit upheld dismissal of state law claims for injunctive relief as well as damages. *Ben Ezra, Weinstein, & Co.*, 206 F.3d at 983-84.

25.    Therefore, Federal law prohibits this Court from ordering Defendants to remove the postings specifically referenced by Plaintiff. To do otherwise would fly in the face of the clear dictate of the Communications Decency Act.

### E.    A Contempt Finding Is Not Proper Because Defendants Did Not Willfully Violate a Court Order

26.    In order to determine that Defendants are in contempt of a court order, the Court must first find that the Defendants' action was willful. "Where the disobedience of a decree is not willful and does not clearly appear to have arisen from intent to set at naught or bid defiance thereto, the power to punish for contempt cannot be properly exercised." *Hughson v. The People*, 91 Ill.App. 396, 398 (1899).

27.    Here Defendants removed the posting that was the subject of the application for a temporary restraining order immediately upon receipt of the order back in September of 2004. When Plaintiff took the position that the order required the removal of reports that the Court had

not ruled were false, Defendants reasonably and in good faith believed that the Court's order only applied to statements that were determined by the court to be false, not those that were unilaterally alleged later by Plaintiff to be false. When this Court issued its September 13, 2005 order stating that its earlier order did include statements that Mr. Black subsequently declared to be false, Defendants removed all such statements within twenty-four hours of learning of the Court order. Defendants have, at all times, complied with their reasonable understanding of the Court's order. (Affidavit of Ed Magedson, Exhibit "A"). Defendants did not willfully disobey the Court's order.

## III.   CONCLUSION

28.    There is no basis for this Court to have granted Plaintiff's motion to hold Defendants in contempt. By basing its decision on the unilateral position of Plaintiff as to what postings are true and false, the Court has improperly assumed the position usually occupied by a jury regarding statements that are alleged to be defamatory and/or false. Importantly, Defendants have had no reasonable opportunity to test Mr. Black's assertions. Defendants further submit that discovery and an evidentiary hearing regarding the truth or falsity issue should not be held at this point in time until after the jurisdictional issues raised by Defendants are considered and decided.

29.    Based on both the history of these proceedings, the original agreed upon purpose of the TRO and under applicable law, the Court's September 13, 2005 Minute Entry granting Plaintiff's motion for contempt against Defendants should be reconsidered.

WHEREFORE, Defendants, Xcentric Ventures, LLC and Ed Magedson, respectfully request that this Court grant Defendants' Motion for Reconsideration of the September 13, 2005 Minute Entry and for such further relief as this Court deems just.

XCENTRIC VENTURES, LLC and ED MAGEDSON


By:_____/s/ James K. Borcia_____
One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 248-1000

JKB/cic/364035                                                      5634-2-51

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GEORGE S. MAY INTERNATIONAL              )
COMPANY,                                 )
                                         )
                    Plaintiff,           )
                                         )
v.                                       ) Case No. 04 C 6018
                                         )
XCENTRIC VENTURES, LLC, RI-POFF          ) Honorable Judge Norgle
REPORT.COM, BADBUSINESSBUREAU.COM,       )
ED MAGEDSON, VARIOUS JOHN DOES, JANE     )
DOES AND ABC COMPANIES,                  )
                                         )
                    Defendants.          )

## DECLARATION OF EDWARD MAGEDSON

Edward Magedson, declare the following to be true under penalty of perjury:

1.        On September 24, 2004, I learned that the Court had issued a TRO for me to remove the posting attached as Exhibit "C" to the Declaration of Charles E. Black.

2.        On September 25, 2004, I removed the posting and it has been off of the Rip-off Report website ever since.

3.        On October 8, 2004, a hearing was held and I consented to allow my attorney to stipulate to extend the TRO. I did this because I believed that the only posting that was covered by the TRO was the single posting


EXHIBIT
A

10297-1/MCS/MCS/497343_v1

identified by Charles Black as false.  If I had understood that the TRO could be extended beyond that one posting and be applied to any posting that Plaintiff later claimed was false, I never would have agreed to extend the TRO.

4.      I later learned that after the hearing George S. May was taking the position that the TRO extended to other postings.

5.      After conferring with my attorneys, I determined that the only posting covered by the TRO was the posting that George S. May had originally identified as false and that I was in compliance with the TRO without making any further deletions.  I had a good faith belief that the Court's order only extended to the one report that Charles Black had declared was false in requesting the TRO.

6.      I then learned that George S. May subsequently filed a Motion for Order Finding Defendants in Contempt for Violating the Temporary Restraining Order based on additional statements that Plaintiff asserted were false after the October 8, 2005 hearing.

7.      On the afternoon of September 18, 2005 I learned that the Court had issued an Order that I was in contempt and that I had to remove all of the postings that Plaintiff claimed were false.

8.      On September 19, 2005, I completed the removal of all of the postings that the attorney for George S. May listed in a letter to my attorney as covered by the Court's order.

2

DATED this _3rd_ day of _October_ , 2005.

_Edward Magedson_
Edward Magedson


SUBSCRIBED and SWORN to before me this _3rd_ day of
_October_ , 2005.

_[signature]_
Notary Public

OFFICIAL SEAL
MARIBETH KASCHT
NOTARY PUBLIC - STATE OF ARIZONA
MARICOPA COUNTY
My Comm. Expires Jan. 13, 2007

My Commission Expires:

_1-13-07_