JKB/cic/280129                                                                  5634-2-51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 04 C 6018 |
| XCENTRIC VENTURES, LLC, RIP-OFF ) REPORT.COM, BADBUSINESSBUREAU.COM, ) ED MAGEDSON, VARIOUS JOHN DOES, JANE ) DOES AND ABC COMPANIES, ) ) | Honorable Judge Norgle |
| Defendants. ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS**

Defendants XCENTRIC VENTURES, LLC ("Xcentric"), RIP-OFF REPORT.COM ("Rip-Off Report"), BADBUSINESSBUREAU.COM ("BBB") and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, respectfully submit the following response in opposition to the Memorandum of Law in Support of Contempt Sanctions filed by Plaintiff GEORGE S. MAY INTERNATIONAL COMPANY ("Plaintiff). For the reasons stated herein, the Court must deny the relief requested. However, in the event the Court declines to do so, Defendants are entitled to significant procedural due process protections which have not yet been satisfied, and which must be satisfied prior to the Court considering the requested relief.

This argument is supported by the following Memorandum of Points and Authorities and by the Court's file in this matter.

10297-1/MCS/DSG/501953_v1

Dockets.Justia.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION/PROCEDURAL BACKGROUND**

The Court is aware of the contentious history of this case, and thus only a brief procedural précis is offered. This action was commenced by Plaintiff on September 15, 2004. Nine days later, on September 24, 2004, Plaintiff obtained a temporary restraining order which, *inter alia*, required Defendants to refrain from, in general, displaying any false, deceptive, or misleading statements regarding Plaintiff on Defendants' websites.

On October 8, 2004, Plaintiff moved this Court for an order finding Defendants in contempt for failing to remove all postings within the scope of the TRO. Defendants objected, explaining that they had removed all posts requested by Plaintiff in its application for the TRO, and that any other materials posted were not determined by any finder of fact to be false and, therefore, outside the scope of the Court original restraining order.

This Court disagreed and on September 13, 2005, an order was issued finding Defendants in contempt for their prior failure to comply with the September 2004 TRO. The Court's order indicated that "the matter of appropriate sanctions is taken under advisement."

Defendants have separately filed a Motion for Reconsideration because Defendants contend that they never violated the Court's injunction and if they did, their violation was not willful, but rather was based on a good faith belief that the injunction applied only to the postings that the Court had determined were false.

On October 17, 2005, Plaintiff filed a four (4) page pleading entitled "Memorandum of Law in Support of Contempt Sanction". In this brief, supported by a declaration of an officer of the company, Plaintiff asks the Court for sanctions against Defendants as follows: 1.) for damages in the amount of $280,000.00; 2.) for a fine of $767 per day to be charged from

2

September 24, 2004 to some point in the present (i.e., at least an *additional* $280,000.00 as a penalty); and 3.) unspecified attorney's fees. In other words, Plaintiff asks for <u>in excess of one half million dollars</u> ($<u>560,000.00</u>) in fines and damages, plus fees. As explained herein, this outrageous request is without any basis in law or fact, and it must be rejected.

## II.　　THE RELIEF PLAINTIFF REQUESTS IS UNAVAILABLE

At the outset, it should be noted that all other issues and defects aside, this Court must summarily deny the relief requested by Plaintiff because such relief is not available as a matter of law — under <u>Illinois</u> state law.

As the United States Supreme Court explained in the classic case of *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." Restated simply, this doctrine stands for the concept that:

> [A] federal court is not authorized to apply a different substantive law in a diversity case from the law that a state court would apply were the case being litigated in a state court instead. Under this doctrine it is well established that in diversity cases state law is the appropriate source for choice-of-law rules.

*F.D.I.C. v. Wabick*, 335 F.3d 620, 624–625 (7th Cir. 2003), *citing Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666 (7th Cir. 2001) (same rule).

