UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GEORGE S. MAY INTERNATIONAL COMPANY**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| -vs- | ) Case Number 04-C-6018<br>)<br>) Judge Norgle |
| **XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES,** | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION FOR RECONSIDERATION OF CONTEMPT ORDER

There is no question that Defendants were and are in contempt of this Court's Temporary Restraining Order ("TRO"), and that this Court properly found Defendants to be in contempt. Thus, there is no valid basis for this Court to reconsider its September 13, 2005 order finding Defendants in contempt of the TRO.

This Court entered the TRO on September 24, 2004 when Defendants were represented by counsel at the hearing. Defendants had ample time to review George S. May's requested relief prior to the September 24, 2004 hearing, since they received a copy of the Motion and proposed TRO almost a week in advance of the hearing. On October 8, 2004, Defendants were again represented by counsel, and agreed to the continuation of the TRO pending a ruling on George S. May's Motion for a Preliminary Injunction. Thus, if the terms of the TRO were unclear, Defendants had two opportunities to request clarification.

The language of the TRO is very clear. The TRO enjoins Defendants "from making, hosting, and/or transmitting false or deceptively misleading, descriptions, statements or misrepresentations about George S. May, its business, owner, officers, employees and/or agents." Even prior to filing the lawsuit, George S. May had notified Defendants of certain postings it believed were false. *See* letters to XCentric Ventures, LLC and counsel dated November 12, 2003, October 8, 2004, and October 25, 2005, attached as Exhibit A. Yet, instead of complying, Defendants' postings became more outlandish and harmful to George S. May, which necessitated this lawsuit. Moreover, on October 8, 2004, the same day as the hearing extending the TRO, George S. May specifically identified to Defendants several postings which it believed were false and should be taken down. Exh. A.

After receiving the October 8, 2004 letter, if Defendants truly could not understand the TRO and whether George S. May's position was well taken, Defendants had a third opportunity to ask this Court for clarification of the TRO, and knowingly chose not to do so. Thus, contrary to the assertions in Defendants' Motion, George S. May did not attempt to "pull one over" on Defendants. Rather, George S. May made reasonable attempts to request that Defendants comply with the TRO before it moved forward with its Motion for Contempt. At this late date, it is simply not a legitimate excuse for Defendants to now claim to this Court that they did not understand the meaning of the TRO, given the plain language of the TRO, and the three opportunities they had to oppose or clarify the TRO prior to George S. May's filing of the contempt motion.

Of course, Defendants' statements are disingenuous, because, even after George S. May filed its Motion for Contempt, Defendants did not suggest that they misunderstood the TRO, nor

did they even attempt to change any of the postings. They simply refused to comply until this Court held Defendants in contempt, at which time they made a meager effort to comply.

Nevertheless, as of the date of this brief and even after the entry of this Court's order holding them in contempt, Defendants have not fully complied with the TRO. There are at least three postings that Defendants continue to refuse to take down despite the TRO, notification from George S. May, this Court's contempt order, and a more recent notification from George S. May in a letter dated October 25, 2005. *See* Exh. A. Included in this list is a posting falsely purported to be from George S. May's President, Israel Kushnir. *See* Exh. A. Thus, Defendants' Amended Motion for Reconsideration should be denied because Defendants were and are in contempt, and Defendants' contumacious conduct has harmed George S. May.

Defendants' Amended Motion for Reconsideration should also be denied because Defendants have offered no appropriate grounds to the Court to support their motion. As this Court has stated, "[m]otions to reconsider are not at the disposal of parties who want to 'rehash' the same arguments that were originally presented to the court. Indeed, the court's orders are not 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *United States Securities and Exchange Commission v. Nat'l Presto Indus., Inc.*, No. 02-C-5027, 2004 U.S. Dist. LEXIS 7392, at *5 (N.D. Ill. Apr. 28, 2004) (citations omitted).[1] Defendants' arguments—particularly the First Amendment issues—represent a "rehash" of the same issues that were raised by Defendants' in their Response to Motion For An Order Finding Defendant In Contempt for Violations of the TRO, and subsequently rejected by the Court. Additionally, Defendants may not advance new arguments that could have been raised in the original Response to Plaintiff's motion for contempt. As cases within this Circuit make clear, "[r]econsideration

