**EXHIBIT A**

Dockets.Justia.com



**SEYFARTH SHAW** LLP
ATTORNEYS

55 East Monroe Street

Suite 4200

Chicago, IL 60603-5803

312-346-8000

fax 312-269-8869

www.seyfarth.com

Writer's direct phone
(312) 269-8951

Writer's e-mail
rkindstrand@seyfarth.com

October 25, 2005

**VIA FACSIMILE AND FIRST CLASS U.S. MAIL**
**312-627-1717**

James K. Borcia, Esq.
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6308

> Re: *George S. May International Company v. XCentric Ventures, LLC, et al*, **Case No. 04-C-6018, currently pending in the United States District Court, Northern District of Illinois**

Dear Mr. Borcia:

    This letter is in response to your email received on Friday, October 21, 2005. You asked if Plaintiff contends that Defendants are in violation of the Court's injunction order, and if so, what was the basis for that contention.

    To briefly summarize, Plaintiff sent you a letter in October of 2004 pointing out the postings that Plaintiff had located that it believed violated the terms of the Court's Temporary Restraining Order. Defendants refused to comply, and Plaintiff filed its motion for contempt. In September of 2005, the Court granted Plaintiff's motion for contempt, and Plaintiff sent another letter outlining the postings that Plaintiff had located that it believed that Defendants had not taken down.

    In response to your question in your email, based on the investigation of the postings conducted to date, Defendants have not taken down the following postings from their websites:

    ●    Postings located at www.ripoffreport.com/reports/ripoff95354.htm. The postings falsely state that "company policy, as laid forth in our Policy and Procedures Manual, clearly states that Field Service reps are never, under any circumstances, to have any contact with Survey Service or Management Services personnel."

    ●    Postings located at www.ripoffreport.com/reports/ripoff41290.htm. The postings include a response purported to be from GSMIC's President and signed by "Israel Kushner—Park Ridge, Illinois." As Plaintiff has informed Defendants on several occasions, this was not authored or posted by Mr. Kushnir.

BRUSSELS   WASHINGTON, D.C.   SAN FRANCISCO   SACRAMENTO   NEW YORK   LOS ANGELES   HOUSTON   CHICAGO   BOSTON   ATLANTA



- Postings located at www.ripoffreport.com/resports/ripoff98372.htm. The postings falsely state that GSMIC "paid for the awards they received from the BBB," among other things. The postings located on this address also contained a posting purportedly from a GSMIC employee named "Shawn." The real Shawn, a Staff Executive with GSMIC, was forced to post a rebuttal on the website noting that someone had accessed his email accounts and that the information in the posting did not originate from him. Although the posting falsely attributed to Shawn was taken down, Defendants put a disclaimer on the websites noting their disagreement with the Court's order, despite the fact that someone misused a GSMIC's employee's email account and personal information.

- In addition, as noted in Plaintiff's submission to the court, Plaintiff believes that the text that Defendants have chosen to use when postings have been removed constitutes a separate violation of the Temporary Restraining Order.

This list is not meant to be exhaustive, and Plaintiff reserves the right to further review the website and inform Defendants of additional postings.

Sincerely,

SEYFARTH SHAW LLP

*Rachel M. Kindstrand*

Rachel M. Kindstrand

cc:     Bart A. Lazar, Esq.
        Ronald L. Lipinski, Esq.

CH1 10972199.2

# SEYFARTH
### ATTORNEYS SHAW LLP

55 East Monroe Street

Suite 4200

Chicago, IL 60603-5803

312-346-8000

fax 312-269-8869

www.seyfarth.com

Writer's direct phone
(312) 269-8986

Writer's e-mail
blazar@seyfarth.com

October 8, 2004

**VIA FACSIMILE - (312) 627-1717**

James K. Borcia
Tressler Soderstrom Maloney & Priess
Sears Tower
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60603

**VIA FACSIMILE - (602) 248-0522**

Maria Crimi Speth
Jaburg & Wilk, P.C.
Great American Tower
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012

Re:     George S. May v. Xcentric Ventures, et al.

Dear Jim and Maria:

In Court today Defendants consented to the entry of Temporary Restraining Order in the above captioned matter.

Please be advised that George S. May requests that the following false and defamatory postings be removed from the sites immediately, together with any reproductions of the postings found in any string on the site.

101697, 101732—"George S. May International Company – UNETHICAL TRADE SECRETS REVEALED"- Andrea, El Paso, Texas.

64081—"George S. May International deceptive company, false promises, raped and pillaged us." Diane, Chatteroy, Washington. We also understand that this individual has requested that you remove the posting, because George S. May has satisfactorily resolved this client's issues.

BRUSSELS　WASHINGTON, D.C.　SAN FRANCISCO　SACRAMENTO　NEW YORK　LOS ANGELES　HOUSTON　CHICAGO　BOSTON　ATLANTA

# SEYFARTH SHAW LLP
ATTORNEYS

95354—"George S. May ripoff, The Prostitute of the Consulting Business," Disgusted Somewhere, Michigan.

41290—George S. May International Rig-off Dishonest....more than 100% turnover rate," Richard, Scottsdale, Arizona.

Rebuttal 41290: "Message from the President of George S. May International Company...This may include a full refund." Falsely attributed to Israel Kushnir of George S. May.

96442—Response to the false posting spoofing Mr. Kushnir.

86538—"George S. May International ripoff," William, Villa Grove, Illinois.

104370—"George S. May International Company, Better Business Bureau..."  William, Chicago, Illinois.

98372—George S. May International Company 303..." Michael, Silverhill, California, together with false rebuttal postings from "Shawn".

100195—"George S. May International Company," Andrea, Elpaso, Texas.

59860—George S. May International Company ripoff deceptive company," MI, City of Industry, CA, including its use in the "Rebuttal Rules Have Changed!!" section of the sites.

This letter should not be construed as an exhaustive list of postings that George S. May believes to be subject to the temporary restraining order, or as an admission that other content on Defendants' sites is not subject to the Temporary Restraining Order.

Please confirm to me in writing that these postings have been removed by the close of business on Monday, October 11, 2004, and will be kept off the sites pursuant to the terms of the temporary restraining order.

This letter is sent without waiving any of George S. May's rights and remedies in the premises, all of which are expressly reserved.

Very truly yours,

SEYFARTH SHAW LLP

Bart A. Lazar

BAL/hv

(312) 269-8895

jlanser@seyfarth.com

November 12, 2003

**via u.s. mail & e-mail**
<domain@xcentricventures.com>
<info@ripoffreport.com>

Intercosmos Media Group, Inc.
d/b/a DirectNic.com, Inc
650 Poydras Street, Suite 1150
New Orleans, Louisiana 70130

      **Re:**    **George S. May International Co. Message Postings on Ripoffreport.com**

Dear Mr. Magedson:

      We are counsel for George S. May International Co. ("GSM").

      GSM has learned that a message, purporting to be authored by Israel Kushnir, President of GSM, and including an invitation to call him via a listed telephone number, was posted on the Ripoffreport.com message board on October 20, 2003, at 1:51:09 PM. [<http://www.ripoffreport.com/view.asp?id=41290>] The message is titled "Message from the President of George S. May International Company... This may include a full refund." This message was not sent by Mr. Kushnir. Someone apparently impersonated Mr. Kushnir and posted the message. As such, we request your assistance in immediately removing this misleading and harmful message from your publicly accessible message board.

      Please notify us no later than the close of business on Wednesday, November 12, 2003 that you have removed this false and deceptively misleading posting. We appreciate your prompt cooperation in this matter.

