JKB/cic/371507                                                          5634-2-51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 6018 |
| | ) | |
| XCENTRIC VENTURES, LLC, RIP-OFF | ) | Honorable Judge Norgle |
| REPORT.COM, BADBUSINESSBUREAU.COM, | ) | |
| ED MAGEDSON, VARIOUS JOHN DOES, JANE | ) | |
| DOES AND ABC COMPANIES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
AMENDED MOTION FOR RECONSIDERATION**

Pursuant to this Court's order dated October 26, 2005, Defendants XCENTRIC VENTURES, LLC ("Xcentric"), RIP-OFF REPORT.COM ("Rip-Off Report"), BADBUSINESSBUREAU.COM ("BBB") and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, respectfully submit the following Reply to Plaintiff GEORGE S. MAY's ("Plaintiff") Response to Defendant's Amended Motion for Reconsideration.

**I.    PRELIMINARY COMMENTS**

As this Court correctly noted in its last order, there is some confusion concerning the exact nature of Defendants' motion, and whether that motion was timely. Understanding that issue is required in order to reach the correct conclusion, so some clarification on that matter is offered prior to discussing the merits of the motion.

10297-1/MCS/DSG/503495_v1

Dockets.Justia.com

As the Court knows, the issue here is an order dated September 13, 2005 in which the Court found Defendants in contempt for failing to remove certain material posted on their site. On October 25, 2005, Defendants filed a motion styled "Amended Motion for Reconsideration" which referenced Fed. R. Civ. P. 54(b), and which contained arguments urging the Court to reconsider its decision to hold Defendants in contempt.

The following day, on October 26, 2005, this Court issued an order which outlined the Court's belief that Defendants' motion was more in the nature of request under Rule 59(e) (allowing alteration or amendments to judgments) and/or Rule 60(b) (allowing relief from judgments on the basis of mistake, etc.). In this order, the Court also noted, quite correctly, that motions to alter/amend a judgment under Rule 59(e) must be filed within 10 days after entry of judgment, so by that standard, Defendants' October 25 motion would be untimely if brought under Rule 59(e). By process of elimination, this would leave Rule 60(b) as the only authority which might permit the relief Defendants are seeking, and as the Court also correctly noted, Rule 60(b) relief is generally regarded as an "extraordinary" remedy which is granted only in exceptional circumstances.

The Court's statements require that <u>three</u> crucial points be emphasized.

<u>First</u>, while motions to reconsider are not expressly authorized by the Federal Rules of Civil Procedure, they are nonetheless recognized as a tool available to litigants in federal court:

> [T]he Seventh Circuit [has] observed that a motion for reconsideration performs a valuable function where: the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion for reconsideration would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

10297-1/MCS/DSG/503495_v1

*Jefferson v. Security Pacific Financial Services, Inc.*, 162 F.R.D. 123, 124–125 (N.D. Ill. 1995),

*citing Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990),

*quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va .1983)).

Second, a motion for reconsideration is normally judged according to the standards of

Rule 59(e), not Rule 60(b). *See Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 652 (7th Cir.

1984); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 n. 9 (N.D. Ill.

1988).

Third, Defendants' motion is not untimely because no final judgment or order has been

entered yet, and thus neither Rule 59(e) nor Rule 60(b) have any application at all. By their own

terms, both of those rules discussion modification of, or relief from a final "judgment" or order.

Rule 54(a) defines the term judgment narrowly; "'judgment' as used in these rules includes a

decree and any order from which as appeal lies." Here, no final judgment or order has been

entered, so neither of these rules apply at all.

Although Fed. R. Civ. P. 54(b) specifically permits a court to enter a partial final

judgment or order, the rule requires that the court must first make "an express determination that

there is no just reason for delay and upon an express direction for the entry of judgment." Fed.

R. Civ. P. 54(b). Any judgment or order which lacks such language is not final as a matter or

law, and such interlocutory orders can be modified, in whole or in part, at any time prior to the

entry of final judgment:

> In the absence of such determination and direction, any order or other form of
> decision, however designated, which adjudicates fewer than all the claims or the
> rights and liabilities of fewer than all the parties shall not terminate the action as
> to any of the claims or parties, and the order or other form of decision is subject to
> revision *at any time* before the entry of judgment adjudicating all the claims and
> the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b) (emphasis added).

