UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case 04 C 6018 |
| v. | ) ) ) | |
| XCENTRIC VENTURES, LLC, RIPOFFREPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS ABC COMPANIES, JANE and JOHN DOES, | ) ) ) ) ) ) | Honorable Charles R. Norgle |
| Defendants. | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court are Defendant Xcentric Ventures, LLC's and Defendant Ed Magedson's Motions to Dismiss for Lack of Jurisdiction. For the following reasons, these Motions are denied.

**I. INTRODUCTION**

**A. Facts**

George S. May International Company ("May") is a management consulting firm which is incorporated, organized, and existing under the laws of Delaware. May's principle place of business is Park Ridge, Illinois. Xcentric Ventures, LLC ("Xcentric") is an Arizona limited liability corporation located in Phoenix, Arizona, and is listed as the owner of RipOffReport.com and BadBusinessBureau.com (the "Sites"). Ed Magedson ("Magedson") is the owner and

1

manager of Xcentric and the Sites. Magesdon is a citizen of Arizona. The Sites style themselves as consumer advocate resources.[1] Individuals accessing the Sites can search for particular companies by name, or search specific industries or states. Site visitors may then read postings made by disgruntled consumers explaining how they were allegedly "ripped off" by various companies. Visitors can also post their own comments about various companies. Visitors must register with the Sites by providing identifying information such as a name, email and street address in order to post comments.

Visitors to the Sites may also purchase a copy of the "Do-It-Yourself Guide: How to Get Rip-Off Revenge" for $21.95. This book may be purchased with a credit or debit card through PayPal, or with a check or money order sent to Defendants' post office box in Tempe, Arizona. The court notes that the $21.95 includes priority shipping to anywhere in the United States. Visitors may also make donations to the Sites.

Various individuals have posted negative comments regarding May on the Sites. These postings accuse May, and its officers and employees, of, *inter alia*, fraud, larceny, possession of child pornography, and possession of controlled substances. The following is a brief sampling of some of these postings.

> Submitted: 7/18/2003: George S. May International deceptive company, false promises, raped & pillaged us, ripoff.
>
> Submitted: 6/17/2004: George S. May ripoff "The Prostitute of the Consulting Business." A complete, total, incredibly horrible, lying, deceitful company.
>
> Submitted: 8/2/2004: [T]his "consulting" agency is conducting business in a manner that is felonious and illicit at its core . . . [May] encourages and fosters deception on

---

[1] There is only one actual website at issue in this case. Web surfers who access "www.ripoffreport.com" or "www.badbusinessbureau.com" will be directed to the same website.

the part of the employee... Unfortunately, deception, deceit, and lies are used more often than not when convincing a client to retain May's consulting services... [L]arceny is an admirable trait that is a prerequisite for any successful George S. May analyst...

Submitted 8/31/2004: Owner of George S. May Company child pornography and other heineous [sic] crimes. The founder of this company has a background of child pornography and other heineous [sic] crimes ... [H]e offers drugs to junior high school children to get them to engage in sex with each other on tape. He has the tapes in his office ... There is some secret porn club of pedifiles [sic] at George S. May which involves the office directors. When they have district meetings they watch kiddie videos and smoke crack.

Submitted: 9/2/2004: These guys are all a bunch of crooks.

Submitted: 12/24/2005: I worked for [G]eorge [S]. [M]ay and they rip off their clients by billing for travel fees that do not occur.

Submitted: 12/27/2005: [L]ying and cheating [] permeates throughout this organization.

## B. Procedural History

In response to these postings, May filed suit in the Northen District of Illinois on September 15, 2004. May alleges that Defendants have engaged in "false descriptions and representations, trade libel and deceptive trade practices." Compl., ¶ 1. The Complaint includes counts styled "False or Misleading Description and Misrepresentation," "Defamation/Libel," "Illinois Unfair and Deceptive Business Practices," and "Illinois Uniform Deceptive Trade Practices."

The court granted May's Motion for a Temporary Restraining Order ("TRO") on September 24, 2004, enjoining Defendants from "making, hosting, or transmitting false or deceptively misleading, descriptions, statements or representations concerning George S. May, its business, owner, officers, employees and/or agents ..." This TRO was extended by

agreement of the parties in open court on October 8, 2004. On that same date, May moved the court to find Defendants in contempt of court for violating the TRO. After the parties briefed this matter, the court determined that Defendants were in violation of the TRO, and held Defendants in contempt of court. The penalties for this violation remain under advisement.

