JKB/do/#393166                    Firm No. 14503                           5634-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY,   )  )  ) | |
| Plaintiff,   )  ) | |
| v.   ) | Case No. 04 C 6018 |
| )  | |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM,   )  ) | Honorable Judge Norgle |
| ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES,   )  )  ) | Magistrate Judge Mason |
| Defendants.   ) | |

**DEFENDANTS'** *EMERGENCY*
**MOTION TO EXCLUDE/LIMIT TESTIMONY OF RONALD BERO
OR, ALTERNATIVELY,**
*EMERGENCY* **MOTION TO CONTINUE OCTOBER 19, 2006 HEARING**

Pursuant to Rule 37(c), Defendants XCENTRIC VENTURES, LLC ("Xcentric"), RIP-OFF REPORT.COM ("Rip-Off Report"), BADBUSINESSBUREAU.COM ("BBB") and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, respectfully move this Honorable Court for an order precluding Plaintiff GEORGE S. MAY INTERNATIONAL COMPANY ("Plaintiff") from introducing certain testimony by its expert, RONALD A. BERO ("Mr. Bero") at the hearing set in this matter for October 19, 2006. *In the alternative*, if the Court does not preclude such testimony, Defendants respectfully move the Court for an order continuing the hearing to permit Defendants sufficient time to investigate and respond to the newly-disclosed information contained in Mr. Bero's report and anticipated testimony.

10297-1/DSG/DSG/551436_v1

I.   **BACKGROUND**

As the Court is aware, more than two years ago, on October 8, 2004, Plaintiff filed a motion (Docket #15) asking the Court to find Defendants in contempt for violating a TRO entered a month earlier. Nearly one full year later, on September 13, 2005, the Court entered an order (Doc. #78) finding Defendants in contempt.

Just under a year ago, Plaintiff filed a four-page pleading (Doc. #88) asking the Court to award it approximately $560,000 in sanctions — $280,000 in lost profits plus an additional $280,000 as a retroactive compulsory sanction/fine. In that pleading and the attached supporting affidavit of Israel Kushnir, Plaintiff alleged that it lost <u>eight</u> specific "opportunities"[1], that its average profit is $35,000 per customer, thus it suffered lost profits of $280,000.

Although Defendants have demanded a jury trial (Doc. #97), the Court set this matter for hearing on October 19, 2006. **Today**, October 13, 2006, less than a week before this hearing, Defendants received an expert report from Ronald A. Bero on behalf of Plaintiff. Although there is nothing confidential in this report, Plaintiff has designated it "attorneys' eyes only" pursuant to a previously agreed protective order thus precluding Defendants from filing it as an exhibit to this motion.

In his report, Mr. Bero opines that in addition to the eight opportunities identified in Plaintiff's original motion for contempt sanctions, there are now an additional <u>37 customers</u> that GSM claims to have lost, for a total of 45, thus increasing Plaintiff's claimed losses from **$280,000** to approximately **$1,088,000**. Mr. Bero states that he assumes these losses occurred between September 24, 2004 and September 2006, and page 2 of his report expressly states that,

---

[1] Plaintiff has inconsistently claimed that its initial motion showed the loss of <u>eight</u> customers. However, the actual statements in Mr. Kushnir's affidavit reflect <u>six</u> alleged lost <u>customers</u> and <u>five</u> alleged lost employees or potential employees. Although Mr. Bero's report indicates that he cannot opine on damages arising from a lost employee, Mr. Kushnir apparently makes no distinction between customers and employees.

2

"For purposes of this analysis <u>I assume that Xcentric has violated the temporary retraining order</u> by Judge Norgle on September 24, 2004 …" (emphasis added).

Plaintiff has indicated that it intends to call Mr. Bero as a witness and use his report as an exhibit at next week's hearing.

Clearly, after representing to the Court that it lost <u>eight</u> opportunities and incurred $280,000 in lost profits as the result of a purported violation of a TRO which occurred more than two years ago, now on the eve of the hearing in which the Court will ascertain damages, Plaintiff is seeking to increase its damages claim arising from the contempt by nearly 400% to more than $1 million dollars.

Prior to receiving Mr. Bero's report **today**, Defendants had no basis to know that Plaintiff was suggesting that its contempt-related damages extended beyond the eight instances mentioned in its initial motion and in Mr. Kushnir's affidavit. Since this Court has denied Defendants' request to permit witnesses to appear by phone, and since the deadline for submitting witnesses and exhibits has already passed, by virtue of Plaintiff's 11th-hour disclosure, Defendants will have no opportunity to contact all of these additional 37 lost customers and prepare or present any part of their testimony.

However, upon receiving this new information, Defendants immediately began calling the new customers Plaintiff claims to have lost. Shockingly, when contacted by Defendants, the first two customers listed—<u>Mike Staudacher</u> of AC's Beer Barn in Decatur, Texas, and <u>David Stillinger</u> of Pasco-Stillinger Funeral Home in Greenfield, Indiana—both stated that they <u>did not</u> decide to refrain from doing business with Plaintiff as a result of Defendants' website, and they were even willing to sign affidavits to that effect. These affidavits are attached hereto as **Exhibits 1 and 2** (due to time constraints, only Mr. Staudacher's signed copy is available).

3

Obviously, because this Court has refused to allow witnesses to appear by telephone, Defendants have no choice but to contact each individual witness, speak to them about the circumstances of their experience with Plaintiff, and obtain an affidavit as an offer of proof as to what that witness would have said if they had been permitted to testify. This is particularly important because each of the witnesses who Defendants have been able to contact have uniformly contradicted Plaintiff's allegations.

