# EXHIBIT A

Dockets.Justia.com

LEXSEE

NAV-AIDS LTD., a Quebec corporation, Plaintiff, v. NAV-AIDS USA, INC., an Illinois corporation, Defendant.

No. 01 C 0051

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 7513

April 25, 2002, Decided
April 26, 2002, Docketed

**DISPOSITION:** [*1] Plaintiff's motion to show cause and to enforce terms of settlement agreement granted in part and denied in part. Defendant's motion to enforce terms of settlement agreement, conduct limited discovery and for damages granted in part and denied in part.

**COUNSEL:** For NAV-AIDS LTD, plaintiff: Mark L. Johnson, Jonathan Samuel Goodman, D'Ancona & Pflaum, Chicago, IL.

For NAV-AID USA INC, defendant: Henry Karl Becker, Henry K. Becker P.C., Chicago, IL.

**JUDGES:** MICHAEL T. MASON, United States Magistrate Judge. Chief Judge Aspen.

**OPINION BY:** MICHAEL T. MASON

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

On November 30, 2001, the District Court issued a permanent injunction against defendant Nav-Aids USA, Inc. ("USA"), ordering that it cease its use of the Nav-Aids designation and also make changes to its product numbering system so that it was no longer identical to the product-designation numbering system used by plaintiff Nav-Aids, Ltd. ("LTD"). The parties entered into a settlement agreement which reiterated and expanded upon these terms to include USA's agreement that it would also cease [*2] using product-designations that were derived from, but not identical to, those of LTD.

LTD alleges that USA has not complied with the terms of the injunction and has also breached the settlement agreement. It has filed a motion for a rule to show cause why USA should not be held in contempt and also to enforce the settlement agreement. n1 After this opinion was completed, but before it was entered, the District Court referred to us a motion from USA which alleged that LTD has breached the settlement agreement by disparaging USA to its customers and tortiously interfering with its business, and also by using the name Nav-Aids USA on its website. For the following reasons, we grant LTD's motion for a rule to show cause and find USA in contempt of the permanent injunction and settlement agreement. Additionally, we order both parties to comply with their responsibilities under the settlement agreement and grant each party the right to conduct limited discovery on outstanding issues, as we explain below. We decline to order USA damages at this time, reserving the issue until after additional discovery is completed.

  n1 Although the plaintiff's motion was styled as a motion for an Order for a Rule to Show Cause, the parties addressed the merits of the ultimate question before us -- whether USA should be held in contempt -- in their briefs as well. Because there are no disputed facts at issue, we impliedly grant LTD's motion for a Rule to Show Cause and consider its request that we find USA in contempt.

[*3]

Until October, 2000, USA acted as a distributor for LTD, selling ground support products LTD manufactured for use with commercial, private, and military aircraft. After LTD terminated the distributorship, it requested that USA cease selling other manufactures' products using LTD's product designation system n2 and also stop using LTD's trade name (Nav-Aids) and trademarks on its websites, in its domain names, and in any

other advertising. When USA failed to do so, LTD sought and obtained a preliminary injunction which prevented USA from using LTD's identical parts numbers to sell non-LTD equipment. n3 During the pendency of the preliminary injunction, the parties entered into a settlement agreement under which, inter alia, USA also agreed to change its parts numbers for non-military products that were based on, but not identical to, LTD's numbers. n4 When the District Court converted the preliminary injunction to a permanent injunction, it enjoined USA from, inter alia, "using an identical product designation system to that of LTD."

> n2 As explained in the District Court's order granting partial summary judgment and a preliminary injunction in favor of LTD, during the pendency of the parties' business relationship, USA apparently used LTD's numbering system for all of its products, with LTD's tacit approval. LTD contends that consumers associate the parts-designation system with it and its company.

[*4]

> n3 At the time the preliminary injunction was entered, only USA's military products used a designation system identical to LTD's; the Court declined to enjoin USA from using a similar, but not identical numbering system on its non-military products.

> n4 LTD's parts designation system uses meaningful combinations of letters and numbers to designate each product, the type of aircraft it is used for, and other specific product features. USA had changed its non-military parts numbers by taking the LTD parts numbers and adding a single letter prefix to each one; it had not changed its military parts numbers at all.

