JKB/cic/394178                                                                    5634-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 6018 |
| ) | |
| XCENTRIC VENTURES, LLC, RIP-OFF ) | Honorable Judge Norgle |
| REPORT.COM, BADBUSINESSBUREAU.COM, ) | |
| ED MAGEDSON, VARIOUS JOHN DOES, JANE ) | Magistrate Judge Mason |
| DOES AND ABC COMPANIES, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO COMPEL
RE: FIRST SET OF DISCOVERY REQUESTS**

Pursuant to Fed. R. Civ. P. 37(a), Defendants XCENTRIC VENTURES, LLC ("Xcentric"), RIP-OFF REPORT.COM ("Rip-Off Report"), BADBUSINESSBUREAU.COM ("BBB") and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, hereby move the Court for an order compelling Plaintiff GEORGE S. MAY INTERNATIONAL COMPANY to provide responses to Defendants' discovery requests set forth below. Defendants further move the Court for an order awarding them their reasonable attorney's fees incurred in bringing this motion pursuant to Fed. R. Civ. P. 37(a)(4)(A).

**I.   BACKGROUND**

In mid-May 2006, Defendants served Plaintiff with Defendants' first set of discovery requests that included a Request for Production of Documents, Request for Admissions and Interrogatories. A copy of these requests is attached hereto as **Exhibit A**.

On June 23, 2006, Plaintiff served its responses, a copy of which are attached hereto as **Exhibit B**. As explained herein, these responses are substantially deficient in numerous ways, and efforts to meet and confer with Plaintiff's counsel have been fruitless.

## II.   REQUESTS FOR DOCUMENTS

Request for production #9 demanded the following documents:

| **DEFENDANTS'** <br> **REQUEST TO PRODUCE #9** |
|---|
| 9.) Produce copies of any/all documents reflecting complaints that have [been] made against YOU in the past five (5) years by either YOUR current and/or former <u>customers</u> and/or YOUR current and/or former <u>employees</u>. For the purpose of this request, "complaints" shall mean any form of complaint, grievance, objection or citation whether made directly to YOU or to any governmental agency (i.e., State Attorney General) or non-governmental agency (i.e., Better Business Bureau), but shall NOT include criminal/civil matters pending in any state or federal court. |

Plaintiff's response to this request was as follows:

| **PLAINIFF'S RESPONSE** <br> **TO REQUEST TO PRODUCE #9** |
|---|
| **OBJECTION**: <br><br> In addition to the General Objections, GSMIC objects to this request to the extent that the Request is overbroad and unduly burdensome, and not reasonably calculated to lead towards the discovery of admissible evidence. GSMIC further objects to the time frame of this request. <br><br> **RESPONSE**: [NONE] |

Other than objections, Plaintiff produced <u>nothing</u> in response to RTP #9.

## III.   ARGUMENT

As the Court is aware, Plaintiff's primary claim in this case is for common law defamation based on reports/complaints which appeared on Defendants' website www.RipoffReport.com. In general, these complaints alleged that Plaintiff's business is a "scam", that Plaintiff "defrauds its customers", that Plaintiff overcharges for its services and

2

misleads customers as to the total cost of the services, and other similar allegations of unethical, illegal, and/or immoral conduct by Plaintiff.

Among others, one specific affirmative defense which Defendants have asserted is truth; that these complaints are, in fact, *true*. Over the past several months, Defendants have interviewed and/or obtained statements from dozens of witnesses, most of who were former customers of Plaintiff. These individuals have uniformly confirmed the truth of the contents of those complaints filed against Plaintiff with not only Defendants' website but also, *inter alia*, the Chicago Better Business Bureau and the Illinois Attorney General's Office.

Compelling as these witnesses are, Defendants believe[1] that Plaintiff has possession of records showing hundreds, if not thousands, of additional complaints that it received directly from former customers and/or former employees. These documents are relevant for two separate reasons. First, they are relevant to the defense of truth. On this point it is extremely important to recognize that there is absolutely no requirement for Defendants to show that any of Plaintiff's *other* customers knew, or even could have known, about the numerous complaints against Plaintiff filed with sources such as the Better Business Bureau or with Plaintiff itself:

> And it makes no difference that the true facts were unknown until the trial. A person does not have a legally protected right to a reputation based on the concealment of the truth. This is implicit in the rule that truth—not just known truth—is a complete defense to defamation. And the burden of proving falsity rests on the plaintiff.

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir 1993) (emphasis added) (internal citations omitted) (citing Restatement (Second) of Torts § 581A, comment h (1977); Prosser and Keeton on the Law of Torts § 116, at pp. 840-41 (5th ed. 1984)).

