JKB/ds/300986 5634-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle ) ) Magistrate Judge Mason ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR MONETARY SANCTIONS REGARDING PLAINTIFF'S FAILURE TO ADMIT**

Defendants, XCENTRIC VENTURES, LLC ("Xcentric"), and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, hereby submit their Reply in Support of their Motion for Monetary Sanctions Regarding Plaintiff's Failure to Admit.

Plaintiff's Response presents four excuses for its failure to admit the fact that more than forty (40) complaints had been filed against it with the Better Business Bureau in Chicago:

1) George S. May did not know how many complaints had been filed;

2) The denial was in good faith and not proven to be incorrect;

3) The matter was of no substantial importance; and

4) Defendants cannot prove expenses would have been avoided.

Each of these statements is either provably wrong as a matter of fact or are based on a misstatement of law. Sanctions therefore can, and should, be ordered.

I.   **GEORGE S. MAY <u>DID</u> KNOW OF <u>ALL</u> 52 COMPLAINTS**

Plaintiff's Response argues that "The Request [RTA #9] was objectionable for a host of reasons, but <u>the *main reason* was that the information sought was **not known by George S. May**.</u>" (emphasis added). As was the denial of RTA #9, this argument is patently false.

As explained in Defendants' initial motion, after George S. May denied RTA #9, on June 28, 2006, Defendants sent a subpoena to the BBB in Chicago which asked for copies of all complaints filed against Plaintiff in the last 36 months. A copy of the subpoena is attached hereto as **Exhibit A**. As demonstrated by the pages attached to the subpoena, the BBB's own website reflected that on June 27, 2006, there were actually 43 complaints of record on that date.

Despite Plaintiff's suggestion that it was somehow baffled by the "poorly drafted" question, the BBB experienced no such confusion and it had no difficulty responding to the subpoena. That response, as explained in Defendants' initial motion, contained fifty-two (52) separate complaints all filed against George S. May within the past 36 months. Because that response proved that Plaintiff's denial of RTA #9 was false, Defendants have sought the mandatory costs and fees provided by Rule 37(c)(2).

> In response, Plaintiff has argued:
>
> The Request [RTA #9] was objectionable for a host of reasons, but <u>the **main reason** was that the information sought was **not known by George S. May**</u>. George S. May is not the Better Business Bureau, <u>and is not in a position to know the exact number of complaints filed with the Better Business Bureau.</u>

Plaintiff's Response at 4 (emphasis added). This representation is provably false. In addition to the complaints, the BBB's records subpoenaed by Defendants contain **written responses from George S. May** to 14 of the 52 complaints. Some examples are attached hereto as **Exhibit B**. As for the remaining 38, the BBB's records contain notations (*see* **Exhibit C**) showing that notice of **every** complaint was sent from the BBB directly to George S. May.

2

Given this evidence, Plaintiff's argument is shockingly devoid of truth. Notwithstanding the fact that George S. May's own files already contained these documents, Defendants disclosed copies of the BBB's documents to Plaintiff on October 6, 2006. Therefore, prior to filing the response here, Plaintiff knew that it was untrue as a matter of fact to say that George S. May did not know the exact number of complaints filed with the BBB.

Standing alone, this warrants the imposition of serious sanctions against Plaintiff.

## II. THE DENIAL HAS BEEN PROVEN FALSE AND WAS MADE IN BAD FAITH

### A. The 52 Complaints Prove Plaintiff Had More Than 40 Complaints

Plaintiff's next argument is that Defendants have failed to prove the denial was false. As support, Plaintiff argues that "[t]he Better Business Bureau stated that the number of complaints was 43, but that number included 'complaints' the Better Business Bureau did not consider to be a formal, filed complaint..." No evidence is cited to support this statement.

The documents attached to Defendants' initial motion proved the existence of 52 separate complaints, not 43, and each included a "summary sheet" which was generated by the BBB itself. Furthermore, every single one of the 52 complaints contains a unique, bold-faced heading stating the *complaint number*; for instance, "**COMPLAINT # 24006784**". All 52 pages contain such a number and a heading stating it is a <u>complaint</u> — so it is unclear what basis exists for Plaintiff to suggest that any of these were not counted by the BBB as "formal complaints".

