George S May Intl, et al v. Xcentric Ventures, et al · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · Doc. 195 Att. 1

Case 1:04-cv-06018 · · · · Document 195-2 · · · · Filed 11/27/2006 · · · · Page 1 of 24

**EXHIBIT A**

Dockets.Justia.com

26 of 105 DOCUMENTS

**TELEWIZJA POLSKA USA, INC., an Illinois corporation, Plaintiff, v.
ECHOSTAR SATELLITE CORPORATION, a Colorado corporation, Defendant.**

**02 C 3293**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 17936*

**September 1, 2004, Decided
September 3, 2004, Docketed**

**SUBSEQUENT HISTORY:** Motion granted by *Telewizja Polska United States v. Echostar Satellite Corp., 2004 U.S. Dist. LEXIS 17876 (N.D. Ill., Sept. 1, 2004)*

**PRIOR HISTORY:** *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp., 69 Fed. Appx. 793, 2003 U.S. App. LEXIS 13624 (2003)*

**DISPOSITION:** Plaintiff's motion to strike defendant's affirmative defenses and dismiss defendant's counterclaims granted in part and denied in part.

**COUNSEL:** [*1] For TELEWIZJA POLSKA USA, INC., plaintiff: Phillip Jay Zisook, Paul M. Levy, Brian D. Saucier, Deutsch, Levy & Engel, Chicago, IL.

For ECHOSTAR SATELLITE CORPORATION, defendant: Mitchell Alan Orpett, Tribler Orpett and Meyer, P.C., Chicago, IL, Ross W Wooten, David M Noll, T. Wade Welch & Associates, Houston, TX, Douglas C. Crone, Attorney at Law, Houston, TX, Wade T Welch, T. Wade Welch & Associates, Houston, TX.

For ECHOSTAR SATELLITE CORPORATION, counter-claimant: Mitchell Alan Orpett, Tribler Orpett and Meyer, P.C., Chicago, IL, Ross W Wooten, David M Noll, Wade T Welch, T. Wade Welch & Associates, Houston, TX, Douglas C. Crone, Attorney at Law, Houston, TX,

For TELEWIZJA POLSKA USA, INC., counter-defendant: Phillip Jay Zisook, Paul M. Levy, Brian D. Saucier, Deutsch, Levy & Engel, Chicago, IL.

**JUDGES:** Judge Ronald A. Guzman.

**OPINION BY:** RONALD A. GUZMAN

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Telewizja Polska USA, Inc. ("Polska") has sued EchoStar Satellite Corp. ("EchoStar") for breach of contract (Count I) or, in the alternative, for unjust enrichment (Count II). Defendant EchoStar raised fifteen affirmative defenses and four counterclaims. Before the Court is Polska's [*2] motion to strike EchoStar's affirmative defenses pursuant to Federal Rule of Civil Procedure ("Rule")*12(f)* and to dismiss EchoStar's four counterclaims pursuant to *Rule 12(b)(6)*. Polska later moved to withdraw its motion to strike as to eight of the affirmative defenses. In a Minute Order of 7/1/04, the Court granted the motion to withdraw in part as to the Second through Fourth, Sixth, and Seventh Affirmative Defenses and asked for further briefing as to the Eighth through Tenth Affirmative Defenses. For the reasons provided in this Memorandum Opinion and Order, the Court grants Polska's motion to strike EchoStar's Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fifteenth Affirmative Defenses, grants the motion to dismiss EchoStar's Third and Fourth Counterclaims, and denies the motion as to all other defenses and counterclaims. Accordingly, the Court denies Polska's motion to withdraw its motion to strike the Eighth through Tenth Affirmative Defenses.

### BACKGROUND

Polska is a Delaware corporation engaged in the distribution of Polish language television and radio programming for the public, with its principal place of business in [*3] Illinois. (Am. Compl. P 1.) EchoStar is a Colorado corporation that operates a Direct Broadcast Satellite service under the trade name "Dish Network." (Second Am. Answer Pt. III PP 1-3.) On or about April

30, 1998, EchoStar and Polska entered into an Affiliation Agreement ("Agreement") for Polska to provide Polish language television programming ("Programming Service") to EchoStar. (*Id.* Pt. III P 6.) Pursuant to the Agreement, Polska granted EchoStar a license to sell subscriptions for Polska's Programming Service. (Agreement P 1.2.1.) The Agreement provides for a "Shared Revenue Arrangement," in which Polska is entitled to thirty percent of the first $ 199,800.00 paid to EchoStar by subscribers for Polska's Programming Service, and fifty percent thereafter. (*Id.* P 3.1.1.) Polska's portion of the shared revenue for a given month was to be paid within thirty days of the end of the month. (*Id.* P 3.2.) The Agreement also provided that within thirty days after the end of each month, EchoStar must report to Polska the total number of subscribers as of the last day of the billing cycle of the immediately preceding month. (*Id.* P 4.1.) The Agreement was for a contract term [*4] of three years, ending on April 30, 2001. (Second Am. Answer Pt. III P 7.) Paragraph Two of the Agreement entitled "TERM" provides that:

> upon the expiration or earlier termination of the Agreement, if EchoStar has already launched the Programming Service on its Satellite, it shall continue to provide EchoStar the Programming Service under the terms and conditions outlined herein for a period of time that is the shorter of twelve (12) months or that number of months necessary for EchoStar to provide the Programming Service to service Subscribers who bought a multi-month subscription to the Programming Service prior to the receipt by EchoStar of notice of termination of the Agreement.

(Agreement P 2.) Polska continued to provide EchoStar its Programming Service for sale to EchoStar's T.V. Polonia customers through April 30, 2002. (Am. Compl. P 13.) EchoStar continued to broadcast the Programming Service until May 2002. (Second Am. Answer Pt. III P 15.)

Polska alleges that EchoStar breached the Agreement in the following ways: (1) by failing to pay Polska any subscription revenue subsequent to December 2001; (2) by failing to report subscriptions sold after April 30, 2001 and [*5] the revenue derived from them; (3) by refusing Polska's request for an audit as provided in the Agreement; (4) by broadcasting another Polish language Programming Service in violation of the one-year exclusivity granted to Polska in the Agreement; (5) by failing to return Polska's receivers as provided in the Agree-

ment; (6) by failing to include access and service fees charged to subscribers in the calculation of shared revenue; and (7) by paying less than the agreed percentages for shared revenue. (Am. Compl. P 14.) n1 In the alternative, Polska alleges that EchoStar has been unjustly enriched by its wrongful conduct to Polska's detriment. (*Id.* Count II P 15.)

n1 In Polska's supplemental brief in support of its motion to withdraw objections to EchoStar's Eighth through Tenth Affirmative Defenses, Polska also contends that EchoStar was without authority to sell new subscriptions after April 30, 2001. Because the Eighth through Tenth Defenses are stricken on grounds other than materiality or relevancy, the Court need not address whether Polska may amend its pleading, which is the subject of as separate motion, for purposes of this ruling.

[*6]

EchoStar raises the following affirmative defenses: (1) statute of frauds; (2) Polska waived any rights by its actions;(3) laches; (4) estoppel; (5) statute of limitations; (6) Polska ratified EchoStar's alleged conduct; (7) failure to mitigate damages; (8) Polska's claims are barred by applicable agreements and/or law; (9) unclean hands; (10) assumption of risk; (11) Polska accepted payment from EchoStar; (12) to the extent that Polska seeks damages that may be considered a penalty, such claims are unenforceable; (13) the parties' rights and obligations were ambiguous; (14) mistake of fact; and (15) rescission. (Second Am. Answer at 7-11.) EchoStar also makes the following counterclaims: (1) Polska made false and defamatory statements about EchoStar to EchoStar's customers and potential customers and to other programmers who had negotiated with EchoStar; (2) Polska tortiously interfered with EchoStar's prospective economic advantage by making false and misleading statements to individuals with whom Polska knew that EchoStar had reasonable expectation of entering into a business relationship; (3) Polska committed trade libel or product disparagement by making false statements and [*7] allegations about the Dish Network service with the intent to cause injury to EchoStar; and (4) Polska violated the Illinois Uniform Deceptive Trade Practices Act, *815 Ill. Comp. Stat. § 510/1-7* (2004), by its unauthorized use of the name "Dish Network" to make false and misleading statements that have substantially harmed EchoStar. (*Id.* Pt. III PP 25-53.)

**DISCUSSION**

## A. Polska's Motion to Strike EchoStar's Affirmative Defenses

In a motion to strike pursuant to *Rule 12(f)*, "the court may order stricken from the pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Courts in this district, following *Bobbit v. Victorian House, Inc.,* have traditionally used a three-part inquiry when examining affirmative defenses subject to a motion to strike: (1) whether the matter is appropriately pleaded as a defense; (2) whether it is adequately pleaded under the requirements of *Rules 8* and *9*; and (3) whether it meets the standard for *Rule 12(b)(6)* motions. *532 F. Supp. 734, 737 (N.D. Ill. 1982); see Ocean Atl. Woodland* [*8] *Corp v. DRH Cambridge Homes, Inc., 2003 U.S. Dist. LEXIS 4964, No. 02 C 2523, 2003 WL 1720073, at *2 (N.D. Ill. Mar. 31, 2003); H.R.R. Zimmerman Co. v. Tecumseh Prods. Co., 2002 U.S. Dist. LEXIS 16911, No. 99 C 5437, 2002 WL 31018302, at *2-3 (N.D. Ill. Sep. 9, 2002); Ocean Atl. Dev. Corp. v. Willow Tree Farm, L.L.C., 2002 U.S. Dist. LEXIS 5465, No. 01 C 5014, 2002 WL 485387, at *2-3 (N.D. Ill. Mar. 29, 2002).*

However, motions to strike defenses are disfavored and are not ordinarily granted. *Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029, 1031 (N.D. Ill. 1980).* A defense will be stricken only if it is insufficient on the face of the pleadings. *Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).* A movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration and unduly prejudicial. *Ocean Atl. Woodland Corp., 2003 U.S. Dist. LEXIS 4964, 2003 WL 1720073, at *2.* The pleadings under consideration in a motion to strike must be viewed in the light most favorable to the pleader. *Lirtzman, 493 F. Supp. at 1031* n.l. Where both parties have failed adequately to address [*9] substantive legal questions underlying the motion to strike, a defense that is at least pertinent and material will be allowed to stand. *Donovan v. Robbins, 99 F.R.D. 593, 596 (N.D. Ill. 1983).*

Polska correctly points out that the Tenth Affirmative Defense, assumption of risk, is an improper defense to a breach of contract complaint. (Mot. Strike Affirmative Defenses P 2.) Assumption of risk is a defense to negligence, and cannot be asserted as a defense to breach of contract or intentional torts. *Chamberlain Mfg. Corp. v. Maremont Corp., 1993 U.S. Dist. LEXIS 17933, No. 90 C 7127, 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993).* Unjust enrichment is based on an implied or quasi-contract, *People ex rel. Hartigan v. E. & E. Hauling, Inc., 153 Ill. 2d 473, 607 N.E. 2d 165, 177, 180 Ill. Dec. 271 (Ill. 1992),* the intentional breach of which is likewise not subject to an affirmative defense of assumption of risk. Where unjust enrichment occurs through mutual mistake, the negligence of the conferrer of the benefit does not preclude recovery. *Bank of Naperville v. Catalano, 86 Ill. App. 3d 1005, 408 N.E.2d 441, 444, 42 Ill. Dec. 63 (Ill. App. Ct. 1980).* [*10] Assumption of risk is not a proper affirmative defense to either of Polska's claims. It is true, as EchoStar contends, that parties to a contract agree to allocate risk, and must abide by that allocation. EchoStar is free to argue that it had the right to act as it did because the contract did not explicitly forbid its conduct. However, this is a denial of Polska's claims, not an affirmative defense. *See Bobbit, 532 F. Supp. at 736.* EchoStar does not cite any case in which assumption of risk was asserted as an affirmative defense to breach of contract or unjust enrichment. The motion to strike EchoStar's Tenth Affirmative Defense is granted.

