JKB/cic/301950                                                                                                                   5634-2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle ) ) Magistrate Judge Mason ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO COMPEL RE: FIRST SET OF DISCOVERY REQUESTS**

Defendants, Xcentric Ventures, LLC ("Xcentric"), and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, hereby submit their Reply to Plaintiff's Response to Defendants' Motion to Compel re: First Set of Discovery Requests.

Plaintiff's response presents two arguments: 1) that it should not be required to produce copies of any complaints it has from its customers because these complaints have no relevance to the specific statements at issue in this case; and 2) that its income tax returns are not relevant. Both arguments are entirely without merit.

I.   **RECORDS OF OTHER COMPLAINTS ARE BOTH RELEVANT
     TO TRUTH AND LIKELY TO LEAD TO *OTHER* RELEVANT EVIDENCE**

Plaintiff seeks to mislead this Court by suddenly suggesting that this case is not really about Plaintiff's business practices, but rather the case primarily involves allegations of "child pornography" and similarly absurd remarks posted on Defendants' website shortly before this case began. This argument has four key flaws.

First, as to statements accusing Plaintiff of engaging in child pornography, those statements are the subject of a pending Motion for Partial Summary Judgment (doc. #175). As such, the contested discovery is not (and never was) relevant to those statements.

Second, Defendants have <u>never</u> suggested that their affirmative defense of truth applies to the "child pornography" statements. Rather, pursuant to the Communications Decency Act, 47 U.S.C. § 230, Defendants are not liable for those statements because they did not author them.[1] *See Chicago Lawyers' Committee for Civil Rights Under The Law, Inc. v. Craigslist, Inc.*, --- F.Supp.2d ----, 2006 WL 3307439, *13 (N.D.Ill. Nov. 14, 2006) (Amy J. St. Eve) (granting judgment on the pleadings in favor of defendant Craiglist "[b]ecause to hold Craigslist liable [for a third party's statements] … would be to treat Craigslist as if it were the publisher of third-party content, [and] the plain language of Section 230(c)(1) [of the CDA] forecloses CLC's cause of action."); *see also Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218, *17 (Cal. November 20, 2006) (same rule).

Third, Defendants agreed to (and did) immediately remove the "child pornography" posting at the very start of this case. While Plaintiff strains to repeatedly remind the Court that Defendants were previously found in contempt for failing to remove allegedly false posts, it fails to clarify that the "child pornography" post was not the basis for the contempt since it was <u>removed</u> prior to the entry of the stipulated injunction.

Fourth, and most importantly, the child pornography post is <u>not</u> the only statement at issue in this case. Rather, as reflected in **Exhibit A** Plaintiff has produced <u>ninety seven (97) pages</u>[2] of statements which it alleges contain scores of false statements from Defendants' website. These statements allege, *inter alia*, "this 'consulting' agency [Plaintiff] is conducting

---

[1] This is true as to every statement involved in this case since Defendants did not create/author any of them.

[2] Exhibit A is a table produced by Plaintiff setting forth the alleged false statements contained in these 97 pages.

2

business in a manner that is felonious and illicit at its core[]"; "George S. May International deceptive company, false promises, raped & pillaged us ripoff They [sic] will find a way to take your money and leave you feeling empty, robbed, and wondering what just happened."

Of course, the child pornography post (*see* **Exhibit A** at 17–18) is one of these pages, but the other 96 pages contain statements which directly and exclusively relate to Plaintiff's business practices, not pedophilia. The contested discovery relates to these 96 pages and the statements contained therein which accuse Plaintiff of defrauding its customers.

In response, Plaintiff argues that, "just because a customer claims that he/she was not satisfied with [Plaintiff's] services is not relevant to whether a statement that GSMIC trains its employees to have fake phone conversations or that GSMIC engages in pedophilia was true when made." Certainly, as to the pedophilia issue, Plaintiff's argument is correct. However, complaints made by former customers alleging that they were defrauded by Plaintiff are undeniably relevant to the truth of the dozens and dozens of statements relating to Plaintiff's business practices. The fact that these complaints *don't* relate to some other remote tangential issue does not remove their relevance to the core issue – Plaintiff's business practices.

Plaintiff further suggests that these complaints are not relevant because, "No Illinois court has recognized the incremental harm doctrine as a defense to defamation." This position is equally flawed both as a matter of fact and a matter of law.

Factually, Defendants contend that the disputed discovery is relevant both to: 1) truth *and* 2) the incremental harm doctrine. Plaintiff does not even attempt to suggest that customer complaints are not relevant to the defense of truth; it only argues that they are not relevant to incremental harm because Illinois does not recognize that doctrine. Even if that were true, the

3

Court need not consider the issue because Plaintiff does not dispute the relevance of the complaints to the defense of truth.

