JKB/cic/302198                                                                             5634-2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, et al., | ) Honorable Judge Norgle ) |
| Defendants. | ) Magistrate Judge Mason |

**DEFENDANTS' RESPONSE TO PLAINITFF'S MOTION *IN LIMINE***

Defendants, Xcentric Ventures, LLC ("Xcentric"), and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, hereby submit their Response to Plaintiff's Motion in Limine.

## I. PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER

Despite Defendants' Demand for Jury trial (Doc. #97) on the issues set for hearing on December 12, this matter is set for an evidentiary hearing to the Court. No jury is involved.

In this context, Plaintiff's attempt to preemptively exclude evidence from a non-jury hearing is improper and unnecessary, as are Plaintiff's efforts to require Defendants to explain their trial strategy on paper prior to the hearing. *See generally Prout v State*, 311 Md. 348, 535 A.2d 445 (1988) (noting that typically, a motion in limine is a motion made before or during a jury trial outside of the hearing of the jury, the purpose of which is to prevent the jury from hearing certain questions and statements that are allegedly prejudicial to the movant.) The Court should therefore deny Plaintiff's motion without prejudice to either side making *ad hoc* objections as each individual exhibit is offered. *See Boim v. Quranic Literacy Institute*, 349

F.Supp.2d 1097, 1102 (N.D. Ill. 2004) (holding motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose, and if there is any question on the issue, rather than barring the evidence before trial, the Court should reserve ruling on questions of admissibility until they actually arise, in the context of the trial). This Motion is especially improper as some of the exhibits on Defendants list will not be offered by Defendant unless Plaintiff "opens the door" and the Court allows Plaintiff to put in certain evidence that would warrant utilizing the exhibits as rebuttal.

II.    **DEFENDANTS' EVIDENCE IS RELEVANT**

Defendants seek to introduce and Plaintiff seeks to preclude evidence that is relevant on at least two issues – causation and damages. Plaintiff claims that Defendants' alleged "contempt" caused economic damage. Specifically, it alleges that certain businesses refused to do business with it because of the "contemptuous" postings on RipoffReport.com.

A.    **Causation**

In terms of causation, some of the witness and the exhibits that Plaintiff now seeks to preclude will be offered by Defendants to show what information was publicly available to a reasonable business person deciding whether to do business with George S. May during the relevant period of September 2004 through September 2005. This material is relevant because Plaintiff seeks to introduce ambiguous evidence such as a prospective customer who allegedly refused to do business with it because of "extensive research about George S. May International on the internet … ." *See* Doc.#88-2, Ex. 4 to Aff. of Israel Kushnir (letter dated February 25, 2005 from Rob Viehman), even though this customer never mentioned RipoffReport.com as the source of the information upon which his decision was based; the customer merely states that he conducted research "on the internet".

Plaintiff is impliedly asserting that Defendants' website is the only source of publicly available derogatory information regarding Plaintiff's business. Defendants intend to rebut that contention by showing that during the relevant time frame, there were numerous complaints about Plaintiff available from numerous other sources on the Internet and elsewhere, and that the existence of these complaints demonstrates that Defendants' conduct did not *cause* any harm to Plaintiff because anyone conducting research on the Internet would find nothing but negative information about Plaintiff from sources unrelated to Defendants' website.

It would be patently unfair to allow George S. May to introduce evidence that a customer "found negative information on the internet" while precluding Defendants from showing what information *other than* the "contemptuous" reports was publicly available on the Internet during the period in question.

In addition, although there has been a prior finding of contempt (which Defendants contest) there has <u>never</u> been any finding as to the nature and quality (whether good or bad) of Plaintiff's reputation. That inquiry is a prerequisite to any determination that Plaintiff's reputation has been harmed by reports on Defendants' website.

If Plaintiff enjoyed an unblemished reputation of the highest caliber, then a few false complaints on Defendants' website might cause it harm. By the same token, if Plaintiff's true reputation is abysmal, reflecting widely-held consumer beliefs that Plaintiff is a "fraud", a "scam", and so forth, and if this information is available through multiple sources *other than* Defendants' website, then it is impossible, or much less likely, that one or more false postings on Defendants' site actually and proximately damaged Plaintiff's already-tarnished reputation. Without examining evidence as to Plaintiff's reputation, it is impossible to determine whether Defendants' alleged contempt caused any harm. *See Midland Hotel Corp. v. Reuben H.*

3

*Donnelley Corp.,* 118 Ill.2d 306, 257, 515 N.E.2d 61, 66 (1987) ("lost profits are frequently the result of several intersecting causes [; therefore, it must] be shown with a reasonable degree of certainty that the defendant's breach *caused* a specific portion of the lost profits.") (emphasis in original).

Regardless of the information available on RipoffReport.com, Defendants contend that Plaintiff's reputation was already justifiably soiled by true information from other sources. In the course of their investigation, Defendants have uncovered dozens and dozens of companies and individuals who previously did business with Plaintiff and who unanimously shared the same belief – Plaintiff is a fraud and a scam, and under no circumstances would these companies ever do business with Plaintiff again or recommend Plaintiff's services to others.

The Court previously found Defendants in contempt for failing to remove "false" postings, and Plaintiff claims the delay in removing the disputed reports **caused** it to lose customers (as opposed to any other reason). Defendants are entitled to prove that Plaintiff's reputation was already so bad that no amount of additional criticism would or could have caused any legally compensable loss (at least not when compared with the truth).

