UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle ) ) Magistrate Judge Mason ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, XCENTRIC VENTURES, LLC ("Xcentric"), and Edward Magedson ("Magedson"; collectively "Defendants"), by and through their attorneys, pursuant to Fed. R. Civ. P. 56(b) hereby submit their Memorandum of Law in support of their Motion for Summary Judgment.

**I.    BACKGROUND**

The Court has already received extensive briefing on the facts of this case, many of which are set forth in the Court's earlier ruling on Defendants' Motion to Dismiss, *see George S. May International v. Xcentric Ventures, LLC.,* 409 F.Supp.2d 1052 (N.D. Ill. 2006), so only a short factual précis is provided.

Defendants operate a website known as "The Rip-Off Report" which is located at **www.ripoffreport.com** and **www.badbusinessbureau.com** (collectively, the "ROR Sites"). *See* Defendants' Separate Statement of Facts ("SOF") at ¶ 1. Among other things, the ROR Sites allow consumers to post online messages chronicling their experiences and opinions about a wide variety of businesses. SOF ¶ 2. Thus, the ROR Sites operate as an interactive website.

Plaintiff sued Defendants in this action because third party users of the ROR Sites posted messages online which were highly critical of GSM's business practices. SOF ¶ 3. It is, however, an uncontested fact that <u>none</u> of the subject postings were authored or created by Defendants. SOF ¶ 7.

The claims here include causes of action based on common law defamation (Second COA); and unfair and deceptive business practices under Illinois state law (Third and Fourth COAs). At their core, these claims are founded upon a single premise – that Defendants are legally responsible for messages which third parties have posted on the ROR Sites. This premise is wrong as a matter of law because pursuant to the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), websites such as those operated by Defendants <u>are not</u> and <u>cannot</u> be held liable for information posted online by third parties. Thus, Defendants are statutorily immune from Plaintiff's second, third, and fourth claims. Although Plaintiff could have chosen to pursue the *actual individuals* who wrote/created the offending materials, Plaintiff cannot impute liability to Defendants for messages that Defendants did not author. Defendants are thus entitled to judgment as a matter of law on Plaintiff's claims.

## II. ARGUMENT

### A. The CDA Bars Website Liability For Third Party Speech

The Communications Decency Act, 47 U.S.C. § 230, prohibits civil actions that treat an interactive computer service as the "publisher or speaker" of messages transmitted over its service by third parties. *See generally Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001). This federal statute, which was passed by Congress with the desire to "promote unfettered speech," provides in relevant part that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this

section." *Green v. America Online,* 318 F.3d 465, 470 (3rd Cir. 2003) (noting that the CDA, "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone, or alter content.'").

The operation of an Internet web site which allows access by multiple users is an activity which is unequivocally protected by the CDA. *See Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003); *Schneider v. Amazon.com, Inc.,* 31 P.3d 37 (Wash.App. 2001). Indeed, every federal court that has considered the issue has held that the CDA immunizes a web site operator for defamatory material it publishes if it is not the <u>creator</u> of the content at issue. *See generally Batzel v. Smith,* 333 F.3d 1018, 1027–28 (9th Cir. 2003) (recognizing "Making interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet. Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet."), *quoting Ben Ezra, Weinstein, & Co. v. America Online Inc.,* 206 F.3d 980, 983–84 (10th Cir. 2000).

The Seventh Circuit follows this same interpretation of the CDA. For example, in *Doe v. GTE Corp.,* 347 F.3d 655, 656 (7th Cir. 2003), the plaintiffs sued the defendant, GTE, because it hosted certain Internet websites where unauthorized amateur videos of plaintiffs were posted without their knowledge or consent. As in this case, even though GTE did not actually create any of the videos, plaintiff sought to impose liability upon GTE merely for providing a forum (a website) where the videos were posted, distributed, and available for sale. *Id.*

Invoking the same CDA immunity which bars Plaintiff's claims here, GTE moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and that motion was <u>granted</u> by the former Chief Judge of this Court, the Honorable Charles P. Kocoras. In affirming that ruling (albeit on other grounds), the Seventh Circuit noted the broad protections granted by the CDA and the <u>unanimous</u> agreement among each of the four other Circuit courts which had considered the issue:

> The district court held that subsection (c)(1) [47 U.S.C. § 230(c)(1)], though phrased as a definition rather than as an immunity, also blocks civil liability when web hosts and other Internet service providers (ISPs) refrain from filtering or censoring the information on their sites. Franco [a defendant other than GTE] provided the offensive material; GTE is not a "publisher or speaker" as § 230(c)(1) uses those terms; therefore, the district court held, <u>GTE cannot be liable under any state-law theory to the persons harmed by Franco's material</u>. This approach has the support of four circuits. *See Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997); *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980 (10th Cir. 2000); *Green v. America Online*, 318 F.3d 465 (3d Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). <u>No appellate decision is to the contrary</u>.

*Id.* at 659–60 (emphasis added).

