IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE S. MAY INTERNATIONAL COMPANY**, | ) ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) | Case Number: 04 C 6018 |
| **XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES,** | ) ) ) ) ) ) ) | Judge Charles R. Norgle  Magistrate Judge Michael T. Mason |
| Defendants. | ) | |

**PLAINTIFF GEORGE S. MAY INTERNATIONAL COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiff George S. May International Company ("GSMIC"), by its counsel, hereby submits its Response in Opposition to Defendants' Motion for Partial Judgment on the Pleadings as follows:

**I.    Defendants Use the GSMIC Mark and Disseminate False and Deceptively Misleading Statements of Fact in Connection With a Commercial Enterprise in Violation of the Lanham Act**

As this Court is aware, Defendants are engaged in a commercial enterprise in which they encourage the posting of false and deceptively misleading statements about many companies, including GSMIC. Defendants refused to take these postings down from its website despite the fact that the postings are not true, including one which was a "spoof," posted by a person impersonating GSMIC's President. *See* "Message from the President of George S May International Company…" at www.ripoffreport.com/view.asp?id=41290&view=printer, attached

as Exhibit A.[1]  Defendants claim that they cannot police the site because of the Communications Decency Act, but then turn around and seek fees to participate in their Rip-off Report Corporate Advocacy, Business Remediation, and Customer Satisfaction Program" ("CAP"), namely policing these postings involving GSMIC for a fee.  *See* "Rip-off Report Corporate Advocacy Business and Remediation Program & Customer Satisfaction Program…" at www.ripoffreport.com/reports/ripoff167471.htm (last visited on January 5, 2007), attached as Exhibit B.[2]

Because the Defendants refused to take down false and deceptively misleading postings, this Court issued a Temporary Restraining Order against the Defendants and held the Defendants in contempt of court for violating this Court's order.

In connection with these false and deceptively misleading statements about GSMIC, GSMIC alleges that Defendants have used the George S. May trademark and trade name as metatags to assist search engines in finding these false and deceptively misleading statements.  *See, e.g.,* "George S. May—International Profit Associates GSMay & IPA…" at www.ripoffreport.com/reports/ripoff199380.htm, (last visited January 5, 2007), source code for above-entitled report including metatags, and "Google" search for "George S May," attached as Exhibit C.  This, alone, is a violation of the Lanham Act.  *See, e.g., Promatek Industries, Inc. v. Equitrac Corp.,* 300 F.3d 808 (7th Cir. 2002) (use of metatags constituted trademark use under the Lanham Act; defendant properly enjoined from using Promatak's mark as a metatag);

---

[1] This posting was taken down sometime after the Defendants were found in contempt of the Court's order, and as a result has been redacted from the website.  A copy of the posting as it existed on the website is attached as Exhibit A.

[2] Under the terms of this program, a company such as GSMIC can retain Defendants "to investigate independently and to publish our findings" using "every bit of information at our disposal to determine the truthfulness of the complaints against the company or individual."  See Exhibit B.

*International Profit Associates, Inc. v. Paisola*, No. 06-C-6154, 2006 U.S. Dist. LEXIS 82971 (N.D. Ill. Nov. 14, 2006) (enjoining Defendant's use of "International Profit Associates" as a search term so Google searchers would uncover Defendant's complaint website as a top "hit," thus reading false statements about IPA, as a violation of the Lanham Act). In addition, the commercial dissemination of the false and deceptively misleading postings also constitute violations of the Lanham Act.

