JKB/cic/303593                                               5634-2-51

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, RIP-OFF REPORT.COM, BADBUSINESSBUREAU.COM, ED MAGEDSON, VARIOUS JOHN DOES, JANE DOES AND ABC COMPANIES, | ) Honorable Judge Norgle ) ) Magistrate Judge Mason ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S (SECOND) MOTION TO HOLD DEFENDANTS IN CONTEMPT**

Defendants, Xcentric Ventures, LLC ("Xcentric") and Edward Magedson ("Magedson"), (collectively "Defendants"), respectfully submit the following response in opposition to the Motion and Memorandum of Law in Support of Motion to Hold Defendants in Contempt filed by Plaintiff George S. May International Company ("George S. May") on December 20, 2006. Defendants request that the Court deny the Motion because:

1. Defendants' truthful posting is protected by the First Amendment and Defendants are not in contempt of the injunction;

2. Plaintiff's Motion is moot because the allegedly contumacious material has been removed; and

3. If the Court is inclined to determine that Defendants are in contempt, Defendants are entitled to procedural due process protections.

This argument is supported by the following Memorandum of Points and Authorities and by the Court's file in this matter.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.   <u>**INTRODUCTION/PROCEDURAL BACKGROUND**</u>

At the very start of this case, on September 24, 2004 Plaintiff sought, and received, an *ex parte* temporary restraining order prohibiting Defendants from "making, hosting, or transmitting false or deceptive misleading, descriptions, statements, or representations concerning George S. May, its business owner, officers, employees and/or agents" (the "TRO"). As support for this TRO, Plaintiff submitted a three-page Declaration (attached to Doc. #2) from Mr. Charles Black, attached to which was a <u>single</u> report from the Rip-Off Report website stating that the owner/founder of Plaintiff had a background of child pornography.

Defendants subsequently agreed to immediately remove this posting. In fact, given the nature of the report, Defendants consented to extend the TRO into a preliminary injunction to maintain the *status quo* while the case was pending. Again, it is crucial to understand that at this time, Plaintiff offered a <u>single</u> report relating to child pornography which was so absurd on its face that it was obviously false.

At the time, Defendants understood the scope of their consent to the injunction to be limited as follows: they agreed to keep the purportedly false "child porn" posting that Plaintiff had initially identified down off of their website while this action was pending. Defendants never understood that the injunction would be extended to other postings that the Court had never determined to be false and that Defendants had not agreed were false.

Nevertheless, sensing an opportunity, less than a month later on October 8, 2004, Plaintiff filed a motion (Doc. #16) asking the Court to hold Defendants in contempt for posting numerous <u>other</u> reports (excluding the child pornography report) which Plaintiff alleged were false. Defendants naturally responded by explaining that these new reports had never been

proven false, and they were not within the scope of the injunction because they were not brought to either the Court's or the Defendants' attention at the time Defendants initially consented to extend the TRO.

Unfortunately, nearly a year later in September 2005 the Court disagreed and ruled that other third party postings should have been removed simply because Plaintiff claimed they were false. Thus, the Court found Defendants in contempt and ordered the new postings removed despite the complete lack of any due process as to whether the statements were actually false.

Within days of the Court's initial ruling finding Defendants in contempt (Doc. #78), Defendants removed all of the postings, and their corresponding titles, that Plaintiff claimed were false. In place of the title and the posting, Defendants placed the following true statement:

> This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the First Amendment rights of free speech of the author of the posting and violates the Federal Communications Decency Act.

On October 20, 2006, Plaintiff sent a letter to Defendants asserting that the statement was false or misleading. While Defendants continued to disagree with Plaintiff's view, Defendants nevertheless modified the statements to read as follows:

> This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the Federal Communications Decency Act.

Defendants confirmed in a letter dated October 24, 2006 to Mr. Lazar that the change had been made. *See* **Exhibit A**.