As noted in Paragraph 7 of Plaintiff's Complaint dated September 14, 2004 (docket entry #1), Plaintiff has invoked the <u>diversity jurisdiction</u> of this Court pursuant to 28 U.S.C. § 1332, "as the parties are citizens of different states and the amount in controversy exceeds $75,000 . . . ." Moreover, the primary theories of liability in the Complaint, and the conduct at issue in this contempt proceeding, relates solely and exclusively to state-law rights created by substantive

10297-1/MCS/DSG/501953_v1

Illinois law including "Defamation/Libel" (Count II), "Illinois Unfair and Deceptive Business Practices" (Count III), and "Illinois Uniform Deceptive Trade Practices" (Count IV).[1] Therefore, as a federal court exercising its diversity jurisdiction, this Court is required to apply the substantive law of the State of Illinois when determining whether, and in what ways, it may punish Defendants for their acts of contempt which allegedly caused economic losses to Plaintiff in Illinois.

Thus, as a starting point, this Court must ascertain the applicable Illinois state law, and determine how an Illinois state court would address Plaintiff's request for an award of sanctions/damages in excess of $560,000.00 for an allegedly contemptuous violation of a temporary restraining order. The answer to this issue is extremely simple: an Illinois state court would summarily reject Plaintiff's request for pre-trial damages in its entirety because such relief is simply not available under Illinois law. This has been the law in Illinois for the past 100 years, if not longer:

> In a civil contempt proceeding, which means that the sanction imposed is strictly coercive [citation] a court may imprison or fine for contempt of its orders <u>but is without authority to recompense an aggrieved party for his damages</u>. [citation] It is well settled that <u>in Illinois civil contempt is *not* a private remedy</u> but is punishment for an affront to the authority of the court, and hence, <u>any fine imposed is payable to the public treasury and *not* to the plaintiff</u>.

*Harper v. Missouri Pacific R. Co.*, 282 Ill.App.3d 19, 30, 667 N.E.2d 1382, 1389 (Ill. App. 1996) (emphasis/italics added) (internal citations omitted), *citing In re Marriage of Wilde*, 141 Ill.App.3d 464, 473, 490 N.E.2d 95, 101 (1986); *Frank B. Hall & Co. v. Payseur*, 99 Ill.App.3d 857, 863, 789, 425 N.E.2d 1002, 1006 (1981); *People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill.2d 407, 410, 173 N.E.2d 417, 418 (1961); *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.*, 256 Ill. 196, 99 N.E. 920 (1912).

---

[1] In the interest of candor, the Complaint also superficially invokes federal question jurisdiction under the Lanham Act, but the contempt at issue here is wholly unrelated to that lone claim.

10297-1/MCS/DSG/501953_v1

Indeed, nearly 100 years ago the Illinois Supreme Court recognized this same rule, but also noted that where a conflict exists between state law and federal law with respect to remedies for contempt, the state law of Illinois should be applied:

> The law is well settled in this state that the fine imposed in such cases [of civil contempt] is so far regarded as a penalty that it is treated as other fines, and paid over, when collected, <u>not to the complainant</u> in the equity proceeding, <u>but to the public</u>. It has always been the practice in this state to impose a fine or a jail sentence for the violation of a civil or remedial injunction. The difference between the established practice in this state and the rule laid down by the United States Supreme Court in the Gompers Case [applying federal law] is apparent.

*Rothschild & Co. v. Steger & Sons Piano Mfg. Co.*, 256 Ill. 196, 205, 99 N.E. 920, 923 (Ill. 1912), citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L. Ed. 797 (1911)).

Other Illinois state courts have more recently noted that the *Rothschild* case remains good law and it excludes the application of federal law in cases of civil contempt:

> Our Supreme Court in *Rothschild & Co. v. Steger & Sons Piano Co.*, 256 Ill. 196, 99 N.E. 920, 42 L.R.A., N.S., 793 reviewed the principles and rules governing civil contempt as applied by the Illinois Courts <u>and rejected the applicability of federal law</u>. The established rule in Illinois is that the Court may imprison or fine for contempt of its orders <u>but is without authority to recompense Plaintiff for his damages</u>. Accordingly the award of damages in this case was erroneous.