---

[1] All unpublished cases are attached to this brief as Exhibit B.

motions are not vehicles to reargue points that could have been advanced, but were not advanced, during the briefing leading up to the disposition of issues." *Hamilton v. O'Connor Chevrolet, Inc.*, No. 02-C-1897, 2005 U.S. Dist. LEXIS 9963, at *5 (N.D. Ill. Mar. 23, 2005). To the extent that Defendants attempt to argue that the Communications Decency Act applies in this case, which they did not raise in their original Response to Plaintiff's motion for contempt but have raised in many other briefs before this Court, Defendants are precluded from raising that argument in their Amended Motion. For these reasons, Defendants' Amended Motion for Reconsideration should be denied.

I.   **Defendants Have Offered No Grounds For This Court to Reconsider Its Order Finding Defendants In Contempt.**

Defendants purport to bring their Amended Motion under Federal Rules of Civil Procedure 7(b) and 54(b). While there is some support for bringing a motion to reconsider under Rule 54(b), courts entertaining such a motion "'should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Nat'l Presto Indus., Inc.* 2004 U.S. Dist. LEXIS at *4 (*citing Christianson v. Colt Indus. Operation Corp.*, 486 U.S. 800, 817 (1988), [*quoting Arizona v. California*, 460 U.S. 605, 618n.8 (1983)]). Furthermore, courts consider five factors in determining whether a motion to reconsider is appropriate, including "where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Id.* at *4.

None of these factors is present here, and Defendants have made no attempt to even argue that these factors apply. All Defendants have done is raise the same issues over again, even going so far as to recite substantially the same cases they included in their original Response to Plaintiff's motion for contempt.

In fact, what Defendants are basically saying is that they do not agree with the TRO. Disagreement with an order, however, and even invalidity of an order, are not grounds for Defendants' failure to comply. As the Seventh Circuit has stated, "[p]arties must obey court orders regardless of their validity, unless the orders are stayed pending appeal. In effect, [Defendant's] only reason for disobeying the order is that he believed it to be wrong. Even if that were true, [Defendant] was obligated to obey the order or be held in contempt." *Alexander v. Chicago Park District*, 927 F.2d 1014, 1025 (7th Cir. 1991).

What Defendants have not done is establish that they should be relieved from the contempt order because they either cannot comply, or that they have made "all reasonable efforts to comply." *See, e.g., SEC v. Custable*, No. 94-C-3755, 1999 U.S. Dist. LEXIS 1776, at *6-8 (N.D. Ill. Feb. 11, 1999). Clearly, Defendants can comply, because they have removed at least some of the postings from the website that are false and defamatory. However, the removal of the postings came **after this Court found Defendants in contempt**, and after Defendants' conduct harmed George S. May. The fact that it took an order of contempt to get Defendants to partially comply, and that Defendants have still not removed the remaining postings, demonstrates that they have not made "all reasonable efforts" to comply. "Even if the efforts [the alleged contemnor] did make were 'substantial,' 'diligent' or 'in good faith,'… the fact that he did not make 'all reasonable efforts' establishes that he did not sufficiently rebut the…prima facie showing of contempt.'" *Custable*, 1999 U.S. Dist. LEXIS at *8 (*quoting U.S. v Hayes*, 722

F.2d 723, 725 (11th Cir. 1984). Defendants have simply offered no reason why they did not remove the postings after the TRO was entered, why they waited until they were held in contempt to remove more than one posting, why they chose to remove the postings in such a way that falsely suggests that the postings were not false and/or deceptive, and why Defendants cannot remove the remaining postings identified as false and defamatory. Furthermore, Defendants' conduct is willful, because it is clear that they had the ability to comply but simply choose not to. Because Defendants cannot show any reason under the law by which this Court should reconsider its holding, Defendants' Amended Motion should be denied.