      This letter is sent without waiving any of George S. May International Co.'s rights and remedies in this matter, all of which are reserved. We look forward to hearing from you.

                       Sincerely yours,

                       Seyfarth Shaw LLP

                       Joseph R. Lanser

JRL:jrl

CH1 10605023.1

Mr. Edward Magedson
November 12, 2003
Page 2

cc:   George S. May International Co.
      Bart A. Lazar

**EXHIBIT B**

LEXSEE 2004 US DIST LEXIS 7392

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v.
NATIONAL PRESTO INDUSTRIES, INC., Defendant.**

**Case No. 02 C 5027**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 7392*

**April 27, 2004, Decided
April 28, 2004, Docketed**

**PRIOR HISTORY:** *In re Nat'l Presto Indus., 347 F.3d
662, 2003 U.S. App. LEXIS 21302 (7th Cir. Ill., 2003)*

**DISPOSITION:** [*1] Defendant's Motion to Reconsider Transfer denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For SECURITIES AND EXCHANGE
COMMISSION, United States, plaintiff: Kathryn A.
Pyszka, Richard J. Gorman, Susan Marie Weis, Securities & Exchange Commission, Chicago, IL.

For NATIONAL PRESTO INDUSTRIES, INC., defendant: James G. Hunter, Jr., Nancy Scheurwater Hunter,
Kenneth G. Schuler, Erin S. Shaw, Brian Edward Koncius, Latham & Watkins LLP, Chicago, IL.

**JUDGES:** CHARLES RONALD NORGLE, Judge,
United States District Judge.

**OPINIONBY:** CHARLES RONALD NORGLE

**OPINION:**

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge:

Before the court is Defendant's Motion to Reconsider Transfer [docket entry 23-1]. For the following
reasons, the motion is denied.

**I. INTRODUCTION**

The United States Securities and Exchange Commission ("SEC") filed this action in the Northern District
of Illinois against National Presto Industries, Inc. ("National Presto") alleging that it has been operating an as

unregistered investment company in violation of the Investment Company Act of 1940, *15 U.S.C. § § 80a-1 et
seq.* In response, National Presto filed a motion to transfer venue to the Western District of Wisconsin pursuant
[*2] to *28 U.S.C. § 1404(a)*.

In an order dated March 6, 2003, the court denied
National Presto's motion to transfer to the Western District of Wisconsin pursuant to *28 U.S.C. § 1404(a)*,
holding that National Presto had not carried its burden of
demonstrating that the Western District of Wisconsin
would be a more convenient forum. See Minute Order of
March 6, 2003 [docket entry 15-1].

National Presto filed a petition for a writ of mandamus in the Seventh Circuit Court of Appeals, seeking
review of the court's March 6, 2003 order denying transfer and asking the Seventh Circuit to transfer the action
to the Western District of Wisconsin. In an opinion dated
October 21, 2003, the Seventh Circuit denied the petition
for mandamus. See *In re National Presto Indus., Inc.,
347 F.3d 662, 665 (7th Cir. 2003)*.

In light of the Seventh Circuit's opinion, National
Presto filed the instant Motion to Reconsider Transfer.
The motion is fully briefed and before the court.

**II. STANDARD OF DECISION**

National Presto's instant motion seeks reconsideration of the court's March 6, 2003 order denying the motion to transfer to the Western [*3] District of Wisconsin
pursuant to *28 U.S.C. § 1404(a)*, an interlocutory order.
National Presto states that the instant motion is brought
"pursuant to *Federal Rule of Civil Procedure 54(b)* and
pursuant also to the common law of reconsideration . . .
." Def.'s Mot. to Reconsider, at 1. While there is no Federal Rule of Civil Procedure that allows the filing of a
motion to reconsider an interlocutory order, district
courts have recognized such motions, finding the author-

ity to consider such motions in the authorities cited by National Presto. See, e.g., *Neal v. Honeywell, Inc., 1996 U.S. Dist. LEXIS 15954, No. 93 C 1143, 1996 WL 627616, at *2 (N.D. Ill. Oct. 25, 1996)* (collecting authority); *Shuff v. Consolidated Rail Corp., 865 F. Supp. 469, 472-73 (N.D. Ill. 1994).*

District courts possess the inherent authority to modify interlocutory orders. See *Cameo Convalescent Ctr., Inc. v. Percy, 800 F.2d 108, 110 (7th Cir. 1986); Kapco Mfg. Co. v. C & O Enterprises, Inc., 773 F.2d 151, 154 (7th Cir. 1985)* (stating district courts "always have the power to modify earlier orders in a pending [*4] case"). However, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operation Corp., 486 U.S. 800, 817, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988)* (quoting *Arizona v. California, 460 U.S. 605, 618 n.8, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983)).*

As an exercise of a court's inherent authority, a motion to reconsider an interlocutory order is appropriate where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. See, e.g., *Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990); Neal, 1996 U.S. Dist. LEXIS 15954, 1996 WL 627616, at *2.*

These grounds represent extraordinary circumstances, and [*5] the granting of a motion to reconsider is to be granted only in such extraordinary circumstances. See id. (stating that "such problems rarely arise and the motion to reconsider should be equally rare"). Motions to reconsider are not at the disposal of parties who want to "rehash" the same arguments that were originally presented to the court. See *In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978, 794 F. Supp. 261, 267 (N.D. Ill. 1992).* Indeed, the court's orders are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988).*

National Presto claims that its motion to reconsider should be granted based on two grounds: a controlling or significant change in the law and the facts since the submission of the issue to the court. In response, the SEC claims that neither a controlling or significant change in the law nor the facts has occurred since the submission of the issue to the court.

## III. ANALYSIS

### A. Controlling or Significant Change in the Law

National Presto claims that the Seventh [*6] Circuit's In re National Presto opinion represents a controlling and significant change in the law since the court's March 6, 2003 order denying the motion to transfer to the Western District of Wisconsin pursuant to *28 U.S.C. § 1404(a).* According to National Presto, the Seventh Circuit decided an issue of first impression and settled the law of this Circuit concerning transfer motions where a governmental agency is the plaintiff, which this court previously found unsettled, and thus reconsideration is appropriate. See Def.'s Mem. in Supp. of Reconsideration, at 3. In response, SEC claims that National Presto's argument mischaracterizes both the decisions of this court and the Seventh Circuit. See Pl.'s Mem. in Opp. to Reconsideration, at 3.

A preliminary point of clarification is in order with regard to the decisions of this court and the Seventh Circuit. This court's March 6, 2003 order held that National Presto had not carried its burden under *§ 1404(a)* of demonstrating that the Western District of Wisconsin would be a more convenient forum. See Minute Order of March 6, 2003. After reviewing the parties' submissions, the court rejected National [*7] Presto's argument that the SEC's choice of forum should be given no deference because the Northern District of Illinois had no substantial connection to the litigation. Id. The court indicated that under the Investment Company Act of 1940, Congress gave the SEC wide discretion in selecting a venue to enforce violations of the Act. Id. (citing *15 U.S.C. § 80a-43 (2003)*). The court also found that the Northern District of Illinois did have a substantial connection to the litigation because the SEC conducted the investigation of National Presto from its Chicago office. Id. Having found that the Northern District of Illinois did have a substantial connection to the litigation, the court stated: "A court will not grant a motion to transfer if it will merely shift the inconvenience from one party to another." Id. (citing *Medi USA, L.P. v. Jobst Institute, Inc., 791 F. Supp. 208, 211 (N.D. Ill. 1992)*). The court did not find that the law of this Circuit was unsettled concerning transfer motions where a governmental agency is the plaintiff; rather, the court simply stated: "[National Presto] offers no authority showing that a transfer [*8] of venue is proper where the government's primary connection to an action is that its investigation was conducted from offices within the venue." Id. Thus, having found that the Northern District of Illinois did have a substantial connection to the litigation, the court indi-

cated that it was "not persuaded by [National Presto's] arguments under the § 1404 transfer." Id.