The rationale for this result is very sound. A party can only appeal a _final_ judgment or order. *See* 28 U.S.C. § 1291. A non-final or interlocutory order <u>cannot</u> be appealed unless and until it becomes final in the manner proscribed by Rule 54(b), or unless it fits within certain exceptions set forth in 28 U.S.C. § 1292; none of which are applicable here. *See International Business Machines Corp. v. U.S.*, 493 F.2d 112, 123 (C.A. N.Y. 1973) (noting interlocutory civil contempt orders generally not immediately appealable).

Thus, when a Court enters a final order consistent with Rule 54(b), that order is immediately appealable, and is also subject to the short timelines set forth in Rule 59(e). After that time has run, the only manner to obtain relief (other than by appeal), is to seek relief under Rule 60(b), which is an extraordinary and rarely-successful undertaking.

On the other hand, a non-final interlocutory order cannot be appealed as a matter of right, and because no appellate remedy is available, Rule 54(b) mandates that <u>all</u> non-final orders <u>can be modified at any time</u> before the entry of a final order. This is why Defendants' motion is timely — the Court has not entered any final order, and the Court is therefore free to change its mind at any time until such a final order has been entered.

In this way, Defendants' motion may simply be viewed as no different than any other motion; it is an application for an order within the meaning of Rule 7(b)(1). It is axiomatic that no time limits apply to a party's right to seek orders upon motion while an action is pending, and thus the Court can and should consider the merits of Defendants' pleading, regardless of how it is styled.

## II.    THIS COURT SHOULD REVERSE ITS FINDING THAT DEFENDANTS CONTUMACIOUSLY VIOLATED THE TRO

Turning then to the merits of the issue, Plaintiff has grossly misled this Court as to the sequence of events which have preceded the instant motion.  To be clear, Plaintiff has attempted to confuse the past with the present, all in an effort to make it seem as if Defendants knowingly violated this Court's order when, in fact, they did not.

As the Court will recall, this issue has been pending for nearly a year.  Last September, in 2004, this litigation began, and Plaintiff asked the Court for an injunction requiring Defendants to remove certain *allegedly* false information from their websites.  On September 24, 2004, the Court issued a TRO to this effect which, by its own terms, applied only to "false or deceptively misleading descriptions, statements or representations concerning George S. May … ."

At this point, the Court must recall that in the process of obtaining the TRO, Plaintiff provided the Court with a single posting (attached as Exhibit C to the declaration of Charles R. Black), which was claimed to be false.  This single posting was the only matter that was specifically addressed prior to the entry of the TRO, and this single posting was removed after the Court entered the TRO.

What happened next is what Defendants are referring to when they accuse Plaintiff of trying to "pull one over" on the Court.

*After* the Court issued the TRO based on the single posting, Plaintiff unilaterally decided that virtually every posting that concerned Plaintiff on Defendants' websites was false.  Note that with the exception of an isolated issue discussed in a letter dated November 12, 2003 (long before this case began), each and every letter referenced in Exhibit A to Plaintiff response post-dates both the September TRO and October 8, 2004 preliminary injunction.  These "post-TRO" matters were never reviewed or considered by the Court, and, most importantly, there has never been any adjudication of the truth or falsity of these statements.

The matters raised in these letters (one of which is dated October 8, 2004 and the other October 25, 200**5**), constitute nothing more than unproven, unsupported allegations of counsel which were never brought to the Court's attention at or before the subject TRO was entered. These claims have never seen the inside of a courtroom, and Plaintiff has never proven that these statements were, in fact false. Because the TRO only applied to false and misleading statements, such proof is mandatory before any of these statements can be shown to fall within the TRO's scope.

Thus, Plaintiff has asked the Court to hold Defendants in contempt, and issue an award of damages in excess of $500,000 based solely on statements which Plaintiff *alleges* are within the scope of the TRO (or subsequent injunction), but which may not actually be within the scope of the TRO. In pursing this goal, Plaintiff seeks to end-run, if not trample, each and every element of Defendants' due process rights. In other words, Plaintiff's entire scheme here can be reduced to the following: Plaintiff says something is false, Plaintiff's word is incontrovertible and entitled to unlimited acceptance at face value, so Plaintiff is therefore entitled to infinite damages from Defendants without the hassle or burden of a trial, or any process whatsoever. This baseless and legally meritless request is so outrageous, so egregious, and so patently offensive such that it should shock this Court's conscience.