On February 8, 2005, Xcentric filed a Motion to Dismiss for Lack of Jurisdiction. Magedson filed a similar Motion on August 5, 2005. These Defendants assert that because they have had no minimum contacts with the State of Illinois, the court has no personal jurisdiction over them. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

#### 1. *Personal Jurisdiction over Out-of-State Defendants*

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). It is well established law that "[a] federal court's exercise of personal jurisdiction over a non-resident defendant is proper 'only if a court of the state in which it sits would have such jurisdiction.'" Edelson v. Ch'ien, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005) (quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)); see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984). This court therefore has jurisdiction over this matter "'only if [an Illinois State Court ] would have such jurisdiction.'" Edelson, 352 F. Supp. 2d at 866 (quoting Klump, 71 F.3d at 1371).

The inquiry into whether this court has jurisdiction over these Defendants must therefore

4

begin with "an application of the statutory law of [Illinois]." Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004). After considering Illinois' statutory framework concerning jurisdiction over non-resident defendants, the court must then consider whether its exercise of jurisdiction would "comport[] with due process." Id. at 549. The Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002). One due process inquiry is therefore sufficient. Edelson, 352 F. Supp. 2d at 866.

Under the Illinois Long-Arm Statute, 735 ILL. COMP. STAT. 5/2-209(a)(2), an Illinois court may exercise personal jurisdiction over a non-resident defendant "who in person or through an agent [engages in] [t]he commission of a tortious act within this State." See Edelson, 352 F. Supp. 2d at 866. Where the injury alleged is economic in nature, rather than physical or emotional, however, "the plaintiff needs to show more than the 'harm was felt in Illinois,' the plaintiff must also show an 'intent to affect an Illinois interest.'" Id. at 867 (quoting Real Colors, Inc. v. Patel, 974 F. Supp. 645, 649 (N.D. Ill. 1997)); see also Arthur Young & Co. v. Bremer, 554 N.E.2d 671, 676 (Ill. App. Ct. 1990). Illinois courts may also exercise jurisdiction where a defendant transacts "any business within this state." 735 ILL. COMP. STAT. 5/2-209(a)(1).

A court's inquiry into whether its exercise of jurisdiction over a nonresident defendant would be consistent with due process of law should begin with the familiar "minimum contacts" rule articulated by the United States Supreme Court in International Shoe Co. v. Washington:

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Supreme Court, in Hanson v. Denckla, went on to explain that the necessary minimum contact with the forum state is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

The Supreme Court elaborated on the notion of "purposeful availment" in Burger King v. Rudzewicz:

> This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random ... contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus, where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burden of litigation in that forum as well.

471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted). In addition to the concept of purposeful availment, "[t]he minimum contact requirement contains the notion of foreseeability." Deluxe Ice Cream, 726 F.2d at 1213 n.4 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). When a corporate defendant conducts activities within the forum state sufficient to establish minimum contacts, "it has clear notice that it is subject to suit there." Volkswagen, 444 U.S. at 297.

The court should not stop its inquiry into personal jurisdiction after simply determining that minimum contacts exist, however. The court should go on to ask whether exercising personal jurisdiction is reasonable. See Scott Fruehwald, *The Boundary of Personal*

*Jurisdiction: The "Effects Test" and the Protection of Crazy Horse's Name*, 38 J. MARSHALL L.

REV. 381, 384 (2004). A further aspect of a court's inquiry into personal jurisdiction is therefore

the nature of the relationship among "the defendant, the forum, and the litigation." Shaffer v.

Heitner, 433 U.S. 186, 204 (1977). "This relationship must be such that it is reasonable to

require a nonresident corporation to defend a suit in the forum state in the context of our federal

system of government." Deluxe Ice Cream, 726 F.2d at 1213 (citing Volkswagen, 444 U.S. at

292-93).[2]

    The Supreme Court has indicated that courts may exercise one of two sorts of jurisdiction

over out-of-state defendants: general or specific. Helicopteros Nacionales de Columbia, S.A. v.

Hall, 466 U.S. 408, 414-16 (1984). "General jurisdiction exists when the defendant has

'continuous and systematic' contacts with the forum state." Edelson, 352 F. Supp. 2d at 866

(quoting Helicopteros, 466 U.S. at 416). Where defendant has such contacts with the forum

state, "the court may exercise personal jurisdiction over the defendant even in cases that do not

arise out of and are not related to the defendant's forum contacts." Hyatt, 302 F.3d at 713. In the

absence of general jurisdiction, courts may exercise specific jurisdiction, which is limited to

cases where the "litigation arises out of or is related to [the defendant's contacts with the forum

state]." Logan Productions v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996).

---

    [2] The court notes that the Supreme Court, in Calder v. Jones, 465 U.S. 783 (1984), did not establish a separate and distinct test for personal jurisdiction over out-of-state defendants. "[T]he so-called 'effects' test is merely another way of assessing the defendant's relevant contacts with the forum State." Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985). Under the "effects test," a court may exercise jurisdiction over an out-of-state defendant when that defendant, acting outside a state, causes harm within that state. Calder, 465 U.S. at 789.