For example, attached hereto as **Exhibit 3** is an affidavit of Perry Banadyga. Mr. Banadyga is one of the original eight opportunities Plaintiff claimed to have lost as a result of Defendants' contempt, but in his affidavit Mr. Banadyga directly contradicts that claim. Similarly, attached as **Exhibit 4** is an affidavit of Jay Easley. Mr. Easley is another one of the original eight, and Mr. Easley also directly contradicts Plaintiff's allegation, stating that his decision not to hire Plaintiff was not based on information posted on Defendants' website. Given sufficient time, Defendants would have contacted each of the 37 new customers to obtain similar affidavits.

II.   **ARGUMENT**

   a. **Any Evidence Relating to NEW Losses Should be Precluded**

As noted above, Plaintiff's initial motion alleged the loss of six customers, rounded up to eight opportunities. Obviously, since Plaintiff claims that it lost up to $35,000 for each of these customers, it is imperative to know whether they chose to refrain from doing business with Plaintiff because of Defendants' site, or for some other reason. Of course, beyond the initial eight, Plaintiff has now disclosed 37 additional witnesses. Had Plaintiff disclosed these people sooner, Defendants would have investigated Plaintiff's claims and either secured additional testimony or other evidence to refute these claims, and also argued that the testimony of these

witnesses was yet another reason to permit telephonic appearances. Moreover, given the number of witnesses and given the short time involved, it is absolutely impossible to contact each of these new witnesses to determine what they will say and secured their testimony.

As a result, in order to avoid manifest unfairness, the Court must 1.) preclude any evidence of these NEW witnesses; and 2.) limit Mr. Bero's damages testimony to only those initial six or eight opportunities disclosed in Plaintiff's initial contempt motion. In the alternative, the Court should continue the hearing in order to permit Defendants to contact each of the 37 new witnesses to determine if Plaintiff has accurately represented that these customers did not hire it solely because of information on Defendants' website. Notably, of all the witnesses contacted so far, including many of the original eight and the first two of the new 37, not a single one has agreed with Plaintiff's allegations concerning the reason why that customer refused to hire GSM. Defendants believe that given an opportunity to contact them, all or virtually all of these witnesses will directly refute Plaintiff's claims thereby entirely disproving Plaintiff's damages claim.

### b. The Court Previously Ordered Plaintiff Not To Introduce New Evidence

The Court should also recall that it previously issued an order that Plaintiff appears to have violated. Specifically, several months ago Plaintiff sought to file a "supplement" to its contempt motion seeking to introduce new evidence of Defendants' alleged contumacious conduct that occurred after Judge Norgle's September 2005 contempt order. Defendants objected to this, and on September 20, 2006, the Court issued an order (Doc. #161) setting the October 19 hearing and stating, "The Court will not permit the parties to raise issues that have already been ruled on ... [n]or will the parties be permitted to raise issues outside the scope of the referral, such as, new violations of the TRO." (emphasis added)

The NEW 37 witnesses, and the conclusions in Mr. Bero's report, are matters which were never raised in Plaintiff's initial contempt pleading and thus should be excluded from the October 19 hearing based on this Court's September 20 order. Indeed, Defendants were found in contempt more than a year ago based on an alleged failure to comply with an order issued more than two years ago.

That year-old contempt order did not and could not have contemplated matters (or damages) which occurred after the date of the order since Plaintiff has never alleged or established that Defendants did anything to violate the TRO after the September 2005 contempt finding. That fact notwithstanding, Mr. Bero's report suggests that Plaintiff intends to allege and seek damages in excess of $1 million based on losses suffered after the initial contempt finding. Again, Mr. Bero's own report (which is listed as an exhibit for the October 19 hearing) states that he assumes damages were incurred from September 2004 through September 2006. (Report at 7). This is an improper attempt to end-run around this Court's September 20 order and it should not be permitted.

### III.   CONCLUSION

WHEREFORE, Defendants respectfully request that for the purposes of the October 19 hearing, the Court either: 1.) preclude any evidence of these NEW witnesses; and 2.) limit Mr. Bero's damages testimony to only those initial six or eight opportunities disclosed in Plaintiff's initial contempt motion. In the alternative, the Court should continue the hearing in order to permit Defendants to contact each of the 37 new witnesses.

                                Respectfully submitted,

                                XCENTRIC VENTURES, LLC and
EDWARD MAGEDSON


                                By:  /s/ James K. Borcia
                                         One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
Jaburg & Wilk PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

10297-1/DSG/DSG/551436_v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES and ABC COMPANIES, | ) Judge Charles R. Norgle ) ) ) ) |
| Defendants. | ) ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2006, I electronically filed **Defendants'** *EMERGENCY* **MOTION TO EXCLUDE/LIMIT TESTIMONY OF RONALD BERO OR, ALTERNATIVELY,** *EMERGENCY* **MOTION TO CONTINUE OCTOBER 19, 2006 HEARING** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

Bart A. Lazar, Esq.
Rachel Kindstrand, Esq.
Seyfarth Shaw LLP
55 East Monroe, Suite 4200
Chicago, IL 60603

XCENTRIC VENTURES, LLC, and ED MAGEDSON

By: /s/ James K. Borcia
One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | Tressler, Soderstrom, Maloney & Priess, LLP |
| Phoenix, AZ 85012 | 233 South Wacker Drive, 22nd Floor |
| (602) 248-1000 | Chicago, IL 60606-6399 |
| | (312) 627-4000 |

2