LTD alleges that USA has violated both the injunction and the parties' settlement agreement in at least three ways. First, LTD alleges that at an industry convention soon after the permanent injunction was entered, USA displayed a military product that bore LTD's identical numbering designation. n5 LTD contends that it requested that USA remove the product from its display, but that USA never responded.

> n5 It is important to understand that it is not the sale of identical aircraft products, but the way they are numerically identified, that is at issue here. Many companies make, distribute and sell similar or even identical products, identifying them using various designations. LTD argues that its product designation system is identified as its own, and potential customers use it to ask for particular LTD products.

[*5]

Second, LTD alleges that until it filed the present motion on January 28, 2002, the military catalog on USA's website used LTD's identical product designation system. In a supplemental memoranda filed about ten days after its original motion, LTD recognized that USA subsequently removed the on-line catalog, but alleges that it failed to clean up all the links on its website, so that the Nav-Aids trademark and certain LTD products could still be seen on some of the site's pages. n6

> n6 LTD's reply brief alleges that USA continues to use LTD's parts numbers and model numbers throughout its on-line catalog.

Finally, LTD alleges that LTD's parts numbers are still registered under USA's profile in the Central Contractor Registration ("CCR"), an organization that registers all private contractors for the United States Department of Defense ("DOD"). Private contractors may not conduct business with the DOD unless they are registered with CCR. The CCR is a department within the Defense Logistics Agency ("DLA"), which [*6] itself is part of the DOD. Through the CCR, the DOD or other contractors and suppliers are able to determine all products offered for sale by any contractor or supplier. Because LTD parts numbers are still registered under USA's profile, LTD alleges that a search for any of its products in the CCR registry will bring up both LTD and USA parts.

In response to LTD's motion, USA does not deny any of the allegations. Instead, it explains that achieving total compliance with the permanent injunction and settlement agreement has been more complicated than anticipated, and thus has taken much longer than expected. USA points out that it is a small company which is basically run by only three individuals n7, and argues that it has been using its best efforts to comply. Further, it admits that with regard to its military catalogue, it was originally under the misapprehension that military parts were not subject to the injunction and thus the numbering system did not have to be changed. USA alleges that it is now in compliance with the directive that it change its parts numbers. USA also argues that it made a request to the CCR months ago to change its profile and that it has no control over [*7] when the CCR complies. Finally,

USA states that although it is possible that it has overlooked some uses of the Nav-Aids trademark, such occurrences are to be expected after twenty years in business with LTD, and that it is making changes as they are discovered.

n7 A fourth individual, who was in charge of creating and updating USA's website, departed the company in November, 2001. USA argues that her departure greatly hampered its ability to make all necessary changes to its website.

"Civil contempt proceedings are part of the action from which they stem, and their purpose, of course, is to secure compliance with a prior court order." *D. Patrick, Inc. v. Ford Motor Co., 8 F.3d 455, 459 (7th Cir. 1993)*. In this case, the parties agree that non-compliance with an injunction need not be intentional to support a finding of contempt. *See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 93 L. Ed. 599, 69 S. Ct. 497 (1949)*. Further, "a civil contempt may be established even though [*8] the failure to comply with the Court's order was unintentional or done with good intent. *See, Select Creations, Inc. v. Paliafito America, Inc., 906 F. Supp. 1251, 1272 (E.D.Wis. 1995)*, (internal citations omitted). However, USA argues that it is in substantial compliance with the District Court's permanent injunction and has been "reasonably diligent" in attempting to comply, which should obviate the need for a finding of contempt against it. *Id.* LTD of course disagrees, and sets forth a litany of examples which it says demonstrates how "out of compliance" USA remains.

An award of sanctions against a party in contempt of a court order can serve two purposes, either to compel compliance with a previous order or to compensate the other party for losses caused by previous non-compliance. *See McComb Paper, 336 U.S. at 191*. In this case, USA argues that it is taking all possible steps to comply with the Court's directive and the settlement agreement, and that in fact, it has made even more strides since the original motion was filed. However, even assuming that USA is now in substantial compliance with the injunction, it admits that it was in contempt [*9] of this Court's order (whether intentionally or not) n8 until very recently, and we believe that LTD should be compensated for USA's non-compliance, as well as for its breach of the settlement agreement. The Court has broad discretion to fashion an appropriate remedy for USA's contempt. *See Connolly v. J.T. Ventures, 851 F.2d 930, 933 (7th Cir. 1988)* citing *United States v. United Mine Workers of America, 330 U.S. 258, 303-04, 91 L. Ed. 884, 67 S. Ct. 677 (1947)*. Possible remedies include a fine against USA or an award to LTD of USA's profits from the sale of mis-numbered products, or a combination of both.