---

[1] Defendants have already independently obtained several complaints from third parties (*e.g.*, the Better Business Bureau) which reflect that copies of the customer's original complaint were sent directly to Plaintiff. Plaintiff, of course, has refused to produce these or any other complaints. However, it stands to reason that Plaintiff has copies of not only these complaints, but also other complaints which may have been lodged only with Plaintiff.

Although Plaintiff has argued that complaints filed with, for example, the Better Business Bureau, are not relevant because the substance of those complaints cannot be viewed by the public, that argument is a direct misstatement of the law. The fact that Plaintiff has been successfully found a method for hiding consumer complaints does not make those complaints untrue. Rather, if Plaintiff's own private files reflect numerous negative complaints about its business practices—as is expected—then Defendants are entitled to access those records <u>even if the records are completely unavailable to the general public</u> because Plaintiff "<u>does not have a legally protected right to a reputation based on the concealment of the truth.</u>" *Haynes*, 8 F.3d 1228 (emphasis added).

Second, the requested records are also relevant to the doctrine of "incremental harm" (also known as the "libel-proof plaintiff" rule). In short, when a plaintiff's reputation has been sufficiently damaged by <u>true</u> statements, that plaintiff may be precluded from recovering even for <u>false</u> statements:

> <u>Tort law does not seek to prevent injuries arising from the dissemination of **truthful information** that rationally induces withdrawal of patronage from the person whom the information concerns.</u> So [Plaintiff], had he proved a wrong, would have had to partition the injury resulting from it between the part due to the revelation of truthful information and the part due to the disciplinary suspension itself. Compare the many cases that hold that the victim of defamation can obtain damages only for *incremental* harm done to his reputation by the defamation—**if his reputation has already been destroyed by truthful information, he has no remedy**.

*Austin v. American Ass'n of Neurological Surgeons*, 253 F.3d 967 (7th Cir. 2001) (italics in original) (other emphasis added) (citing *McIlvain v. Jacobs*, 794 S.W.2d 14, 15-16 (Tex. 1990); *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1350 (7th Cir. 1995); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir.1993); *Re v. Gannett Co.*, 480 A.2d 662, 669 (Del.Super. 1984), *affirmed*, 496 A.2d 553 (Del. 1985).

4

Here, even if Plaintiff could establish that one or more <u>false</u> complaints were posted on Defendants' website, because there are so many other[2] <u>true</u> complaints, in order to recover for the false complaints Plaintiff would have to show that the harm it allegedly suffered was actually and proximately caused by false information and not true information. Again, the documents requested in RTP #9 are directly related to that issue — if the records show that it is true that hundreds or thousand of prior customers have accused Plaintiff of defrauding them, then is it much less likely that a single false complaint could have caused any additional *incremental* harm to Plaintiff's already truthfully-tarnished reputation.

As to the time frame (the past five years), several important points should be considered. First, this action was filed in September 2004 and has been pending for over two years. Thus, a request for complaints spanning the past five years in reality only covers the duration of this lawsuit plus the three prior years.

This time frame is completely appropriate for three reasons. First, Plaintiff's own damages expert has prepared a written report that analyzes damages for the **two-year** period from September 2004 through September 2006. Because Plaintiff is seeking damages for this time frame, complaints that Plaintiff has received during this period are unquestionably relevant.

Second, records covering a five-year period are necessary because many of the reports which Plaintiff has alleged to be defamatory were filed long **before** the actual commencement of this litigation. Specifically, Defendants have asked Plaintiff to identify each and every allegedly defamatory report which appeared on Defendants' website. In response to that demand, Plaintiff identified twelve (12) separate reports which it claims contain false information. Each report also has several "rebuttals" or subsections which responded to the original message.

---

[2] Again, it is not necessary to show that any of these <u>true</u> complaints were ever published anywhere. The fact that they exist is, standing alone, sufficient to establish truth.