In any event, RTA #9 did not ask Plaintiff to limit its answer to only those complaints which the BBB considered "formal", nor did the question restrict its application to only those complaints which were filed *initially* with the Chicago BBB, as opposed to being filed elsewhere and then transferred to the Chicago branch. Defendants have proven that more than 40 complaints were filed against Plaintiff with the Chicago BBB, and that Plaintiff falsely denied this fact.

3

**B.      The Denial Was Purely Bad Faith**

Plaintiff further argues its denial was made in good faith because it conducted research which caused it to believe (erroneously) that only 37 complaints had been filed. Notably, other than the unsworn arguments of counsel, Plaintiff offers <u>nothing</u> to support this claim.

However, even assuming that Plaintiff did investigate, and did mistakenly calculate its own complaint record, the revelation of this information may establish a good faith basis for the incorrect denial, but this begs the question: <u>why did Plaintiff not provide that information in response to the interrogatory which followed RTA #9?</u>

As noted in Defendants' motion, immediately after RTA #9 was an interrogatory pursuant to Fed. R. Civ. P. 33(a) which read: "If your response to the question immediately above is anything other than an unconditional admission, <u>please give a full and complete explanation for the denial and state all facts and identify all documents that support and/or explain your denial.</u>" (emphasis added) Despite its denial of RTA #9, Plaintiff offered no response at all to this interrogatory. The answer was entirely blank.

It is perplexing that Plaintiff would attempt to excuse its denial of RTA #9 by asserting that it conducted an investigation and discovered 37 complaints, thereby ***admitting*** that it failed to provide a full, complete, and truthful response to the post-RTA interrogatory. Since sanctions are available under Rule 37 for either a failure to properly admit or for failing to truthfully answer an interrogatory, Plaintiff's gamesmanship should have no effect on the outcome here. If anything, Plaintiff's own argument is compelling evidence of its bad faith.

**III.    THE MATTER WAS OF SUBSTANTIAL IMPORTANCE**

This is a defamation case. Clearly, establishing Plaintiff's reputation (whether good or bad), is of paramount importance both as to liability, if any, and as to damages, if any.

4

Prior to the commencement of discovery, Plaintiff made several sworn statements to the Court attesting to its excellent reputation, and accusing Defendants of tarnishing that reputation by hosting complaints with Plaintiff alleged to be false. For instance, in the Declaration of Israel Kushnir dated September 22, 2005 (Doc. #88-2), Mr. Kushnir states, "GSMIC spends a great deal of time and effort to maintain high levels of customer satisfaction. We proudly post letters from satisfied customers on our website www.georgesmay.com". Because Defendants had not yet had any opportunity to conduct discovery, and could not yet address the merits of Plaintiff's contentions, the Court has thus far largely accepted Plaintiff's unopposed assertions as true.

This is about to change. Since these preliminary filings more than a year ago, Defendants have conducted significant discovery and have engaged in a broad-ranging investigation aimed at testing the truth of Plaintiff's reputation and factual claims. Part of that investigation included looking at the website for the BBB in Chicago to determine if Plaintiff's reputation was as unblemished as Mr. Kushnir swore it to be. Contrary to Mr. Kushnir's declaration, Defendants discovered that as of June 2006, the BBB's website showed some 43 complaints had been filed against Plaintiff in the past 36 months.

Defendants believed this fact was vital to Defendants' Third Affirmative Defense – truth – since it tended to show that Plaintiff's reputation was not as flawless as Mr. Kushnir implied. For that reason, Defendants propounded RTA #9 to establish the simple fact that Plaintiff had dozens and dozens of complaints filed against it with the BBB.

Having already concluded that this fact was true and not subject to honest debate, Defendants were shocked when they received Plaintiff's response denying RTA #9. Perhaps the BBB's website was wrong? In the face of Plaintiff's denial, Defendants had no alternative but to subpoena the BBB's records in order to verify who was telling the truth.