Polska argues that EchoStar's First Defense, statute of frauds, should be stricken because Polska is not suing EchoStar for breach of any oral promise. (Reply Supp. Mot. Strike at 2.) EchoStar explains that it raises the defense because after the three-year term of the contract expired, "to the extent not already allowed by the contract, EchoStar and Polska modified the contract by conduct to allow EchoStar to sell new subscriptions and continue month-to-month subscriptions to Polska's programming through May 2002 while the parties [*11] negotiated a new agreement." (Opp'n Polska's Mot. Strike at 3.) It is EchoStar, not Polska, who argues that the terms of the written agreement do not govern certain of the parties' actions and suggests the existence of an unwritten agreement. Each of Polska's claims asserts that EchoStar acted in violation of a specified paragraph of the Agreement. (Am. Compl. P 14.) EchoStar could simply have denied that its actions violated the Agreement, without raising statute of frauds.

Nonetheless, because there is a question of material fact as to whether the Agreement governs some or all of the parties' actions after the expiration of the three-year term, and whether the parties may have modified their agreement through oral discussion or course of dealing, evidence on the statute of frauds issue may become relevant. Before a motion to strike can be granted, the Court must be convinced that there are no questions of fact or law in dispute, and the issue has no possible relation to the controversy. *Lirtzman, 493 F. Supp. at 1031.* The benefit of any doubt should be given to the pleader. *Bobbit, 532 F. Supp. at 736-37.* Polska's motion to strike EchoStar's First [*12] Affirmative Defense is denied.

Polska next challenges EchoStar's Fifteenth Affirmative Defense, rescission. EchoStar's pleading does not state grounds for rescission, but it is presumably related to the Fourteenth Defense, which suggests that "the Agreement by the parties may have been made under a misconception of a material fact concerning the parties' rights and obligations in the Post-Termination/Expiration

period." (Second Am. Answer at 10.) A mistake of material fact is proper grounds for rescission. *Real Estate Value Co. v. USAir, Inc., 979 F. Supp. 731, 740 (N.D. Ill. 1997).* The Court strikes the Fifteenth Defense as redundant and addresses Polska's arguments regarding rescission as challenges to the Fourteenth Defense.

Polska challenges rescission on two grounds: that it is a form of relief, not a defense, and that rescission is unavailable because the contract has been fully performed. (Reply Supp. Mot. Strike at 3.) Affirmative defenses have been defined as "something that generally admits the matters in a complaint but suggests some other reason why there is no right of recovery," or "something that raises a matter outside the scope of plaintiff's prima [*13] facie case and is thus a matter not raised by a simple denial." *Bobbitt, 532 F. Supp. at 736.* With this defense, EchoStar seeks to avoid the contract regardless of whether Polska's allegations are true, thus meeting both definitions. The defense of rescission is permitted in this district and in Illinois. *See, e.g., Fairbanks Capital Corp. v. Jenkins, 225 F. Supp. 2d 910, 914-15 (N.D. Ill. 2002); State Farm Ins. Co. v. Am. Serv. Ins. Co., 332 Ill. App. 3d 31, 773 N.E.2d 666, 672, 265 Ill. Dec. 902 (Ill. App. Ct. 2002); Volk v. Kendall, 71 Ill. App. 3d 211, 389 N.E.2d 697, 699, 27 Ill. Dec. 633 (Ill. App. Ct. 1979).*

Rescission for mistake is proper under Illinois law if EchoStar can establish that: (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in *status quo ante. Real Estate Value Co., 979 F. Supp. at 740.* Polska challenges only the last element, arguing that because Polska has provided Programming [*14] Services, the Court cannot place the parties in the positions they would have been in had no contract existed. (Reply Supp. Mot. Strike at 3.) Although restoration of the status quo initially requires return of property or other consideration, it also requires the rescinding party to account for any benefits received from the other party under the contract. *Puskar v. Hughes, 179 Ill. App. 3d 522, 533 N.E.2d 962, 967, 127 Ill. Dec. 880 (Ill. App. Ct. 1989).* Restitution is a proper remedy for rescission. *Id.* That a party has benefited from possession of land, goods, or other property does not preclude restitution because the other party can be compensated in money for this benefit. *RESTATEMENT (SECOND) OF CONTRACTS § 384 cmt. a* (1981). If the contract is rescinded, EchoStar may compensate Polska for the value it received. Polska's motion to strike EchoStar's Fourteenth Affirmative Defense is denied.

Polska asserts that EchoStar's Eighth and Ninth Affirmative Defenses are "immaterial and irrelevant" (Reply Supp. Mot. Strike at 2.) The Court addresses each in turn.

Although Polska seeks to withdraw its motion to strike as to [*15] EchoStar's Eighth Affirmative Defense, which states that Polska's claims are barred by applicable agreements and/or applicable law, the Court nonetheless finds that this defense is insufficiently pleaded. *Rule 8(a)* requires a short and plain statement showing that the pleader is entitled to relief. *FED. R. CIV. P. 8(a).* EchoStar's statement that Polska's claims are barred by "provisions of applicable agreements and/or applicable law" does not state why EchoStar is entitled to relief. The number of agreements and laws to which the pleading might refer is virtually unlimited. There is no notice given of the defense alleged and the issues it raises. *See Sauber Painting & Decorating, Inc. v. Int'l Union of Painters & Allied Trades Dist. Council # 30, 2004 U.S. Dist. LEXIS 10258, No. 04 C 170, 2004 WL 1244133, at *2 (N.D. Ill. June 3, 2004).* In its brief in opposition to Polska's motion to withdraw its motion to strike this affirmative defense, EchoStar attempts to clarify this defense by arguing that breach of contract and unjust enrichment claims cannot coexist. However, as the case to which EchoStar cites goes on to say, a party is not barred from pleading [*16] these claims in the alternative, as Polska does here, albeit insufficiently. *See Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001).* Polska's motion to strike EchoStar's Eighth Affirmative Defense is granted.

Polska also seeks to withdraw its motion to strike EchoStar's Ninth Affirmative Defense. The Court examines the defense for sufficiency of pleading. Under Illinois law, EchoStar's Ninth Defense, unclean hands, requires that the defendant show misconduct by plaintiff (l) involving the transaction complained of and (2) constituting fraud, misconduct, or bad faith toward the defendant. *Energetec Sys., Inc. v. Kayser, 1986 U.S. Dist. LEXIS 22681, No. 84 C 10611, 1986 WL 8058, at *2 (N.D. Ill. July 17, 1986); Baal v. McDonald's Corp., 97 Ill. App. 3d 495, 422 N.E.2d 1166, 1171, 52 Ill. Dec. 957 (Ill. App. Ct. 1981).* If EchoStar means to allege that fraud occurred, *Rule 9(b)* requires that the allegation include particular circumstance such as the time, place, and content of the representation or omission. *Global Poly, Inc. v. Fred's Inc., 2004 U.S. Dist. LEXIS 3880, No. 03 C 4561, 2004 WL 532844, at *6 (N.D. Ill Mar. 11, 2004).* EchoStar does not state factual [*17] grounds for fraud with anything close to the requisite specificity. Nor does EchoStar generally allege grounds for misconduct or bad faith to meet the pleading standard of *Rule 8.* n2 The facts cited in support of the defense allege that Polska advertised for, referred customers to, and accepted money from EchoStar. It is unclear how such facially beneficial actions could constitute misconduct to-

ward EchoStar. If, on the other hand, EchoStar wishes to allege that these actions were carried out in bad faith, it must so state. *Franklin Capital Corp. v. Baker & Taylor Entm't, Inc., 2000 U.S. Dist. LEXIS 12452, No. 99 C 8237, 2000 WL 1222043, at *4 (N.D. Ill. Aug. 22, 2000).* EchoStar alleges only that Polska's performance on the contract after it was breached makes Polska a participant in any harm caused. In the absence of fraud, misconduct, or bad faith, the claim is more akin to estoppel or laches. It is more properly made under those defenses. *Safe Bed Techs. Co. v. KCI USA, Inc., 2003 U.S. Dist. LEXIS 8514, No. 02 C 97, 2003 WL 21183948, at *6 (N.D. Ill. May 20, 2003).* Polska's motion to strike EchoStar's Ninth Defense is granted.

> n2 Despite Polska's arguments to the contrary, heightened pleading under *Rule 9* is not required for unclean hands unless fraud is alleged. *Ocean Atl. Woodland Corp., 2003 U.S. Dist. LEXIS 4964, 2003 WL 1720073, at *6; Zic, 130 F. Supp. 2d at 999 n.8.*

**[*18]**

Finally, Polska makes a general argument that all of EchoStar's affirmative defenses with the exception of the Fifth and Eleventh are "bare bones legal conclusions." (Reply Supp. Mot. Strike at 3.) The Federal Rules of Civil Procedure require only fair notice of what the pleader's claim is and the grounds upon which it rests; the pleader need not set out facts in detail. *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* Even vague allegations may be construed to set forth a claim. *Lewis v. Local Union No. 100, 750 F.2d 1368, 1373 (7th Cir. 1984).* As discussed above, the stated grounds are sufficient to support EchoStar's First and Fourteenth Defenses. The motion to strike these defenses is denied. The Court strikes EchoStar's Tenth Defense because it is an inappropriate defense to a breach of contract claim; the Fifteenth Defense because it is redundant; and the Eighth and Ninth Defenses because they do not state a basis for relief. EchoStar's Thirteenth Defense, which states that the parties' rights and obligations in the post-termination period were ambiguous, is in essence merely a denial of the breach of contract claim. The motion to strike **[*19]** EchoStar's Thirteenth Defense is accordingly granted.

EchoStar's Twelfth Defense does not clearly state grounds for relief. It asserts that to the extent Polska seeks any damages under the parties' Agreement that may be considered a penalty, such claims are unenforceable as a matter of law. Presumably EchoStar refers to the common-law rule, adopted in Illinois, that when the sole purpose of a contract clause specifying damages is

to secure performance of the contract--a "penalty" clause--it is unenforceable. *Checkers Eight Ltd. P'ship v. Hawkins, 241 F.3d 558, 561-62 (7th Cir. 2001).* The rule is inapplicable where there is no damages clause at issue. *Saunders v. Michigan Ave. Nat'l Bank, 278 Ill. App. 3d 307, 662 N.E.2d 602, 609, 214 Ill. Dec. 1036 (Ill. App. Ct. 1996).* There is no such clause in the parties' agreement Polska's motion to strike EchoStar's Twelfth Defense is granted.

In sum, Polska's motion to strike EchoStar's First and Fourteenth Affirmative Defenses is denied. The motion to strike EchoStar's Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fifteenth Affirmative Defenses is granted. EchoStar has requested leave to amend any defenses **[*20]** stricken for insufficiency. (Opp'n Mot. Strike at 4.) The Tenth, Twelfth, and Thirteenth Defenses are stricken with prejudice because they are improper affirmative defenses to Polska's claims. The Fifteenth Defense is stricken with prejudice because it is already pleaded by the Fourteenth Defense. EchoStar is granted leave to amend its Eighth and Ninth Defenses within fifteen days of this Memorandum Opinion and Order.