Legally, Plaintiff simply misstates the law when it suggested that the Illinois courts have rejected the incremental harm doctrine. Indeed, as the court noted in the case cited by Plaintiff, *Myers v. The Telegraph*, the concept, if not the label, of the incremental harm doctrine was applied by the Illinois Fourth[3] District Appellate Court in *Lemons v. Chronicle Publishing Co.*, 253 Ill.App.3d 888, 192 Ill.Dec. 634, 625 N.E.2d 789 (1993)). Furthermore, as *Myers* also observed, the Seventh Circuit has applied the rule twice, *see Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) and *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345 (7th Cir. 1995), and secondary authority has expressly recognized: "A new libel defense, called the incremental harm defense, now appears to be available under Illinois law." J. Touhy & W. Rogers, *The Incremental Harm Defense to Libel: Taking Hold in Illinois?*, 84 Ill.B.J. 192 (1996).

All technical arguments aside, Defendants' position is simple – Plaintiff has filed a lawsuit seeking in excess of $1 million in damages based on statements which it claims have impugned its business ethics and business practices. Defendants have strong reason to believe that Plaintiff's own files contain hundreds if not thousands of complaints which show that these statements are entirely true. These documents are therefore plainly relevant *per se* to the affirmative defense of truth and they must be produced.

II. **PLAINTIFF HAS PLACED ITS OWN PROFITS AND MARGINS AT ISSUE AND THEREFORE ITS TAX RETURNS ARE RELEVANT**

As for its tax returns, citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1991), Plaintiff agues that it cannot be compelled to produce these returns unless it has placed its

---

[3] It should be noted that Cook County, where this Court sits, is within the Illinois state court's First Appellate District. Plaintiff's case, *Myers*, is from the Fifth Appellate district and therefore its holding would not be binding upon this Court in any event.

4

income at issue <u>and</u> there is no reasonable alternative source for the information requested. This directly misstates the holding of *Poulos* in which the Seventh Circuit agreed with the district court's order that a party <u>could</u> be required to produce tax returns where, as here, he had placed his own income at issue. Nothing more was required.

In passing, the Seventh Circuit observed that this ruling was also partially supported by the fact that the information was not available from any other source, but even so it expressly rejected Poulos' offer to submit an affidavit explaining what his taxes showed; "Poulos' offer to provide the information about his income by way of affidavit <u>does not count as an alternative source</u> – Naas wanted Poulos' tax returns because it needed to *dispute* Poulos' personal accounting." *Poulos*, 959 F.2d at 75 (underline emphasis added; italics in original).

As in *Poulos*, Defendants believe that Plaintiff has not been truthful about many issues, including its own income and profit margins. Specifically, in ¶ 22 on page 6 of 35 of doc. #88-2 (Declaration of Israel Kushnir), the President of GSMIC swore under oath that he had reviewed business records showing Plaintiff's average <u>net profits</u> were $35,000 per customer, thus supporting damages of $280,000 for eight alleged lost sales. Defendants thereafter asked for records supporting this figure, but to date Plaintiff has only produced records suggesting <u>gross revenue</u> of $25,000 per customer, far less than the $35,000 net amount claimed by Mr. Kushnir.

As in *Poulos*, Defendants wish to impeach Mr. Kushnir and thus need Plaintiff's tax returns in order to <u>dispute</u> the level of income and profitability claimed by Plaintiff. Because there is no other trustworthy source of that information, Defendants are entitled to discovery of Plaintiff's taxes. *See Poulos*, 959 F.2d at 75 (citing *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 563 (N.D.Ill.1976)) ("It is not enough that he examine the contents of the returns and swear by affidavit to what they contain."). Plaintiff's tax returns must be produced.

## III. CONCLUSION

WHEREFORE, Defendants, Xcentric Ventures, LLC and Edward Magedson respectfully request that the Court grant Defendants' Motion to Compel re: First Set of Discovery Requests and for such further relief as this Court deems just and appropriate.

Respectfully submitted,

XCENTRIC VENTURES, LLC
EDWARD MAGEDSON


By:_____/s/ James K. Borcia_____
                One of Their Attorneys

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, AR 85012
(602) 248-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) No. 04 C 6018 |
| XCENTRIC VENTURES, LLC, et al., | ) Judge Charles R. Norgle |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2006, I electronically filed a **Defendants' Reply to Plaintiff's Response to Defendants' Motion to Compel Re: First Set of Discovery Requests** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

       Bart A. Lazar
       Rachel M. Kindstrand
       Seyfarth Shaw LLP
       131 South Dearborn Street, Suite 2400
       Chicago, IL 60603

       XCENTRIC VENTURES, LLC and ED MAGEDSON

       By: /s/ James K. Borcia
           One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | Tressler, Soderstrom, Maloney & Priess, LLP |
| Phoenix, AZ 85012 | 233 South Wacker Drive, 22nd Floor |
| (602) 248-1000 | Chicago, IL 60606-6399 |
| | (312) 627-4000 |