This conclusion is a function of two things. First, as Defendants have previously explained, the law does not permit Plaintiff to recover any damages – even for false statements – based on its own concealment of the truth:

> And it makes no difference that the true facts were unknown until the trial. A person does not have a legally protected right to a reputation based on the concealment of the truth. This is implicit in the rule that truth – not just known truth – is a complete defense to defamation. And the burden of proving falsity rests on the plaintiff.

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (emphasis added).

4

Second, if the truth reveals that George S. May habitually defrauds customers then it cannot legally recover any damages even as a result of false statements:

> <u>Tort law does not seek to prevent injuries arising from the dissemination of **truthful information** that rationally induces withdrawal of patronage from the person whom the information concerns.</u> So [Plaintiff], had he proved a wrong, would have had to partition the injury resulting from it between the part due to the revelation of truthful information and the part due to the disciplinary suspension itself. Compare the many cases which hold that the victim of defamation can obtain damages only for *incremental* harm done to his reputation by the defamation – **if his reputation has already been destroyed by truthful information, he has no remedy**.

*Austin v. American Ass'n of Neurological Surgeons*, 253 F.3d 967 (7th Cir. 2001) (italics in original) (other emphasis added), *citing Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1350 (7th Cir. 1995); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993).

Plaintiff seems to take the position that it is entitled to an <u>irrebuttable</u> presumption that its reputation was flawless, even if that is provably false, but this is simply not the law. Defendants are therefore entitled to introduce evidence that Plaintiff's existing reputation in the business community was exceptionally poor as the result of its long track record of defrauding customers.

B.　**Damages**

In terms of damages, it is well established that, "Damages are recoverable only if proven 'to a reasonable degree of certainty, and the evidence cannot be removed, speculative or uncertain.'" *Glen Hollow Partnership v. Wal-Mart Stores, Inc.*, 1998 WL 84144, *6 (7th Cir. 1998), *quoting Northwest Comm. Bank v. Continental Data Forms, Inc.*, 233 Ill.App.3d 124, 598 N.E.2d 446, 450 (1st Dist. 1992). Thus, any evidence which tends to show that Plaintiff's damages calculations are speculative, uncertain, or based on unreliable information, is relevant for that purpose.

Here, Plaintiff's expert report contains a simple formula: Plaintiff enjoys a certain level of profits per customer, and Plaintiff claims to have lost 14 customers. The expert therefore calculates that Plaintiff's damages can be found by multiplying the average per-customer profit times the number of lost customers.

The flaw with this opinion is that it erroneously assumes that 100% of Plaintiff's customers are happy and satisfied and that 0% of these customers subsequently demanded a refund of the money they paid for Plaintiff's services. Defendants intend to introduce evidence (Better Business Bureau and Attorney General Records) that show a <u>substantial</u> number of Plaintiff's customers fire Plaintiff during the provision of the services and demand, and in fact receive, full refunds of all fees paid to Plaintiff after they discovered that Plaintiff made false promises to them.

Thus, exhibits from the Better Business Bureau and the Illinois Attorney General's Office (even those portions that were not publicly available) are relevant to Plaintiff's damages because these documents show that Plaintiff has frequently refunded money to customers who claim that they were defrauded. Obviously, the frequency of such refunds directly affects the level of profits that Plaintiff generates and also affects the certainty that Plaintiff would have retained any profits from the alleged 14 customers. Therefore, this evidence directly affects and reduces the damage Plaintiff claims to have suffered.

III.   **WITNESS ISSUES**

Regarding Plaintiff's objections to Defendants' witnesses, it should be noted that Defendants now only intend to call one witness: Laura Rogal.

Ms. Rogal is a 2006 graduate of the University of Illinois at Urbana-Champaign College of Law and is presently employed by Defendants' counsel as a law clerk pending her admission

to the State Bar of Arizona. Ms. Rogal has conducted an investigation to determine what information was publicly available via the Internet and other sources during the relevant period of contempt (September 2004 through September 2005). Ms. Rogal will testify that she located numerous other websites, unrelated to Defendants' website, which contain information critical of Plaintiff's business practices, and that those websites were available on the Internet during the relevant time frame. Ms. Rogal will also testify that numerous complaints alleging consumer fraud were publicly available through the Illinois Attorney General's Office through a mere telephone call.

Thus, as with the exhibits described above, Ms. Rogal's testimony is relevant to both causation and damages.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion *In Limine* should be denied.

Respectfully submitted,

XCENTRIC VENTURES, LLC and EDWARD MAGEDSON

By: /s/ James K. Borcia
One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, AZ 85012
(602) 248-1000

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, et al., | ) Judge Charles R. Norgle ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2006, I electronically filed a **Defendants' Response to Plainitff's Motion *in Limine*** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

    Bart A. Lazar
    Rachel M. Kindstrand
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL 60603

               XCENTRIC VENTURES, LLC and ED MAGEDSON

            By:      /s/ James K. Borcia
                      One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | TRESSLER, SODERSTROM, MALONEY |
| Phoenix, AZ 85012 | & PRIESS, LLP |
| (602) 248-1000 | 233 South Wacker Drive, 22nd Floor |
| | Chicago, IL 60606-6399 |
| | (312) 627-4000 |