This same rule has been followed in this district. In fact, on November 14, 2006, Judge Amy J. St. Eve issued a comprehensive opinion (Doc. #50) interpreting the CDA in *Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, Case No. 1:06 C 0657; --- F.Supp.2d ----, 2006 WL 3307439 (N.D.Ill. 2006). In *Craigslist*, the plaintiff (a "public interest consortium of 45 law firms") sued the defendant (the operator of a website located at www.chicago.craigslist.org) because third-party users of the site posted housing and rental advertisements which were allegedly discriminatory. After evaluating and explaining the reasoning behind the CDA, Judge St. Eve granted judgment on the pleadings in favor of defendant Craigslist because she determined that the CDA did not permit the court to treat Craigslist as the "publisher" of "third-party content":

> Applying Section 230(c)(1) here, CLC's claim fails on the pleadings. First, Craigslist is a "provider ... of an interactive computer service" because, as alleged in the Complaint, Craigstlist operates a website that multiple users have accessed to create allegedly discriminatory housing notices. See also 47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server"). These notices, in turn, are "information" that originates, not from Craigslist, but from "another information content provider," namely the users of Craigslist's website. 47 U.S.C. § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"). As a "provider ... of an interactive computer service" that serves as a conduit for "information provided

> by another information content provider," Craigslist "shall not be treated as a publisher." 47 U.S.C. § 230(c)(1). Because to hold Craigslist liable under Section 3604(c) would be to treat Craigslist as if it were the publisher of third-party content, the plain language of Section 230(c)(1) forecloses CLC's cause of action.

*Craigslist*, 2006 WL 3307439, *13 (emphasis added).

Another outstanding analysis of the CDA is set forth in the California Supreme Court's even more recent opinion in *Barrett v. Rosenthal*, --- Cal.Rptr.3d ----, 2006 WL 3346218 (Cal. Nov. 20, 2006). In fact, as the *Barrett* court recognized, the CDA has been universally interpreted as providing immunity to interactive websites for content created by a third party. *See Barrett*, 2006 WL 3346218, *18 note 18, *citing Blumenthal v. Drudge*, 992 F.Supp. 44, 51 (D. D.C. 1998); *Ben Ezra, Weinstein, and Co., Inc. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *Morrison v. America Online, Inc.*, 153 F.Supp.2d 930, 933-934 (N.D. Ind. 2001); *PatentWizard, Inc. v. Kinko's, Inc.* 163 F.Supp.2d 1069, 1071 (D. S.D. 2001); *Green v. America Online*, 318 F.3d 465, 470-471 (3rd Cir. 2003); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-1124 (9th Cir. 2003); *Doe One v. Oliver*, 755 A.2d 1000, 1003-1004 (Conn.Super.Ct. 2000); *Doe v. America Online, Inc.*, 783 So.2d 1010, 1013-1017 (Fla. 2001); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 40-42 (Wn.App. 2001); *Barrett v. Fonorow*, 343 Ill.App.3d 1184, 799 N.E.2d 916, 923-925 (2nd Dist. 2003); *Donato v. Moldow* 865 A.2d 711, 720-727 (N.J. Super.Ct.App.Div. 2005); and *Austin v. CrystalTech Web Hosting*, 125 P.3d 389, 392-394 (Ariz.App. 2005)).

Secondary authority has also explained that:

> [The CDA's] provisions set up a complete shield from a defamation suit for an online service provider, absent an affirmative showing that the service was the actual author of the defamatory content. Accordingly, a number of courts have ruled that the ISP was immune from liability for defamation where allegedly libelous statements were made available by third parties through an ISP or were posted by third parties on the server's billboards, as the ISP fell within the scope of 47 U.S.C.A. §230.

Jay M. Zitter, J.D., Annotation – *Liability of Internet Service Provider for Internet or E-mail Defamation* § 2, 84 A.L.R.5[th] 169 (2000) (emphasis added), *citing* Pantazis, Note, *Zeran v America Online, Inc.: Insulating Internet Service Providers From Defamation Liability*, 34 Wake

Forest L. Rev. 531 (1999)); *see also Batzel v. Smith*, 333 F.3d 1018, 1027–28 (9th Cir. 2003) (recognizing, "Making interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet. Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet."), *quoting Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 983–84 (10th Cir. 2000).

B.   **CDA Immunity Applies**

In order for a defendant to avail himself of the CDA's immunity, three elements must be established: "[1] the defendant must be a provider or user of an interactive computer service; [2] the asserted claims must treat the defendant as a publisher or speaker of information; and [3] the information must be provided by another information content provider." *Schneider*, 31 P.3d at 39. The uncontested facts prove that each of these elements is present, and thus the CDA bars all of Plaintiff's claims here.

1.   **Defendants Are An "Interactive Computer Service"**

The ROR Sites are indisputably an "interactive computer service" provider as that term has been defined by CDA § 230 and as interpreted by various courts:

> An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server …" .