Although Defendants give short shrift to the facts in their motion for partial judgment on the pleadings on GSMIC's Lanham Act claim, the facts are essential to understanding why GSMIC claim is valid under Section 43(a). Contrary to the assertions of Defendants' motion, the Seventh Circuit has not definitively limited those entitled to sue for violations of Section 43(a) to only competitors under the Lanham Act. In fact, Seventh Circuit cases considering the issue of what parties may state a claim for a violation of Section 43(a) of the Lanham Act have not so limited parties to only competitors who are engaged in the same business, but have rather stated that the Plaintiff must have a "reasonable interest to be protected against conduct violating the Act" and must "assert 'a discernible competitive injury.'" *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697 (7th Cir. 1989); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F. 3d 427 (7th Cir. 1999). Moreover, in *Bosley Medical Institute, Inc. v. Kremer*, a case cited as definitive authority by Defendants, the court held that the Plaintiff did not have standing to sue for trademark infringement because Bosley's complaint website was **noncommercial** and therefore did not satisfy the "commercial use" requirement of the Lanham Act, noting, among other things, that "[a]t no time did Kremer's BosleyMedical.com site offer for sale any product or service or contain paid advertisements from any other commercial entity." 403 F.3d 672, 678

(9th Cir. 2005). The case at bar is clearly distinguishable from *Bosley* in that Defendants' website is clearly commercial in nature.

The facts of the instant case show that Defendants' use of the "George S. May" trademark and trade name is decidedly commercial, and GSMIC continues to suffer a competitive business injury as a result of Defendants' unlawful use. Defendants' website, located at www.ripoffreport.com and www.badbusinessbureau.com, is operated entirely as a for-profit enterprise. Defendants advertise and sell two books off of the website, entitled as the "Ripoff Revenge Do-It-It Yourself Guide—How to Get Ripoff Revenge…and your money back too" and "What Mortgage Brokers Don't Want You to Know." *See* Compl. at ¶ 13; www.ripoffreport.com (last visited January 5, 2007); www.ripoffreport.com/revengead.htm (appears as a "pop-up" ad upon accessing the website; last visited January 5, 2007); www.consumermediapublishing.com (accessed by linking from www.ripoffreport.com to advertisement for Mortgage Book; last visited January 5, 2007), all attached as Exhibit D. Furthermore, Defendants solicit non-tax deductible donations using PayPal, and Defendants also sell advertising on its website. *See* www.ripoffreport.com and pages therewith (last visited January 5, 2007) attached as Exhibit D, and www.ripoffreport.com/donations.asp (last visited January 5, 2007), attached as Exhibit E.

Defendants solicit "ripoff reporters" and individuals to investigate companies and write complaints about those companies on Defendants' websites. "Wanted Rip-off Report Reporters," at www.ripoffreport.com/reporters.asp (last visited January 5, 2007), attached as Exhibit F. Defendants further categorize those complaints about specific companies so internet surfers can search by either the name of the company or the particular category, such as "corrupt companies" or "con artists." *See* "Categories," at www.ripoffreport.com/search.asp (last visited

January 5, 2007), attached as Exhibit G, and Exhibit C (categorizing George S. May as a "Corrupt Company"). In addition, Defendants advise individuals that they can attempt to get redress from the companies that have scammed them by using the report "to get what is coming to you," i.e., by filing the report and then by faxing it to the company that has purportedly cheated the poster, and offering to "update" (but not remove) the report if the company meets the individual's demands. *See* heading entitled "Use Your Report to Get What Is Coming to You" at www.ripoffreport.com (last visited January 5, 2007) attached as Exhibit D. Defendants claim that the complaints filed by the individuals will be seen by millions of viewers and that a report will be picked up by most search engines. Exhibit D. In the case of George S. May, Defendants have included George S. May's trade name "George S. May" as a metatag in the source codes on the website so that search engines such as Google will pick up the "ripoff reports" when a search is conducted for George S. May. *See* Exhibit C. As a result, anytime a customer or employee runs a search on the Internet for George S. May they are confronted with the false postings on Defendants' site, thus causing George S. May damages.