On December 12, 2006, at the hearing related to the prior contempt finding, Magistrate Judge Mason stated that he felt it was not accurate that an appeal was pending with the Circuit

3

Court. On December 12, 2006, that same day, Defendants again modified the statement so that it reads as follows:

> This space previously contained a complaint about the business practices of George S. May. Rip-off Report has temporarily removed the posting. Rip-off Report intends to appeal the preliminary injunction by the district court that we believe violates the Federal Communications Decency Act.

Despite the modifications, Plaintiff still asserts that the statement is contemptuous. Defendants can think of no more poignant example of free speech than a litigant expressing its opinion that a court order was made in error.

## II.   NONE OF THE THREE STATEMENTS POSTED BY DEFENDANTS HAVE BEEN DEFAMATORY OR CONTEMPTUOUS

### A.   The Statement Posted By Defendants Does Not Violate The Order

The Order at issue prohibits Defendants from "making, hosting, or transmitting false or deceptive misleading, descriptions, statements, or representations concerning George S. May, its business owner, officers, employees and/or agents." None of the three statements posted by Defendants in place of the removed materials are false or deceptive misleading descriptions, statements or representations concerning George S. May.

The first sentence in each instance is that "[t]his space previously contained a complaint about the business practices of George S. May." It cannot seriously be denied that this is a completely true and accurate statement – the space did previously contain a complaint about Plaintiff.

The second sentence originally read, "Rip-off Report has temporarily removed the posting pending Circuit Court review of a preliminary district court order that we believe violates the First Amendment rights of free speech of the author of the posting and violates the Federal Communications Decency Act."

4

The first portion of that sentence is accurate and is not a statement about George S. May. Defendants did temporarily remove the posting and Defendants intended and still intend to appeal the determination by this Court that the removed posting was subject to the Order. An order finding a party in civil contempt is appealable only if it disposes of all the issues raised and only if it includes both a finding of contempt and the imposition of a sanction. *U.S. for and on Behalf of Small Business Admin. v. Torres,* 142 F.3d 962, 969 (7th Cir. 1998). Thus, the contempt finding is not yet appealable but the posting has been removed pending review by the Seventh Circuit. Despite the accuracy of that statement as it was, it was then modified to more specifically point out that the Defendants intend to appeal in the future.

The next portion of the sentence is accurate and is not a statement or representation. Defendants believe that the order issued by this Court finding them in contempt and determining that the now-removed posting was covered by the injunction violates the First Amendment rights of free speech of the authors and the Communications Decency Act. The entire sentence is based on Defendants' beliefs and opinions, and therefore, cannot be found to be a false statement of fact. It is, by definition, an <u>opinion</u>. Plaintiff argues that the postings as a whole "deceptively suggest that there was a valid complaint about the business practices of George S. May." (Page 2, Plaintiff's Memorandum of Law). Plaintiff does not explain how it leapt there from Defendants' belief that the ruling finding that the removed posting was subject to the Court's order violates the First Amendment and the Communications Decency Act.

Defendants do believe the ruling violates the First Amendment and the Communications Decency Act. When this Court issued its September 13, 2005 ruling, it determined that Defendants were in contempt for not removing third party postings that Plaintiff claimed were false. Defendants' position has always been that: (1) the Communications Decency Act

5

precludes the Court from treating Defendants as authors or publishers of content posted by third parties and issuing injunctive relief against someone who is not an information content provider violates the Communications Decency Act; and (2) the First Amendment precludes the enjoining of speech except in the narrow situation where a jury has determined that the statement is false. As Defendants argued in their response to the original motion for contempt, "[t]he general rule is that equity does not enjoin libel, rather the only remedy for defamation is an action for damages. There is a heavy presumption that prior restraints on expression are unconstitutional." *Kisser v. Caolition for Religious Freedom*, 1996 WL 147978 (N.D. Ill.). If speech is to be enjoined, it should only be after a jury has determined that it is defamatory and only where there has been a showing of no adequate remedy at law, such as where the defendant is insolvent. *See Kramer v. Thompson*, 947 F.2d 666 (3rd Cir. 1991). The *Kramer* court noted that a line of cases has emerged that hold that "an injunction against speech generally will not be considered an unconstitutional prior restraint if it is issued <u>after a jury has determined that the speech is not constitutionally protected</u>." 947 F.2d at 675 (emphasis added).