*Eberle v. Greene*, 71 Ill.App.2d 85, 93, 217 N.E.2d 6, 10 (1966). The case law of Illinois is <u>legion</u> with countless similar holdings. *See e.g., Kukla v. Kukla*, 184 Ill.App.3d 585, 540 N.E.2d 510 (Ill. App. 1989); *Ritter v. Rush-Presbyterian-St. Luke's Medical Center*, 177 Ill.App.3d 313, 532 N.E.2d 327 (Ill. App. 1988); *Round Lake Sanitary Dist. v. Basic Electronics Mfg. Corp.*, 60 Ill.App.3d 40, 376 N.E.2d 436 (1978); *Chicago Directory Co. v. Herringshaw*, 187 Ill. App. 489 (1914); *A. R. Barnes & Co. v. Chicago Typographical Union*, 232 Ill. 402, 83 N.E. 932 (1908); see also Annotation, *RIGHT OF INJURED PARTY TO AWARD OF COMPENSATORY*

*DAMAGES OR FINE IN CONTEMPT PROCEEDINGS*, 85 A.L.R.3d 895 (2004 Supp.) (recognizing that unlike some other states, Illinois law specifically rejects award of compensatory damages to allegedly injured party for acts of contempt).

Returning, then, to the issue at hand, it is plainly apparent that because an Illinois state court would necessarily reject any request for an award of sanctions to be made to the Plaintiff in this posture, the same result must occur here. The fortuitous fact that Plaintiff has elected to invoke the diversity jurisdiction of this Court, as opposed to filing this action in the courts of the State of Illinois, does not entitle Plaintiff to receive a remedy in this Court that would be unavailable to it under Illinois law. Such an outcome is barred by the *Erie* doctrine and its progeny, and for very good reasons — to ensure the fair and uniform application of law and to discourage federal court forum shopping. *See Hanna v. Plumer*, 380 U.S. 460, 467–68, 85 S.Ct. 1136, 1141–42 (1965) (noting the "The Erie rule is rooted in part in a realization that <u>it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court</u>[]" and further recognizing the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.") (emphasis added).

In sum, Plaintiff is not entitled to exact a pre-trial (and without any trial) windfall simply because it selected this Court as the forum as opposed to the courts of Plaintiff's home state of Illinois. Such an award would materially differ from the result the Illinois courts would reach, and would provide a strong incentive to Illinois litigants to engage in improper federal forum shopping. For that reasons, the Court should simply deny Plaintiff's request outright.

### III.   PLAINTIFF'S REQUEST FOR FINES OF $280,000.00 PLUS $767 PER DAY IS A PROCEDRUALLY IMPROPER REQUEST FOR <u>CRIMINAL CONTEMPT</u>, NOT CIVIL CONTEMPT

6

In the unlikely event the Court considers the merits of Plaintiff's request, it should also note that what Plaintiff is actually seeking is an order holding Defendants in *criminal* contempt of court. Plaintiff has no standing to make such a request, Plaintiff has failed to follow any of the constitutional and procedural requirements for imposing a penalty of this sort, and the Court thus cannot lawfully impose such criminal penalties without first providing Defendants with a appropriate measure of procedural due process, including a jury trial as they have separately demanded as a matter of right.

It is beyond dispute that courts generally may impose contempt sanctions in appropriate cases. The issue here is whether Plaintiff is seeking *civil* contempt sanctions (which carry a lesser standard of due process requirements) or *criminal* contempt sanctions (which carry far greater protections). Determining the true nature of the sanction requires an analysis of the facts underlying the contempt, and a review of the relief sought:

> In distinguishing criminal and civil contempt sanctions, the court inquires whether the sanction's purpose was to coerce compliance and whether the contemnor was given the opportunity to cure his or her contempt and thereby end the sanction, rather than rely upon the stated purpose of the contempt sanction or on the label given to the proceeding by the court below. However, a civil contempt order that starts out as coercive can become punitive and therefore [become] "criminal contempt."

17 AM. JUR. 2D *Contempt* § 4 (2005 Supp.) (internal footnotes omitted), *citing Commodity Futures Trading Com'n v. Armstrong*, 284 F.3d 404 (2d Cir. 2002); *Quilling v. Funding Resource Group*, 227 F.3d 231 (5th Cir. 2000); *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Grand Jury Proceedings*, 280 F.3d 1103 (7th Cir. 2002), *cert. denied*, 536 U.S. 925, 122 S. Ct. 2593, 153 L. Ed. 2d 781 (2002).