**II.    Even Assuming, *Arguendo*, that Defendants' First Amendment Arguments Were Properly Raised, the First Amendment Does Not Bar Holding Defendants In Contempt.**

As stated above, Defendants should not be permitted to relitigate the same issues raised in response to Plaintiff's motion for contempt. Moreover, the law has not changed since the First Amendment issues were briefed for this Court on the motion for contempt. Even assuming, *arguendo*, that the First Amendment should be considered on this Amended Motion for Reconsideration, it is well-established that false or misleading commercial speech may be prohibited. *J.K. Harris & Co. v. Kassel*, 253 F.Supp.2d 1120, 1128 (N.D. Cal. 2003). Commercial speech, which has been defined as "'expression related solely to the economic interest of the speaker and its evidence,'" or "'speech that proposes a business transaction'" may be enjoined by this Court if it is "false, deceptive, or misleading." *U.S. v. Kaun*, 827 F.2d 1144, 1152 (7th Cir. 1987). Similar to the tax protester who was enjoined from marketing and selling materials that were based on false and misleading theories under the guise of tax advise, Defendants should be restrained from engaging in a commercial enterprise that encourages the posting of false and deceptively misleading complaints about George S. May. *Id.* at 1145-46.

Even if the false commercial speech on Defendants' websites can be considered "intertwined" with political or social speech (which is questionable here), the TRO enjoining Defendants from posting false and defamatory statements about George S. May does not limit Defendants from continuing to engage in commentary or other forms of protected free speech. *See, e.g., Kraft Food Holdings, Inc. v. Helm*, 205 F.Supp.2d 942, 955 (N.D. Ill. 2002). Statements made by individual posters such as the ones at issue which are decidedly false and which Defendants cannot dispute are false can clearly be enjoined under the Lanham Act. *J.K. Harris*, 253 F.Supp. 2d at 1130.

Since Defendants consented to the extension of the TRO it is ludicrous to claim that this Court had no power to extend the TRO—it was extended by consent. Nevertheless, contrary to Defendants' assertions, courts do in fact grant injunctive relief in defamation cases without the benefit of a jury trial. *See, e.g., J.K. Harris & Co.,* 253 F.Supp.2d at 1130 (enjoining statements posted on the Internet that the plaintiff alleged to be false and were not challenged by the defendant). George S. May is not, however, simply asserting a defamation claim, and Defendants make no mention of the other claims raised by George S. May, such as its claims under Section 43(a) of the Lanham Act and its other state law causes of action. Additionally, George S. May prevailed on its request for a TRO by showing a "better than negligible" chance of succeeding on the merits coupled with the irreparable harm it continues to suffer. *See, e.g., Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago,* 856 F.Supp. 472, 474 (N.D. Ill. 1994). There is no requirement that a trial on the merits be conducted before granting the TRO. In fact, it is an extremely common practice to support the granting of injunctive relief on the basis of the declarations of Charles E. Black, GSMIC's vice-president of operations. For example, as the court noted in *J.K. Harris*:

> Those statements that Plaintiff has declared to be false that were submitted to Defendants by third parties are enjoined. The only evidence in the record indicates that these statements are false and misleading and prohibited by the Lanham Act. These statements, moreover, are harmful to the business reputation and good will of Plaintiff. Plaintiff has shown both a serious question as to whether these statements are false and that the balance of hardships tips in its favor. Because Defendants have submitted no admissible evidence that these statements are true or, for some other reason, constitutionally protected, they suffer no hardship in having these statements enjoined.

*J.K. Harris & Co., LLC*, 253 F.Supp.2d at 1130.

Courts have clearly noted that "an injunction that restrains only false or misleading commercial speech 'is consistent with the First Amendment.'" *Cornwell v. Sachs*, 99 F.Supp.2d 695, 708 (E.D. Va. 2000) (citations omitted). "'Nothing is clearer in the emerging law of commercial free speech than that false or misleading commercial speech is clearly subject to restraint.'" *Id.* Defendants have not contested the commercial nature and false content of the postings, and it is undisputed that the postings are false and that Defendants should have removed them pursuant to the TRO.