In its petition for mandamus, National Presto again argued that the SEC's choice of forum should be given no deference because the Northern District of Illinois had no substantial connection to the litigation, other than the fact that the SEC conducted its investigation from its Chicago office. The Seventh Circuit described that argument as "a bit of an exaggeration, since Presto operates throughout the country and at least two investors alleged to have been harmed by its alleged violation of the Investment Company Act are located in Chicago." In re National Presto, 347 F.3d at 664.

In its opinion, the Seventh Circuit stated: "The petition raises the question, on which there are no cases in this court and few elsewhere, of the weight to be given a government agency's appeal to convenience [*9] in resisting a motion for change of venue." Id. at 663. The Seventh Circuit began its analysis reiterating the well-established standard in deciding transfer motions that "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)). The Seventh Circuit further reiterated the well-established standard in deciding transfer motions that "when plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff . . . ." Id. at 665. The Seventh Circuit addressed the question presented by National Presto's petition, stating: "We think this principle should hold even when one of the parties is a federal agency that will suffer inconvenience if forced to litigate in the defendant's district because the agency or its field office is in another district." Id. Thus, the Seventh Circuit clarified that a governmental agency's [*10] choice of forum is entitled to no greater or lesser deference than any other litigant under a § 1404(a) analysis.

Proceeding to discuss the relevant § 1404(a) factors, the Seventh Circuit stated:

> We doubt that the balance of convenience actually favors the SEC or even that we have a tie. Given the location of documents, the limited subpoena power of the Northern District of Illinois with regard to Presto's potential witnesses, and the lighter docket in the Western District of Wisconsin, we suspect that the balance favors the Western District. But the bal-

ance is not so far askew as to justify the extraordinary relief sought by Presto.

Id. Based upon the Seventh Circuit's opinion, National Presto contends that the court must revisit its analysis of the relevant § 1404(a) factors, and transfer the action to the Western District of Wisconsin.

The court agrees with the SEC's position that the Seventh Circuit's opinion does not represent a controlling or significant change in the law since the submission of the issue to the court. After considering the factors relevant to transfer under § 1404(a) raised by both National Presto and the SEC, the Seventh Circuit declined [*11] to order this court to transfer the action to the Western District of Wisconsin. The Seventh Circuit simply clarified that a governmental agency's choice of forum is entitled to no greater or lesser deference than any other litigant under a § 1404(a) analysis - a proposition implicit in this court's March 6, 2003 order denying transfer. Thus, the In re National Presto opinion presents no change in the law and does not impact the court's reasoning for decision in its March 6, 2003 order.

### B. Controlling or Significant Change in the Facts

National Presto also claims that new events occurring since the court's March 6, 2003 order denying the motion to transfer to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a) confirm the propriety of transfer.

"To support a motion for reconsideration based on newly discovered evidence, the moving party must 'show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion].'" Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269-70 (7th Cir. 1996) [*12] (quoting Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir. 1963)). Motions to reconsider are not at the disposal of parties who want to "rehash" the same arguments that were originally presented to the court. See In re Oil Spill by "Amoco Cadiz", 794 F. Supp. at 267.

According to National Presto, these new events are: (1) SEC's requests for documents, the originals of which are located at National Presto's headquarters in Eau Claire, Wisconsin; (2) SEC's notices of depositions to take place in the Western District of Wisconsin; and (3) SEC's responses to interrogatories indicating that it does not intend to call any witnesses located in the Northern District of Illinois. In contrast, SEC claims that these events are not "new" and do not support reconsideration

of the court's March 6, 2003 order denying transfer. Specifically, SEC claims that all of these matters were addressed in the original motion to transfer.

The court agrees with SEC's position that there has not been any controlling or significant change in the facts to warrant reconsideration. National Presto raised the argument that the originals of relevant [*13] documents were located at its headquarters in Eau Claire, Wisconsin in its initial motion to transfer. Also, in its response to National Presto's motion to transfer, the SEC stated that depositions would be taken where witnesses were located, in order to minimize any burden on the witnesses. Furthermore, as SEC indicates, *Federal Rule of Civil Procedure 45* requires that "a party or attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." *Fed. R. Civ. P. 45(c)(1)*. Lastly, in its response to National Presto's motion to transfer, SEC did not claim that likely witnesses were located in the Northern District of Illinois. In sum, National Presto has not offered any new facts that would alter the reasoning for decision in the court's March 6, 2003 order denying the motion to transfer. See *Caisse Nationale, 90 F.3d at 1269-70*; see also *In re Oil Spill by "Amoco Cadiz", 794 F. Supp. at 267* (indicating that motions to reconsider are not at the disposal of parties who [*14] want to "rehash" the same arguments that were originally presented to the court).

### C. Review of the Court's March 6, 2003 Order

As indicated, there has been no controlling or significant change in the law or the facts since court's March 6, 2003 order denying the motion to transfer to the Western District of Wisconsin pursuant to *28 U.S.C. § 1404(a)*. In that order, the court held that National Presto had not carried its burden under *§ 1404(a)* of demonstrating that the Western District of Wisconsin would be a more convenient forum. See Minute Order of March 6, 2003. However, with an abundance of caution, the court has reviewed its analysis and finds no reasons why that order should not stand, even in light of the Seventh Circuit's opinion.

The SEC filed this action alleging that National Presto has been operating an as unregistered investment company in violation of *Section 7(a) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-7(a)*. See Pl.'s First Am. Compl., PP1-2. The dispositive issue will be whether National Presto is primary engaged in the business of investing in securities. See *15 U.S.C. § 80a-3(b)(1)* [*15] . Thus, the core of this case involves records and documents. Neither party has argued that a large number of witnesses will be called; and, to the extent that experts will be called, it is likely that traveling to and from Chicago would be less burdensome. Argua-

bly, the issues in this matter may invite motions for summary judgment.

The SEC further alleged that as a result of National Presto's failure to register as an investment company, shareholders nationwide, including those in the Northern District of Illinois, have been denied the protections of the Investment Company Act. See Pl.'s First Am. Compl., P14. Consequently, no one forum is the geographical focal point of this litigation and this is not a parochial matter limited to Eau Claire, Wisconsin. Furthermore, as SEC's allegations of National Presto's conduct imply a national impact, this action may have been brought in any number of district courts, as Congress gave the SEC wide discretion in selecting a venue to enforce violations of the Investment Company Act, and thereby enforce the regulatory scheme envisioned by Congress when it passed Investment Company Act. See *15 U.S.C. § 80a-43*; [*16] see also *Zorn v. Anderson, 263 F. Supp. 745, 747 (S.D.N.Y. 1966)* (stating that the venue of actions brought for violations of the Investment Company Act is governed by the special venue provision of the statute rather than by reference to the general venue statute, *28 U.S.C. § 1391*). As the Seventh Circuit noted, the SEC has eleven regional offices, of which the Chicago office is the one closest to National Presto's Eau Claire, Wisconsin headquarters. See *In re National Presto, 347 F.3d at 664-65*. As the SEC has repeatedly stated, it chose to file this action in the Northern District of Illinois for the convenience of all parties and potential witnesses to the litigation. "It is not as if the SEC were trying to make Presto defend in Miami, where another of [SEC's] regional offices is located." *Id. at 665*.