The Court clearly is vested with the power to make orders, including pre-trial orders temporarily enjoining certain acts, but that does not empower the Court to simply hear one party's side of a story, skip the quaint tradition of a trial, and then issue damages in whatever amount Plaintiff desires.

Plaintiff's response also notes that courts usually consider five factors when asked to reconsider a prior decision, among them, "the court has patently misunderstood a party," and

"the court has made a decision outside the adversarial issues presented to the court by the parties." Defendants contend that both of these factors are at issue here.

First, as explained in the motion for reconsideration itself, pursuant to the express terms of the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), Defendants cannot, as a matter of law, be treated as the speaker or publisher of information that has been posted on the website by third parties.  Of course, here, <u>all</u> of the allegedly false content that Defendants supposedly failed to remove was <u>posted by third parties</u>.  Defendants are not, as a matter of law, responsible for these posts, and in fact, are entitled to immunity from both damages and injunctive relief.  Whether or not this issue was raised earlier, no case has ever held that the immunity created by the CDA is waiveable, and because this Court has not yet entered any final order or judgment, it is plainly appropriate for the Court to verify that its ruling is not inconsistent with federal law, which it clearly is.

Furthermore, as noted above, Defendants believe that they cannot be held in contempt for failing to remove postings that this Court never found to be false, and which the Court was not even aware of at the time it issue the TRO/injunction which Plaintiff claims has been violated.  By definition, such a holding is tantamount to an adjudication of an adversarial issue that was never actually presented to the Court.  This is precisely the sort of error that can be revisited in a motion for reconsideration.

Finally, Defendants strongly contend that the TRO cannot be enforced in the manner in which Plaintiff seeks to enforce it without offending the First Amendment's prohibition upon prior restraints.  Defendants are fully aware of, and do not disagree with, this Court's prior observation that false or misleading commercial speech can be prohibited entirely.  But this simply returns to the following question — has Plaintiff ever actually <u>proven</u>, in a contested,

7

adversarial proceeding in which Defendants have been permitted to present evidence and cross-examine Plaintiff's witnesses, that any false or misleading statements were wrongfully kept on Defendants' sites following entry of the TRO?

The answer to this question is obviously NO. Plaintiff has merely *alleged* that the post-TRO/injunction statements were false, and thus within the scope of the TRO. This allegation has never been tested, and such scrutiny is absolutely, and constitutionally, required before this Court may lawfully muzzle the speech of the users of Defendants' websites. Allowing Plaintiff to arbitrarily invoke the contempt power of this Court in such a manner makes Plaintiff the supreme arbiter, and gatekeeper, of the First Amendment. Such is not the law, and this Court cannot lawfully permit such a result to stand.

## III.    CONCLUSION

Defendants' Motion for Reconsideration is timely and well-founded. This Court can, and must, reconsider its prior decision, and regardless of all other issues, because Defendants have never willfully violated any order of this Court, the Court should vacate that finding and, to the extent it intends to actually consider any request for criminal contempt damages, it must set that matter for trial for the reasons explained in Defendants' separate briefs addressing that issue.

10297-1/MCS/DSG/503495_v1

XCENTRIC VENTURES, LLC and
EDWARD MAGEDSON


By: /s/James K. Borcia
              One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

10297-1/MCS/DSG/503495_v1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE S. MAY INTERNATIONAL             )
COMPANY,                                )
                                        )
                    Plaintiff,          )
                                        )
v.                                      ) Case No. 04 C 6018
                                        )
XCENTRIC VENTURES, LLC, et al.,         ) Honorable Judge Norgle
                                        )
                    Defendants.         )

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2005, I electronically filed **Defendants' Response to Motion for Sanctions** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

Bart A. Lazar, Esq.
Rachel Kindstrand, Esq.
Seyfarth Shaw LLP
55 East Monroe, Suite 4200
Chicago, IL 60603

XCENTRIC VENTURES, LLC and ED MAGEDSON

By:_____/s/ James K. Borcia_____
          One of Their Attorneys

Maria Crimi Speth, Esq.                 James K. Borcia
JABURG & WILK PC                        David O. Yuen
3200 North Central Avenue, Suite 2000   Tressler, Soderstrom, Maloney & Priess
Phoenix, AZ 85012                       233 South Wacker Drive, 22nd Floor
(602) 248-1000                          Chicago, IL 60606-6308
                                        (312) 627-4000