## 2. *Personal Jurisdiction and the Internet*

Since its inception in the early 1990s, the Internet has evolved from the refuge of a relative handful of tech-savvy computer literates, to an indispensable tool used by millions worldwide for education, entertainment, communication, and commerce. See Ross Shannon, *The History of the Net*, at: http://www.yourhtmlsource.com/starthere/historyofthenet.html. Businesses now routinely maintain Internet websites which offer consumers the opportunity to communicate directly with these businesses and other consumers, and where consumers can gather information about and purchase the companies' products and services. These websites are accessible anywhere an individual has a computer, including, obviously, all fifty of the United States. The pervasiveness of the Internet, and the wide range of Internet activities available to consumers, poses interesting jurisdictional issues for courts. "The type of Internet activity that is sufficient to establish personal jurisdiction remains an emerging area of jurisprudence." Bombliss v. Cornelsen, 824 N.E.2d 1175, 1180 (Ill. App. Ct. 2005).

Perhaps the seminal case involving the Internet and personal jurisdiction over nonresident defendants is Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) (McLaughlin, J.). In Zippo, Zippo Manufacturing ("Manufacturing") (a Pennsylvania corporation) sued Zippo Dot Com ("Dot Com") (a California corporation), alleging, *inter alia*, trademark infringement. Id. at 1121. The crux of Manufacturing's complaint was the allegation that Dot Com was unlawfully using the trademarked "Zippo" name on Dot Com's website. Id. Dot Com moved the court to dismiss for lack of personal jurisdiction. Id.

Dot Com operated this website from its offices in California, and had no offices, employees, or agents located in Pennsylvania. Id. However, approximately 3,000 of Dot Com's

140,000 paying subscribers to its website were residents of Pennsylvania, and Dot Com had entered into agreements with seven Internet service providers in Pennsylvania so that its subscribers in that state could access the site. Id. The Pennsylvania district court was therefore presented with the following question: whether the nonresident defendant's Internet presence in Pennsylvania, combined with its contractual obligations with Pennsylvania entities, established sufficient "minimum contacts" for the court to exercise personal jurisdiction over the defendant.

In addressing the issue of personal jurisdiction and Internet websites, the district court established what it called a "sliding scale" analysis. Id. at 1124. Central to this "sliding scale" analysis is the notion that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. Judge McLaughlin described the "sliding scale" as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. (internal quotation marks and citations omitted). Judge McLaughlin went on to find that Dot Com's "conducting of electronic commerce with Pennsylvania residents" over the Internet, by contracting with 3,000 Pennsylvania residents and seven Internet access providers in Pennsylvania, placed Dot Com into the category of "doing business over the internet." Id. at

1225-26. The court therefore determined that it could exercise personal jurisdiction over Dot Com. Id. at 1128.

The Seventh Circuit has also indicated that some level of website interactivity is necessary in order for personal jurisdiction to be "premised on the maintenance of Internet sites." Jennings, 383 F.3d at 549. "The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular." Id. at 549-50. District courts in the Northern District of Illinois have also adopted the Zippo court's "sliding scale" analysis. E.g., Publications Int'l, Ltd. v. Burke/Triolo, Inc., 121 F. Supp. 2d 1178, 1182 (N.D. Ill. 2000); Berthold Types Ltd. v. European Mikrograf Corp., 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000); Euromarket Designs, Inc. v. Crate & Barrel, Ltd., 96 F. Supp. 2d 824, 837-38 (N.D. Ill. 2000). Illinois courts have adopted the "sliding scale" approach as well. Bombliss, 824 N.E.2d at 1180; LaRochelle v. Allamian, 836 N.E.2d 176, 184-85 (Ill. App. Ct. 2005).[3] This court will therefore analyze the question of whether Defendants' Internet contacts with Illinois are sufficient for the court to exercise personal jurisdiction using the Zippo court's "sliding scale" approach.

## B. Defendants' Motions to Dismiss for Lack of Personal Jurisdiction

Xcentric and Magedson have asserted that, as out-of-state Defendants with no minimum contacts with the state of Illinois, a federal district court sitting in diversity jurisdiction in Illinois has no jurisdiction over them. The burden of showing that this court has personal jurisdiction

---

[3] Other Circuit Courts of Appeals have also adopted the Zippo approach. See Lakin v. Prudential Securities, Inc., 348 F.3d 704 (8th Cir. 2003); ALS Scan, Inc. v. Digital Service Consultants, 293 F.3d 707 (4th Cir. 2002); Soma Med. Int'l v. Std. Chtd. Bank, 196 F.3d 1292 (10th Cir. 1999); Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997).

over these defendants therefore falls to the Plaintiff. See RAR, Inc., 107 F.3d at 1276.