n8 Although we decline to opine on whether USA's breaches of the injunction and settlement agreement were truly as innocent as it claims, we note that at least one of its arguments -- that its president, Robert Mansfield, did not know that military parts numbers were included in the injunction -- is not very credible. Both the preliminary and permanent injunction clearly prohibit the use of "identical" parts numbers and in fact, it was only the military aircraft parts that used identical numbers.

[*10]

As in *Connolly*, we believe that an appropriate remedy is to award LTD the profits USA received as a result of selling products using LTD's product numbering system. Although this amount may not exactly reflect LTD's lost sales, it does serve to compensate LTD for losses that cannot be calculated, such as those resulting from USA's continued use of the Nav-Aids designation on its website, and will also deter future non-compliance. We recognize that an exact determination of USA's profits will require additional discovery by the parties and find that the relevant time period for discovery of USA's profits is January 15, 2002 (the end of the 45 day wind-up period), to the date of this order. Because it appears from LTD's briefs that it has a record of which products USA continued to offer for sale using LTD's identical and similar product numbers, it should provide a list of such products to USA along with any additional discovery requests it needs to determine the amount of the award. As for USA's allegations against LTD, before deciding whether it is appropriate to award damages, we will allow USA to conduct its own limited discovery regarding LTD's use of the Nav-Aids USA designation [*11] and its alleged interference with USA's business. We recognize that the parties may dispute the identification of USA's relevant products or the exact amount of USA's profits, as well as the scope of LTD's alleged breach, and thus invite additional briefing on the issues after all discovery is complete. At this point, each party is ordered to bear its own costs and fees. It is so ordered.

ENTER:

MICHAEL T. MASON

**United States Magistrate Judge**

**Dated: April 25, 2002**

24 of 24 DOCUMENTS

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a
Delaware Corporation Plaintiff, v. AMERICAN BARGE AND TOWING CO., et al.,
Defendants

NO. 84 C 4772

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

1986 U.S. Dist. LEXIS 28017

March 18, 1986

COUNSEL: [*1]

WESTON W. MARSH, 224 South Michigan Avenue, Suite 1543, Chicago, Illinois, 60604, Attorney for plaintiff.

JOEL T. GOLDSTEIN, 1300 paul Brown Building, 818 Olive Street, St. Louis, Missouri, 63101.

S. MICHAEL RITTER, Snyder and Gerard, Three First National Plaza, Suite 3712, Chicago, Illinois, 60602, Attorney for defendant.

OPINION BY:

BALOG

OPINION:

JAMES T. BALOG

MEMORANDUM & ORDER

Before the court is the plaintiff's motion to strike defendant's supplemental answers to plaintiff's supplemental interrogatories and to bar the identification of a new expert witness for the defendant after the close of discovery. n1

> n1 In January of 1985, the plaintiff submitted a supplement to its answer to interrogatories naming Dr. Mario Gomez as an expert witness. On October 25, 1985, the defendant filed a supplemental answer to plaintiff's supplemental interrogatory naming Professor C. Martin as an expected expert witness at trial. It is this answer that the plaintiff seeks to bar.

The plaintiff claims that the defendant's expert witness should be excluded because the witness was identified after the discovery was cut-off by the court in March of 1985, and after the expiration of an agreement by [*2] counsel establishing September 30, 1985, as the cut-off date for the indentification of defendant's expert witness.

The defendant's argue that they could not in good faith meet the discovery cut-off date of September 30, 1985, because their expert witness (Professor Martin) was out of the country and unavailable to consult with until mid-September. n2 The defendant claims the witness needed the next few week to review the deposition of the plaintiff's expert witness and to meet with the pilot of the barge involved in this lawsuit. It was not until Professor Martin had formed a belief that plaintiff's expert witness had based his opinions on inaccurate assumptions and methodologies that the defendant knew they wanted to call him as an expert rebuttal witness. The defendant notified the plaintiff on October 25, 1985, that they intended to call Professor Martin as a witness. On November 1, 1985, the defendant informed the plaintiff that Professor Martin would be available for deposition on November 6, 8 and 15, 1985 or at another mutually agreed upon time. The plaintiff responded that they would not depose Martin unless the court denied its motion to bar him as a witness.