One of those reports — #41290 — is attached hereto as **Exhibit C**. This exhibit contains an initial report and nine "rebuttals" and, as reflected in the chart below, the <u>first</u> report was posted nearly four years ago on <u>January 13, 2003</u>, and the follow-up rebuttals continued over a period of 18 months (until June 2004):

**EXHIBIT C**
**Report #41290**

| AUTHOR | DATE FILED | BATES RANGE |
|---|---|---|
| "Me" | 01/13/2003 | GSMIC 0036-38 |
| "Robert" | 06/13/2003 | GSMIC 0038-39 |
| "Richard" | 07/20/2003 | GSMIC 0039-0042 |
| "Bruce" | 10/20/2003 | GSMIC 0042-43 |
| "Israel" | 10/20/2003 | GSMIC 0043-44 |
| "Rob" | 10/23/2003 | GSMIC 0044 |
| "None" | 03/03/2004 | GSMIC 0044-45 |
| "Mike" | 03/17/2004 | GSMIC 0045 |
| "EX-George" | 03/28/2004 | GSMIC 0045-47 |
| "Chet" | 06/04/2004 | GSMIC 0047-48 |

The initial report was filed all the way back in January 2003 — one year and nine months prior to the commencement of this action. Considering that Plaintiff is the party who has placed such a range of dates at issue, Defendants' request for complaints going back five years (which would reach back just over one year prior to Report #41290) is clearly necessary, appropriate and not excessive.

Finally, the Court should note the extreme irony in Plaintiff's objection that providing a full and complete response to RTP #9 would be "<u>unduly burdensome</u>". Indeed, if Plaintiff's reputation is as impeccable as it has alleged in this case, then asking it to produce copies of complaints filed against it should be a simple and easy task (since there should be few, if any). Having placed its reputation directly at issue, any burden here is of Plaintiff's own making. The next deficient response concerns RTP #13:

| |
|---|
| **DEFENDANTS'**<br>**REQUEST TO PRODUCE #13** |
| 13.)   Produce copies of YOUR state and federal income tax returns for the past five (5) years. |

Plaintiff's response to this request was as follows:

| |
|---|
| **PLAINIFF'S RESPONSE**<br>**TO REQUEST TO PRODUCE #13** |
| <u>OBJECTION</u>:<br><br>   In addition to the General Objections, GSMIC objects to this request as not reasonably calculated to lead towards the discovery of admissible evidence and intended to harass GSMIC.<br><br><u>RESPONSE</u>: [NONE] |

Other than objections, Plaintiff produced <u>nothing</u> in response to RTP #13.

**ARGUMENT**

In this case, Plaintiff is seeking in **excess of $1,000,000** in **lost profit** damages based on customers which it claims it lost as a result of information appearing on Defendants' website. Having alleged such a substantial economic loss, RTP #13 seeks the production of documents (tax returns) which are perhaps the single most material, relevant, and probative evidence imaginable on this issue.   If Plaintiff truly suffered lost profits, surely that fact would be demonstrated (or rebutted) by the track record of Plaintiff's income taxes.

Pursuant to Rule 26(b), Defendants are entitled to pursue discovery of "relevant" information as defined by Fed. R. Evid. 401: "'Relevant evidence' means evidence having <u>any</u> <u>tendency</u> to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (emphasis added).

Plaintiff's taxes are directly relevant to establishing Plaintiff's <u>total gross revenue</u>, its overhead, and, more importantly, it alleged <u>profit margin and net profits</u>. Each of these figures is

relevant because, "Damages assessed for lost profits are to be based on **net profits**." *Sterling Freight Lines, Inc. v. Prairie Material Sales, Inc.*, 285 Ill.App.3d 914, 918, 674 N.E.2d 948, 951, (2nd Dist. 1996) (citing *Getschow v. Commonwealth Edison Co.*, 111 Ill.App.3d 522, 534, 444 N.E.2d 579 (1st Dist. 1982)). Other than a self-serving and wholly unsupported affidavit from Plaintiff's President, Israel Kushnir, Plaintiff has provided no proof whatsoever to support the amount it is claiming as either it profit margin, or net lost profits.

As such, Defendants are entitled to discovery of Plaintiff's tax returns in order to verify or disprove the figures presented by Plaintiff in its damages calculations, and the Court should order such to be produced immediately.

## IV.    INTERROGATORIES

In addition to document production requests, Defendants also propounded Requests to Admit (RTA) and associated interrogatories which Plaintiff has refused to answer. Specifically, Plaintiff was served with nine (9) separate RTAs. Each of those requests was followed by the same interrogatory which asked:

> If your response to the question immediately above is anything other than an unconditional admission, please give a full and complete explanation for the denial and state all facts and identify all documents that support and/or explain your denial.

Of the nine requested admissions, Plaintiff admitted one (#2), objected to two (#5, 8) without providing any substantive response, and denied six (#1, 3, 4, 6, 7, 9). One of these responses (denial of RTA #9; relating to Better Business Bureau complaints) is also the subject of a separate Motion For Sanctions filed by Defendants.