As it happened, the BBB's own website was out of date, resulting in an unduly *low* report of 43 complaints when, in fact, the true number was much higher. In any case, accurately determining the number of complaints was of paramount importance, and Plaintiff's false denial actually <u>confirms this</u> – if the issue was not important, why not simply provide an honest response?

The reason is that Plaintiff has argued that its "excellent" reputation has been impugned by one thing, "false" complaints on Ripoff Report, and its loss of customers was caused by only one source – Rip-off Report. Since there are, in fact, <u>more</u> complaints on file with the Better Business Bureau than reports about George S. May on Rip-off Report, this severely undermines both the merits of Plaintiff's case as well as the credibility of those such as Mr. Kushnir who have provided sworn statements which contain questionable (or provably erroneous) facts.

## IV.  DEFENDANTS ARE NOT REQUIRED TO SHOW AVOIDANCE OF EXPENSES

As a final point, the Court should note that Plaintiff presents two legal arguments as to why sanctions are not warranted. Citing *Russo v. Baxter Healthcare Corp.*, 51 F.Supp.2d 70 (D. RI. 1999), Plaintiff argues that a "motion to challenge objections [is a] <u>prerequisite</u> to a motion for FRCP 37(b)(2) sanction[s]." (emphasis in original). Also, citing *Read-Rite Corp. v. Burlington Air Express, Inc.*, 183 F.R.D. 545 (N.D. Cal. 1998), it argues that sanctions cannot be issued unless the moving party proves that its expenses would have been avoided but for the wrongful failure to admit.

Neither of these cases support the cited premises. Ironically, as to the obligation to test an objection before moving for sanctions, the *Read-Rite* case (from the Northern District of California) directly conflicts with *Russo* (from Rhode Island); "A requesting party <u>is not</u> <u>generally required to oppose an answering party's objections before moving for sanctions[</u>.]"

*Read-Rite*, 183 F.R.D. at 547 (emphasis added), *citing Marchand v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994)).

Moreover, the Court in *Read-Rite* denied sanctions not because they were not shown to have been avoidable, but because the Court felt the request -- seeking $21,447.51 in fees and costs for plaintiff's counsel's 12-day trip to England – was not reasonable: "[Defendant's] response was evasive and might justify an award of expenses on that basis. But an award would nonetheless be limited to reasonable costs, Fed. R. Civ. P. 37(c)(2), and Plaintiffs' counsel's trip to England was not reasonably justified by [Defendant's] evasion of request 10." *Id.*

Here, Defendants seek nothing more than the reasonable costs and fees incurred as a result of having to prove a fact which Plaintiff had no basis to deny. Of course, Defendants also request an award of all fees incurred in bringing this motion and in reviewing Plaintiff's response and preparing this reply.

## V.   CONCLUSION

The request for sanctions is well founded. Plaintiff's response is not. Pursuant to Rule 37(c)(2), Defendants are entitled to mandatory sanctions.

Respectfully submitted,

XCENTRIC VENTURES, LLC and
EDWARD MAGEDSON

By:_____
    One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | Tressler, Soderstrom, Maloney & Priess, LLP |
| Phoenix, AZ 85012 | 233 South Wacker Drive, 22nd Floor |
| (602) 248-1000 | Chicago, IL 60606-6399 |
| | (312) 627-4000 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) |
| Plaintiff, | ) |
| v. | ) No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, et al., | ) Judge Charles R. Norgle ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, I electronically filed a **Defendants' Reply to Plaintiff's Response to Defendants' Motion for Monetary Sanctions Regarding Plaintiff's Failure to Admit** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

    Bart A. Lazar
    Rachel M. Kindstrand
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL 60603

    XCENTRIC VENTURES, LLC and ED MAGEDSON

    By: /s/ James K. Borcia
        One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | Tressler, Soderstrom, Maloney & Priess, LLP |
| Phoenix, AZ 85012 | 233 South Wacker Drive, 22nd Floor |
| (602) 248-1000 | Chicago, IL 60606-6399 |
| | (312) 627-4000 |

8