**B. Polska's Motion to Dismiss EchoStar's Counterclaims**

A *Rule 12(b)(6)* motion to dismiss for failure to state a claim will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief. *Conley, 355 U.S. at 45-46.* Under *Rule 8,* the complaint must give fair notice of what the claim is and the grounds upon which it rests. *Id. at 47.* To survive a motion to dismiss for failure to state a claim, pleadings need only outline a violation of the law upon which the claim relies, and connect the violation to the parties against whom it is claimed. *Brownlee v. Conine, 957 F.2d 353, 354 (7th Cir. 1992).* When evaluating a motion to dismiss, **[*21]** the facts in the complaint are viewed in the light most favorable to the non-moving party. *Craigs, Inc. v. Gen. Elec. Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993).*

**1. Defamation**

Under Illinois law, a statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. *Kolegas v. Heftel Broad. Corp., 154 Ill. 2d 1, 607 N.E.2d 201, 206, 180 Ill. Dec. 307 (Ill. 1992).* The alleged defamatory words that were spoken or published must be set forth. *Wilton Partners III, LLC v. Gallagher, 2003 U.S. Dist. LEXIS 21899, No. 03 C 1519, 2003 WL 22880834, at *5 (N.D. Ill. Dec. 5, 2003).* The purpose of this requirement is so that responsive pleadings may be formed. *Woodard v. Am. Family Mut. Ins. Co., 950 F.*

*Supp. 1382, 1388 (N.D. Ill. 1997); Vantassell-Matin v. Nelson, 741 F. Supp. 698, 708 (N.D. Ill. 1990).* The language need not be quoted verbatim; an allegation is sufficiently specific if it allows the other party to understand the nature of the claim and respond. *Wilton Partners, 2003 U.S. Dist. LEXIS 21889, 2003 WL 22880834,* **[*22]** *at *5.* The precise date when the statements were made need not be included in the pleadings. *Woodard, 950 F. Supp. at 1388.* n3

> n3 Polska cites *Smith v. SRDS, Inc., 1997 U.S. Dist. LEXIS 95, No. 96 C 858, 1997 WL 11014, at *6 (N.D. Ill. Jan. 7, 1997),* in which the court held that allegations of defamation were too general to state a claim because they did not identify "the precise statements that were made, when, by whom, and to whom." Other courts have required only that the language of the allegedly defamatory statements be set forth. The Smith court's purpose in imposing these additional requirements is so that it can be determined from the context whether the statements are defamatory, capable of an innocent construction, or protected by privilege. *1997 WL 11014, at *6.* Where circumstances are sufficiently alleged that it appears possible the claimant can prove a set of facts that would entitle her to relief, the claim is sufficiently pleaded. *Conley, 355 U.S. at 45-46.* Although the Illinois *in haec verba* requirement in claims for defamation applies in federal court, heightened 9(b) pleading is not required. *See Woodard, 950 F. Supp. at 1388.*

**[*23]**

The defamatory statements identified by EchoStar are: (1) that the reason EchoStar and Polska could not reach a new Agreement was that EchoStar was demanding exclusivity from Polska (Second Am. Answer Pt. III P 19); and (2) that EchoStar was "scamming" Polska of subscription fees and monies owed under the 1998 Agreement (*id.* P 20). The general language of the defamatory statements is set forth with sufficient specificity to give Polska notice of the nature of EchoStar's claims. Although EchoStar's allegations are made "on information and belief," such allegations are acceptable under the liberal, notice pleading requirements of *Rule 8. Syscon, Inc. v. Vehicle Valuation Servs., 274 F. Supp. 2d 975, 977 (N.D. Ill. 2003).*

Under Illinois law, defamation may be per se or per quod. *Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 924 (7th Cir. 2003).* EchoStar alleges both. A statement cannot by definition be both defamatory per se and defamatory per quod because defamation per se is

defined as obviously harmful, whereas a statement is considered defamation per quod if its defamatory character is not apparent on its face. *See Smith v. SRDS, Inc., 1997 U.S. Dist. LEXIS 95, 1997 WL 11014,* **[*24]** *at *5.* The Court will treat them as alternative claims.

To state a cause of action for **defamation** per se when the complainant is a **corporation,** the statements alleged "'must assail the **corporation's** financial position or business methods, or accuse it of fraud or mismanagement. '" *Geske & Sons v. NLRB, 103 F.3d 1366, 1373 (7th Cir. 1997)* (quoting *Vee See Constr. Co. v. Jensen & Halstead, Ltd., 79 Ill. App. 3d 1084, 399 N.E.2d 278, 281, 35 Ill. Dec. 444 (Ill. App. Ct. 1979)).* n4 The statement that EchoStar was "scamming" Polska assails the company's business methods. The statement that EchoStar was responsible for the parties' failure to reach an agreement because it was demanding exclusivity from Polska is not *prima facie* an assault on the company's business practices or an accusation of fraud or mismanagement, so it cannot be grounds for defamation per se. EchoStar's claim for defamation per se must rest on the "scamming" statement alone.

> n4 Some Illinois cases in which the plaintiff is a corporation apply the same standard as that used for individuals. Under the individual standard, there are five categories of statements that may be considered defamatory per se: (1) those inputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those stating false accusations of fornication or adultery; or (5) those that prejudice a party in his trade or profession. *See, e.g., Wilton Partners III LLC, 2003 U.S. Dist. LEXIS 21899, 2003 WL 22880834, at *5.* The statement that EchoStar was "scamming" Polska meets the individual standard because it imputes want of integrity in the discharge of duties and lack of ability in EchoStar's business. The statement that EchoStar was responsible for the parties' failure to reach an agreement because it was demanding exclusivity from Polska is not obviously defamatory under this standard.

**[*25]**

In a claim for defamation per se in Illinois, words are not defamatory if they are reasonably capable of innocent construction. *Kolegas, 607 N.E.2d at 206.* Polska contends that "scamming" can be construed as referring to the fact that EchoStar was not paying Polska monies

due under their agreement. (Mot. Dismiss Countercl. P 7.) As such, Polska contends, the statement does not suggest fraud or unethical conduct, but rather, a "garden variety" breach of contract. (Reply Supp. Mot. Dismiss at 3.)

Polska also cites cases in which it was found that words similar to "scamming," such as "cheating," are susceptible to different interpretations and can be found defamatory only where the context in which they are made forecloses an innocent construction. In particular, *Dilworth v. Dudley, 75 F.3d 307, 310 (7th Cir. 1996)*, noted that "scam" has a figurative meaning that may be used as non-actionable hyperbole, and its defamatory character must be considered in context. That the word was used in a literal sense in the statement alleged by EchoStar is apparent from the fact that it is followed by an indirect object: "EchoStar was 'scamming' Polska of subscription [*26] fees and monies Polska was owed." (Second Am. Ans. Pt. III P 20.) n5 The innocent-construction rule requires courts to give words and their implications their natural and obvious meanings. *Kolegas, 607 N.E.2d at 206*. Here, as Polska acknowledges (*see* Reply Supp. Mot. Dismiss at 3), the Statement is naturally construed as an accusation of actual conduct carried out contrary to obligation. As such it clearly imputes a lack of integrity, foreclosing innocent construction. EchoStar has sufficiently stated a claim for defamation per se.

n5 In its opposition to Polska's Motion to Dismiss Counterclaims, EchoStar argued that there can be no innocent construction of the word "scamming" because Polska explained the factual basis behind its statements: "*i.e.,* EchoStar was deceiving the public by forcing demands of exclusivity on Polska and then lying about it." (Opp'n Mot. Dismiss at 4.) That EchoStar was lying about the demand for exclusivity appears to be a new accusation, or an expanded version of previous accusations. The Court considers only the defamatory statements alleged in the pleadings.

[*27]

In order to state a claim for defamation per quod, EchoStar must allege extrinsic facts showing the defamatory character of the Statements, and specific facts establishing special damages. *Anderson v. Vanden Dorpel, 172 Ill. 2d 399, 667 N.E.2d 1296, 1303, 217 Ill. Dec. 720 (Ill. 1996)*. EchoStar alleges that Polska's Statements were false and were made in order to convince T.V. Polonia subscribers and others to purchase Polska's Programming from EchoStar's competitor in lieu of EchoStar, and to ruin EchoStar's good reputation. (Sec-

ond Am. Answer Pt. III P 24.) In its Opposition to Polska's motion, EchoStar adds that as a result of these statements, "not only could consumers be driven away, but other programmers EchoStar works with, or hopes to works with, could be influenced by Polska's false and malicious statements." (Opp'n Mot. Dismiss Countercl. at 5.) These allegations suffice as extrinsic facts from which the defamatory character of the statements may be inferred. Polska does not challenge this element of the claim.

Polska does challenge the "special damages" element of EchoStar's claim for defamation per quod. (Mot. Strike Affirmative Defenses P 6.) *Rule 9(g)* [*28] states that "when items of special damages are claimed, they shall be specifically stated." *FED. R. CIV. P. 9(g)*. However, an estimation of dollar amounts is unnecessary. *Action Repair, Inc. v. Am. Broad. Cos., 776 F.2d 143, 149 (7th Cir. 1985)*. The pleading need only specify the nature and basis of the damages, making some connection between the defamatory statements and the complainant's injury that shows how the defamation caused the damage. *Id.* For example, in *Fleck Bros. Co. v. Sullivan,* the plaintiff alleged that he had expended money as a result of the defendant's libel. *385 F.2d 223, 225 (7th Cir. 1967)*. EchoStar meets this requirement when it alleges that it was injured by loss of subscribers, future subscribers, and profits. (Second Am. Answer Pt. III P 34.)

Polska next contends that EchoStar's defamation claims must be dismissed because Polska's statements were constitutionally protected opinion. (Mot. Strike Affirmative Defenses P 4.) The test to determine whether a defamatory statement is constitutionally protected is whether a statement cannot reasonably be interpreted as stating actual facts. [*29] *Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990)*. Polska is correct to point out that the word "scamming" alone could pass the test. (Mot. Strike Affirmative Defenses P 4.) However, EchoStar does not confine its allegation to this one word. The Statements alleged are assertions of actual conduct by EchoStar that are sufficiently factual as to be susceptible to being proven true or false. *See Milkovich, 497 U.S. at 20*. They are not constitutionally protected under the *First Amendment. See id.*

Polska correctly argues that as a public figure, EchoStar must sufficiently allege actual malice in its defamation claim. (Mot. Strike Affirmative Defenses P 5.) Because EchoStar has sought publicity and placed itself in the public eye by advertising, engaging in commerce, and broadcasting, it is a public figure and does not qualify for the higher level of protection from defamation afforded to private persons. *See Conseco Group Risk Mgmt. Co. v. Ahrens Fin. Sys., 2001 U.S. Dist.*

*LEXIS 2306, No. 00 C 5467, 2001 WL 219627, at \*9-10 (N.D. Ill. Mar. 6, 2001).* To succeed on a defamation claim, a public figure must plead and prove actual malice. **[\*30]** *Id. at 10.* In Illinois, actual malice denotes knowledge of or reckless disregard for the falsity of a defamatory statement. *Id.* EchoStar fulfills this pleading requirement when it states, "Polska's conduct is made with malice, in that Polska knows or should know that its statements and allegations are false." (Second Am. Ans. Pt. III P 32.)

Finally, Polska argues that EchoStar cannot state a claim for defamation because Polska's statements were privileged. (Mot. Dismiss Countercel. P 8.) Illinois common law recognizes the existence of a qualified privilege for statements that may otherwise be actionable as defamation. The required elements are: (l) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Kuwik v. Starmark Star Mktg. & Admin., Inc., 156 Ill. 2d 16, 619 N.E.2d 129, 133, 188 Ill. Dec. 765 (Ill. 1993).* Polska argues that it had an interest in communicating to its subscribers why it was no longer broadcast on EchoStar's network. (Mot. Dismiss Countercel. P 8.) Although **[\*31]** Polska certainly had an interest in informing its subscribers that its programming would no longer appear on EchoStar's network, it is not at all clear that Polska needed to tell them why. Moreover, EchoStar alleges that the statements were made to other programmers, to whom this interest does not apply. (Second Am. Ans. Pt. III P 22.) EchoStar also alleges that the statements were made with bad faith intent to cause injury to EchoStar. (*Id.* at P 32.) The existence of a qualified privilege is not sufficiently established to justify dismissal of EchoStar's counterclaims. Even if it were established, a qualified privilege can be overcome by a showing that the defamatory statement was intentionally published with the knowledge that it was false, or with reckless disregard as to the matter's falsity, which EchoStar alleges. *See Smock v. Nolan, 361 F.3d 367, 372 (7th Cir. 2004).* EchoStar has sufficiently pleaded its counterclaims for defamation per se and per quod, and Polska's motion to dismiss is denied.