*Batzel*, 333 F.3d at 1030, *quoting* 47 U.S.C. § 230(f)(2)). This definition includes any website that allows multiple users to connect to it. *See, e.g., Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 831 & n. 7, 121 Cal.Rptr.2d 703 (2002) (on-line auction website www.eBay.com is an "interactive computer service"); *Schneider, supra*, 31 P.3d at 40–41 (on-line bookstore www.Amazon.com is an "interactive computer service"); *Barrett v. Clark*, 2001 WL 881259 at *9 (Cal. 2001) (California Supreme Court holding online newsgroup considered an "interactive computer service"); *see also Ben Ezra*, 206 F.3d at 985 (parties conceded that AOL was an interactive computer service when it published an on-line stock quotation service); *Zeran*, 129

F.3d at 330 (AOL found to be "interactive computer service" when it operated <u>bulletin board service for subscribers</u>); *Blumenthal v. Drudge*, 992 F.Supp. 44, 49–50 (D. D.C. 1998) (parties conceded that AOL was an "interactive computer service" even when it published on-line gossip column).

Here because they allow multiple users to access the Rip-Off Report site to post comments and review comments left by others, Defendants' ROR Sites plainly fall within the CDA's definition of "interactive computer service". This fact has been recognized by other federal courts; "In this case, Defendants [Xcentric] are a service provider as they publish information by consumers on their website. They do not write the information. Thus, Defendants are immune by virtue of § 230(c)(1) [of the CDA] ... ." *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2005 WL 1677256 (M.D.Fla. 2005). Indeed, in ruling that Defendants were subject to personal jurisdiction in Illinois, in part due to the amount of "interactivity" of the ROR Sites, this Court found that "Individuals accessing the Sites can search for particular companies by name, or search specific industries or states. Site visitors may then read postings made by disgruntled consumers explaining how they were allegedly 'ripped off' by various companies. Visitors can also post their own comments about various companies." *George S. May*, 409 F.Supp.2d at 1052.

This finding confirms that the ROR Sites plainly fall within the CDA's definition of an "interactive computer service". Thus, the first element of CDA immunity has been established.[1]

### 2.     All of Plaintiff's Claims Treat Defendants As Publisher/Speaker

The second element of CDA immunity cannot seriously be contested. Plaintiff clearly seeks to impose liability upon Defendants for "publishing" material about Plaintiff on the ROR Sites. Plaintiff's claims literally treat the Defendants as standing in the shoes of the publisher and/or speaker of the offensive material, and there are no theories which do not expressly seek to

---

[1] Although there can be no dispute that Defendants are a provider of an interactive computer service, the satute also applies to the <u>user</u> of an interactive computer service. Defendants also qualify under that description.

impose liability upon Defendants for the information posted on the ROR Sites. The second element of CDA immunity has been established.

### 3. All Reports Were Created By Third Parties

Finally, as demonstrated by the affidavits submitted herewith, <u>all</u> of the messages and statements which form the basis of Plaintiff's claims here were created by <u>third party users of the ROR Sites</u>. There is not a single scintilla of evidence that any of these posts were <u>created by</u> Defendants in whole or in part because the statements <u>were not created by Defendants in whole or in part</u>. Quite obviously, as an online computer message board and public forum, the reports at issue in this case which accuse Plaintiff of providing worthless services were authored by customers, clients, and/or former employees of Plaintiff, not by Defendants.

Plaintiff may find it easier to simply sue Defendants for providing the forum by which these messages were posted rather than suing the actual authors, but the CDA expressly precludes this type of liability. *See Barrett*, 2006 WL 3346218, *17 (holding "Plaintiffs are free under section 230 to pursue <u>the originator</u> of a defamatory Internet publication. Any further expansion of liability must await Congressional action.") (emphasis added).

Excepting Plaintiff's Lanham Act claim (which is subject to a separate defense motion), this is true as to all of Plaintiff's claims, including injunctive relief. In the case of *Kathleen R. et al v. City of Livermore*, 87 Cal App.4th 684, 697-98, 104 Cal.Rptr.2d 772, 780-81 (2001), the California Court of Appeals dismissed claims for declaratory and injunctive relief, holding that Section 230(c)(1) of the Act prohibited claims for <u>injunctive relief</u> as well as damages. The Tenth Circuit has also upheld dismissal of state law claims for injunctive relief. *See Ben Ezra, Weinstein, & Co.*, 206 F.3d at 983-84.

The same result is mandated here. Plaintiff's claims seek to hold Defendants (the operators of an interactive computer service) directly liable for content created by others. The CDA bars this result and mandates that the Court enter judgment in favor of Defendants and against Plaintiff on its Second, Third, and Fourth Causes of Action.

III.  **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that summary judgment be entered in their favor pursuant to Fed. R. Civ. P. 56(b) as to those claims described herein and for such further relief as the Court deems just and appropriate.

                                      XCENTRIC VENTURES, LLC and
                                      EDWARD MAGEDSON

                                      By:  /s/ James K. Borcia
                                              One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000