Furthermore, Defendants insist that they will never remove any reports from the website, even at the request of the original poster. Instead, Defendants offer **for a fee** to investigate the reports and the company at issue and write an update of their findings to the report, if the company agrees to retain Ripoff Report and enroll in the "Rip-off Report Corporate Advocacy, Business Remediation, and Customer Satisfaction Program" ("CAP"). *See* Exh. B. In other words, if a company pays Defendants a fee, Defendants may write a positive report about the company to counterbalance a false or deceptively misleading posting. In addition to the CAP, discovery has demonstrated that Defendants also solicit lawyers to enter into substantial referral

fee arrangements website for the purposes of organizing class action lawsuits on behalf of the posters against companies which are the subject of the reports.  Exhibit H.[3]

In short, Defendants operate an entirely commercial website.  Their use of "George S. May" in metatags, allowing search engines to pick up the false and deceptively misleading postings, causes GSMIC harm every time a customer or prospective customer, or employee or prospective employee, conducts a search for George S. May on the Internet.  Once a customer or employee visits Defendants' website, they are bombarded with pop-ups and advertisements for Defendants' books on how to, among other things, get "revenge" or money back from a particular company or individual.  Compounding this, Defendants refuse to take even the most egregious postings down unless paid to do so through the CAP program.

Furthermore, as alleged in GSMIC's complaint, "[o]n information and belief, some of the postings asserting that GSMIC has engaged in illegal and immoral activities, hosted, and transmitted by Defendants were posted by GSMIC's competitors for the purpose of hurting GSMIC's business."  Compl. at ¶ 12.  A former employee of GSMIC who now works for a competitor has given a donation to the Rip-off Report.com website, and the website also contains within the GSMIC's reports references comparing it to Dolphin Pacific Group and International Profit Associates, two competitors of GSMIC.  *See* "George S May—Dolphin Pacific Group Wish I had found this site sooner…" at www.ripoffreport.com/reports/ripoff142037 (last visited January 5, 2007) attached as Exhibit I, and Exhibit C.  In fact, when one conducts a search in the Google search engine for "George S May," a report comparing George S. May to International Profit Associates appears, and when a Google search for "Dolphin Pacific Group" is conducted,

---

[3] GSMIC continues to pursue discovery on the scope of Defendants' commercial activities, and to date Defendants have refused to respond to GSMIC's discovery requests regarding commercial activities on the websites, including information regarding the sale of the books on the website.  This, among other things, will be the subject of a forthcoming motion to compel.

the first search result is for a Ripoff report comparing Dolphin Pacific Group to George S. May. *See* Google search results, attached within Exhibits C and I. In addition, Defendants' CAP program is essentially a form of business consulting services, whereby Defendants offer to mediate business complaints and provide advice to a company in order to improve the offending companies' business. *See* Exh. B. Defendants have used the George S. May trademark in commerce and for a commercial use, and GSMIC continues to suffer damages as a result of Defendants' unlawful use. Compl. at ¶ 19. As a result, GSMIC has properly alleged a claim against Defendants under Section 43(a) of the Lanham Act, and Defendants' motion for partial judgment on the pleadings should be denied in its entirety.

**II.  GSMIC has Standing to Pursue its Lanham Act Claim in Order to Protect its Reasonable Interests, Including its Trademark, Trade Name and Goodwill**

A motion brought pursuant to Federal Rule of Civil Procedure 12(c) "should be granted 'only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Merix Pharmaceutical Corp. v. Glaxosmithline Consumer Healthcare, LP*, No. 5-C-1403, 2006 U.S. Dist. LEXIS 47233, at *4 (N.D. Ill. June 28, 2006).[4] Like a motion to dismiss pursuant to Rule 12(b)(6), "[t]his Court must accept all well-pleaded allegations as true, drawing all reasonable inferences from those facts in Plaintiff's favor." *Id.*

Section 43(a) of the Lanham Act states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval or his or her goods, services, or commercial activities by another person, or

---

[4] Unpublished or memorandum opinions are attached as Exhibit J.

      (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damages by such act.

15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B).

      Defendants' only argument in support of its motion for partial judgment on the pleadings is that GSMIC does not have standing to sue Defendants under Section 43(a) because Defendants do not sell the same business consulting services that GSMIC does. But with the exception of citing to several Ninth Circuit cases in support of this argument, Defendants completely ignore the body of case law in which non-competitors have standing to sue under Section 43(a) of the Lanham Act.