Defendants have consistently argued in this case that it is a violation of the First Amendment for the Court to enjoin speech that has not been determined by a jury to be defamatory. Defendants reject Plaintiff's position that it can unilaterally claim that a statement on Defendants' website is false and that Defendants must take down the posting unless Defendants can prove that the statements are true. This is especially egregious where, as here, Defendants are not the authors of the postings, are not in the position to determine the truth or falsity of the statements, and are protected from such claims by the Communications Decency Act. Defendants publicly announced their position on the website. In blatant disregard of

6

everything that the First Amendment stands for, Plaintiff argues that Defendants' public announcement of their belief is contempt of court.

B.  **Plaintiff's New Contempt Motion Should Be Denied As Moot**

As Defendants have previously explained, contempt exists in two forms: civil and criminal. If the purpose of the contempt is to force compliance with an order, and if the contempt can be purged by future compliance with that order, the contempt is civil in nature. On the other hand, if the contempt is intended to punish a party for a past/completed violation of an order, the contempt is criminal:

> In distinguishing criminal and civil contempt sanctions, the court inquires whether the sanction's purpose was to coerce compliance and whether the contemnor was given the opportunity to cure his or her contempt and thereby end the sanction, rather than rely upon the stated purpose of the contempt sanction or on the label given to the proceeding by the court below. However, a civil contempt order that starts out as coercive can become punitive and therefore [become] "criminal contempt."

17 AM. JUR. 2D *Contempt* § 4 (2005 Supp.) (internal footnotes omitted), *citing Commodity Futures Trading Com'n v. Armstrong*, 284 F.3d 404 (2nd Cir. 2002); *Quilling v. Funding Resource Group*, 227 F.3d 231 (5th Cir. 2000); *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Grand Jury Proceedings*, 280 F.3d 1103 (7th Cir. 2002), *cert. denied*, 536 U.S. 925, 122 S. Ct. 2593, 153 L. Ed. 2d 781 (2002).

The key distinguishing factor between civil and criminal contempt is whether the threatened sanction is avoidable by subsequent compliance with the Court's order:

> A contempt proceeding is civil if the purpose is remedial and intended to coerce the person into doing what he is supposed to do. If the purpose is to vindicate the authority of the court by punishing the wrongdoer, the proceeding is one for criminal contempt. Criminal contempt cannot be purged by future compliance with the order.

7

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Federal Criminal Procedure, Distinction Between Criminal Contempt And Civil Contempt*, 3A FED. PRAC. & PROC. CRIM. 3D § 704. In other words, in the case of a civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus "'carries the keys of his prison in his own pocket.'" *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994), *quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498 (1911)). By contrast, an unavoidable fine or term of incarceration, "is punitive and criminal <u>if it is imposed retrospectively for a 'completed act of disobedience[]</u>.'" *Id.* (emphasis added).

      Here, because Defendants have already changed the contested language posted on their website to comply with Plaintiff's demands, even if they were previously in contempt (which they were not), the issue is now moot because full compliance with the Court's order has occurred. Any prior civil contempt is therefore purged, and there is simply no need for any further action. The Court should therefore deny Plaintiff's new motion as moot.

      Moreover, to the extent that Plaintiff is seeking a contempt finding because of what the Defendants' website *used to say*, such a past/completed violation is a matter of criminal contempt which Plaintiff lacks standing to pursue. *See* Fed. R. Crim. P. 42(a)(2) (requiring that any criminal contempt must first be referred to the appropriate governmental agency for prosecution; "The court <u>must request that the contempt be prosecuted by an attorney for the government</u>, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.") (emphasis added).

Finally, as Defendants argued during the prior contempt proceedings, assuming Plaintiff is seeking a criminal contempt finding, Defendants are entitled to significant due process including the following rights:

(1) be advised of the charges against him or her;

(2) have the right to a public trial;

(3) have a reasonable opportunity to meet the charges by way of defense or explanation;

(4) have the right to be represented by counsel; and

(5) have a chance to testify and call other witnesses in his or her behalf, either by way of defense or explanation.