The key distinguishing factor between civil and criminal contempt is whether the threatened sanction is avoidable by subsequent compliance with the Court's order:

10297-1/MCS/DSG/501953_v1

> A contempt proceeding is civil if the purpose is remedial and intended to coerce the person into doing what he is supposed to do. If the purpose is to vindicate the authority of the court by punishing the wrongdoer, the proceeding is one for criminal contempt. Criminal contempt cannot be purged by future compliance with the order.

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Federal Criminal Procedure, Distinction Between Criminal Contempt And Civil Contempt*, 3A FED. PRAC. & PROC. CRIM.3D § 704. In other words, in the case of a civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus '"carries the keys of his prison in his own pocket."' *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994), *quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498 (1911)). By contrast, an unavoidable fine or term of incarceration, "is punitive and criminal <u>if it is imposed retrospectively for a 'completed act of disobedience[]</u>.'" *Id.* (emphasis added).

Here, because Plaintiff seeks massive sanctions for <u>past</u> transgressions of this Court's order, and because the sanctions requested are mandatory in nature and cannot be avoided by future compliance, the relief requested is plainly criminal in nature. *See Bagwell*, 512 U.S. at 826, 114 S.Ct. 2552 (noting that "conclusions about the civil or criminal nature of a contempt sanction are properly drawn ... from an examination of the character of the relief itself.'") (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 635-36, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)) (citations omitted). Here, the relief sought is clearly intended to be punitive, not coercive — Plaintiff's motion expressly states so; "The court has the <u>right to punish by fine Defendants for acts of contempt</u>." (Plaintiff's Motion at 2).

Because the nature of relief demanded is mandatory, severe, and unavoidable, it is therefore criminal in nature, and Defendants are thusly entitled to significant procedural due process protections including the rights to:

(1) be advised of the charges against him or her;
(2) have the right to a public trial;
(3) have a reasonable opportunity to meet the charges by way of defense or explanation;
(4) have the right to be represented by counsel; and
(5) have a chance to testify and call other witnesses in his or her behalf, either by way of defense or explanation.

17 AM. JUR. 2D *Contempt* § 148 (2005 Supp.), *citing Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)). These same safeguards are recognized and, in fact, required by both the Local Rules of this Court (*see* LR 37.1(b)), and by the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 42(b). Moreover, Fed. R. Crim. P. 42(a)(2) requires that any criminal contempt must first be referred to the appropriate governmental agency for prosecution; "The court <u>must request that the contempt be prosecuted by an attorney for the government</u>, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt." (emphasis added). For this reason, Plaintiff has no standing to pursue the requested punitive remedies such as an award of more than half a million dollars, even if those remedies were available under Illinois law, which they are not.

## IV.   PLAINTIFF HAS PROVEN NO DAMAGES WHATSOEVER

Finally, although Defendants expressly reserve their rights to present witnesses and evidence, and to conduct all appropriate and necessary discovery prior to any future trial on the issue of criminal contempt, it is plain from the face of Plaintiff's moving papers that Plaintiff has not established any damages whatsoever.

9

First, Plaintiff simply assumes, and it asks the Court to likewise assume, that any and all postings on Defendants' website which mention Plaintiff must be entirely false. Indeed, without presenting even a scintilla of evidence establishing the falsity of <u>all</u> statements which remained on Defendants' website after September 15, 2004, Plaintiff brazenly contends, "[t]here is no question that Defendants' violations of this Court's order have harmed [Plaintiff]. Both existing and potential customers have ceased doing business with [Plaintiff] <u>as a result of reviewing *false* postings</u> on Defendants' websites after September 15, 2005." (emphasis added).

This statement plainly assumes, without proving, that each and every negative statement on Defendants' site was entirely false, and, furthermore, that not a single true (but negative) posting remained on the site after September 15, 2004. Of course, this is nothing but an unsubstantiated allegation which has never been litigated, and this crucial issue of fact clearly must be decided before any jury could conclude that Plaintiff was damaged by Defendants' non-compliance with this Court's order.