**III. Even Assuming, *Arguendo*, that Defendants' Arguments Under the Communications Decency Act Were Properly Raised in Its Motion, the Temporary Restraining Order Does Not Violate the Communications Decency Act.**

As noted above, Defendants cannot raise arguments on a motion to reconsider that were clearly available to them prior to original briefing on the motion for contempt. In fact, Defendants have raised the Communications Decency Act ("CDA") in other briefs filed with this Court, but did not raise them in their original Response to Plaintiff's motion for contempt. It is not proper to raise this issue here for the first time. Even assuming that the CDA can be raised, however, Defendants are simply not entitled to the protections afforded by the CDA.

The CDA provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C.S. § 230(c)(1); *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-

8

G, 2004 U.S. Dist. LEXIS 6678, at *21 (N.D. Texas Apr. 19, 2004). Under the CDA, "interactive service provider" is defined as "any information service, system, or access software provider that provides or enable computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C.S. § 230(f)(2). Information content provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C.S. § 230(f)(3). While interactive service providers are immunized under the CDA, information content providers are not so immunized. It is important to note that interactive service providers may also be information content providers if they go "beyond the traditional publisher's role" by taking "an active role in creating or developing the content at issue." *MCW, Inc.*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *26.

At least one federal district court has determined that Defendants Magedson and Badbusinessbureau.com do not qualify for immunity under the CDA. *MCW, Inc.*, No. 3:02-CV-2727-G, 2004 U.S. Dist. LEXIS 6678, at *28-35. Essentially, the federal district court for the Northern District of Texas determined that Magedson and the BBB were information content providers under the Act and as such could be found liable. In reaching that conclusion, the court noted that Defendants were responsible for creating titles such as "con artists," "scam," and "Ripoff," and that the reports were organized under headings which included "con artists," and "corrupt companies." *Id.* at *32n.10. Defendants' underlying activities with respect to the websites have not changed; the reports leveled against George S. May are categorized by Defendants under "George S. May  Corrupt Companies," among other categories, and also include the terms "ripoff" and "scam."

9

Furthermore, even the Defendants' partial compliance with the TRO demonstrates that Defendants are information content providers for the purposes of the CDA. In response to this Court's order finding Defendants in contempt, Defendants posted the following on their websites:

> This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the First Amendment rights of free speech of the author of the posting and violates the Federal Communications Decency Act *UPDATE Employee ..inside information ..George S. May International Company-The real scam
>
> See http://www.ripoffreport.com/reports/ripoff64081.htm, attached as Exh. C.

This heading clearly demonstrates that Defendants actively edit the content of their websites and are not subject to the protections under the CDA.

Moreover, Defendants actively encourage and solicit complaints from individuals for the website. *See, e.g., MCW, Inc.*, 2004 U.S. Dist. LEXIS 6678, at *34. As the *MCW* court stated "[t]he defendants cannot disclaim responsibility for disparaging material that they actively solicit. Furthermore, actively encouraging and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role…the defendants have not only incurred responsibility for the information developed and created by consumers, but have also gone beyond the publisher's role and developed some of the defamatory information posted on the websites." *Id.* at *35. Again, the facts have not changed; Defendants encourage posters to provide "insider information" regarding the companies, specifically instructing posters to "[u]se any details such as names, times, places, tape recorded evidence (where legal), pictures, and witnesses statements, that will reveal the facts and support your Report. These items could be submitted to us to be made a part of your actual report..." *See* Plaintiff's Memorandum of Law in Support of Its Motion for Preliminary Injunction at p. 21.

Defendants also create metatags using "George S. May."  Metatags are a special type of code which are embedded within a website that are used to describe the website's contents.  In this case, Defendants have embedded "George S. May" within the code of the websites so that individuals who run an Internet search using the keyword "George S. May" will locate www.ripoffreport.com as one of their search results.  Defendants claim that ripoff reports will be discovered by search engines once a report is posted.  *See* Plaintiff's Reply Memorandum of Law in Support of Its Motion for Preliminary Injunction at p. 10.