Therefore, while the court possesses the inherent authority to modify interlocutory orders, National Presto has not presented an extraordinary circumstance that would warrant the exercise of that authority. See *Christianson, 486 U.S. at 817* (indicating that "as a rule courts should be loathe [*17] to do [reconsider interlocutory orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice'"). The court's review of its March 6, 2003 order reveals that the decision was not "clearly erroneous [nor] would work a manifest injustice" if National Presto were to continue litigating this action in the Northern District of Illinois. *Christianson, 486 U.S. at 817*. Transfer to the Western District of Wisconsin is not warranted.

### IV. CONCLUSION

For the foregoing reasons, National Presto's Motion to Reconsider Transfer is denied.

IT IS SO ORDERED.

CHARLES RONALD NORGLE, Judge

2004 U.S. Dist. LEXIS 7392, *

United States District Court

DATED: 4-27-04

LEXSEE

**DEBORAH AND KWANZA HAMILTON, on behalf of themselves and all others
similarly situated, Plaintiffs, v. O'CONNOR CHEVROLET, INC., Defendant.**

**Case No. 02 C 1897**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 9963*

**March 23, 2005, Decided
March 23, 2005, Filed**

**PRIOR HISTORY:** *Hamilton v. O'Connor Chevrolet,
Inc., 2004 U.S. Dist. LEXIS 11474 (N.D. Ill., June 22,
2004)*

**LexisNexis(R) Headnotes**

**COUNSEL:**   [*1]   For Deborah Hamilton, Kwanza
Hamilton, Plaintiffs: Dmitry N. Feofanov, Chicago
Lemon Law.Com, Dixon, IL; Lance A. Raphael, Allison
Amy Krumhorn, Stacy Michelle Bardo, Consumer Ad-
vocacy Center, Chicago, IL.

For O'Connor Chevrolet, Inc., Defendant: Brian Thomas
Bailey, James M. Bailey, Bailey & Bailey, Chicago, IL.

**JUDGES:** Hon. Mark Filip.

**OPINIONBY:** Mark Filip

**OPINION:**

MEMORANDUM OPINION AND ORDER

Plaintiffs, Deborah and Kwanza Hamilton ("Plain-
tiffs"), have filed a motion to reconsider. (D.E. 54 ("Re-
consideration Motion").) The Reconsideration Motion
requests that the Court revisit its order of June 22, 2004.
(D.E. 50 ("Order").) Among other things, that Order
granted summary judgment on Count VI of Plaintiff's
Second Amended Complaint (D.E. 26), which was a
claim under the federal *Odometer Act*, in favor of
O'Connor Chevrolet, Inc. ("Defendant"). For the follow-
ing reasons, the Reconsideration Motion is denied.

BACKGROUND

The following brief procedural history is relevant to
the disposition of the Reconsideration Motion. n1 In Au-
gust 2003, Plaintiffs asserted claims which included,

among others, a putative claim under what Plaintiffs re-
ferred to as the "*Federal Motor Vehicle Information and
Cost Savings Act* [*2]  ." (*D.E. 26 P 103*.) As previously
explained in the Court's Order, this claim (Count VI)
actually was potentially brought under the successor to
that statute, which is known as the "Odometer Act," *49
U.S.C. § 32701 et seq.* n2 In the Odometer Act claim,
Plaintiffs alleged, *inter alia,* that "by not disclosing the
car's title and the information contained therein to the
Plaintiffs, and by failing to disclose the car's milage on
the title that should have been tendered to the Plaintiffs
for their signature, Defendant violated the disclosure
requirements of the Act . . . and the regulations promul-
gated thereunder." (*D.E. 26 P 110*.) As noted in the Or-
der, "Plaintiffs conceded that the mileage was accurately
disclosed, and they also expressly acknowledged that
they do not allege odometer tampering." *Hamilton v.
O'Connor Chevrolet, 2004 U.S. Dist. LEXIS 11474, No.
02-1897, 2004 WL 1403711, at *10 (N.D. Ill. June 23,
2004)* (citing D.E. 43 at 7-8).

n1 The facts of this case, at least as they re-
late to the Court's Order granting summary judg-
ment on Count VI, are set forth in *Hamilton v.
O'Connor Chevrolet, Inc., 2004 U.S. Dist. LEXIS
11474, No. 02-1897, 2004 WL 1403711, at *1-3
(N.D. Ill. June 23, 2004).*

[*3]

n2 As the Court pointed out in the Order, the
Plaintiffs incorrectly described

the statute they were seeking relief
under in Count VI as the 'Motor

Vehicle and Information Cost Savings Act.' (D.E. 44 at 12.) The 'Motor Vehicle Information and Cost Savings Act,' which was codified at *15 U.S.C. § § 1981-1991*, was repealed by Pub. L. No. 103-272, § 7(b), 108 Stat. 1379 (1994). Its successor, the statute at issue in Count VI, *49 U.S.C. § 32701 et seq.*, is located in Chapter 32 of Title 49 of the United States Code, which is titled 'Odometers.' Accordingly, this statute is properly referred to as the 'Odometer Act.' *Szwebel v. Pap's Auto Sales, Inc., 2003 U.S. Dist. LEXIS 13044, No. 02-7797, 2003 WL 21750841, at *2 (N.D. Ill, July 29, 2003)* ('Presuming that the Szwebels intended to assert a claim under the Federal Odometer Act, *49 U.S.C. § 32701 et seq.*, rather than the repealed Motor Vehicle Information and Cost Saving Act, *15 U.S.C. § 1981 et seq* . . . .').

*Hamilton v. O'Connor Chevrolet, Inc., 2004 U.S. Dist. LEXIS 11474, No. 02-1897, 2004 WL 1403711, at *8 n.6 (N.D. Ill. June 23, 2004).*

[*4]

In February 2004, Defendant filed a summary judgment motion (D.E. 35), and in June 2004, the Court granted summary judgment in favor of Defendant on Count VI. *See Hamilton, 2004 U.S. Dist. LEXIS 11474, 2004 WL 1403711, at *8*. The Court held that the "Defendant is entitled to summary judgment on [Count VI] because Plaintiffs have presented no evidence that Defendant intended to defraud them with respect to the car's mileage or its odometer reading." *Id.* In so holding, this Court "joined with the majority of courts that have considered the issue," *id.*, and, as discussed below, expressly relied on "a line of cases dating back more than twenty-five years holding that civil liability under the Odometer Act is limited to mileage fraud and odometer tampering." *2004 U.S. Dist. LEXIS 11474, [WL] at *9* (collecting cases).

On July 21, 2004, approximately one month after the Court's Order, Plaintiffs filed a motion to "Reconsider the Grant of Summary Judgment to Defendant Under Count VI." (D.E. 54.) The ten-page Reconsideration Motion principally advances lengthy and previously un-

raised arguments that refer to: principles of administrative agency deference (*id.* at 7); Plaintiffs' view of the legislative history ( [*5] *id.* at 5-6); the Odometer Act regulations (*id.* at 4, 6); the purported plain meaning of the statute (*id.* at 7); and a variety of previously cited cases. The Reconsideration Motion also discusses two or three cases that were previously cited in small part in the Plaintiffs' prior briefing. (Plaintiffs' prior summary judgment briefing spanned some twenty-two pages, well in excess of the presumptive page limits set under Local *Rule 7.1.*) The Reconsideration Motion contends that, notwithstanding the weight of authority that the Court identified and followed in its Order, Defendant is liable under the Odometer Act.