Plaintiff has shown that Defendants have had the following contacts with the State of Illinois. Defendants solicit donations through their Sites, and have received at least forty-seven donations from Illinois residents. Defendants sell the "Do-It-Yourself Guide: How to Get Rip-Off Revenge" on their Sites, and have sold this book to at least thirteen Illinois residents. Numerous Illinois residents have posted comments on the Sites, and Defendants have posted replies to some of these comments. Defendants have also referred individuals to a law firm in Wood River, Illinois. This firm is seeking to file class action lawsuits against mortgage companies, banks, credit card companies, and debt collectors, and is actively seeking clients to represent in these matters. In addition, discovery has revealed that Defendants sought to enter into a business relationship with the Chicago law firm of Blim & Edelson, LLC ("Blim"). Blim holds itself out as a firm which "prosecutes class actions throughout the United States on behalf of consumers." See http://www.blimlaw.com. Defendants proposed to refer clients to this firm, and attempted to negotiate a fee of $800,000 per year for this service.[4]

The court finds that these contacts with Illinois are sufficient to establish personal jurisdiction over Defendants. There is no question that Defendants actions satisfy Illinois' Long-Arm statute. Defendants have clearly transacted business within the State of Illinois, as they have sold books to Illinois residents. See 735 ILL. COMP. STAT. 5/2-209(a)(1); Arthur Young, 554 N.E.2d at 675-76. The more important question is whether the court's exercise of jurisdiction over Defendants comports with due process.

---

[4] The court takes no position on the propriety of such an arrangement.

11

Defendants maintain websites that fall into the middle ground of the Zippo court's "sliding scale." These Sites allow visitors to post messages (to which Defendants sometimes respond), purchase books, and make donations. In addition, these Sites offer visitors the opportunity to "volunteer" as a class action consumer advocate for the Sites. These Sites are a far cry from passive websites. See Jennings, 383 F.3d at 549 (a passive website "merely makes available information about the company and its products."). The court finds that this level of interactivity is enough, under the Zippo standards, for the court to exercise jurisdiction over Defendants. See Zippo, 952 F. Supp. at 1124 ("the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.").

Defendants' Internet activities more than satisfy the minimum contacts standard set by International Shoe, and constitute the Defendants' purposeful availment of the protection of the laws of Illinois. See Burger King, 471 U.S. at 475-76. By purposefully reaching out to the state of Illinois, and conducting business with Illinois citizens, Defendants are on notice that they may be subject to suit in this state. See Volkswagen, 444 U.S. at 297.

The court notes, however, that Defendants' Internet activities are not the only contacts they have had with the State of Illinois. Defendants have communicated with two Illinois law firms in an attempt to establish business relationships in this state. Defendants referred clients to one of these firms, and actively solicited the business of the other. Defendants have thus purposefully reached out to Illinois law firms in an effort to do additional business in Illinois. See LFG, L.L.P. v. Zapata Corp., 78 F. Supp. 2d 731, 737-38 (N.D. Ill. 1999). These actions simply add to the jurisdictional weight of Defendants' Internet activities, and further convince the

court that the exercise of personal jurisdiction over Defendants would be reasonable in this case. See Deluxe Ice Cream, 726 F.2d at 1213 (the relationship between defendant and forum must be such that it is reasonable to require a nonresident defendant to defend a suit in the forum state).

The only remaining question is thus whether the court should exercise specific or general jurisdiction over Defendants. Courts may exercise specific jurisdiction where "the defendant has purposefully established minimum contacts with the forum state, [] the cause of action arises out of or relates to those contacts and [] the exercise of jurisdiction is constitutionally reasonable." Hy Cite Corp. v. BadBusinessBureau.Com, L.L.C., 297 F. Supp. 2d 1154, 1162 (W.D. Wis. 2004). In this case, Defendants have established minimum contacts through their Internet activities, and their solicitation of law firms in Illinois. The cause of action in this case relates to Defendants' Internet activities, and the court has determined that exercising jurisdiction is constitutionally reasonable. The requirements for specific jurisdiction are therefore met.

"To meet the constitutional requirement for general jurisdiction, the defendant must have 'continuous and systematic general business contacts' with the forum state." Id. at 1161 (quoting Helicoptores, 466 U.S. at 416). In Hy Cite, a case in which another business filed suit against Defendants, the court found that since Defendants had only sold one book in the forum state, neither general nor specific jurisdiction was proper. Id. at 1161-64. The Defendants in this instance, however, have developed much more extensive contacts with the Illinois. As the court has indicated, Defendants in this case have sold books in Illinois, received donations from Illinois residents, and actively attempted to develop business relationships with Illinois law firms. The court determines that these activities represent "continuous and systematic" contacts with Illinois. See Helicoptores, 466 U.S at 416. The court therefore finds that the exercise of general jurisdiction over Defendants is proper in this case.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss for Lack of Jurisdiction are denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: January 18, 2006