> n2 It is not entirely clear from the memoranda how long the expert witness had been out of the county.

[*3]

In considering whether to exclude a witness, the court should consider the prejudice of the party against

whom the excluded witness would have testified, the ability of that party to cure the prejudice; and the bad faith or wilfullness of the party seeking to include the witness. See *Spray-Rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1245 (7th Cir. 1982)*, aff'd *104 S.Ct. 1464 (1984)*.

The court finds that the defendant's action were not motivated by bad faith or wilfullness. The defendant informed the plaintiff as soon as it knew the expert would be called as a witness. The expert's absence from the country excused the defendant's failure to contact him until September. The fact that defendant knew the identity of the witness in September is irrelevant. The defendant did not have to inform the plaintiff of the identity of the witness until they knew he would be called to testify.

The plaintiff claims that it cannot tell at this point how much prejudice will result from allowing the witness to testify. Yet, plaintiff has been given the opportunity to depose the witness and concedes it will do so if unsuccessful on this motion. Further, the court's order does not foreclose [*4] the plaintiff's right to engage in limited discovery regarding this witness. Indeed, this case has been sent by Judge Aspen for out-of-court alternative dispute procedures. (Order of 11-15-85). If the alternative dispute procedures are ineffective, the parties will be able to cure any prejudice caused by the identification of the defendant's expert witness in October. As the Seventh Circuit has stated, "surprise is a poor reason to exclude expert testimony." *Abernathy v. Superior Hardwood, Inc., 704 F.2d 963, 969 (7th Cir. 1983)*.

The defendant also claims that they were not even required to identify the expert since he is to be strictly a rebuttal witness. Pursuant to Judge Aspen's rules for final pretrial orders, rebuttal witnesses need not be identified.

The plaintiff maintains that it appears the defendant's expert witness is in reality more than a rebuttal witness - that he will help to present the defendant's case in defense. The court agrees that the expert witness is likely to be used as more than a rebuttal witness. However, the expert has been identified as s witness in the parties joint final pretrial order. (Filed with the court 11-19-85). The plaintiff cannot claim [*5] prejudice at this point. Further, in many cases a witness is allowed to testify even though he is not listed in the final pretrial order. *Spray-Rite, supra.*

For these reasons, the plaintiff's motion to strike defendant's supplemental answers to plaintiff's supplemental interrogatories is DENIED and the plaintiff's motion to bar the identification of a new expert witness for the defendant after the close of discovery is DENIED.

IT IS SO ORDERED.

Westlaw Attached Printing Summary Report for WERBER,MATTHEW A 5434151

| | |
|---|---|
| Your Search: | EXCLUDE /9 (EXPERT EVIDENCE) /P (HEARING /6 (CONTEMPT DAMAGES)) & DA(LAST 20 YEARS) |
| Date/Time of Request: | Tuesday, October 17, 2006 09:57:00 Central |
| Client Identifier: | 18735-000085 GSM |
| Database: | ALLFEDS |
| Citation Text: | Not Reported in F.Supp. |
| Lines: | 100 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1

Not Reported in F.Supp., 1996 WL 596738 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Ramirez v. IBP, Inc.D.Kan.,1996.Only the Westlaw citation is currently available.
United States District Court, D. Kansas.
Maria F. RAMIREZ, Plaintiff,
v.
IBP, INC., Defendant.
**No. 94-4101-SAC.**

Sept. 17, 1996.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, for plaintiff.
Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Nick Badgerow, Kelly W. Milligan, Spencer, Fane, Britt & Browne, Overland Park, KS, for defendant.

MEMORANDUM AND ORDER
CROW, District Judge.
*1 This retaliatory discharge case comes before the court on the defendant's motion in limine to **exclude** certain **evidence** from the punitive **damages hearing**. The jury on April 5, 1996, returned a verdict for the plaintiff, Maria Ramirez, awarding her actual damages totaling $84,125. The jury further found that the defendant IBP, Inc. had acted in a willful, wanton or malicious manner in terminating the plaintiff in retaliation. By order filed July 3, 1996, the court granted the plaintiff's motion to conduct certain discovery and scheduled an evidentiary **hearing** on punitive **damages** for September 16, 1996. (Dk. 87). The court later continued the hearing on the defendant's request and rescheduled it for September 23, 1996, at 1:30 p.m.