As for the remaining responses, they are wholly deficient because: 1.) Plaintiff's two objections are baseless, and 2.) As to those **eight** separate RTAs which Plaintiff refused to admit,

8

it failed to provide any response to the corresponding interrogatory. The table set forth below summarizes Plaintiff's responses:

| SUMMARY OF RTA/ROGG ANSWERS | | |
|---|---|---|
| RTA # | RESPONSE | ANSWERED ROGG? |
| 1 | Denied | NO |
| 2 | Admit | N/A |
| 3 | Denied | NO |
| 4 | Denied | NO |
| 5 | **Objection Only** | NO |
| 6 | Denied | NO |
| 7 | Denied | NO |
| 8 | **Objection Only** | NO |
| 9 | Denied | NO |

Because Plaintiff did not admit RTAs #1, 3–9, it was obligated to answer each corresponding interrogatory which asked, very simply, for an explanation of the refusal to admit. Plaintiff failed to offer any response to any of these interrogatories, even when no other specific objection was interposed. The Court should therefore order Plaintiff to provide a full and complete response to each interrogatory or, alternatively, issue an order finding that each matter to which Plaintiff failed to respond shall be taken as admitted for the purposes of this action.

In terms of the two specific RTAs which Plaintiff objected to without answering (#5 & 8), neither specific objection has any merit at all. RTAs #5 and #8 read:

> 5.) Admit that YOU have no evidence whatsoever that any of the statements referred to in ¶¶ 12, 21, 22, 23, 24, 25, 26 and/or 31 of the verified COMPLAINT were personally authored/created by DEFENDANTS.
>
> 8.) Admit that in the past five (5) years, YOU have received at least one (1) or more complaint(s) from YOUR current and/or former customers which generally allege that the services YOU provided to YOUR customer(s) failed to deliver the results YOU promised.

As to RTA #5, Plaintiff's response was that the question was procedurally improper (without explaining how or why), and that Plaintiff did not understand the meaning of the word

9

"YOU" even though that term was specifically defined on page 3 of the discovery requests as: "References to "YOU" mean **PLAINTIFF GEORGE S. MAY INTERNATIONAL COMPANY** and its directors, offices, investigators, agents, employees or other representatives, where applicable." A virtually identical response was provided to RTA #8.

These objections were entirely devoid of merit and presented in bad faith. RTA #5 asked Plaintiff to admit that it has no evidence that Defendants personally authored/created any of the defamatory statements described in Plaintiff's Verified Complaint. This fact is directly relevant to Defendants' claim that they are entitled to immunity under the Communications Decency Act; 47 U.S.C. § 230(c)(1). *See Doe v. GTE Corp.*, 347 F.3d 655, 659–60 (7th Cir. 2003) (holding that CDA provides absolute immunity to website for hosting materials created by third party, and recognizing "No appellate decision is to the contrary.")

Likewise, RTA #8 is relevant to the defense of truth; it merely asked Plaintiff to admit that in the past five years it had at least one customer who claimed that its services did not live up to the promised results. Inexplicably, Plaintiff refused to respond to this request. That refusal is entirely unjustified, and the Court should not only order Plaintiff to provide a response, but also issue appropriate sanctions for this utterly bad faith conduct.

### V. CONCLUSION

WHEREFORE, Defendants respectfully request that this Court grant Defendants' Motion to Compel, and require Plaintiff to provide responses to each of the above discovery requests within 10 days of the Court's order. Defendants further request an award of all attorney's fees incurred in presenting and arguing this motion pursuant to Fed. R. Civ. P 37(a)(2)(B).

Pursuant to Rule 37(a)(2)(B), Defendants' counsel certifies that they have made good faith efforts and have personally attempted to resolve this matter with opposing counsel, but such efforts have been unsuccessful.

>                             Respectfully submitted,
>
>                             XCENTRIC VENTURES, LLC and EDWARD
>                             MAGEDSON
>
>
>                             By:_____/s/ James K. Borcia_____
>                                     One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>) No. 04 C 6018<br>)<br>) Judge Charles R. Norgle<br>)<br>) |

### CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2006, I electronically filed a **Defendants' Motion to Compel re: First Set of Discovery Requests** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

    Bart A. Lazar
    Rachel M. Kindstrand
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL 60603

        XCENTRIC VENTURES, LLC and ED MAGEDSON

        By: /s/ James K. Borcia
                One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq.<br>JABURG & WILK PC<br>3200 North Central Avenue, Suite 2000<br>Phoenix, AZ 85012<br>(602) 248-1000 | James K. Borcia<br>David O. Yuen<br>Tressler, Soderstrom, Maloney & Priess, LLP<br>233 South Wacker Drive, 22nd Floor<br>Chicago, IL 60606-6399<br>(312) 627-4000 |