### 2. Tortious Interference with Prospective Economic Advantage

Under Illinois law, to succeed in a claim for tortious interference with prospective **[\*32]** economic advantage, a plaintiff must establish: "(1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant intentionally and unjustifiably interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from

the interference." *Fredrick v. Simmons Airlines, 144 F.3d 500, 502 (7th Cir. 1998).* EchoStar alleges each of these elements when it states: (1) that EchoStar had a reasonable expectation of entering into a valid business relationship with certain individuals to whom Polska made false and misleading statements (Second Am. Pt. III P 37; (2) that Polska had knowledge of EchoStar's reasonable expectation (*id.* P 38); (3) that Polska purposely interfered with this expectation by making false and misleading statements (*id.* PP 38-39); and (4) that Polska's false and misleading statements caused EchoStar to suffer damages (*id.* P 40).

Polska and EchoStar cite apparently conflicting authority regarding the specificity with which the third parties with respect to whom an expected business relationship is **[\*33]** interfered must be identified. (Mot. Dismiss Countercel. P 11; Opp'n Mot. Dismiss Countercel. at 9-10.) However, the underlying authority to which their cases cite is the same. In *Parkway Bank & Trust Co. v. Darien,* the court found that the plaintiffs could not maintain their cause of action because they did not allege an interference with either a business relation between the plaintiffs and specific third parties or an identifiable class of third persons contemplating contractual arrangements with the plaintiff's. *43 Ill. App. 3d 400, 357 N.E.2d 211, 214-15, 2 Ill. Dec. 234 (Ill. App. Ct. 1976).* EchoStar's allegations concern prospective relationships, so the required specificity is "an identifiable prospective class." *See id.* Keeping in mind the liberal notice pleading standard, the requirement is met by EchoStar's allegations that Polska's false and misleading statements were made to EchoStar's T.V. Polonia subscribers and to other programmers with whom EchoStar had negotiated. (Second Am. Ans. Pt. III PP 21-22.) Although Polska questions whether EchoStar could have had a reasonable expectation of a continuing relationship with its T.V. Polonia customers after its agreement with Polska terminated, **[\*34]** EchoStar claims that it did--presumably by replacing Polska with another Polish language programmer--and the facts in the complaint are viewed in the light most favorable to the non-moving party when evaluating a motion to dismiss. *See Craigs, Inc., 12 F.3d at 688.*

Polska also claims that EchoStar has not sufficiently alleged that Polska's interference was unjustified in order to establish the third element of the claim. (Mot. Dismiss Countercel. P 12.) Polska argues that it was justified in communicating with EchoStar's T.V. Polonia customers in order to convey its position in the controversy between the parties, and that this interest constitutes a privilege. (*Id.* at P 12.) In a suit for tortious interference with a prospective economic relationship, privilege exists if the defendant acted in good faith to protect an interest or uphold a duty. *Delloma v. Consol. Coal Co., 996 F.2d*

2004 U.S. Dist. LEXIS 17936, *

*168, 171 (7th Cir. 1993).* The statement must be limited in scope to that purpose, and must be made on a proper occasion, in a proper manner, and to proper parties only. *Id.* If privilege exists, the complainant bears the burden of proving that the defendant's conduct [*35] was malicious. *Id.* (citing *Fellhauer v. City of Geneva, 142 Ill. 2d 495, 568 N.E.2d 870, 878, 154 Ill. Dec. 649 (Ill. 1991)).* In this context, "malicious" means intentionally and without justification. *Id.* As noted above with regard to Polska's claim of privilege for defamation, it is not clear that Polska acted in good faith and within the proper scope. It is apparent that there are material questions of fact at issue, and EchoStar's allegation that Polska's actions were unjustified is sufficient to meet the requirements of pleading. *See Craigs, Inc., 12 F.3d at 688.*

Finally, Polska incorrectly argues that EchoStar cannot base its claim on allegations made only on "information and belief." (Mot. Dismiss Countercl. P 11.) Allegations made on "information and belief' are permissible to fulfill the pleading requirements of *Rule 8. Hall v. Carlson, 1985 U.S. Dist. LEXIS 23810, No. 85 C 6544, 1985 WL 2412, at *1 (N.D. Ill. Aug. 28, 1985)* (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1224 (1969)); *Chisholm v. Foothill Capital Corp., 940 F. Supp. 1273, 1280 (N.D. Ill. 1996).* The only exception to this rule [*36] applies when the matter is within the personal knowledge of the pleader. *HWB, Inc. v. Braner, Inc., 1993 U.S. Dist. LEXIS 13757, No. 92 C 5900, 1993 WL 389346, at *2 (N.D. Ill. Sept. 30, 1993);* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1224. n6 The nature of EchoStar's counterclaim is necessarily speculative, dealing with matters beyond the personal knowledge of the pleader, because it is based upon *prospective* economic advantage. The exception does not apply. EchoStar's pleadings "upon information and belief" are sufficient. Polska's motion to dismiss EchoStar's counterclaim for tortious interference with prospective economic advantage is denied.

n6 *Rule 11* sanctions may also apply if the allegations could have been learned by reasonable pre-filing inquiry, but that does not impair the validity of the pleading. *Zakutansky v. Bionetics Corp., 806 F. Supp. 1362, 1363-64 (N. D. Ill. 1992).* When the heightened pleading requirements of *Rule 9* apply, a claim made upon information and belief must contain an allegation of facts on which that information and belief rests. *HWB, Inc., 1993 U.S. Dist. LEXIS 13757, 1993 WL 389346, at *2; Hall, 1985 U.S. Dist. LEXIS 23810, 1985 WL 2412, at *1;* 5 WRIGHT & MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1224. However, tortious interference with prospective economic advantage does not trigger the heightened pleading requirements of *Rule 9. FED. R. CIV. P. 9(b).*

[*37]

### 3. Trade Libel/Product Disparagement

EchoStar's Third Counterclaim is labeled "trade libel/product disparagement." There is some dispute over whether a common-law tort of commercial disparagement exists in Illinois. *Marchese v. Dobry, 2001 U.S. Dist. LEXIS 5985, No. 00 C 5606, 2001 WL 492471, at *2 (N.D. Ill. May 9, 2001); Schivarelli v. CBS, Inc., 333 Ill. App. 3d 755, 776 N.E.2d 693, 702, 267 Ill. Dec. 321 (Ill. App. Ct. 2002). Compare Becker v. Zellner, 292 Ill. App. 3d 116, 684 N.E.2d 1378, 1387-88, 226 Ill. Dec. 175 (Ill. App. Ct. 1997) with Barry Harlem Corp. v. Kraff, 273 Ill. App. 3d 388, 652 N.E.2d 1077, 1083, 210 Ill. Dec. 101 (Ill. App. Ct. 1995).* Supposing that it is recognized, to state a claim for common-law product disparagement EchoStar would have to show that Polska made false and demeaning statements regarding the quality of EchoStar's goods and services. *Barry Harlem Corp., 652 N.E.2d at 1083.* The two statements that EchoStar has alleged impugn only its integrity, not its goods or services. (Second Am. Answer Pt. III PP 19-20.) EchoStar makes a plausible case that customers will not want to purchase [*38] its services because of Polska's statements, arguing that "if subscribers, or potential subscribers, are led to believe hostile business relations exist between EchoStar and its programmers they could choose another provider they believed had more stable business relationships with its programmers and feel more assured their channel lineup would remain the same." (Opp'n Mot. Dismiss at 7.) However, this merely states grounds for a defamation action. *See Allcare, Inc. v. Bork, 176 Ill. App. 3d 993, 531 N.E.2d 1033, 1037-38, 126 Ill. Dec. 406 (Ill. App. Ct. 1988).* The quality of EchoStar's goods and services is not disparaged. Product disparagement and defamation are separate and distinct torts; a defamation action lies when the integrity or credit of a business has been impugned, whereas an action for commercial disparagement lies if the quality of the goods or services is demeaned. *Crinkley v. Dow Jones & Co., 67 Ill. App. 3d 869, 385 N.E.2d 714, 719, 24 Ill. Dec. 573(Ill. App. Ct. 1978); see Peaceable Planet, Inc. v. TY, Inc., 362 F.3d 986, 993 (7th Cir. 2004)* (citing *Crinkley* with approval). Although it is possible that both [*39] actions could lie simultaneously, they do not do so here. *See Crinkley, 385 N.E.2d at 720.*

There is no dispute that an action for product disparagement may be brought under the Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), *815 Ill. Comp. Stat. § 510/2(a)(8). Cincinnati Ins. Co. v. E. Atl.*

*Ins. Co., 260 F.3d 742, 745 (7th Cir. 2001); Republic Tobacco, LP. v. N. Atl. Trading Co., 254 F. Supp. 2d 985, 997-98 (N.D. Ill. 2002).* The relevant subsection has been held to substantially codify the common law tort of disparagement. *Republic Tobacco, 254 F. Supp. 2d at 997-98; Crinkley, 385 N.E.2d at 719.* It is therefore limited to statements about the quality of one's goods and services, and defamation of the credit and integrity of one's business is not actionable under the act. *Republic Tobacco, 254 F. Supp. 2d at 998; Crinkley, 385 N.E.2d at 719.* n7 The statements alleged by EchoStar do not impugn the quality of its goods and services. Polska's motion to dismiss EchoStar's Third Counterclaim is granted.

n7 Although this construction of the act disregards the word "business" in the phrase "disparages the goods, services, or business of another," it is the interpretation applied by Illinois courts, and so it must be followed. *Republic Tobacco, 254 F. Supp. 2d at 998 n.14.*

[*40]

### 4. Violation of Illinois Uniform Deceptive Trade Practices Act

EchoStar's Fourth Counterclaim alleges that Polska violated four other subsections of the Illinois UDTPA. (Second Am. Answer Pt. III P 51.) The Act states, in pertinent part:

A person engages in deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another,... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;... or (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILL. COMP. STAT. § 510/2(a). The UDTPA was designed to cover conduct involving misleading trade identification and false or [*41] deceptive advertising. *Lynch Ford, Inc. v. Ford Motor Co., 957 F. Supp. 142, 147 (N.D. Ill. 1997).* Implicit within the twelve enumerated subsections of section two of the act is that for a violation to occur, the defendant must make some form of representation to the public or a potential buyer regarding a good or service. *Id.* Because the Court found above that the false and misleading statements alleged by EchoStar pertained only to EchoStar's business, and not to its goods and services, EchoStar has not stated sufficient grounds for a claim under the Illinois UDTPA. Polska's motion to dismiss EchoStar's Fourth Counterclaim is granted.

For the reasons discussed above, EchoStar sufficiently states claims in its First and Second Counterclaims, *i.e.,* defamation per se and per quod in the alternative and tortious interference with prospective economic advantage. EchoStar failed to state grounds for its Third and Fourth Counterclaims, trade libel/product disparagement and violation of the Illinois UDTPA. Polska's motion to dismiss EchoStar's counterclaims is granted as to the Third and Fourth Counterclaims and denied as to the First and Second Counterclaims. EchoStar [*42] has requested permission to replead any counterclaims that are dismissed without prejudice. (Op-p'n Mot. Dismiss at 12.) The Court grants EchoStar leave to correct deficiencies in its Third and Fourth Counterclaims within fifteen days of this Memorandum Opinion and Order if in doing so it can meet its obligations under *Rule 11.*

### CONCLUSION

For the reasons set forth above, the Court grants Polska's motion to strike EchoStar's Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fifteenth Affirmative Defenses (barred by agreement or law, unclean hands, assumption of risk, penalty, ambiguity, and rescission); grants the motion to dismiss EchoStar's Third and Fourth Counterclaims (trade libel/product disparagement and violation of the Illinois UDTPA); and denies the motion as to all other defenses and counterclaims [doc. no. 45-1]. Permission is granted to EchoStar to amend its Eighth and Ninth Defenses and to replead its Third and Fourth Counterclaims within fifteen days of the date of this Memorandum Opinion and Order. The Court denies the remaining portion of Polska's motion to withdraw its motion to strike with regard to EchoStar's Eighth through Tenth Affirmative Defenses [doc. [*43] no. 90-1].