      For example, in *Thorn v. Reliance Van Company, Inc.*, the Third Circuit Court of Appeals expressly held that "a plain language interpretation of section 43(a) indicates that one need not be a competitor in order to bring a false advertising claim under section 43(a)." 736 F.2d 929, 930 (3rd Cir. 1984). In *Thorn*, the named plaintiff was an investor in a van lines company named Florida-Eastern U.S. Van Lines, Inc., along with co-defendants Thomas Welsh, Charles Weatherly, Emma Bailey, and Michael O'Neal, Jr. *Id.* at 930. Co-defendants Welsh, Weatherly, Bailey, and O'Neal were also officers and/or employees of a competing van line business, Reliance Van Co. *Id.* at 931. Ultimately, Florida-Eastern went bankrupt, and Thorn sued, alleging, among other things, that Reliance "falsely advertised reduced rates in the yellow pages" and used a Reliance slogan, which lead to Florida-Eastern's bankruptcy. *Id.* at 931. The Third Circuit Court of Appeals reversed the lower court's dismissal of Plaintiff's Lanham Act claim under Section 43(a), holding that Plaintiff had "alleged sufficient direct injury resulting from the false advertisements of the defendants and through these allegations has demonstrated a

reasonable interest to be protected under section 43(a)" even though he was not a competitor of Reliance. *Id.* at 933.

While Defendants rely heavily on the Ninth Circuit case law for the proposition that GSMIC cannot sue because Defendant does not sell small business consulting services, those cases have either been criticized or are decidedly distinguishable from the instant case. Even the Ninth Circuit has limited the holding of *H.B. Halicki v. United Artists Communications, Inc.*, noting that that "[t]o interpret Halicki as suggested by the defendants, for the broad proposition that only competitors have standing under section 43(a) regardless of the type of claim asserted, would create an impermissible conflict…" and thereby holding that while a claim for false advertising must involve "discernibly competitive injury" and claim for false association for the wrongful use of the mark need only be brought by one injured commercially, even if a non-competitor. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1107-1110 (9th Cir. 1992).

Defendants rely heavily on *Bosley Medical Institute, Inc. v Kremer*, which involved a claim for trademark infringement and did not discuss standing under Section 43(a), the Ninth Circuit held that there was no actionable claim for infringement, because Kremer's use of the mark to criticize Bosley Medical's hair restoration services and Kremer's dissatisfaction in a complaint website was noncommercial. *Bosley*, 403 F.3d 672, 676-680 (9th Cir. 2005). Among other things, the Ninth Circuit noted that the complaint website had no commercial advertising or links to commercial businesses and was therefore not commercial (unlike the many cases that held to the contrary). *Id.* at 677-78. The instant case is decidedly different as Defendants seek non-tax deductible donations, offer for sale two books on the website, refuse to take any postings down unless companies enroll in the CAP program and pay a fee, is replete with advertising on every page of the website, and contains numerous hyperlinks to other businesses. Moreover,

9

Defendants have sought to enter into referral arrangements with law firms for the purposes of organizing class action lawsuits to the tune of, in one case, $800,000.

More importantly, contrary to the assertions of Defendants' brief, Seventh Circuit authority does not support Defendants' claim that GSMIC does not have standing to sue under Section 43(a) of the Lanham Act because Defendants do not sell small business consulting services. In *Dovenmuehle v. Gilldorn Mortgage Midwest Corporation*, the Seventh Circuit conducted a detailed analysis of what parties had standing to sue under Section 43(a) of the Lanham Act. 871 F.2d 697, 699-700 (7th Cir. 1989). In *Dovenmuehle*, the Dovenmuehle family had in the past used the Dovenmuehle name as "Dovenmuehle, Inc.," a company which was in the business of providing construction loans for residential and income properties. *Dovenmuehle*, 871 F.2d at 698. The Dovenmuehle family sold all of their interest in Dovenmuehle, Inc. to Chase in 1969. *Id.* Ultimately, as a result of various business transactions, the part of the assets and the trade name "Dovenmuehle" were sold to Percy Wilson Mortgage Corporation, who in turn operated the Dovenmuehle business under the name "Port Dearborn Corporation." *Id.* Ultimately, Percy Wilson sold its interest to Gilldorn, which decided to resurrect the Dovenmuehle name after concluding it owned the rights to the trade name. *Id.* Members of the Dovenmuehle family sued, alleging a claim under Section 43(a) of the Lanham Act, which Gilldorn moved to dismiss for lack of standing. Gilldorn's motion, converted to a motion for summary judgment, was granted *Id.* at 699.