17 AM. JUR. 2D *Contempt* § 148 (2005 Supp.), *citing Bloom v. State of Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). These same safeguards are recognized and, in fact, required by both the Local Rules of this Court (*see* LR 37.1(b)), and by the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 42(b).

As before, although Defendants believe the alleged contempt should be characterized as civil, to the extent that Plaintiff seeks an order holding Defendants in criminal contempt, Defendants expressly demand any/all rights to which they are entitled, including the right to a trial by jury.

C. **The Categorization Of The Postings Is Not In Violation Of The Order**

Plaintiff also argues that because George S. May is categorized on the Rip-off Report website under the category "corrupt companies," Defendants are in contempt. The categorization is a function of the author of the posting. The posting attached as Exhibit D to Irsael Kushnir's declaration is a posting submitted on July 18, 2003 by a third party. When the party submitted the posting, the computerized form they completed asked what category the

company belonged in. The person posting the report chose to categorize it under corrupt companies. The content of the report was removed by Defendants. This Motion is the first notice Defendants have ever received that the categorization is an issue.

In addition, even if Defendants were responsible for the posters' characterization of the status of George S. May as a "corrupt company" (which they are not), the fact remains that this statement does not violate the injunction because the statement is provably <u>true</u>. Indeed, over the past year, although Plaintiff has refused to provide virtually any discovery whatsoever as to the true nature of its business practices, Defendants have conducted an extensive investigation in which they have interviewed dozens of witnesses. These witnesses have universally confirmed that Plaintiff routinely makes false statements of material fact to potential customers (usually small businesses which are already in trouble) in order to induce the business to hire Plaintiff to fix its financial problems.

Rather than fixing anything, Plaintiff provides worthless advice to its customer and charges an exorbitant amount for the services of "analysts" who are often untrained and unqualified to perform the services promised. The encounter usually ends with the customer demanding that Plaintiff's staff leave the premises, which Plaintiff refuses to do unless payment is made in full, in cash.

Defendants have gathered dozens and dozens of affidavits from victims who each offered stories which matched this pattern with frightening regularity. Rather than filling the Court's file with all of these statements, Defendants merely offer two affidavits attached hereto as **Exhibit B** reflecting the true nature of Plaintiff's business practices. Assuming Plaintiff insists on pressing the issue with another hearing, Defendants intend to call dozens of witnesses who will verify that Plaintiff is, quite literally, a "corrupt company".

## III. CONCLUSION

For all of the above reasons, Defendants Edward Magedson and Xcentric Ventures, LLC respectfully request that the Court: 1) deny Plaintiff's new motion for contempt in its entirety; or, alternatively, 2) set a trial on the issue of contempt and damages pursuant to Local Rule LR 37.1 and Fed. R. Crim. P. 42.

XCENTRIC VENTURES, LLC and ED MAGEDSON

By:_____/s/ James K. Borcia_____
One of Their Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE S. MAY INTERNATIONAL COMPANY, | ) )  |
| Plaintiff, | ) ) |
| v. | ) No. 04 C 6018 ) |
| XCENTRIC VENTURES, LLC, et al., | ) Judge Charles R. Norgle ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2007, I electronically filed a **Defendants' Response To Plaintiff's (Second) Motion To Hold Defendants In Contempt** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

    Bart A. Lazar
    Rachel M. Kindstrand
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL 60603

    XCENTRIC VENTURES, LLC and ED MAGEDSON

    By: /s/ James K. Borcia
        One of Their Attorneys

| | |
|---|---|
| Maria Crimi Speth, Esq. | James K. Borcia |
| JABURG & WILK PC | David O. Yuen |
| 3200 North Central Avenue, Suite 2000 | Tressler, Soderstrom, Maloney & Priess, LLP |
| Phoenix, AZ 85012 | 233 South Wacker Drive, 22nd Floor |
| (602) 248-1000 | Chicago, IL 60606-6399 |
| | (312) 627-4000 |