Indeed, Defendants contend that many, if not all, of the negative statements and opinions posted on their website and other sites regarding Plaintiff are wholly and completely <u>true</u>. If Plaintiff claims that it suffered losses as the result of information posted on Defendants' site, it must establish that the loss was caused by the publication of a <u>false</u> statement rather than a <u>true</u> one. *See* Restatement (Second) of Torts § 581(A) (1977) (noting that "one who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.") Thus, in order to recover any damages at all, Plaintiff's burden is to prove that it lost business solely and exclusively because of <u>false</u> negative statements rather than <u>true</u> negative statements.[2] Because the "evidence" presented by Plaintiff does not remotely satisfy such a burden, the need

---

[2] Even if the statements are false, the Communications Decency Act, 47 U.S.C. § 230, prohibits holding a website operator liable for false statements written by third parties. Since Defendants did not author the statements about Plaintiff on their website, even if they are false, Plaintiff cannot recover its losses from Defendants.

10297-1/MCS/DSG/501953_v1

for a full and complete trial on this issue (as specifically required by, *inter alia*, Local Rule 37.1(b)), rather than some form of summary proceeding, is manifest.

As Defendants understand it, Plaintiff's damages evidence seems to be as follows: Plaintiff claims an average lost profit per lost client of $35,000.00. Plaintiff estimates eight (8) clients were lost due to negative information posted about Plaintiff, thus Plaintiff's total loss is $280,000.00. Although this analysis is speculative to the extreme on its face, a closer examination of the "evidence" supplied by Plaintiff reveals an even weaker level of proof which supports a finding that Plaintiff has proven no damages whatsoever.

For instance, "Exhibit 4" to the declaration of Israel Kushnir is a letter dated February 25, 2005 to Plaintiff from Rob Viehman, President of Three Rivers Publishing, Inc. Although this document is plainly inadmissible hearsay to which Defendants object under separate pleading, in his letter, Mr. Viehman confirms that, "[a]side from information included on your own website, I could not locate one positive story about your firm. Quite to the contrary, I found many negative comments which I will not include with this letter." Of course, <u>at no time does Mr. Viehman say that he reviewed any negative information on any website operated by Defendants</u>. Indeed, he indicates that the negative comments are "many." Moreover, Mr. Viehman's conclusion would appear to corroborate and confirm the truth of what many others have said about Plaintiff's shoddy and valueless business practices; "[l]ooking back now at the last two days I wasted with your analyst, I now realize I received absolutely nothing for his $350 fee. I'll consider that a lesson learned."

It is truly baffling that Plaintiff believes this evidence establishes that Defendants have caused any losses to Plaintiff. On the contrary, Mr. Viehman's letter clearly and convincingly proves that Plaintiff lost this particular customer because it provided services that the customer

found to be wholly without worth. Plaintiff's negative reputation, and the corresponding loss of business, appears to be well-justified in this instance.

Of course, assuming the Court does not reject Plaintiff's specious request for sanctions outright (which it certainly should do), Defendants intend to depose Mr. Viehman, and all seven (7) other allegedly "lost clients" to determine the true reason for their decision not to do business with Plaintiff. Assuming the other customers' stories track that of Mr. Viehman, there is no question but that Plaintiff has not, cannot, and will not satisfy its burden of proof on the issue of damages. Thus, to the extent that the Court may, in the exercise of its discretion, decline to even consider the issue of damages, it should dismiss Plaintiff's request for such without any further consideration.

## V.     CONCLUSION

For all of the above reasons, Defendants Edward Magedson and Xcentric Ventures, LLC respectfully request that the Court: 1.) deny Plaintiff's request for sanctions in its entirety; or, alternatively, 2.) set a trial on the issue of contempt and damages pursuant to Local Rule LR 37.1 and Fed. R. Crim. P. 42.

XCENTRIC VENTURES, LLC
EDWARD MAGEDSON

By:___/s/James K. Borcia____
    One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC

3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, et al., | ) Honorable Judge Norgle ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2005, I electronically filed **Defendants' Response to Motion for Sanctions** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

> Bart A. Lazar, Esq.
> Rachel Kindstrand, Esq.
> Seyfarth Shaw LLP
> 55 East Monroe, Suite 4200
> Chicago, IL 60603

XCENTRIC VENTURES, LLC and ED MAGEDSON

By:  /s/ James K. Borcia
One of Their Attorneys

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 248-1000

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000