A review of cases applying the CDA also demonstrate that the CDA does not apply to this type of Defendants.  Defendants do not operate in the same manner as such providers as America Online (AOL).  *Cf.*, *Morrison, M.D. v. American Online, Inc.*, 153 F.Supp.2d 930 (N.D. Ind. 2001).  Defendants actively solicit negative comments about companies and individuals—hence the titles of Defendants' websites "Ripoff Report.com"—and even encourage volunteers to become "Rip Off Report Reporters."  Additionally, there is some case law which suggests that when injunctive relief is sought, even an interactive service provider is not entitled to immunity under the CDA.  *See, e.g., Does v. Franco Productions*, No. 99-C-7885, 2000 U.S. Dist. LEXIS 8645, at *16 (N.D. Ill. June 22, 2000) (noting that "[p]laintiffs' claims for injunctive relief, although not precluded by the CDA, fail to state a claim...[p]laintiffs fail to elucidate what activities of [defendants] they seek to enjoin").  Moreover, to the extent that George S. May relies on the Lanham Act for its claims against Defendants, the CDA specifically provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property."  47 U.S.C.S. § 230(e)(2).  The CDA did not preclude this Court from entering a Temporary Restraining Order, or an order finding Defendants in Contempt.  *See, e.g., Gucci America, Inc. v. Hall & Assoc.*, 135 F.Supp.2d 409 (S.D.N.Y. 2001).

**IV. Conclusion**

Defendants have offered no acceptable reasons for their failure to abide by the terms of the TRO. Instead, Defendants have simply raised some of the same arguments as they did in the original briefing on the motion for contempt, as well as new arguments that they are prohibited from making, but which are baseless. Not only as a matter of law, but also for practical reasons of judicial economy and fairness, Defendants should not be permitted to take another bite of the apple or have a "redo" based on their failure to contest the continuation of the TRO or this Court's contempt finding.

Furthermore, contrary to the affidavit of Ed Magedson, Defendants have not complied with the Court's order finding them in contempt. As of the date of the filing of this motion, Defendants still refuse to take down at least three of the postings identified by Plaintiff. Of what value is it to Defendants to continue to post a report that falsely identifies George S. May's President as the author? The answer is that Defendants continue to profit off of the false and defamatory postings regarding George S. May (and of other companies as well) by increasing readership and therefore advertising revenue, sales of books, donations, revenue from referral arrangements with attorneys and law firms, and the personal celebrity of Ed Magedson. Because Defendants continue to willfully disobey this Court's order, Defendants' Motion to Reconsider this Court's contempt finding should be denied.

DATED:   November 8, 2005	Respectfully submitted,

	GEORGE S. MAY INTERNATIONAL COMPANY


	By:  s/Rachel M. Kindstrand
	        One of Its Attorneys

Attorneys for Plaintiff:

Bart A. Lazar, Esq.
Ronald L. Lipinski, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
55 East Monroe, Suite 4200
Chicago, Illinois  60603
Telephone:  (312) 346-8000
Facsimile:  (312) 269-8869
Firm No. 90747

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2005, I electronically filed **Plaintiff George S. May International Company's Response in Opposition to Defendants' Amended Motion for Reconsideration of Contempt Order and attached Exhibits** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:

James K. Borcia
Jborcia@tsmp.com
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois  60606-6308
*Lead Attorney*
*Attorney to be noticed*

And I further certify that on November 8, 2005, I sent an electronic copy of **Plaintiff George S. May International Company's Response in Opposition to Defendants' Amended Motion for Reconsideration of Contempt Order and attached Exhibits** to the following:

Maria Crimi Speth
mcs@jaburgwilk.com
Jaburg & Wilk, P.C.
3200 North Central Avenue
Suite 2000
Phoenix, AZ 85012

s/ Rachel M. Kindstrand

CH1 10978183.3