ANALYSIS

The Reconsideration Motion is procedurally improper. The Reconsideration Motion principally advances new arguments, based on previously available law and facts, which were not raised in the (over-sized) brief that Plaintiffs filed during the summary judgment phase. Reconsideration motions are not vehicles to reargue points that could have been advanced, but were not advanced, during the briefing leading up to the disposition of issues.

The Reconsideration Motion also, in small part, engages in a re-citation and discussion of caselaw that was mentioned [*6] only in passing during the summary judgment briefing cycle. This also is not a proper use of a reconsideration motion.

1. Plaintiffs Have Waived Any Objections to the Manner in Which Defendant's Arguments Were Presented

As explained, the following issue was presented by the summary judgment briefing: whether civil liability under the Odometer Act is limited to claims of mileage fraud and odometer tampering. As explained, the Court held that it is. *See Hamilton, 2004 U.S. Dist. LEXIS 11474, 2004 WL 1403711, at *8*.

Although this issue was not the focus of the parties' respective opening and response briefs, Defendant presented its position and cited from the line of cases supporting the position in its opening summary judgment brief. Defendant also continued to advance this argument in its reply.

The Reconsideration Motion contends "that this argument and line of cases [in support of it] was not raised by [Defendant] in its opening motion for summary judgment." (D.E. 54 at 1 n.1) The Court respectfully disagrees. In this regard, Defendant argued in its opening brief that "Plaintiffs have not claimed that the odometer reading that was provided to them was false." (D.E. 35 at 10-11.) Defendant [*7] argued that Plaintiffs "admit

[that] they have no evidence that anyone affiliated with [Defendant] or anyone else tampered with the odometer on the vehicle or provided an inaccurate statement." (*Id.* at 11.) Defendant also argued that because "there is no evidence that [Defendant] in any way provided a false odometer statement, much less a false statement made with intent to defraud," Defendant was entitled to summary judgment on Count VI. (*Id.*)

Defendant also cited cases in its opening brief that stand for the proposition on which the Court granted summary judgment on Count VI. Put differently, these cases are part of the "line of cases dating back more than twenty-five years holding that civil liability under the Odometer Act is limited to mileage fraud and odometer tampering." *Hamilton, 2004 U.S. Dist. LEXIS 11474, 2004 WL 1403711, at *9.* In this regard, Defendant cited *Mayberry v. Ememessay, 201 F. Supp. 2d 687 (W.D. Va. 2002),* and *Compton v. Altavista Motors, Inc., 121 F. Supp. 2d 932 (W.D.Va. 2000). (See* D.E. 35 at 11.) In *Mayberry,* the "plaintiff contended that the only violation of the [Odometer] Act is the fact that the dealership **[*8]** disclosed the mileage in a separate odometer statement and not on the title document itself, as required by the C.F.R. regulations." *Mayberry, 201 F. Supp. 2d at 694. Mayberry* held that "because [the] plaintiff conceded that she was not defrauded as to the mileage of the car, her claim under the Odometer Act must fail." *Id. at 695.* Similarly, in *Compton,* the plaintiff claimed "that [the defendant] violated the Odometer Act by using the odometer disclosure statement to indicate the mileage on the title, instead of placing the mileage disclosure on the title itself." *Compton, 121 F. Supp. 2d at 941. Compton* granted summary judgment in favor of the defendant "because [the plaintiff] had set forth no evidence that [the defendant's] alleged violation of the [Odometer] Act's on-the-title disclosure requirement was in any way motivated by an intent to defraud [the plaintiff] with regard to the accuracy of the mileage of [the plaintiff's] automobile." *Id. at 942.*

Even if this argument and this line of authority had not been raised in Defendant's opening brief (which they were), the Court finds that **[*9]** Plaintiff waived any argument that Defendant improperly argued these points in its reply brief for two independent and alternative reasons. First, the Plaintiffs neither moved to strike the portions of Defendant's reply brief that purportedly raised the issues for the first time, nor did Plaintiffs move to file a sur-reply to address the arguments. *See generally Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 n.6 (7th Cir. 2000).* Second, the Reconsideration Motion does not argue that the Defendant's alleged failure to raise certain arguments and cases in its opening summary judgment

brief is grounds for reconsideration or somehow requires a different outcome.

2. Plaintiffs' Arguments Are Not Appropriate for a Motion to Reconsider in Any Event

In addressing reconsideration motions, judges in the Northern District of Illinois have applied the standard established by the Seventh Circuit in *Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). See, e.g., United States S.E.C. v. Nat'l Presto Indus., Inc., 2004 U.S. Dist. LEXIS 7392, No. 02-5027, 2004 WL 1093390, at *2* **[*10]** *(N.D. Ill. Apr. 28, 2004)* (applying *Bank of Waunakee); Neal v. Honeywell, Inc., 1996 U.S. Dist. LEXIS 15954, No. 93-1143, 1996 WL 627616, at *3-6 (N.D. Ill. Oct. 25, 1996)* (same), *aff'd, 191 F.3d 827 (7th Cir.1999); Young v. Murphy, 161 F.R.D. 61, 62 (N.D. Ill. 1995)* (citing *Bank of Waunakee). Bank of Waunakee* teaches that a reconsideration motion is appropriate where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *See Bank of Waunakee, 906 F.2d at 1191.*

The arguments in the Reconsideration Motion do not fall into any of these categories. As noted above, the Reconsideration Motion raises a number of arguments, based on disparate grounds, that never were advanced in the summary judgment briefing, notwithstanding that the bases for the belated **[*11]** arguments clearly were available. Perhaps Plaintiffs did not advance the arguments because Plaintiffs believed other arguments were stronger and therefore should be the focus of their brief. Perhaps Plaintiffs did not assiduously research the issues--although that appears unlikely from the obvious efforts that went into the Plaintiffs' response brief and the preparation Plaintiffs' counsel have displayed during their efforts in the case to date. In any event, reconsideration motions are not properly employed to present new arguments that previously were available. *See, e.g., Neal, 1996 U.S. Dist. LEXIS 15954, 1996 WL 627616, at *4.* Nor are reconsideration motions properly employed to effectively double page limits presumptively set by local rule.

A small portion of the Reconsideration Motion also rehashes cases, principally from the District of New Mexico, that were referenced in passing in the summary judgment briefing cycle. These cases, as Plaintiffs concede, do not represent the majority view in the applicable precedent. (*See* D.E. 54 at 9 n.20.) Just as it is generally

inappropriate to advance new arguments in a reconsideration motion, it is also inappropriate to rehash old ones. *See,* [*12] *e.g., Smithkline Beecham Corp. v. Apotex Corp., 194 F.R.D. 624, 625 (N.D. Ill. 2000).* Accordingly, this argument is also procedurally flawed.