The defendant seeks an order in limine excluding three categories of evidence: (1) testimony of other alleged victims of workers' compensation retaliation by the defendant; (2) evidence concerning the defendant's "self-insured" status; (3) opinion testimony from an expert witness concerning the defendant's financial statement and the appropriate award for "stinging" the defendant. (Dk. 93). As to the first category, the defendant makes a Fed. R. Evid. 403 objection and also complains of possible surprise and prejudice from the plaintiff's failure to disclose the list of intended witnesses. On the second category, the defendant argues the lack of relevance and the potential for prejudice. Under the third category, the defendant complains of prejudicial surprise from the plaintiff's failure to list the expert witness and to provide an opinion or report. The defendant further argues the opinion testimony is irrelevant because of the $5 million statutory cap.

*Evidence of Other Workers' Compensation Retaliation Incidents*

In *Grove v. Orkin Exterminating Co.,* 18 Kan. App. 2d 369, 374-75, 855 P.2d 968 (1992), the Kansas Court of Appeals said that evidence the defendant had improperly treated another house for termites, besides the plaintiff's house, "was relevant to show that Orkin's Wichita branch continually engaged in wanton conduct as a general business practice." Other acts of retaliation by IBP is relevant in showing that IBP continually engaged in retaliatory conduct as a general business practice. Such evidence would be relevant to several different factors in determining an appropriate punitive damage award.

Such anecdotal evidence often can become cumbersome, confusing and cumulative, all of which are compelling reasons for a court to circumscribe anecdotal evidence. Typically, there are diminishing returns when more than two or three examples of anecdotal evidence are offered. For these reasons, the court urges the plaintiff to limit her anecdotal evidence to no more than two or three instances.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 596738 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

When it reopened discovery, the court realized that certain aspects of the pretrial order had been suspended for the limited purpose of the punitive damages hearing. The court, however, fully expected the parties to abide by the spirit of cooperation and disclosure otherwise fostered, if not required, by the pretrial discovery rules and scheduling orders. It comes as a disappointing surprise that the parties have seen fit to not exchange witness and exhibit lists and expert witness reports. The days of trial by ambush are long over.

*2 The parties shall exchange and file with the court no later than September 19, 1996, the list of witnesses they intend to call along with a brief summary of the expected factual testimony. The list shall designate those witnesses expected to testify by deposition. On September 19, 1996, the parties also shall mark and exchange exhibits they intend to introduce into evidence at the hearing. The parties shall also mark the original set of trial exhibits and one copy and deposit them with the court at the start of the hearing. Finally, no later than September 19, 1996, the parties shall exchange the written reports or opinions of any expert witnesses expected to testify at the punitive damages hearing.

*Evidence Concerning the Defendant's "Self-Insured" Status*

The defendant's conclusory arguments on relevance and prejudice are not a persuasive basis for granting an order in limine. From what the plaintiff argues, this status may be relevant to several different factors.

*Opinion Testimony from an Expert Witness*

The defendant again fails to carry its burden for proving the need to exclude such evidence in limine. The court believes it will be in the best position to rule at the hearing after the foundation for such testimony has been laid and after the context for such evidence has been outlined.

IT IS THEREFORE ORDERED that the defendant's motion in limine (Dk. 93) is denied without prejudice to the defendant's right to renew any of its evidentiary objections during the hearing.

IT IS FURTHER ORDERED that the parties shall comply promptly with the exchange of witness lists, exhibits and expert witness reports as required above.

D.Kan.,1996.
Ramirez v. IBP, Inc.
Not Reported in F.Supp., 1996 WL 596738 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 1996 WL 34303264 () Volume I Transcript of Hearing on Punitive Damages Before Honorable Sam A. Crow (Oct. 11, 1996) Original Image of this Document (PDF)
• 1994 WL 16437818 (Trial Pleading) Complaint (Jun. 13, 1994) Original Image of this Document (PDF)
• 5:94cv04101 (Docket) (Jun. 13, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.