### SO ORDERED

ENTERED: 9/1/04

HON. RONALD A. GUZMAN

2004 U.S. Dist. LEXIS 17936, *

**United States Judge**

**AUSTIN EBERHARDT & DONALDSON, CORP., and ROBERT YOUNGMAN, Plaintiffs, v. MORGAN STANLEY DEAN WITTER TRUST FSB, and MORGAN STANLEY DEAN WITTER & CO., Defendants.**

**Case No. 00 C 3303**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2001 U.S. Dist. LEXIS 1090*

**January 29, 2001, Decided
February 2, 2001, Docketed**

**DISPOSITION:** [*1] Defendants' motion [5] to dismiss the claim of Austin, Eberhardt and Donaldson, Corp. granted and denied in all other respects. Oral motion for leave to file amended complaint granted.

**COUNSEL:** For AUSTIN, EBERHARDT & DONALDSON, CORPORATION, ROBERT YOUNGMAN, plaintiffs: Michael J. O'Rourke, Kelly A. McCloskey, Limo T. Cherian, Brian Michael Dougherty, O'Rourke, McCloskey & Moody, Chicago, IL.

For MORGAN STANLEY DEAN WITTER TRUST, FSB, MORGAN STANLEY DEAN WITTER & CO., defendants: Alexander Dimitrief, Timothy D. Elliott, Kirkland & Ellis, Chicago, IL.

**JUDGES:** Joan H. Lefkow, United States District Judge.

**OPINION BY:** Joan H. Lefkow

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiffs Austin, Eberhardt & Donaldson, Corporation ("AED"), an Illinois corporation, and Robert Youngman ("Youngman"), an Illinois resident, have sued defendants Morgan Stanley Dean Witter Trust, FSB ("MSDW Trust") and Morgan Stanley Dean Witter & Co. ("MSDW"), both Delaware corporations, based on diversity jurisdiction, alleging claims of defamation and false light. Defendants have moved to dismiss plaintiffs' complaint. For the reasons stated below, the court grants the motion as to the false light claim of plaintiff AED [*2] but otherwise denies defendants' motion.

A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997).* Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957); Kennedy v. Nat'l Juvenile Det. Assoc., 187 F.3d 690, 695 (7th Cir. 1999).* In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir. 1999); Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir.1996).*

### ALLEGED FACTS

AED is a legal marketing and consulting firm and Youngman is its Secretary/Treasurer. Beginning in 1997, AED entered into a business relationship with defendants [*3] MSDW and MSDW Trust through its president Youngman whereby plaintiffs would facilitate and administer estate planning seminars for defendants' clients. Defendants, through their officer and agent, James C. Smith ("Smith"), Vice President and Regional Trust Coordinator, agreed to sponsor and endorse a program administered by plaintiffs known as the "Estate Planning Team." Pursuant to agreement, AED met with MSDW branch managers and other MSDW employees to set up estate planning seminars for defendants' clients and financial advisors. AED was responsible for arranging estate planning attorneys to conduct Estate Planning Team seminars. The attorneys, who conducted the seminars, contracted with AED to participate in the program for a monthly fee. AED designed invitations to the semi-

nars, with input from defendants' agents including Smith, and the invitations were approved by defendants' compliance department and its employee, Wendy Moy.

Beginning in 1998, plaintiff organized Charitable Remainder Trust seminars for defendants' clients and brokers; beginning in 1999, plaintiffs organized Estate Planning Team seminars for defendants' clients and brokers; and also beginning in 1999 plaintiffs [*4] organized Estate Planning training for defendants' financial advisors. The seminar program and training of financial advisors were conducted in defendants' offices with the authorization and approval of defendants and their employee Smith. Smith informed plaintiffs that the seminar program was authorized and approved by defendants.

On April 19, 2000, defendants, through their agent, Hal Taylor, published an e-mail to all MSDW branch managers, which states as follows:

!!!! WARNING !!!! !!!! WARNING !!!!
PLEASE BE ON ALERT FOR THE FOLLOWING INDIVIDUALS!
1. BOB YOUNGMAN 2. RICHARD ASHLEY
BOTH OF THE FIRM OF AUSTIN, EBERHARDT & DONALDSON. IF YOU AND YOUR FINANCIAL ADVISORS ARE APPROACHED BY THESE INDIVIDUALS AND/OR ANY PERSONS REPRESENTING THEMSELVES AS AN ESTATE PLANNING ATTORNEY OR A REPRESENTATIVE WITH A CONSULTING FIRM OF AUSTIN, EBERHARDT AND DONALDSON, THEY SHOULD NOT BE ALLOWED IN YOUR BRANCH TO CONDUCT BRANCH MEETINGS WITH YOUR FINANCIAL ADVISORS ON A NEW MARKETING PROGRAM -- "THE ESTATE PLANNING TEAM". THIS PROGRAM IS NEITHER AUTHORIZED NOR SPONSORED BY MORGAN STANLEY DEAN WITTER TRUST, FSB OR MORGAN STANLEY DEAN WITTER. PLEASE ADVISE YOU [sic], FINANCIAL ADVISORS [*5] TO ALERT YOUR SALES MANAGER OR YOUR ADMINISTRATIVE MANAGER IMMEDIATELY SHOULD THEY RECEIVE INVITATIONS FROM THE CONSULTING FIRM TO SUCH BRANCH MEETINGS AND CONTACT

HAL TAYLOR, SENIOR VICE PRESIDENT AND GENERAL COUNSEL OF MORGAN STANLEY DEAN WITTER TRUST AT (201) 938-6111 OR WENDY MOY, VICE PRESIDENT AND ASSISTANT DIRECTOR OF COMPLIANCE/MORGAN STANLEY DEAN WITTER AT (212) 392-2508.

(Complaint, P 22 and Ex. B). The e-mail was also published by defendants' employees to attorneys who are AED clients. Because defendants, through their agents, prior to, at the time of and immediately after the e-mail, authorized and sponsored the Estate Planning Team program administered by plaintiffs, the e-mail falsely states that the program was not authorized or sponsored by defendants. And, as a result, plaintiffs have lost substantial income and revenue, and attorneys who had contracts with AED for participation in the Estate Planning Team Program have withdrawn from the program and demanded return of their monthly fees.

DISCUSSION

A. Defamation

In Illinois, n1 "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person [*6] in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 607 N.E.2d 201, 206, 180 Ill. Dec. 307 (Ill. 1992) (citing *Restatement (Second) of Torts § 559* (1977)); *see also Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (noting that "The Illinois Supreme Court has adopted the definition of a defamatory communication used in the *Restatement (Second) of Torts, § 559*[.]"). "To prove a claim of defamation, a plaintiff must show that the defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that plaintiff was damaged." *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 708 N.E.2d 441, 446-47, 236 Ill. Dec. 855 (Ill. App. Ct. 1999). Defamatory statements may be per se or per quod. *Kolegas*, 607 N.E.2d at 206. A per quod defamation action requires plaintiff to plead "extrinsic facts showing the defamatory nature of the language, as well as allegations of specific facts establishing the plaintiff's [*7] special damages." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 667 N.E.2d 1296, 1303, 217 Ill. Dec. 720 (Ill. 1996); *see also Kolegas*, 607 N.E.2d at 206 ("extrinsic facts are required to explain its defamatory meaning"). "If a defamatory statement is actionable per se, [however,] the plaintiff

need not plead or prove actual damage to his or her reputation in order to recover." *Dunlap v. Alcuin Montessori Sch., 298 Ill. App. 3d 329, 698 N.E.2d 574, 580, 232 Ill. Dec. 483 (Ill. App. Ct. 1998).*

n1 The parties do not dispute that Illinois law controls. *See Cook v. Winfrey, 141 F.3d 322, 329 (7th Cir. 1998)* ("A federal court sitting in diversity applies the choice of law rules of the state in which it sits. . . . [and] in multistate defamation cases, Illinois cases indicate that 'the applicable law is that of the victim's domicile, period.'") (internal citations and quotations omitted).

Plaintiffs have brought their defamation action **[*8]** as a per se action. n2 To establish per se defamation a plaintiff must show that "the defamatory nature of the language is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kolegas, 607 N.E.2d at 206.* Illinois courts recognize four categories of per se statements that satisfy this requirement:

(1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.

*Id.* At the same time, for per se actions in Illinois, the "innocent-construction" rule applies. n3 This rule requires a court to consider whether a statement that otherwise falls into one of the per se categories "is reasonably capable of an innocent construction." *Id.* If so, the statement is not to be regarded as defamatory per se. *Id.* There is no balancing. *Dubinsky, 708 N.E.2d at 447;* **[*9]** *see Rasky v. Columbia Broad. Sys., Inc., 103 Ill. App. 3d 577, 431 N.E.2d 1055, 1058, 59 Ill. Dec. 298 (Ill. App. Ct. 1982)* (even if the statement is "capable of two constructions, one of them defamatory and the other innocent, the innocent construction must be chosen"). The rule "favors defendants . . . in that a nondefamatory interpretation must be adopted if it is reasonable . . . because of the presumption of damages in per se actions." *Anderson, 667 N.E.2d at 1302.* "Whether a statement is reasonably susceptible to an innocent interpretation is a

question of law for the court to decide." *Kolegas, 607 N.E.2d at 207; see also Anderson, 667 N.E.2d at 1302.*

n2 Plaintiffs' complaint brings only a per se defamation claim. In their response to the motion, however, plaintiffs assert,

To the extent the Court finds plaintiffs' claims to be libel per quod rather than libel per se, plaintiffs have plead [sic] that they were, in fact, prejudiced by the defamatory statements. The E-mail was published not only to defendants' employees but to attorneys who are plaintiffs' clients. (Comp. P23). As a result of the defamation by the defendants, plaintiffs have suffered damages including loss of income and because clients have demanded return of their monthly fees." (Comp. P35).

Pls.' Am. Mem. in Opposition to Defs.' Mot. to Dismiss at 6. Because the court finds libel per se, it is unnecessary to examine the sufficiency of plaintiffs' per quod pleading. **[*10]**

n3 *See Chicago City Day School v. Wade, 297 Ill. App. 3d 465, 697 N.E.2d 389, 394, 231 Ill. Dec. 835 (Ill. App. Ct. 1998)* (noting that this rule is a minority rule, which "prevents a case from getting to the jury if there is any possible reasonable innocent interpretation of the language," whereas the majority rule permits "the judge [to decide] whether the language is reasonably susceptible of a defamatory interpretation; and, if it is, the case goes to the jury despite any conceivable innocent interpretation").

In order for an alleged defamatory statement to be reasonably capable of an innocent construction, it must be reasonable in the context in which it appears. *See Kolegas, 607 N.E.2d at 206* ("The innocent-construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning."); *Rasky, 431 N.E.2d at 1059* ("The meaning of an allegedly libelous statement must be gathered not only from words singled out, but also from the context of the statement. **[*11]** It

must be determined whether the 'gist' or 'sting' of the statement, taken as a whole, is capable of an innocent construction.") (internal citation omitted). Moreover, the court must "interpret the allegedly defamatory words as they appear to have been used and according to the idea they were intended to convey to the reasonable reader," *Dubinsky, 708 N.E.2d at 448*, and "focus on the predictable effect that statement had on those who received the publication[.]" *Dunlap, 698 N.E.2d at 581*. The "court 'will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense.'" *Id.* at 580.