On appeal, the Seventh Circuit analyzed what types of parties had standing to sue under Section 43(a) of the Lanham Act, and noted that "[a] party need not be in direct competition with a defendant to challenge a defendant's practices under the Lanham Act. All a commercial party needs to bring suit under the Act is a 'reasonable interest to be protected' against activities

10

that violate the Act." *Id.* at 700.　The Seventh Circuit noted that the Second Circuit Court of Appeals held that standing is limited to "commercial parties," in a case denying standing under Section 43(a) to **consumers**, but nonetheless stated that "the class of parties with standing in § 43(a) is quite broad." *Id.*　In addition, the *Dovenmuehle* court noted that other circuits have been reluctant to even limit 43(a) standing to a "commercial class" as the Second Circuit did, noting that other circuits have noted that the issue of standing "'turns on whether the party 'has a reasonable interest to be protected against.'"　*Id.*　Ultimately, the Seventh Circuit determined that the Dovenmuehle family members did not have standing to sue *not* because of a lack of direct competition with Gilldorn, but rather because the Dovenmuehles had sold the trade name and not reacquired rights and because "they are not even arguably engaged in commercial activity" as the Dovenmuehle family had no intention of using the Dovenmuehle name in any current business or "even some future commercial enterprise." *Id.* at 701, 701n.3.　Thus, in *Dovenmuehle*, the Plaintiff no longer had a "reasonable interest to be protected" since the Dovenmuehles did not intend to use the Dovenmuehle name in any commercial manner.　*Accord Euclid Ins. Agencies, Inc. v. American Assoc. of Orthodontists*, No. 95-C-3308, 1998 U.S. Dist. LEXIS 1471, at *13-13 (N.D. Ill. Feb. 5, 1998) (stating that a "plaintiff has standing if he demonstrates a 'reasonable interest to be protected' against activities that violate the [Lanham] Act; association of orthodontists "whose royalty interest is adversely affected by a false or misleading statement has standing to bring a claim under the Lanham Act").

　　To the contrary, in this case GSMIC has reasonable interests to be protected.　It has a reasonable interest in preventing use of the George S. May mark and name as a metatag to lead Internet users to Defendants' postings.　*See, e.g., Promatek Industries, Inc.* 300 F.3d 808 at 812-813; *International Profit Associates, Inc.,* 2006 U.S. Dist. LEXIS 82971 at *9-*10.　Moreover,

11

George S. May has a reasonable interest in preventing false or misleading descriptions of fact that state that: GSMIC operates a drug ring; engages in pornography; engages in pedophilia; is engaged with the Better Business Bureau to defraud small business owner; is a "corrupt company;" larceny is an admirable trait for a successful GSMIC analyst; or that George S. May is a lying, deceitful company. Further GSMIC has a reasonable interest in preventing "spoof" postings that falsely attribute statements of company officers or employees. This is especially true when Defendants make money off maintaining these postings and attempt to make more money by extracting fees from GSMIC to investigate and report on such postings.