The Reconsideration Motion is not well taken. The Court respectfully declines the procedurally defective invitation to revisit its Order siding with the majority view of applicable precedent. n3

n3 In the Reconsideration Motion, Plaintiffs reference *Salmeron v. Highlands Ford Sales, Inc., 223 F. Supp. 2d 1238 (D.N.M. 2002),* and *Yazzie v. Amigo Chevrolet, Inc., 189 F. Supp. 2d 1245 (D.N.M. 2001).* The Order noted that these cases "have been criticized and/or expressly rejected in some of the cases" cited in the Court's opinion. *Hamilton v. O'Connor Chevrolet, Inc., 2004 U.S. Dist. LEXIS 11474, No. 02-1897, 2004 WL 1403711, at *10 n.8 (N.D. Ill. June 23, 2004).* In the Reconsideration Motion, Plaintiffs also contend that in *Decos v. JoJo Motors, Inc., 2002 U.S. Dist. LEXIS 6873, No. 01-6646, 2002 WL 598520 (N.D. Ill. Apr. 18, 2002),* "Chief Judge Kocoras entered summary judgment in a consumer's favor under the Odometer Act . . ., find-

ing that prohibiting the plaintiff from signing the title form constituted a statutory violation." (D.E. 54 at 9.) The Court disagrees. Judge Kocoras held that "by knowingly disclosing an inaccurate odometer reading, [the defendants] . . . violated the Federal Odometer Act." *Decos, 2002 U.S. Dist. LEXIS 6873, 2002 WL 598520, at *2.* Plaintiffs, unlike the plaintiff in *Decos,* "conceded that the mileage was accurately disclosed, and they also expressly acknowledged that do not allege odometer tampering." *Hamilton, 2004 U.S. Dist. LEXIS 11474, 2004 WL 1403711, at *10* (citing D.E. 43 at 7-8).

[*13]

CONCLUSION

For the foregoing reasons, the Reconsideration Motion (D.E. 54) is denied.

Mark Filip

United States District Judge

Northern District of Illinois

Dated: March 23, 2005

10 of 41 DOCUMENTS

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. FRANK J. CUSTABLE, JR. and FC FINANCIAL CORPORATION, Defendants.**

**No. 94 C 3755**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1999 U.S. Dist. LEXIS 1776*

**February 10, 1999, Decided**
**February 11, 1999, Docketed**

**DISPOSITION:** [*1] Plaintiff's motion for order to show cause granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For SECURITIES AND EXCHANGE COMMISSION, plaintiff: Mary E. Keefe, Jane E. Jarcho, Wendy D. Fox, Securities & Exchange Commission, Chicago, IL.

For SECURITIES AND EXCHANGE COMMISSION, plaintiff: David S. Kempers, United States Securities & Exchange Commission, Chicago, IL.

For FRANK J CUSTABLE, JR, defendant: John A. Dienner, III, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, P.C., Chicago, IL.

For RICHARD J LANG, receiver: Mark D. Toljanic, Martin, Craig, Chester & Sonnenschein, Oak Brook, IL.

**JUDGES:** John A. Nordberg, Senior United States District Judge.

**OPINIONBY:** John A. Nordberg

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiff, the Securities and Exchange Commission (the "SEC") has moved for an order to show cause why Defendants Frank J. Custable, Jr. ("Custable") and FC Financial Corporation ("FCF") should not be held in civil contempt for their failure to comply with this Court's Memorandum Opinion and Order of December 17, 1996 ("Order"). Among other things, the Order required Defendants to pay the SEC a civil penalty of $ 60,000 by January 10, 1997, which they have not done. As coercive sanctions for this failure [*2] to pay, the SEC requests that the Court fine Defendants $ 1,000 per day and incarcerate Custable until Defendants either pay the $ 60,000 penalty or sufficiently establish their inability to do so. For the following reasons, Plaintiff's motion is granted.

### BACKGROUND

The SEC sued Custable and FCF, an investment corporation of which Custable is the president and sole owner, alleging various violations of the securities laws of the United States. On December 22, 1994, the parties executed an Agreed Order as well as a "Consent and Stipulation," which is incorporated into the Agreed Order. The terms of the settlement enjoined Defendants from violating Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. It also provided that Defendants would disgorge $ 324,970.42 in profits swindled from investors and pay $ 30,000 to restore the assets underlying the fraudulent investments. Furthermore, the settlement granted this Court continuing jurisdiction over this matter for all purposes, including the determination of the appropriate amount, if any, of civil penalties. After extensive examination of a number of relevant factors, the Court ordered [*3] Defendants to pay a $ 60,000 civil penalty by January 10, 1997, finding such an action appropriate in part because Custable was a recidivist securities law violator who had intentionally defrauded investors through FCF. Custable filed a **motion for reconsideration,** which was denied by both this Court and, on appeal, the Seventh Circuit.

Defendants failed to pay the required amount by January 10th, and the SEC filed a motion to show cause why Defendants should not be held in **civil contempt.** At a hearing on the motion, Custable argued that he and FCF were unable to pay the penalty. The Court conse-

1999 U.S. Dist. LEXIS 1776, *

quently mandated that he and FCF submit a completed Statement of Financial Condition ("Statement") to the Court and the SEC and that Custable appear for a financial deposition and a hearing. Defendants failed to provide all of the required information, and Custable failed to appear at the hearing, at which point the Court entered an civil contempt order giving Defendants seven days in which to pay the penalty. One week later, Defendants again failed to pay the $ 60,000 fine, and the Court ordered that Defendants produce specific information of their inability to do so within three weeks. However, [*4] the information was not produced until nearly five months later.

At a status hearing on October 15, 1997, Defendants attested to the veracity of their Statement. The SEC argued, however, that the information in the Statement was insufficient to support the defense of inability to comply and again moved for an order to show cause why Defendants should not be held in civil contempt. They also requested that the Court sanction Defendants, by fining them $ 1,000 per day and by incarcerating Custable until the penalty is paid, in order to coerce them into compliance.

## DISCUSSION

Federal courts possess the inherent power to sanction litigants for noncompliance with lawful court orders. *Shillitani v. United States, 384 U.S. 364, 369, 86 S. Ct. 1531, 1535, 16 L. Ed. 2d 622 (1966)* (citations omitted); *Abrams v. Terry, 45 F.3d 17, 23 (2d Cir. 1995)* (collecting cases). The source of this power is not in rules or statutes but in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of the cases." *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)* (internal quotation [*5] marks and citation omitted). A court may apply sanctions in a civil contempt proceeding "to coerce the defendant into compliance with the court's order." *United States v. United Mine Workers of America, 330 U.S. 258, 303-04, 67 S. Ct. 677, 701, 91 L. Ed. 884 (1947)*. In such instances, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested action in bringing about the result desired." *Id.* (footnotes omitted).

Available coercive sanctions include imposition of fines and incarceration. *See Shillitani, 384 U.S. at 368, 86 S. Ct. 1531, 1534, 16 L. Ed. 2d 622* (imprisonment); *United Mine Workers, 330 U.S. at 304, 67 S. Ct. at 701* (fine). The propriety of a specific coercive sanction depends on the contemnor's ability to comply with the court's order. *Shillitani, 384 U.S. at 371, 86 S. Ct. at 1536, 16 L. Ed. 2d 622* (citing *Maggio v. Zeitz, 333 U.S.*

*56, 76, 68 S. Ct. 401, 411, 92 L. Ed. 476 (1948)); see also United Mine Workers, 330 U.S. at 304, 67 S. Ct. at 701*. If compliance is impossible, the court should not impose a coercive sanction. [*6] *United States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552, 75 L. Ed. 2d 521 (1983); United States ex rel. Thom v. Jenkins, 760 F.2d 736, 738 (7th Cir. 1995)*.