Plaintiffs allege that the e-mail contains the false statement that plaintiffs are not authorized or sponsored by defendants to conduct the program when they were, and that the e-mail, taken as a whole, characterizes plaintiffs as dangerous and is, therefore, per se libelous under two categories: (1) it imputes a want of integrity in plaintiffs' profession and business; and (2) it prejudices their business. Defendants argue that plaintiffs' claim should be dismissed under the innocent construction rule because the e-mail is reasonably [*12] capable of an innocent interpretation, namely that

> the average reader could easily (and justifiably) conclude that the e-mail was sent simply because Morgan Stanley Dean Witter has a corporate policy barring any outside firms from soliciting its clients, particularly as an 'authorized' or 'preferred' vendor. A reader could also easily (and, again, justifiably) conclude that Morgan Stanley Dean Witter declined to do business with AED and Youngman for financial or other reasons having nothing to do with Plaintiffs' integrity or ability.

Defs.' Reply at 3. Defendants argue that the "Warning" words are "just as -- if not far more -- likely . . . meant to ensure that busy employees who receive hundreds of communications each day actually paid attention to this particular e-mail." *Id.* Defendants also, less directly, argue that the e-mail is "no different than statements that routinely appear in prospectuses, newspaper advertisements and TV commercials." Defs.' Mem. in Support of Their Mot. to Dismiss at 2. n4 Viewing the e-mail as a whole, the court concludes that it is not reasonably capable of the innocent interpretation suggested by defendants. Because it contains [*13] no reference to a corporate policy barring outside firms from doing business on their property (regardless of reason), the e-mail cannot be read simply as charging plaintiffs with not following a neutral corporate policy. Rather, the e-mail, which specifically singles out plaintiff Youngman and identifies

AED, necessarily carries with it the message that plaintiffs are threatening or dangerous. Even if one concedes that a heading !!! WARNING !!!! !!!! WARNING !!!! may be a dramatic way to catch the attention of employees who receive many e-mails a day, nothing in the remainder of the e-mail dispels the implied message of impending danger. Following this warning is an advisory to "be on alert for the following individuals! 1. Bob Youngman . . . of the firm of Austin Eberhardt & Donaldson." The natural meaning of the phrase "on the alert" is to be "watchful and prepared for danger or emergency." Webster's II, New College Dictionary, at 27 (1995). The e-mail then states that if the recipients are "approached" by the individuals or someone representing AED, "they should not be allowed in your branch to conduct branch meetings . . . on a new marketing program -- 'the estate planning team'" [*14] which "is neither authorized nor sponsored by" defendants. The message then sets out the immediate action that should be taken in the event recipients are invited to such branch meetings: to advise managers immediately and to contact defendants' senior vice president and general counsel or another vice president, providing phone numbers. The use of such words and phrases as "warning," "alert," "should not be allowed in"; to request "immediate" action; and to provide a personal form of communication with some of defendants' high-ranking officers having enforcement, legal and/or other compliance authority only reasonably can be construed as imputing for the reasonable reader that plaintiffs are dangerous and that the recipients should not do business with them. The court concludes that taken as a whole, the e-mail is "so obviously and materially harmful" that injury to plaintiffs' reputations may be presumed. As a result, the e-mail fits into the per se category of defamatory statement that prejudices plaintiffs in their business and the e-mail is not reasonably capable of an innocent construction. n5 *Compare, Gardner v. Senior Living Systems, Inc., 314 Ill. App. 3d 114, 731 N.E.2d 350, 355, 246 Ill. Dec. 822 (Ill. App. Ct. 2000)* [*15] (reversing dismissal of per se claim concerning words that impute criminal offense category, reasoning that letter could not be viewed innocently as charging plaintiff with merely a lack of rigor in following company procedure because she thought it was waste of time; although word "illegal" could have innocent construction in that not necessarily refer to criminal offenses, the "letter went beyond mere warning about customer warranties; it warned that customers should not do business with plaintiff because she stole defendants' software and was using it illegally to compete," and "the effect of the letter was to attribute criminal activity to her and to prejudice her in the ability to do business within the same marketplace"); *Prof'l and Bus. Men's Life Ins. Co. v. Bankers Life Co., 163 F. Supp. 274, 287-88 (D. Mont. 1958)* (Montana law) (although not expressly ap-

plying an innocent construction rule, court held that advertisement -- headed by the words "Important Notice" and which asked the recipients to contact insurance commissioner for his opinion if they were approached by persons regarding the purchase of life insurance -- could only be construed as a warning **[*16]** akin to "call a cop" and was certain to injure the plaintiff in the business of insurance). The court, therefore, denies defendants' motion to dismiss plaintiffs' defamation per se claim.

n4 Indeed, defendants argue that the e-mail is "not appreciably different from the disclaimer in the invitations to Plaintiffs' programs -- *which AED itself designed*," Defs.' Mem. in Support of Their Mot. to Dismiss at 7 n.4, and refer the court to plaintiffs' complaint and Ex. A thereto. Even if this argument were persuasive, which it is not, for purposes of this motion the court is constrained to consider only the face of the allegedly defamatory e-mail in determining whether it is susceptible to an innocent construction.

n5 Because the court finds that the plaintiffs have stated a claim under the per se category of words that prejudice the business, it does not address plaintiffs alternative argument that the e-mail also fits under the per se category of imputing a want of integrity in their employment.

## B. False **[*17]** Light

In order to state a claim for false light, three requirements must be met:

First, the allegations of plaintiffs' complaint must show that plaintiffs were placed in a false light before the public as a result of the defendants' actions. Second, the court must determine whether a trier of fact could decide that the false light in which the plaintiffs were placed was highly offensive to a reasonable person. Finally, the plaintiffs must allege and prove that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

*Kolegas, 607 N.E.2d at 209-10* (citing *Lovgren v. Citizens First Nat'l Bank, 126 Ill. 2d 411, 534 N.E.2d 987, 128 Ill. Dec. 542 (Ill. 1989)); Pope, 95 F.3d at 616.*

## 1. Plaintiff AED

Defendants move to dismiss the false light claim against AED on the basis that corporations lack standing to sue for false light. The court agrees. Although defendants have not pointed to any Illinois case that expressly holds that corporations lack standing to sue for false light, neither have plaintiffs **[*18]** brought to the court's attention any controlling cases holding that corporations do have standing to sue for false light, and all of the cases before the court concern an individual's rather than a corporation's false light claim. The court observes that the Illinois Supreme Court has relied heavily on the Restatement for the definition and the elements of the claim of false light. *See Lovgren v. Citizens First Nat'l Bank, 126 Ill. 2d 411, 534 N.E.2d 987, 990, 128 Ill. Dec. 542 (Ill. 1989)* (citing to Restatement (Second) of Torts § 625E, comment c. (1977)), and that the Restatement has recognized that corporations do not have standing to sue for false light. Restatement (Second) of Torts § 625I ("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded") and comment c. ("A corporation . . . has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion of privacy covered by § § 652B to 652E."). In other jurisdictions, courts have relied on the Restatement to hold that corporations lack standing to sue for false light **[*19]** or other privacy torts. *See Southern Air Transp. v. American Broad. Cos., 670 F. Supp. 38, 42 (D.D.C. 1987)* (reasoning that since the District of Columbia follows the Restatement's formulation of the false light claim and the Restatement prohibits corporations from bringing suit for false light claims, plaintiff corporation had not stated a claim upon which relief could be granted); *cf. In the Matter of Medical Lab. Mgmt. Consultants, 931 F. Supp. 1487, 1493 (D. Ariz. 1996)* (because Arizona courts were bound to apply Restatement in absence of Arizona case law on issue, court applied Restatement § 6521 to hold that corporation could not maintain action for invasion of privacy). Other courts, without referring to the Restatement, have held that corporations do not have standing to bring false light or privacy claims. *See, e.g., Seidl v. Greentree Mortgage Co., 30 F. Supp. 2d 1292, 1302 (D. Colo. 1998)* (interpreting Colorado law to hold that a corporation lacks standing as limited partnership to bring claim for false light); *CNA Fin. Corp. v. Local 743 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 515 F. Supp. 942, 946 (N.D. Ill. 1981)* **[*20]** (citing California, Pennsylvania, New York law) (granting motion to dismiss corporation's claim of invasion of

2001 U.S. Dist. LEXIS 1090, *

privacy noting, "Many courts that have considered the question have concluded that a corporation cannot maintain an action for invasion of the right to privacy and we believe this represents the better reasoned approach."); *cf. United States v. Morton Salt Co., 338 U.S. 632, 651, 94 L. Ed. 401, 70 S. Ct. 357 (1950)* ("corporations can claim no equality with individuals in the enjoyment of a right to privacy").

The court finds that, because Illinois has adopted the Restatement's definition of a false light claim, the Restatement excludes corporations from standing to assert such a claim, considerable authority from other jurisdictions declines to recognize a corporation's false light claim, and plaintiffs have cited no authority supporting such a claim, the Supreme Court of Illinois, if it were deciding this motion, would hold that AED has failed to state a claim under Illinois law. Therefore, AED's false light claim will be dismissed.

2. Plaintiff Youngman

Plaintiff Youngman has sufficiently stated a claim for false light. First, plaintiff has sufficiently [*21] alleged the publicity element of false light. While "publicity" for purpose of a false light claim requires plaintiff to allege that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," *Miller v. Motorola, Inc., 202 Ill. App. 3d 976, 560 N.E.2d 900, 903, 148 Ill. Dec. 303 (Ill. App. Ct. 1990)* (quoting *Restatement (Second) of Torts § 652D*, comment a, at 384-85 (1977)), the requirement may be satisfied by disclosure to a smaller number of people with whom plaintiff has a special relationship, namely "a public whose knowledge of those facts would be embarrassing to the plaintiff." *Id.* (quotation omitted). *See also Herion v. Village of Bensenville, 2000 U.S. Dist. LEXIS 16745, 2000 WL 1648937, *6* (N.D. Ill. Nov. 1, 2000). Youngman has alleged that defendants' e-mail falsely stated that he was unauthorized and unsponsored by defendants to conduct the seminar program and that the e-mail portrayed him as dangerous. Youngman has also alleged the e-mail was published to all of defendants' branch managers and to attorneys who are AED clients [*22] and that the e-mail placed him in a false light in the estate planning professional community.

The second element is also satisfied. This element is met "'when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.'" *Lovgren, 534 N.E.2d at 990* (citing Restatement (Second) of Torts § 625E, comment c). On the other hand, "minor mistakes in reporting, even if made deliberately, or false facts that offend a hypersensitive individual will not satisfy this element." *Id.* Defendants argue the e-mail, even if false, was not "highly offensive" because it states no more than that AED and Youngman were not authorized to conduct their seminar program at defendants' branch offices but does not accuse plaintiffs of any wrongdoing. As with their argument on the defamation claim, defendants argue that any reasonable reader would conclude the e-mail was just an attempt to enforce a corporate policy regarding third-party actions on defendants' property. Because this court has already concluded that a reasonable reader would interpret the e-mail as sending a message [*23] that plaintiffs were dangerous and posed a threat, the court concludes that a trier of fact could conclude that a reasonable man would be justified in the eyes of the community, particularly the estate planning community, in feeling seriously offended by the publicity. Indeed, plaintiff has alleged that as a result of the statements, attorneys who had contracted to participate in the program withdrew and demanded return of their fees. Finally, plaintiffs also allege that defendants intended to place plaintiff in a false light and acted with actual malice and with knowledge that or reckless disregard for whether the statements would place plaintiff in a false light. In light of these allegations, the court finds plaintiff Youngman has adequately stated a claim for false light and denies defendants' motion as to him.

**CONCLUSION**

For the reasons explained above, the court grants the defendants' motion to dismiss the claim of plaintiff AED for false light. The motion is denied in all other respects.