To the extent that Defendants rely on any Seventh Circuit authority, the only case cited by Defendants, *L.S. Heath & Sons, Inc. v. AT&T Information Systems, Inc.*, 9 F.3d 561 (7th Cir. 1993), is entirely distinguishable from the instant case. In *L.S. Heath*, the Seventh Circuit considered a claim brought by chocolate producer Heath against AT&T arising out of AT&T alleged failures to properly construct a new computer system. Heath contracted with AT&T to convert Heath's computer systems to a more modern system. During the course of the project, Heath agreed to participate in advertising for AT&T's product. *Id.* at 565. Ultimately, however, AT&T's computer system designed for Heath did not work properly, and Heath gave AT&T a notice to cure and subsequently filed a lawsuit. *Id.* The primary claims asserted by Heath included claims for breach of warranty, breach of a partnership agreement, and lastly (and tangentially) a violation of the Lanham Act based on a claim for false advertising. *Id.* at 575. Heath alleged that AT&T violated the Lanham Act by publicizing a statement which included the phrase "Once Heath chose AT&T, all the ingredients came together." *Id.* Health argued that statement "falsely misrepresented the nature and qualities of AT&T's equipment and services." *Id.* While the Seventh Circuit noted that Heath did not have standing to sue for false advertising

because it had no "discernible competitive injury," noting that Heath was not in the computer business and that it was not a competitor, the Seventh Circuit did not expressly limit standing under Section 43(a) to competitors and, in fact, went on to conclude that the reason Heath's Lanham Act claim failed was because Heath failed to show any damages.

Similarly, in this case GSMIC's claim under Section 43(a) should stand against Defendants because there is no definitive authority in the Seventh Circuit to support Defendants' position that GSMIC only has a cognizable claim if Defendants sell small business consulting services.  None of the cases cited by Defendants even stands for that proposition, although the Ninth Circuit does take a narrower view of standing than others.  Furthermore, GSMIC has alleged the use of Defendants' website by competitors to make false and deceptive statements in postings about GSMIC, including competitors such as IPA and Dolphin Pacific Group, which Defendants refuse to take down unless paid.  This is exactly the type of use that the Lanham Act sought to prevent—competitors surreptitiously posting false information about GSMIC to hurt GSMIC's business.

Even if some form of related service is required to invoke standing, which is not correct, Defendants' services are related to GSMIC.   Defendants offer business consulting and investigative services to report and investigate on consumer complaints alleged against companies such as GSMIC on the website, if GSMIC will pay a fee.  In effect, this is a consulting service offered by Defendants to GSMIC.  While Defendants seek to use *MCW, Inc. v. Badbusinessbureau.LLC* as support for their motion, *MCW* is distinguishable not only because it was decided in another circuit, but also because it did not contain the allegations that Defendants' website is used by competitors to perpetrate false and deceptively misleading statements about GSMIC, and Defendants allow this practice by refusing to take down the

postings unless paid and by categorizing and adding headings to the postings in such a manner that wrongfully associates GSMIC with its competitors.

Finally, Defendants make the naked assertion that they are entitled to attorneys fees under the Lanham Act. As the language of the Lanham Act makes clear, however, attorneys fees may be awarded to the prevailing party only in exceptional cases. 15 U.S.C. § 1117. Defendants have not alleged, nor can it prove, that any exceptional circumstances warrant their claim for attorneys' fees, and their request should be denied outright. *See, e.g., WSM, Inc. v. Wheeler Media Services, Inc.*, 810 F.2d 113 (6th Cir. 1987).

WHEREFORE, Plaintiff George S. May International Company respectfully requests that Defendants' Motion for Partial Judgment on the Pleadings be denied in its entirety.

DATED: January 5, 2007

Respectfully submitted,

**GEORGE S. MAY INTERNATIONAL COMPANY**

By: _s/ Rachel Kindstrand_____
      One of Its Attorneys

Attorneys for Plaintiff:
Bart A. Lazar, Esq.
Rachel M. Kindstrand, Esq.
**SEYFARTH SHAW LLP**
131 S. Dearborn St., Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2007, I electronically filed **Plaintiff's Response in Opposition to Defendants' Motion for Partial Judgment on the Pleadings** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:

James K. Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606-6308

Maria Crimi Speth
Jaburg & Wilk, P.C.
Great American Tower
3200 North Central Avenue, Suite 2000
Phoenix, AZ 85012


s/ Rachel Kindstrand

CH1 11158055.1