The initial burden in a civil contempt proceeding rests with the complainant, who must prove by clear and convincing evidence that the alleged contemnor has knowingly violated an outstanding court order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992); In re Kademoglou, 199 B.R. 35, 36 (N.D. Ill. 1996)*. After the complainant makes this prima facie showing, the burden of production shifts to the alleged contemnor, who may defend his violation by establishing inability to comply. *Rylander, 460 U.S. at 757, 103 S. Ct. at 1552, 75 L. Ed. 2d 521*. To succeed with this defense, an alleged contemnor must do more than simply assert inability. *Wellington Precious Metals, Inc., 950 F.2d at 1529; In re Kademoglou, 199 B.R. at 36. See also United States ex rel. Thom, 760 F.2d at 739, 740* (explaining that self-serving statements of financial hardship or indigence, without corroboration by third parties or financial records including tax returns, [*7] canceled checks, or bank statements, do not satisfy the burden of production); *see also Maggio v. Zeitz, 333 U.S. 56, 76, 68 S. Ct. 401, 411, 92 L. Ed. 476 (1948)* (finding insufficient the alleged contemnor's "own denials which the court finds incredible in context") (footnote omitted). In the case of failure to pay a court-ordered monetary penalty, the defendant must produce evidence of poverty or insolvency that prevent compliance. *Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995); Wellington Precious Metals, Inc., 950 F.2d at 1529*. This evidence must show "'categorically and in detail' why [the alleged contemnor] was unable to comply with the Court's previous order." *In re Kademoglou, 199 B.R. at 36* (citing *Donovan v. Mazzola, 716 F.2d 1226 (9th Cir. 1993), cert. denied, 464 U.S. 1040, 104 S. Ct. 704, 79 L. Ed. 2d 169 (1984)*.

Furthermore, the defendant must establish that, acting in good faith, he has made "all reasonable efforts" to comply with the unsatisfied order. *Wellington Precious Metals, Inc., 950 F.2d at 1529* (quoting *United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988)*). Courts construe the all-reasonable-efforts requirement [*8] strictly. *Combs v. Ryan Coal Co., 785 F.2d 970, 984 (11th Cir.), cert. denied, 479 U.S. 853, 107 S. Ct. 187, 93 L. Ed. 2d 120 (1986))*. "Even if the efforts [the alleged contemnor] did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that he did not make 'all reasonable efforts' establishes that he did not sufficiently rebut the ... prima facie showing of contempt." *United States v.*

1999 U.S. Dist. LEXIS 1776, *

*Hayes, 722 F.2d 723, 725 (11th Cir. 1984).* Only if the defendant satisfies the burden of production does the burden of persuasion shift back to the complainant, *Rylander, 460 U.S. at 757, 103 S. Ct. at 1552, 75 L. Ed. 2d 521,* who then must prove that defendant actually has the ability to comply. *Wellington Precious Metals, Inc., 950 F.2d at 1529; In re Battaglia, 653 F.2d 419, 423 (9th Cir. 1981).*

In the present case, there is no question that the SEC met its initial burden. This Court's Order of December 17, 1996 clearly required Defendants to pay a civil penalty of $ 60,000 to the SEC, and it is undisputed that Defendants have not relinquished even a dollar of that final judgment amount. The burden of production has thus shifted to the Defendants, who have [*9] claimed the defense of inability to comply. After reviewing Defendants' submissions, the Court determines that they have not met their burden of showing "categorically and in detail" why they are incapable of compliance. *See In re Kademoglou, 199 B.R. at 36* (citing *Donovan v. Mazzola, 716 F.2d 1226 (9th Cir. 1993), cert. denied, 464 U.S. 1040, 104 S. Ct. 704, 79 L. Ed. 2d 169 (1984).* Conspicuously absent from the evidence presented by Defendants are tax returns to establish Custable's income, credit card statements to prove his revolving debt, his mortgage documents, auto loan papers, and bank statements. Furthermore, as explained below, he has failed to disclose certain assets or their value and has provided inadequate support for his claims that other assets are subject to liens that prevent him from selling them to raise money to pay to the SEC the $ 60,000 penalty ordered by the Court.

For instance, in his Statement, Custable failed to disclose that he, through FCF or another company of which he is the sole owner, the Franklin Morgan Corporation, owns eight condominiums in Aurora, Illinois. In response, Custable argues that "the properties in question generate no income [*10] to either Custable or Franklin Morgan and none of the properties have any equity value." (Def. Surreply at 2.) However, in support of this contention, he provides nothing more than his own self-serving affidavit, which does not suffice to carry the burden of production. *See United States ex rel. Thom, 760 F.2d at 739, 740; Maggio v. Zeitz, 333 U.S. 56, 76, 68 S. Ct. 401, 411, 92 L. Ed. 476 (1948).* Putting aside the fact that, in failing to disclose both this real estate and his ownership of Franklin Morgan, Defendants have committed fraud on the Court, the Court concludes that, by not at least attempting to sell these condominiums or the corporation, Defendants have failed to use all reasonable efforts to fulfill the Order.

In addition, Custable holds certain notes secured by mobile homes and real estate, and it is not apparent to the Court why these notes have not been used to satisfy judgment in this case. First, Custable has never disclosed the value of these notes, (*see* Def. Response, Exh. B, P 5); without this evidence, the Court cannot evaluate Custable's actual financial status and cannot adjudge him unable to comply. Second, it does not appear that he has even [*11] considered either selling them or assigning them to the SEC in satisfaction of the Order. Therefore, the Court finds that Custable has failed to use all reasonable efforts in relation to these notes. *See Roberts, 858 F.2d at 702* (finding defendant in contempt where his attempts to locate and produce records, as ordered by the court, could "be characterized as half-hearted at best"); *cf. United States v. Rizzo, 539 F.2d 458, 466 (5th Cir. 1976)* (finding that defendant's increasingly thorough searches for missing documents and records sufficiently demonstrated willingness but inability to comply).

Furthermore, Custable owns both a house and a car, and he has not adequately explained why neither of these assets could be used to satisfy judgment in this case. Custable claims there are judgment liens in the total amount of $ 105,614.80 on his home, which he values at $ 120,000 based on real estate tax records, which prevent him from selling the property to assist him in fulfilling the Order. (Def. Response at 2, P 8.) However, in support of his claim he has provided nothing except two Citations to Discover Assets in the amounts of $ 1,598.00 and $ 4,669.00, for a total of $ 6,267.00, [*12] dated October 26, 1998 and November 3, 1998 respectively. n1 The same holds true for Custable's 1995 Mercedes 320E sedan, which he purchased new for $ 40,000 and which he claims has a blue book value of $ 33,000. While Custable alleges the vehicle is subject to an Illinois state court order not to transfer ownership of assets pending appeal of a state judgment against Custable, he does not present any evidence that such an order exists. Custable has only provided a "Stipulation and Agreement by the Parties" in which he agrees not to encumber, transfer, or dispose of any assets during the appeal's pendency. (Def. Response, Exh. D at 2, P 5.) This document was never signed by a judge and does not in any other way appear to be an order endorsed by an Illinois court. (*Id.*) Therefore, by not at least attempting to sell either his house or his car, or both, the Court again finds that Custable has failed to use all reasonable efforts to comply with the Order.

n1 Final judgments in the two matters were entered July 21, 1998 and October 20, 1998.