ENTER: Joan H. Lefkow

United States District Judge

Date: January 29, 2001

**CENTURY COMMODITY CORPORATION, et al., Plaintiffs, v. DATA-TREND COMMODITIES, INC., et al., Defendants.**

**No. 83 C 1681**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

*1985 U.S. Dist. LEXIS 22988*

**January 30, 1985**

**OPINION BY:  [*1]**

GRADY

**OPINION:**

MEMORANDUM OPINION

Plaintiffs have filed this nine count amended complaint against the defendants alleging a violation of *7 U.S.C. § 6o* (Count I); common law fraud and conspiracy to defraud (Counts II and III); breach of contract (Count IV); tortious interference with business relationships (Count V); defamation (Count VI); breach of fiduciary duty (Count II); a violation of the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C. § 1962*(c) ("RICO") (Count VIII); and conspiracy to violate RICO (Count IX).  Before the court is defendants' motion to dismiss pursuant to *Fed. R. Civ. P. 17(a), 12(b)(6),* and *9(b)*. n1

n1 Defendant Peterson has moved for a more definite statement under Rule 12(e) as to Counts I, IV and VII, requesting that the plaintiffs clarify whether Peterson is a defendant in these counts. Subsequent to Peterson's motion, plaintiffs indicated in a memorandum that Peterson is a defendant in Count VII but not in Counts I and IV. Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motion to Dismiss at 14. Because factual statements in a brief of a party may be treated as an admission, we deny Peterson's motion.

Peterson also has moved to dismiss Counts II, III, V, VI, VII and IX under Rule 12(b)(6), based upon the argument that the complaint fails to allege participation by him in the alleged wrongful acts.  We believe that if plaintiffs follow our directives, infra, and amend their complaint accordingly, Peterson's participation, if any, will be adequately pleaded. Therefore, we decline to rule on Peterson's motion at this time.

[*2]

FACTS

Assuming all of the plaintiffs' factual allegations are true, which we must for the purposes of a motion to dismiss, the complaint reveals the following scenario.

Plaintiffs are Century Commodity Corporation ("Century") and Frank Brouillette, president of Century. Century is a commodities broker; that is, it solicits and accepts customer orders for transactions to be executed for the purchase and sale of commodity futures contracts. Century acts as the agent of Stotler and Company ("Stotler"), a futures commission merchant ("FCM").  Stotler actually executes the futures trades.  Stotler is not a party to this action.

Defendants are Data-Trend Commodities, Inc. ("Data-Trend"), four officers of Data-Trend (Kevin O'Doherty, Ralph Sprovier, Thomas O'Doherty and Emanuel Flambouras) and Erik Peterson, a former employee of Century, and currently an employee of Data-Trend.  Data-Trend is a commodity trading advisor ("CTA").  A CTA advises a customer on his particular trades.

Thus, a broker obtains the customer, the CTA advises the customer, and the FCM executes the trade for the customer. Stotler pays Century a percentage of the commission that Stotler receives [*3] from executing the customers' trades.

Beginning in May 1982, Century and Brouillette devised a program through which customers would invest money with Stotler and receive the advice of a CTA chosen by Brouillette. Brouillette based his choice of CTA on certain factors, including the CTA's prior trading history and past generation of brokerage commissions.

In September 1982, plaintiffs began discussions with Data-Trend concerning the use of Data-Trend as the plaintiffs' CTA choice in its program. The plaintiffs and defendants then met at Century's office in California. At this meeting, defendants O'Doherty and Sprovier told plaintiffs that Data-Trend had $600,000 to $700,000 in customer funds under management, a six month trading history, and an "aggressive" trading system that historically generated 50 to 60 percent in brokerage commissions. O'Doherty and Sprovier also represented in this meeting that Data-Trend would not compete with Century in the brokerage business. Data-Trend also sent documents to plaintiffs regarding Data-Trend's trading history and potential conflicts of interest.

n2 The record is not clear as to what sum this percentage refers.

[*4]

Based upon these representations, plaintiffs entered into an oral agreement with defendants, whereby Century would send customers to Data-Trend for advice, and in turn, Data-Trend would send the customers to Stotler to make their trades.

Plaintiffs and defendants performed under this agreement until March 1983, despite the fact that customer accounts were not generating the commissions that Data-Trend had led plaintiffs to believe would be generated. In March 1983, plaintiffs discovered that Data-Trend had advised customers sent to Data-Trend by Century that Data-Trend was associating itself with a new FCM. Data-Trend had told the customers that Brouillette had pressured the defendants to "churn," or excessively trade customers' accounts. Data-Trend also induced plaintiffs' employees to join Data-Trend and bring with them plaintiffs' confidential information regarding customers. Finally, plaintiffs discovered that the various representations made to them by defendants were in fact false.

DISCUSSION

Choice of Law

A threshold issue in this case is which state's law to apply in the claims based upon state law (Counts II, III, IV, V, VI and VII). The complaint [*5] contains a mix of contract (Count IV) and tort (Counts II, III, V, VI and VII) claims. The contract was formed in the September

1982 meeting in California. However, performance was to be and did occur in Illinois. n3 The fraudulent statements were made in the September meeting or mailed to plaintiffs in California. However, the injury occurred in Illinois, where Data-Trend told customers that it would no longer be associated with Stotler.

n3 Data-Trend is an Illinois corporation with its principal place of business in Chicago. Under the agreement, it was to advise customers solicited by Century. This advice presumably emanated from the Chicago office.

Based upon Illinois' choice of law principles, n4 we determine that an Illinois court would apply Illinois substantive law to the contract and tort claims present here.

n4 We invoke the forum state's choice of law principles as required by *Klaxon Co. v. Stantor Electrical Manufacturing Co., 313 U.S. 481 (1941).*

In Illinois, if a contract is executed in one state and performed in another, courts will apply the law of the state of performance. *Dr. Franklin Perkins School v. Freeman, 741 F.2d 1503, 1515 n. 9 (7th [*6] Cir. 1984); DeKorwin v. First National Bank of Chicago, 318 F.2d 176 (7th Cir.), cert. denied, 375 U.S. 922 (1963); Zlotnick v. MacArthur, 550 F. Supp. 371, 373 n.2 (N.D. Ill. 1982).* Multistate tort claims are governed by the law of the state where the injury occurred. *Ingersoll v Klein, 46 Ill.2d 42, 262 N.E.2d 593 (1970).* Because the performance and injury both occurred in Illinois, Illinois substantive law governs in the instant case. n5

n5 To the extent that Illinois courts have abandoned these traditional rules (state of performance, state of injury), and have adopted a most significant relationship test, see FLA risk *Plan Consultants v. Transport Life Insurance, 732 F.2d 593, 595 (7th Cir. 1984); Zlotnick, 550 F. Supp. at 373 n. 2,* Illinois substantive law still applies. Contacts to be evaluated in contract claims include place of contracting (California), place of negotiations (California, mailings from Illinois to California), place of performance (Illinois), subject matter of the contract (multi-state), and place of residence of the parties (California and Illinois). These contacts are to be weighed according to their relative importance with respect to the particular issue in question. Restatement (2d) Conflict of Laws, § 188 (1971). When the contract is one for the rendi-

tion of services, the state where the contract requires that the services be rendered normally has the most significant contact. See id at 196. Here, services emanated from Illinois, and the point in issue relates to performance. Hence, Illinois has the most significant relationship to the contract.

Similarly, the contacts to be evaluated in tort claims include place of injury (Illinois), conduct causing the injury (Illinois and California), domicile of the parties (Illinois and California), and place where the relationship is centered (Illinois and California). Again, these contacts are to be weighed according to their relative importance with respect to the particular issue in question. Id. at § 145. At issue here is the tortious character of the conduct of which the plaintiffs complain. When this is the issue, the state where injury occurred has the most significant contact. id. at 156. Hence, again Illinois has the most significant relationship with the claim.

[*7]

The Real Parties in Interest

Defendants argue that plaintiffs cannot maintain this suit because they are not the real parties in interest under *Fed. R. Civ. P. 17(a)*.

Rule 17(a) states that every action shall be prosecuted in the name of the real party in interest. Defendants argue that the plaintiffs in the instant case were merely agents of Stotler, that defendants' only contractual relationship was with Stotler, and that only Stotler has the right to sue them.

Defendants have misconstrued plaintiffs' allegations. True, plaintiffs were acting as Stotler's agent in obtaining customers. But plaintiffs claim that they contracted separately with the defendants for their own benefit, and that any benefits Stotler received under this contract were incidental to this separate contract's purposes. Under such circumstances, plaintiffs are proper parties. See, e.g., *Hannigan v. Sears, Roebuck & Co., 410 F.2d 285, 291-92* (7th Cir.), cert. denied, *396 U.s. 902 (1969)*.

Moreover, the purpose of Rule 17(a) is to protect a defendant from subsequent similar actions by the party actually entitled to recover. *B.P. Oil, Inc. v. Bethlehem Steel Corp., 536 F. Supp.* [*8] *293, 295 (E.D. Pa. 1982)*. Because the plaintiffs are basing their action here on a contract directly between them and the defendants, there is no possibility that Stotler could be entitled to recover under the factual allegations of this complaint. Hence, the plaintiffs are the real parties in interest and can prosecute this claim.

Count I: Commodity Fraud

Plaintiffs claim that defendants perpetrated a fraud upon them by misrepresenting Data-Trend's trading history and other material facts. Plaintiffs claim that this fraud amounts to a violation of *7 U.S.C. § 6o*.

Section 6o states that it shall be unlawful for a CTA to defraud "any client or participant or prospective client or participant." Assuming that the defendants did perpetrate the fraud alleged in Count I, this count still must fail, simply because plaintiffs are not "clients" or "participants" as defined by the Act and related regulations.

Plaintiffs claim that they constitute "participants," but CFTC regulations clearly define a participant as "any person that has a direct financial interest in a pool (e.g. a limited partner)." *17 C.F.R. § 4.10(c)(1983)*. In other words, participant means a particular [*9] type of client-investor. By no stretch of the imagination can the term "client or participant" be construed to mean the intermediary broker. Because § 6o clearly does not apply to persons in the plaintiffs' position, Count I dismissed with prejudice.

Count II: Conspiracy to Defraud

Defendants argue that a conspiracy claim cannot be maintained when all the alleged conspirators are employees of the same corporation. Defendants also argue generally that plaintiffs have failed to allege all the elements necessary to a conspiracy action.

Defendants are correct that corporate employees acting within the scope of their employment cannot conspire among themselves, since they are merely agents of the corporation, which cannot conspire with itself or its employees. See *Copperweld Corp. v. Independence Tube Corp., U.S. , 104 S.Ct. 2731 (1984)*; Markstahler v. Sears, Roebuck and Co., No. 82 C 4107 (N.D. Ill. Oct. 24, 1983) (Grady, J.). However, plaintiffs have alleged a conspiracy among Data-Trend, Data-Trend's officers or employees, and Erik Peterson, who was not a Data-Trend employee at the time the conspiracy was allegedly formed. A corporation and corporate [*10] employees can conspire with a non-corporate defendant. See *United States v. A and C Investments, Inc., 513 F. Supp. 589, 590 (N.D. Ill. 1981)* (motion to dismiss denied when conspiracy to defraud as alleged among corporation, its officers and government employee).

Under *Fed. R. Civ. P. 8(a)*, a claim of conspiracy requires only a "short and plain statement" of the charge. This statement should inform the defendants of the nature of the conspiracy, with some detail as to the time, place and effect of the conspiracy. Some deficiencies will be tolerated because the secret nature of conspiracies often disables the plaintiff from making out more than a general allegation. *Matter of Johns-Manville Asbestosis Cases, 511 F. Supp. 1235, 1240 (N.D. Ill. 1981)*.