[*13]

Finally, the Court considers the fact that Defendants have made no efforts to pay even a part of the ordered penalty, despite the fact that Custable has been making regular payments of $ 675 per month on his 1995 Mer-

Case 1:04-cv-06018    Document 99-2    Filed 11/08/2005    Page 21 of 26

Page 4
1999 U.S. Dist. LEXIS 1776, *

cedes and of $ 1,012 per month on his home. Neither has Custable assigned any of his assets, including the condominiums in Aurora and the notes secured by mobile homes and other real estate, to the SEC in a good faith attempt to satisfy the final judgment at least in part. The Court sees no evidence of "substantial" or "diligent" efforts to pay to the SEC the $ 60,000 penalty ordered by the Court. *See Hayes, 722 F.2d at 725.* For these reasons, the Court finds that Custable has not made "in good faith all reasonable efforts" to comply with the Order and has, therefore, failed to satisfy the burden of production that he bears. *Wellington Precious Metals, Inc., 950 F.2d at 1529.*

### CONCLUSION

In closing, the Court notes that "the credibility of an alleged contemnor's denial of an ability to pay must be weighed in light of the circumstances present in the case." *Securities & Exchange Comm'n v. Margolin, 1996 U.S. Dist. LEXIS 11299,* No. 92 Civ. 6307 PKL, 1996 WL 447996, at *3 (S.D.N.Y. **[*14]** Aug. 8, 1996) (citing *Huber, 51 F.3d at 10; Maggio, 333 U.S. at 76)* (footnote omitted). Here, the underlying judgment involved a finding that Defendants were recidivist securities law violators who had intentionally defrauded investors. *See*

*Securities & Exchange Comm'n v. Custable, 1995 U.S. Dist. LEXIS 3279,* No. 94 C 3755, *1995 WL 117935,* at *4-5 (N.D. Ill. Mar. 15, 1995).* Throughout the course of this case, Custable has repeatedly failed to provide necessary information to the Court, which was one of the reasons the Court imposed the $ 60,000 civil penalty in the first place. See *Securities & Exchange Comm'n v. Custable, 1996 U.S. Dist. LEXIS 19321,* No. 94 C 3755, *1996 WL 745372,* at *5 (N.D. Ill. Dec. 26, 1996).* It does not appear that Custable has changed his ways, even when facing imprisonment for civil contempt of court. In light of all the circumstances in this case, the Court does not find Defendants' claimed inability to pay any portion of the civil penalty to be credible. Therefore, the Court holds Defendants in civil contempt of this Court's final judgment order to pay a civil penalty of $ 60,000 to the Securities and Exchange Commission.

**ENTER:**

**John A. Nordberg**

**Senior United States District Judge [*15]**

**DATE:** Feb. 10, 1999

**EXHIBIT C**



...by consumers, for consumers

Rip-off Report.COM

Don't let them get away with it.
Make sure they make the Rip-off Report

a service of
badbusinessbureau.com

Home | File | Search | Register | Login

Submitted:
7/18/2003 5:40:55 PM

Modified: 8/3/2004 11:58:47 PM

Category:
Corrupt Companies

This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the First Amendment rights of free speech of the author of the posting and violates the Federal Communications Decency Act *UPDATE Employee ..inside information ..George S. May International Company-The real scam

George S. May International
Address:
991 W. Hedding Street
San Jose California
U.S.A.
Phone:
408-244-0233
Fax: -

This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the First Amendment rights of free speech of the author of the posting and violates the Federal Communications Decency Act. Check back later for a link to Rip-off Reports legal memorandum that will be filed with the Court on this issue.

Company Search

If you would like to see more Rip-off Reports™ on George S. May International, please use the search box below

George S. May International    [Search]

**In order to assure the best results in your search:**

- *Keep the name short & simple, and try different variations of the name.*
- *Do not include ".com", "S", "Inc.", "Corp", or "LLC" at the end of the Company name.*
- *Use only the first/main part of a name to get best results.*
- *Only search one name at a time if Company has many AKA's.*

Click here to go to our *advanced search* page.

**Rebuttal UPDATE Employee ..inside information**
Submitted: 10/16/2003 3:56:55 PM
Modified: 9/19/2005 7:20:26 PM

George S. May International Company-The real scam

It is important for all past, current and future George S. May International Company clients to understand that 100% of the management consultants employed do not have any certification. This translates into the high likelyhood that you have or will be paying for unproven advice.

If you ask for documents proving the statements given to you by the consultants and/or project director, they will not be provided. This is due to the fact that you have been lied to, and the consultants do not have background in your industry.

In addition, please be advised that all statements relating to your problems may not be true, and are designed to have you continue paying for the consulting.

Do not waste you money with the GSMIC, the advise may do more harm than good. Be sure to insist on seeing documents, and keep a copy.

**John - Las Vegas, Nevada**
**U.S.A.**

**Rebuttal Consumer Suggestion**
Submitted: 10/18/2003 8:59:38 AM
Modified: 9/19/2005 7:20:26 PM

GSMIC and IPA - IBA are almost the same

Search IPA-IBA in 'Ripoff Report' to find more information on GSMIC (George S. May International Company)

Both companies may have the same standard operations, and this may be helpful to current and/or future clients.

**Chuck - Park Ridge, Illinois**
**U.S.A.**

Rebuttal UPDATE EX-employee responds
Submitted: 5/6/2004 7:49:29 AM
Modified: 9/19/2005 7:20:26 PM

Dig and search Rip-Off Report for more, Why, because of variations of the company name.

Diane you are not alone. This is what happens to most of George S. May International Company Clients. Here is a real problem people are not getting this vital information when they search the net for the good the bad and the ugly.

Even on Rip-Off Report you need to dig to get all the reports. Why because of variations of the company name.

Example, search this site and see how many reports you find for the following variations.

George S. May International Company
George S May International Company
George S. May International
George S May International
George S. May
George S May
GSMIC

Now try the same thing on the big search sites you will find the information is burried under the help wanted ads and the George S. May International Meta Tag pages.

BUYER BEWARE! GSMIC is a 78 year old SCAM!

**Chet - Los Angeles, California**
**U.S.A.**

Rebuttal Consumer Comment
Submitted: 8/3/2004 6:27:17 PM
Modified: 9/19/2005 7:20:26 PM

We must stick together

Diane Chattaroy, Washington
There are so many of us that has had a similar experiance. I would really like to talk to you.
Please find my contact information on Ripoffreport, arter my letter. I look forward to hearing from you.

Jolene - Ogden,, Utah
U.S.A.

---

**REBUTTAL BOX**
**MY COMPANY HAS BEEN REPORTED!**
**HOW DO I RESPOND?**

Are you an owner, employee or ex-employee with either negative or positive information about the company or can you provide "insider information" on this company? Do you have a consumer suggestion on how to resolve this problem or how to avoid it in the future? ONLY these types of responses will be added to the filed report, and will be posted within 24 hours of receipt. Make your voice heard. Let them know your side, too! CLICK HERE to Send us your rebuttal on this specific report only.

or

***If you are also a victim of the same company or person, **YOU NEED TO FILE YOUR OWN RIP-OFF REPORT.** CLICK HERE to File your OWN Rip-Off Report

---

Feel free to send us suggestions and comments to our editorial staff.

Technical questions can be addressed to our webmaster.

Best if viewed with Netscape 4, Internet Explorer 4, or AOL 4.0. Support for JavaScript is needed to submit and search for reports.

Having trouble searching or filing a report? It may be a browser problem. See our FAQ for help

Home | File | Update | Search| Pictures | Lawsuits(Coming Soon) | Revenge Guide | Privacy Policy
Volunteers | Thank You! | Editorial | Donate | Link | FAQ | E-Mail Us | ED Magedson – Founder Rip-off Report.com

Copyright © 2011 A Service of Bad business Bureau.com