Under Illinois law, a civil conspiracy occurs when two or more persons combine to accomplish by concerted action either a lawful purpose by unlawful means or an unlawful purpose by lawful means. *Organization of Minority Vendors, Inc. v. Central Gulf Railroad, 579 F. Supp. 574 (N.D. Ill. 1983).* The principal elements of civil conspiracy are an agreement between the parties to inflict a wrong or injury upon [*11] another and an overt act that results in damage. *Old Security Life Insurance v. Continental Illinois National Bank, 740 F.2d 1384, 1397 (7th Cir. 1984).*

In Count II, plaintiffs allege a combination to defraud the plaintiff and allege seven overt acts in furtherance of the conspiracy. Thus, they have alleged the principal elements of civil conspiracy. The factual allegations of the complaint set forth a general time and geographic frame for the conspiracy, and specifics are given regarding the overt acts. Thus, plaintiffs have described the nature of the conspiracy. Because the complaint alleges all the necessary  elements with a sufficient description for Rule 8(a) purposes, defendants' motion to dismiss is denied.

Count III: Common Law Fraud

Defendants claim that plaintiffs have not pleaded all the elements of fraud with the particularity required by *Fed. R. Civ. P. 9(b).* Generally, a claim for fraud is considered sufficient for Rule 9(b) purposes if it sets forth the time, place and substance of the allegedly false representations, as well as the identity of the individual making the representations, and what was allegedly obtained thereby. See *Baselski* [*12] *v. Paine, Webber, Jackson & Curtis, Inc., 514 F. Supp. 535, 540 (N.D. Ill. 1981).* Plaintiffs have sufficiently alleged time, place, substance and what was obtained, but have not adequately identified the individuals who made the alleged representations.

Plaintiffs have claimed that each statement was made by "defendants." P34a-m, P36. Such a group allegation fails to meet Rule 9(b)'s requirements. See *Chicago Heights Venture v. Dynamit Nobel of America, 575 F. Supp. 214, 220 (N.D. Ill. 1983).* A plaintiff cannot lump all the defendants together in an effort to make each defendant responsible for the others' representations. *Lincoln National Bank v. Lampe, 414 F. Supp. 1270, 1278-79 (N.D. Ill. 1976).* Therefore, Count III is dismissed with leave to amend. Plaintiffs should set forth the role played by each defendant in the allegedly fraudulent conduct. See *Minpeco, S.A. v. Conticommodity Services, Inc., 552 F. Supp. 332, 338-39 (S.D.N.Y. 1982).* n6

n6 Defendants have argued extensively that the misrepresentations claimed are on their face not fraudulent, not material, and were not relied upon by plaintiffs. See Reply Memorandum in Support of Motion to Dismiss at 13-19. We are unable to say that as a matter of law plaintiffs' allegations are insufficient. It may be that plaintiffs will not be able to prove the representations' falsity and materiality, or their reliance upon the statements; however, "[n]o matter how unlikely it may seem that the pleader will be able to prove his case, he is entitled, upon averring a claim, to an opportunity to try." *United States Guarantee Co. v. Mountaineer Engineering Co., 12 F.R.D. 520, 522 (W.D. Pa. 1952).*

[*13]

Count IV: Breach of Contract

Defendants argue that this count fails to state a claim because any oral agreement between plaintiffs and defendants was subsumed as a matter of law by defendants' subsequent written contract with Stotler. Additionally, defendants claim that plaintiffs failed to include essential terms of the contract in their allegations.

Defendants' first argument fails for the same reason that plaintiffs are real parties in interest. See supra at 5. Plaintiffs are complaining of a breach of an oral agreement between plaintiffs and defendants, separate and distinct from defendants' contract with Stotler.

Defendants' second argument is equally unavailing. Under Illinois law, to prove a breach of contract, plaintiff must show a contract, a breach, and damages. *Martino v. Family Services Agency of Adams City, 111 Ill. App.3d 822, 444 N.E.2d 657, 660 (1st Dist. 1982).* The plaintiff should allege the making of a contract, that plaintiff performed his obligations under the contract, that defendant has not performed his obligations, and specify the nature of the obligations and consequent damage. J. Moore, Moore's Federal Practice, P8-17[6] [*14] at 8-185-86 (1983). See *Stratton Group, Ltd. v. Sprayregen, 458 F. Supp. 1216, 1217-18 (S.D.N.Y. 1978).*

Plaintiffs have adequately alleged all the above elements: (1) a contrat was formed, P20; (2) plaintiffs performed their obligations, P20; (3) defendants failed to perform, P24; (4) the nature of the obligations, PP21, 22; and (5) consequent damage, P23. Defendants' motion is denied.

Count V: Tortious Interference with Business Relations

Defendants argue that this count alleges an interference with defendants' own contract with the plaintiffs, and that such interference is not actionable.

While Count V is not a model of clarity, we believe that it sufficiently alleges a tort cognizable under Illinois law. The count states that the defendants knew of their own oral agreement with plaintiffs and intentionally induced an unlawful breach of "this agreement." Further, "[i]n connection therewith, defendants . . . have engaged in unlawful practices," such as (1) entering into an agreement with another FCM; (2) wrongly accusing Brouillette of pressuring defendants to churn; (3) inducing employees and agents of plaintiffs to work for defendants and reveal plaintiffs' [*15] privileged information; (4) disparaging plaintiffs' reputation through representations to plaintiffs' customers; and (5) advising customers to trade less than the amount that defendants represented to plaintiffs that it would advise. P44.

To the extent that this count complains of Data-Trend's breach of its contract with Century, it fails to allege a claim upon which relief can be granted. A party cannot be liable for interfering with its own contract. *Laser Industries, Ltd. v. Eder Instrument Co., 573 F. Supp. 987, 993 (N.D. Ill. 1983).*

However, the factual allegation in the complaint point to a separate interference by defendants with plaintiffs' relationship with its customers. While the contours of this relationship are not clear, it appears that no actual contract existed between Century and any customer, plaintiffs do allege a "business relationship" with these customers. Plaintiffs thereby appear to be invoking the tort of interference with "advantageous relations" or with "business relations" or "expectancies." See *Haupt v. International Harvester Co., 582 F. Supp. 545, 549 (N.D. Ill. 1984).* This tort is subject to less stringent proof requirements [*16] than the tort of interference with "contractual relations" and consists of four elements: (1) existence of a valid business relationship; (2) knowledge of the relationship on the part of the interferer; (3) an intentional interference or causing a breach of termination of the relationship; and (4) resultant damage to the party whose relationship has been disrupted. Id. There need not be an enforceable contract between the plaintiff and the third party, as long as a "business relationship" exists between them. Id; *LaRocco v. Bakwin, 108 Ill. App. 3d 723, 439 N.E.2d 537, 543 (2nd Dist. 1982); Kemper v. Worcester, 106 Ill. App.3d 121, 435 N.E.2d 827, 830 (5th Dist. 1982).* Because plaintiffs have alleged a valid business relationship between them and their customers, acts of interference by defendants with that business relationship, and damage resulting from the interference, plaintiffs have met their burden for the purposes of pleading. Defendant's motion to dismiss is denied.

Count VI: Defamation

This count stems from plaintiffs Century and Brouillette's allegation that defendants told customers that Brouillette had pressured defendants to churn. Defendants argue [*17] that this claim fails to allege slander against both plaintiffs because the circumstances of the slanderous statements are not sufficiently explained, and that Century cannot complain because the alleged statements could only have defamed Brouillette.

A cause of action for defamation accrues to all persons against whom an injurious publication is directed. *Insull v. New York World-Telegraph Corp., 172 F. Supp. 615, 636 (N.D. Ill.); aff'd, 273 F.2d 166 (7th Cir. 1959), cert. denied, 362 U.S. 942 (1960).* When a publication relates only to an employee or officer in his private or personal capacity and not as an officer or employee in connection with conduct or management of the business, only the individual and not the business can sue. *Life Printing & Publishing Co. v. Field, 327 Ill. App. 486, 64 N.E.2d 383, 384 (1st Dist. 1946).* It therefore follows that when a publication does relate to an officer in connection with his business, the publication is directed toward the business as well, and the business is a proper plaintiff. In the instant case, the statements complained of relate to Brouillette in his capacity as president of Century, and Century [*18] is a proper plaintiff to this action.

Federal practice does not require a special pleading for defamation. Therefore, Rule 8(a)'s "short and plain statement" is the only requirement. *Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980).* Plaintiffs allege statements made by the defendants which, if proved to have been made and to be false, amount to slander per se against the plaintiffs. See *Brown & Williamson Tobacco Corp. v. Jacobsen, 713 F.2d 262, 268 (7th Cir. 1983).* While plaintiffs have not alleged the time and place that these statements were made beyond "to the public through use of the telephone," P49, this deficiency is not fatal. Time, place and to whom the statements were made are material allegations when their absence deprives a defendant of the ability to raise affirmative defenses such as statutes of limitation, or to raise issues relating to conflict of law. See *Perry v. Hartz Mountain Corp., 537 F. Supp. 1387, 1391 (S.D. Ind. 1982).* In this case, allegations made elsewhere in the complaint sufficiently apprise defendants for these purposes. Further information can be obtained through discovery. Defendants' motion to dismiss is denied. [*19]

Count VII: Breach of Fiduciary Duty

Defendants urge that the factual allegations contained in plaintiffs' complaint fail to demonstrate the existence of a fiduciary duty to the plaintiffs. We agree.

Plaintiffs have alleged a business relationship with the defendants. Such a relationship alone does not create a fiduciary relationship between the parties. See *Wilson-Rich v. Don Aux Associates, Inc., 524 F. Supp. 1226, 1233 (S.D.N.Y. 1981)* (fiduciary relationship not present

1985 U.S. Dist. LEXIS 22988, *

between mere parties to business transaction); *Ferroline Corp. v. General Amline & Film Corp., 107 F. Supp. 326, 341 (N.D. Ill. 1952),* aff'd, *207 F.2d 912 (7th Cir. 1953),* cert. denied, *347 U.S. 959 (1954)* (mere relation of buyer and seller does not create confidential relationship).

In order to allege a fiduciary relationship, plaintiffs must plead facts that indicate that confidence was reposed by plaintiffs in defendants, with a resulting dominion by the defendants. See *Cappens v. Cappens, 395 Ill. 326, 70 N.E.2d 54 (1947).* Conclusory allegations that "[d]efendants were fiduciaries with respect to [plaintiffs] in that they enjoyed a position of special trust and confidence," **[*20]** P61, will not suffice. Defendants' motion is granted with leave for plaintiffs to amend if they can allege the necessary facts.

### Counts VIII and IX: RICO and RICO Conspiracy

Defendants argue that plaintiffs have failed to allege the necessary elements of a RICO violation. We agree.

Plaintiffs claim in Count VIII that defendants violated *18 U.S.C. § 1962*(c), which prohibits operation of an enterprise through a pattern of racketeering. In Count IX, plaintiffs claim that defendants "conspired to conduct or participate in the conduct of the affairs of one or more enterprises through a pattern of racketeering activity,"

which violates *18 U.S.C. § 1962*(d). Yet nowhere have plaintiffs identified the enterprise or enterprises which defendants operated or conspired to operate through a pattern of racketeering activity. See *Haroco v. American National Bank & Trust Co. of Chicago, 747 F.2d 384 (7th Cir. 1984).*

Moreover, the pattern complained of is made up of various acts of mail fraud, *18 U.S.C. § 1341,* and wire fraud, *18 U.S.C. § 1343,* which must be alleged with particularity. To the extent that these frauds are alleged in Count III, they are deficiently **[*21]** pleaded for the same reason that Count III fails to meet Rule 9(b)'s requirements. See supra at 8.

Therefore, defendants' motion to dismiss Counts VIII and IX are granted with leave for plaintiffs to amend if they can allege the necessary facts.

### CONCLUSION

For the reasons discussed above, Count I is dismissed with prejudice. Counts III, VII, VIII and IX are dismissed without prejudice, and plaintiffs are given until February 22, 1985, to amend these counts to meet the standards set forth in  this order. We deny defendants' motion to dismiss Counts II, IV, V and VI. Defendants are given until March 15, 1985, to answer or otherwise plead to plaintiffs' amended complaint.